THE HONORABLE JAMES L. ROBART

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9 | ANNA PATRICK, ET AL., individually and on behalf of all others similarly situated, | Case No.: 2:23-cv-00630 JLR

10

| | Plaintiffs, | **DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S MOTION TO DISMISS THE COMPLAINT**

11

12 | v. |

13 | DAVID L. RAMSEY, III, individually; HAPPY HOUR MEDIA GROUP, LLC, a Washington limited liability company; THE LAMPO GROUP, LLC, a Tennessee limited liability company, | **NOTED ON MOTION CALENDAR: October 27, 2023**

14

15

| | Defendants. |

16

17

18

19

20

21

22

23

24

25

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
MOTION TO DISMISS - Case No.: 2:23-cv-00630 JLR -
1

**Corr Cronin llp**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# TABLE OF CONTENTS

I. INTRODUCTION...................................................................................................................4

II. FACTUAL BACKGROUND................................................................................................5

   A.    The Plaintiffs are prohibited from executing or enforcing any judgment against
Happy Hour by the judgement in the *Adolph* matter.............................................................5

      1.    The Plaintiffs and all others in the proposed class are members of the *Adolph*
class. ...............................................................................................................................5

      2.    As members of the *Adolph* class, the Plaintiffs and all members of the
proposed class have settled their claims against Reed Hein and Mr. Reed........................6

      3.    The basis for the settlement with Reed Hein and Brandon Reed was, in
Plaintiffs' counsel's words, the limited nature Reed Hein's and Mr. Reed's assets. .........6

      4.    In the *Adolph* case, the plaintiffs acknowledged that one asset that would
remain to Mr. Reed after settlement was Happy Hour. .....................................................7

      5.    The *Adolph* Court entered judgment prohibiting members of the *Adolph* class
from recovering any funds from Brandon Reed's assets...................................................8

      6.    In this lawsuit, members of the *Adolph* class are seeking to obtain and enforce
a judgment against Brandon Reed's asset Happy Hour. ...................................................8

   B.    The lengthy Complaint contains very few allegations against Happy Hour. ..............8

III. ARGUMENT AND AUTHORITIES ................................................................................10

   A.    Relief cannot be granted to the Plaintiffs because the *Adolph* judgment prohibits
plaintiffs from executing or enforcing any judgment against Happy Hour.........................10

      1.    The Court may consider the records of the *Adolph* case when deciding this
Motion. ...........................................................................................................................10

      2.    Every Plaintiff and proposed class member is a member of the *Adolph* class. 11

      3.    As members of the *Adolph* class, the named Plaintiffs and unnamed members
of the proposed class are bound by the *Adolph* Judgment...............................................11

      4.    The *Adolph* Judgment prohibits the *Patrick* class from stating a claim upon
which relief can be granted because it renders this matter moot.......................................14

      5.    Plaintiffs are judicially estopped from asserting that Happy Hour is not an asset
of Brandon Reed..............................................................................................................15

   B.    The Complaint fails to state a claim against Happy Hour because it does not allege
sufficient factual content to support a claim that is plausible on its face. ...........................16

      1.    Plaintiffs do not state a plausible claim for violations of the Consumer
Protection Act because they do not allege any interactions between Happy Hour and
consumers or any unfair or deceptive act by Happy Hour. ..............................................17

      2.    The Complaint does not state a plausible claim for negligent misrepresentation
because it does not allege any misrepresentation by Happy Hour. ..................................19

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
MOTION TO DISMISS - Case No.: 2:23-cv-00630 JLR -
2

**CORR CRONIN** LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1

3.      The Plaintiffs' allegation of a "deal" cannot support a plausible Conspiracy claim…………………………………………………………………………… 20

C.      The claims of several of the Plaintiffs should be dismissed because they are barred by applicable statutes of limitations. ...................................................................22

IV. CONCLUSION ...............................................................................................23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1

# I. INTRODUCTION

The Complaint identifies the Plaintiffs as customers of Reed Hein and focuses on the alleged conduct of Reed Hein and its owner, Brandon Reed. As the Complaint recognizes, a class of customers already brought their claims against Reed Hein and Brandon Reed in the *Adolph* lawsuit.[1] What the Complaint does not say, but the Court can take judicial notice of, is that the Plaintiffs here are members of the *Adolph* class; they have settled their claims against Reed Hein and Brandon Reed; the judgment in *Adolph* provides that the Plaintiffs "will never execute upon or attempt to enforce any judgment against the assets of" Brandon Reed; and Happy Hour is an asset of Brandon Reed. Because the *Adolph* Court has prohibited Plaintiffs from recovering anything from Happy Hour, the Plaintiffs cannot state a claim upon which relief can be granted against Happy Hour.

In addition to being legally barred, the claims against Happy Hour do not rise to the level of plausibility required in a federal court complaint. In all its dozens of pages, the Complaint contains only eight paragraphs that make substantive allegations against Happy Hour. Together, those paragraphs allege that Happy Hour acted as an intermediary for payments between Reed Hein and Dave Ramsey and that Reed Hein and Happy Hour "struck a deal" to have Ramsey mislead people. The Complaint does not allege any substance, details, or factual matter identifying the terms of the supposed deal. The scanty allegations against Happy Hour are devoid of specifics and cannot support any of Plaintiffs' three causes of action.

Finally, as demonstrated in the briefing on the motion to dismiss from the Ramsey Defendants (Dave Ramsey and the Lampo Group), many of the Plaintiffs' claims, even if otherwise viable, are time-barred.

---

[1] Dkt. 1 at ¶ 106.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
MOTION TO DISMISS - Case No.: 2:23-cv-00630 JLR -
4

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Happy Hour respectfully requests that the Court dismiss the claims against it with prejudice due to the Plaintiffs' failure to state a plausible claim, the untimeliness of the claims, and the *Adolph* Court's prohibition against the Plaintiffs executing or enforcing any judgment against Happy Hour.

## II. FACTUAL BACKGROUND

**A.    The Plaintiffs are prohibited from executing or enforcing any judgment against Happy Hour by the judgement in the *Adolph* matter.**

> **1.    The Plaintiffs and all others in the proposed class are members of the *Adolph* class.**

The Complaint focuses on the business practices of Reed Hein & Associates ("Reed Hein"), a timeshare exit company, and its owner, Brandon Reed.[2] Reed Hein and Mr. Reed were defendants in the class action lawsuit *Adolph v. Reed Hein & Associates et al.*, filed in this Court on October 9, 2021, by the Albert Law Firm, which also represents the Plaintiffs in this action.[3]  On October 25, 2022, the *Adolph* court certified the following class:

> All persons who paid fees to Reed Hein for services to terminate their timeshare obligations, except those persons who received refunds of the fees that they paid.[4]

As in the *Adolph* case, the Plaintiffs here all allege that they are persons who paid fees to Reed Hein for services to terminate their timeshare obligations.[5]  They all allege that they have suffered damages from paying those fees, implying that they have not received refunds.[6] The purported class in this lawsuit is:

---

[2] *See, e.g.*, Dkt. No. 1 at ¶¶81–108.

[3] *Adolph* Dkt. 1, Lovejoy Ex. 1 (references to "*Adolph* Dkt.__" refer to the record of *Adolph v. Reed Hein & Associates et al.*, United States District Court, Western District of Washington, Case No. 2:21-cv-01378-BJR). For the Court's convenience, copies of documents filed in *Adolph* are attached to the Declaration of Jack M. Lovejoy, filed herewith.

[4] *Adolph* Dkt. 23, Lovejoy Ex. 23 at 2:5-7.

[5] Dkt. 1 at ¶ 16-66.

[6] Dkt. 1 at 47:13.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
MOTION TO DISMISS - Case No.: 2:23-cv-00630 JLR -
5

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

All individuals who, during the applicable statute of limitations, paid money to Reed Hein and Time Share Exit Team for the purpose of obtaining an "exit" from their timeshare obligations after being exposed to, and/or in reliance on, the statements and other representations made by Dave Ramsey, and the Lampo Group.[7]

This proposed class is a subset of the *Adolph* class.

### 2.     As members of the *Adolph* class, the Plaintiffs and all members of the proposed class have settled their claims against Reed Hein and Mr. Reed.

On December 30, 2022, the *Adolph* Court preliminarily approved a class-wide settlement.[8] On May 19, 2023, the *Adolph* Court entered its final approval of the settlement.[9] On June 15, 2023, the *Adolph* Court entered a final Confession of Judgment and Judgment with Covenant Not to Execute based on the parties' settlement.[10] None of the Plaintiffs opted out of the class.[11]

### 3.     The basis for the settlement with Reed Hein and Brandon Reed was, in Plaintiffs' counsel's words, the limited nature Reed Hein's and Mr. Reed's assets.

The settlement of the *Adolph* case did not involve a cash payment.[12] Instead, Reed Hein and Mr. Reed assigned to the *Adolph* class all of the claims that Reed Hein or Mr. Reed had against various third parties, including insurers, law firms, and Reed Hein's other founder, Trevor Hein, and agreed to various forms of cooperation with the class.[13] The *Adolph* plaintiffs' motion to approve the settlement argued that the settlement was "objectively superior to continued litigation," in part due to the fact that Reed Hein and Mr. Reed had few assets remaining to continue litigation and provide a meaningful recovery to the customers.[14]

---

[7] Dkt. No. 1 at ¶ 191.

[8] *Adolph* Dkt. 27, Lovejoy Ex. 27.

[9] *Adolph* Dkt. 43, Lovejoy Ex. 43.

[10] *Adolph* Dkt. 45, Lovejoy Ex. 45.

[11] *Adolph* Dkt. 38, Lovejoy Ex. 38, at ¶ 12, listing all those who opted out.

[12] *Adolph* Dkt. 25-1, Lovejoy Ex. 25-1.

[13] *Id*. at II(4-16).

[14] *Adolph* Dkt. 24 at 2:15 and Dkt. 25 at ¶¶ 23-26, Lovejoy Exs. 24 and 25.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S MOTION TO DISMISS - Case No.: 2:23-cv-00630 JLR - 6

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**4.      In the *Adolph* case, the plaintiffs acknowledged that one asset that would remain to Mr. Reed after settlement was Happy Hour.**

In support of the *Adolph* plaintiffs' argument that Reed Hein and Mr. Reed had limited assets, Plaintiffs filed a declaration of their attorney, Gregory Albert ("Albert Declaration").[15] The Albert Declaration described how he had examined documentation of the assets of Reed Hein and Mr. Reed on several occasions.[16] In addition to discussing the assets being assigned in the settlement, he also noted that "Mr. Reed has a fifty percent interest in Happy Hour Media Group, LLC."[17] This asset was not assigned to the *Adolph* class in the settlement.[18]

In support of their preliminary motion for class settlement approval, the *Adolph* plaintiffs also submitted a Declaration of Brandon Reed, which explicitly noted that aside from assets he was assigning in the settlement, he had no substantial assets other than "A 50% ownership interest in Happy Hour Media Group LLC" and an overdue receivable on a loan.[19] The *Adolph* plaintiffs' briefing explained:

> Mr. Reed's remaining net worth is minimal. Mr. Reed has a fifty percent interest in Happy Hour [], which has $1,489,966.90 in equity but $1,624,028 in debt. The only other substantial asset Mr. Reed has is an "overdue" account receivable for $623,730 for a loan to Trevor Hein that Mr. Hein has declined to pay.[20]

Based on the submissions by plaintiffs, including the declarations of Mr. Albert and Mr. Reed, the Adolph court approved the parties' settlement agreement.[21]

---

[15] *Adolph* Dkt. 25, Lovejoy Ex. 25.

[16] *Id*. at ¶ 23

[17] *Id.* (emphasis added).

[18] *Adolph* Dkt. 25-1, Lovejoy Ex. 25 at II(4-16).

[19] *Adolph* Dkt. 26, Lovejoy Ex. 26.

[20] *Adolph* Dkt. 24 at 2:16-19 (internal citations omitted).

[21] *Adolph* Dkt. 43, Lovejoy Ex. 43.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S MOTION TO DISMISS - Case No.: 2:23-cv-00630 JLR - 7

1

**5.      The *Adolph* Court entered judgment prohibiting members of the *Adolph*
class from recovering any funds from Brandon Reed's assets.**

2

3

As part of the *Adolph* settlement, Reed Hein and Brandon Reed entered into a

Confession of Judgment in the amount of $630,187,204.[22] In exchange for the consideration

4

provided to the *Adolph* class, including the assigned claims and the Confession, the *Adolph*

5

class requested and the Court entered a final judgment that provided that the class "**will never**

6

**execute upon or attempt to enforce <u>any judgment</u> against the assets of the Defendant**

7

**Parties.**"[23]

8

**6.      In this lawsuit, members of the *Adolph* class are seeking to obtain and
enforce a judgment against Brandon Reed's asset Happy Hour.**

9

10

Despite the *Adolph* Court's prohibition on members of the *Adolph* class attempting to

11

execute or enforce a judgment against Brandon Reed's assets, the Plaintiffs in this lawsuit, all

12

of whom are *Adolph* class members, are seeking to obtain and enforce a judgment against

13

Happy Hour.

14

**B.      The lengthy Complaint contains very few allegations against Happy Hour.**

15

The Complaint contains 215 paragraphs of allegations.[24] The following paragraphs do

16

not attempt to state claims against Happy Hour:

17

- Paragraphs 1-15 give an overview of the parties and claims;

18

- Paragraphs 16-66 introduce the named plaintiffs and their interactions with Reed Hein

19

    and defendant Dave Ramsey, paragraphs 178-190 repeat these allegations, and none of

20

    these paragraphs mentions Happy Hour;

21

- Paragraphs 191-200 are procedural allegations about the propriety of a class action and

22

    do not mention Happy Hour;

23

- Paragraphs 66-72 name and introduce the defendants again;

24

[22] *Adolph* Dkt. 45, Lovejoy Ex. 45 at 5:16.

25

[23] *Adolph* Dkt. 44, 44-1, 45, Lovejoy Exs. 44, 44-1, and 45 at 5:20-23 (emphasis added).

[24] *See generally* Dkt. No. 1.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
MOTION TO DISMISS - Case No.: 2:23-cv-00630 JLR -
8

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

- Paragraphs 73-80 discuss jurisdiction and venue;

- Paragraphs 81-108 are allegations about Reed Hein;

- Paragraphs 201-215 recite the elements of Plaintiffs' causes of action in general terms and do not mention Happy Hour; and

- Paragraphs 115-122, 124, 125, and 127-177 all attempt to present the substance of Plaintiffs' claims, but none of them accuse Happy Hour of anything.

**Only eight (8) paragraphs make any substantive allegation about Happy Hour (¶¶ 109–114; 123; 126).**

The allegations against Happy Hour are:

- ¶ 109: "At all times since [May 2015], Happy Hour [] has acted as Reed Hein's in-house marketing department. Happy Hour [] promoted and paid for all false advertisements described within this complaint."

- ¶ 110, 112, 113, 126: Happy Hour served as an intermediary who received money from Reed Hein to spend on marketing and paid some of that money, up to millions of dollars per year, to Dave Ramsey and/or the Lampo Group for advertising spots on Mr. Ramsey's programs.

- ¶ 111: Brandon Reed and Christopher Holcomb took all actions attributed to Happy Hour in the Complaint or instructed subordinates at Happy Hour to do so.

- ¶ 114, ¶ 123: "Reed Hein and Happy Hour [] struck a deal with the Lampo Group in which Dave Ramsey agreed to make false statements about Reed Hein to induce his followers to spend money on Reed Hein's illusory services;" "Ramsey promoted Reed Hein" and Ramsey and Reed Hein both made money as a result. ¶ 123.

The Complaint does not allege that Happy Hour made any representation or misrepresentation to, or otherwise interacted with, any plaintiff or class member. The Complaint does not explain what Happy Hour did to "promote" allegedly false advertisements, other than buying ad space on Mr. Ramsey's programs. The Complaint does not explain what it means when it alleges that Reed Hein and Happy Hour "struck a deal" with the Lampo Group. The terms of this deal are

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
MOTION TO DISMISS - Case No.: 2:23-cv-00630 JLR - 9

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1    not alleged. The manner in which the alleged deal was struck is not alleged. Happy Hour's

2    supposed role in the striking of the deal is not alleged. From the allegations in the Complaint,

3    it appears that the deal was simply that Reed Hein would buy ad space on Ramsey's programs

4    and Happy Hour's role was simply to pay for that ad space.

5         The Complaint alleges that the limited substantive allegations about Happy Hour

6    support causes of action for (1) Violation of the Washington Consumer Protection Act; (2)

7    Negligent Misrepresentation; and (3) Conspiracy.[25] Plaintiffs do not name Happy Hour as a

8    defendant with respect to their claim for Unjust Enrichment.[26]

## III. ARGUMENT AND AUTHORITIES

**A.    Relief cannot be granted to the Plaintiffs because the *Adolph* judgment prohibits plaintiffs from executing or enforcing any judgment against Happy Hour.**

12        Under Fed. R. Civ. P. 12(b)(6), this Court may dismiss a Complaint for "failure to state

13   a claim upon which relief can be granted." Rule 12(b)(6) exists to weed out unmeritorious

14   complaints. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 127 S. Ct. 1955 (2007). The

15   Complaint fails to state a claim against Happy Hour because the *Adolph* judgment precludes

16   the Plaintiffs from obtaining or enforcing a judgment against any of Brandon Reed's assets, and

17   Happy Hour is one of those assets. Because any judgment obtained by Plaintiffs in this matter

18   would be unenforceable, no effective relief can be granted to the Plaintiffs in this action.

**1.    The Court may consider the records of the *Adolph* case when deciding this Motion.**

21        While a Court normally will not consider materials outside the Complaint on a motion

22   under Fed. R. Civ. P 12(b)(6), a court may take judicial notice of matters of public record

23   without converting a motion to dismiss into a motion for summary judgment. *Khoja v. Orexigen*

24   *Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). Judicially noticeable public records

[25] Dkt. 1 at ¶¶ 201–08; 214–15.

[26] Dkt. 1 at ¶¶ 209-213.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
MOTION TO DISMISS - Case No.: 2:23-cv-00630 JLR -
10

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

include the records of other lawsuits. *Rosales-Martinez v. Palmer*, 753 F.3d 890, 894 (9th Cir. 2014); *Kipp v. Davis*, 971 F.3d 939 n. 2 (9th Cir. 2020); *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012) (the district court properly took judicial notice of "transcripts, letters, pleadings, and other documents filed in an earlier case). Here, the Court may take judicial notice of the Judgment and associated motions and declarations from the *Adolph* matter cited in this motion.

2. **Every Plaintiff and proposed class member is a member of the *Adolph* class.**

The Complaint describes each of the Plaintiffs as a person who paid Reed Hein for timeshare exit services.[27] The Complaint alleges that the Plaintiffs are entitled to damages for the fees they paid to Reed Hein, implying that they have not received refunds.[28] Each Plaintiff therefore fits within the class certified by the *Adolph* Court. None of the Plaintiffs opted out of the *Adolph* settlement. Hence, each named Plaintiff is a member of the *Adolph* class.

The Complaint describes the proposed class in this matter as individuals who paid money to Reed Hein for timeshare exit services (with the additional characteristics that they did so within a statute of limitations and after relying on Dave Ramsey).[29] The Complaint requests an award of damages for those fees, again implying that the fees have not been refunded.[30] Hence, each member of the proposed class is also a member of the *Adolph* class.

3. **As members of the *Adolph* class, the named Plaintiffs and unnamed members of the proposed class are bound by the *Adolph* Judgment.**

A judgment in a class action binds members of a class even if they were not named parties to the class action. *Hansberry v. Lee*, 311 U.S. 32, 41, 61 S.Ct. 115 (1940). Moreover,

---

[27] Dkt. 1, Lovejoy Ex. 1 at ¶¶ 16-66.

[28] Dkt. 1, Lovejoy Ex. 1 at 47:13.

[29] Dkt. 1, Lovejoy Ex. 1 at ¶ 191.

[30] Dkt. 1, Lovejoy Ex. 1 at 47:13.

1   "[a] settlement agreement may preclude a party from bringing a related claim in the future even

2   though the claim was not presented and might not have been presentable in the class action."

3   *Marshall v. Northrop Grumman Corp.*, 469 F. Supp. 3d 942, 948–49 (C.D. Cal. 2020) (citations

4   and internal quotations omitted). A covenant not to sue in a class action settlement is

5   enforceable against members of the class, even if they were not named plaintiffs. *Skilstaf, Inc.*

6   *v. CVS Caremark Corp.*, 669 F.3d 1005 (9th Cir. 2012).

7          The Ninth Circuit decision in *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005 (9th

8   Cir. 2012), demonstrates the preclusive effect of a covenant in a class action judgment. Skilstaf,

9   Inc. was an unnamed class member in a class action filed in Massachusetts federal district court.

10  *Id.* at 1007–08. The class consisted of third-party payors who reimbursed consumers' purchases

11  of certain prescription drugs. *Id.* at 1008. The defendants were a wholesale drug distributor

12  called McKesson, and First Data Bank. *Id.* The Massachusetts court certified the class and

13  provided notice to the class members and a right to opt-out of the class settlement. *Id.* at 1009.

14  The class settlement provided a release of defendants and affiliated parties, as well as a covenant

15  not to sue, which read: "All Releasers covenant and agree that they shall not hereafter seek to

16  establish liability against any Released Party or any other person based, in whole or in part, on

17  any of the Released Claims." *Id.* at 1009.

18         At the fairness hearing, Skilstaf objected to the settlement, asking the Court to strike the

19  words "or any other person" from the covenant not to sue. *Id.* at 1011. In response, McKesson

20  argued that "the broad covenant not to sue was a critical part of the settlement because '[i]f all

21  McKesson had was a release, it would remain exposed to claims for indemnification or

22  contribution if plaintiffs filed new lawsuits against third parties based on the claims that

23  McKesson had just settled.'" *Id.* at 1012. Skilstaf was given a second opportunity to opt out of

24  the settlement agreement but declined to do so. *Id.* at 1012. The Massachusetts court entered a

25  final judgment certifying a nationwide class action and approving the class settlement,

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
MOTION TO DISMISS - Case No.: 2:23-cv-00630 JLR -
12

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

including the covenant not to sue as originally worded, and Skilstaf received its benefits from the settlement. *Id.* at 1013.

Separately from the Massachusetts class action, Skilstaf filed a lawsuit in the Northern District of California against CVS Caremark Corp. and other pharmacies who were not parties to the Massachusetts lawsuit. *Id.* at 1013–14. Skilstaf's claims were based on the same operative facts as the claims released in the Massachusetts class action. The California defendants successfully moved to dismiss Skilstaf's claims under Fed. R. Civ. P. 12(b)(6) "on the basis that they were precluded by the covenant not to sue that the Massachusetts court had approved as part of the [Massachusetts] settlement agreement[.]" *Id.* at 1013. The California court noted that the Massachusetts settlement prevented lawsuits against 'any other person' based on released claims and that Skilstaf was a member of the Massachusetts class. *Id.* at 1014. "Describing Skilstaf's decision to remain in the class and accept its portion of the settlement proceeds as 'informed and strategic,' the court concluded that 'Skilstaf cannot now attempt to circumvent the limitations that attended those benefits.'" *Id.* The Ninth Circuit affirmed the California court's dismissal of Skilstaf's lawsuit. *Id.* at 1018–19.

Here, just as in *Skilstaf*, the Plaintiffs, who were members of the *Adolph* class, are bound by the covenants in the settlement and judgment approved by the *Adolph* Court. The *Adolph* judgment says that the *Adolph* class members "**will never execute upon or attempt to enforce any judgment against the assets of the Defendant Parties**."[31] The Plaintiffs were on notice of the terms of the Judgment and had the opportunity to opt out of the settlement. The *Adolph* Court record, including the testimony of Plaintiffs' counsel, made it clear that Happy Hour was one of Mr. Reed's assets that would become off-limits as a result of the proposed Judgment. Just as in *Skilstaf*, the broad covenant not to enforce or execute <u>any</u> judgment against <u>any</u> asset of Mr. Reed was an important element of the settlement. As alleged in the Complaint, the

---

[31] Dkt. 45, Lovejoy Ex. 45 at 5:20-23 (emphasis added).

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
MOTION TO DISMISS - Case No.: 2:23-cv-00630 JLR - 13

**CORR CRONIN** LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

attorney who represented the *Adolph* class and the Plaintiffs in this suit was engaged in serial lawsuits and arbitrations against Reed Hein and Mr. Reed. Without a broad covenant prohibiting all further attempts to collect Mr. Reed's dwindling assets, members of the class and their attorney could have simply continued to effectively sue Mr. Reed on the settled claims, which is exactly what the Plaintiffs are trying to do now. If the people who are now Plaintiffs in this lawsuit had intended to preserve their opportunity to seek to recover from Happy Hour or any other asset of Mr. Reed's, they could have objected to the proposed judgment's reference to "the assets of the Defendant Parties" or they could have opted out of the class. None of them did so.[32] The Plaintiffs and the proposed class in this lawsuit are therefore bound by the *Adolph* judgment's covenant not to execute or enforce any judgment against any asset of Mr. Reed, including Happy Hour.

> **4.    The *Adolph* Judgment prohibits the *Patrick* class from stating a claim upon which relief can be granted because it renders this matter moot.**

The covenant not to execute or enforce any judgment against Happy Hour necessarily renders the *Patrick* Complaint non-justiciable. *Wallingford v. Bonta*, ---F.4th---, 21-56292, 2023 WL 6153588 at *2, *7 (9th Cir. Sept. 21, 2023)(when effective relief can no longer be granted, a dispute becomes moot and ceases to be a "case or controversy" for purposes of Article III). Any judgment that might be obtained against Happy Hour in this lawsuit would be worthless and moot because it could not be executed or enforced. Because there is no meaningful relief that can be granted to the Plaintiffs in this lawsuit, the Complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) with prejudice.

---

[32] Dkt. 38, Lovejoy Ex. 38 at ¶ 12.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
MOTION TO DISMISS - Case No.: 2:23-cv-00630 JLR -
14

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

5.      **Plaintiffs are judicially estopped from asserting that Happy Hour is not an asset of Brandon Reed.**

Plaintiffs are judicially estopped from denying the truth of the factual statements made in the documents filed by the Plaintiffs in the *Adolph* matter. Judicial estoppel is "an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (citation omitted). When considering whether to apply judicial estoppel, the court may consider (1) whether the party's later position is clearly inconsistent with its earlier position; (2) "whether the party has succeeded in persuading the court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled"; and (3) whether the party seeking to assert an inconsistent position would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–51, 121 S.Ct. 1808 (2001)).  Judicial estoppel is "invoked not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts." *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993 (9th Cir. 2012) (internal quotations and citations omitted).

In the *Adolph* matter, the *Adolph* plaintiffs submitted testimony and briefing urging the Court to approve the proposed settlement and confession of judgment in part because Mr. Reed is insolvent and Happy Hour is his only remaining meaningful asset.[33] That testimony and argument was submitted to the Court on behalf of all of the members of the *Adolph* class,

---

[33] *Adolph* Dkt. 24 at 2:16-19; *Adolph* Dkt. 25, Lovejoy Ex. 25 at ¶¶ 23–24; *Adolph* Dkt. 26, Lovejoy Ex. 26.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S MOTION TO DISMISS - Case No.: 2:23-cv-00630 JLR - 15

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

including the Plaintiffs herein. It was presented by one of the same law firms representing the Plaintiffs in this matter. The *Adolph* class, including the Plaintiffs herein, benefitted from these representations by persuading the Court to approve the settlement and enter their requested judgment. The doctrine of judicial estoppel prevents the Plaintiffs from now arguing that Happy Hour is not an asset of Mr. Reed. Allowing the Plaintiffs to assert in this lawsuit that Happy Hour is <u>not</u> an asset of Mr. Reed's and to sidestep the covenant in the *Adolph* judgment would "impose an unfair detriment" on both Mr. Reed and Happy Hour, who are entitled to the few benefits Mr. Reed was able to negotiate in the *Adolph* settlement.

**B.      The Complaint fails to state a claim against Happy Hour because it does not allege sufficient factual content to support a claim that is plausible on its face.**

Federal Rule of Civil Procedure 8(a) "demand[s] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). A claim has "facial plausibility" when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A plaintiff's complaint must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief. *Iqbal*, 556 U.S. at 678–79. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint will not suffice "if it tenders 'naked assertion[s] devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 667 (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Nor is it enough that the complaint is "factually neutral," rather it must be "factually suggestive." *Twombly*, 550 U.S. at 557 n. 5.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
MOTION TO DISMISS - Case No.: 2:23-cv-00630 JLR -
16

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1    "[W]hen the allegations in a complaint, however true, could not raise a claim of

2    entitlement to relief, this basic deficiency should be exposed at the point of minimum

3    expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 557

4    (quotations omitted); *see also Somers v. Apple, Inc.*, 729 F.3d 953, 966 (9th Cir. 2013)

5    (Supreme Court's insistence in *Twombly* "on specificity of facts is warranted before permitting

6    a case to proceed into costly and protracted discovery").

7
    **1.      Plaintiffs do not state a plausible claim for violations of the Consumer**
8    **Protection Act because they do not allege any interactions between Happy**
    **Hour and consumers or any unfair or deceptive act by Happy Hour.**
9

10   To plead a plausible claim for a violation of the Consumer Protection Act (CPA),

11   Plaintiffs must allege, among other things, that Happy Hour engaged in an "unfair or deceptive

12   act or practice" in trade or commerce. *Hangman Ridge Training Stables, Inc. v. Safeco Title*

13   *Ins. Co.*, 105 Wn.2d 778, 780 (1986).

14   Before examining Plaintiffs' allegations against Happy Hour, it is important to note that

15   one premise of this lawsuit must be that Happy Hour is distinct from Reed Hein. If the Plaintiffs

16   were to argue that Reed Hein and Happy Hour are one and the same, they would be even more

17   blatantly violating their settlement with Reed Hein. Hence, the Complaint's many allegations

18   against Reed Hein cannot be read as allegations against Happy Hour. Instead, only the

19   allegations specifically against Happy Hour can be considered when analyzing whether the

20   Complaint states a plausible claim against Happy Hour. The allegations in the eight substantive

21   paragraphs discussing Happy Hour are insufficient, if believed, to establish an unfair or

22   deceptive act or practice by Happy Hour in trade or commerce.

23   The first allegation against Happy Hour is that it was an "in-house marketing department

24   for Reed Hein."[34] The Complaint does not explain what it means by "in-house marketing

25   _____
     [34] Dkt. 1 ¶ 109.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
MOTION TO DISMISS - Case No.: 2:23-cv-00630 JLR -
17

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1   department." In any event, the Complaint does not allege that there is anything unfair or

2   deceptive about being an in-house marketing department.

3   The next allegation is that Happy Hour "promoted and paid for all false advertisements"

4   described in the complaint.[35] The Complaint does not provide any factual content to explain

5   what it means by alleging that Happy Hour "promoted" advertisements. The only concrete act

6   that the Complaint alleges by Happy Hour is that it acted as an intermediary for Reed Hein to

7   pay for ad space on Ramsey's programs.[36] There is nothing unfair or deceptive about paying

8   for ad space.

9   The next allegation against Happy Hour is that it acted through Brandon Reed and Chris

10  Holcomb.[37] This is not an allegation of unfair or deceptive acts. All limited liability companies

11  act through individuals.

12  The final allegation against Happy Hour is that it, along with Reed Hein, "struck a deal"

13  with Ramsey in which Ramsey agreed to make false statements.[38] The Plaintiffs do not allege

14  what the terms of this deal were, that this deal involved Happy Hour doing anything unfair or

15  deceptive, or that Happy Hour did anything other than act as an intermediary for payments.

16  Instead, it appears that the concept of a "deal" was added to the Complaint merely to provide a

17  formulaic recitation of one of the elements of Plaintiffs' claim for conspiracy. This allegation

18  of a shapeless "deal" is exactly the sort "'naked assertion[s] devoid of 'further factual

19  enhancement'" that cannot support a viable complaint. *Iqbal*, 556 U.S. at 667 (citing *Twombly*,

20  550 U.S. at 557.

21  All of the allegations in the Complaint that attempt to provide sufficient factual content

22  to support plausible claims relate to other parties. For instance, while the Plaintiffs allege that

---

23  [35] *Id.*

24  [36] *Id.* at ¶¶ 110, 112, 113, 126.

    [37] *Id.* at ¶ 111.

25  [38] *Id.* at ¶¶ 114 and 123.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
MOTION TO DISMISS - Case No.: 2:23-cv-00630 JLR -
18

they heard false statements made by the Ramsey Defendants, they do not allege any false statements by Happy Hour.[39] Similarly, paragraph 202 provides a laundry list of allegedly deceptive acts and they all relate entirely to other parties, not Happy Hour. Those acts include "produc[ing] advertising" that was "deceptive" and "perpetuates . . . consumer fraud," acts in which Happy Hour is not alleged to have taken part.[40]

Because there are no allegations of unfair or deceptive acts or practices in trade or commerce by Happy Hour—in fact there are no allegations of any interactions between Happy Hour and any consumer at all—the Complaint does not state a plausible claim for violation of the CPA by Happy Hour. Count One of the Complaint must therefore be dismissed as it relates to Happy Hour.

2. **The Complaint does not state a plausible claim for negligent misrepresentation because it does not allege any misrepresentation by Happy Hour.**

To make a claim for negligent misrepresentation, a plaintiff must show proof of seven elements by clear, cogent, and convincing evidence. *Repin v. State*, 198 Wn. App. 243, 278, 392 P.3d 1174, 1191 (2017). Those elements are:

(1) the defendant supplied information for the guidance of another in his or her business transactions;

(2) the information was false;

(3) the defendant knew or should have known that the information was supplied to guide the plaintiff in his or her business transactions;

(4) the defendant was negligent in obtaining or communicating the false information;

(5) the plaintiff relied on the false information;

---

[39] *See generally* Dkt. No. 1.

[40] *Id.* at ¶¶ 202("The Lampo Group, Dave Ramsey specifically committed the following unfair and deceptive trade practices, which harmed Reed Hein customers….")

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S MOTION TO DISMISS - Case No.: 2:23-cv-00630 JLR - 19

1    (6) the plaintiff's reliance was reasonable; and

2    (7) the false information proximately caused the plaintiff damages.

3  The section of the Complaint that states Count Two, for Negligent Misrepresentation, says: "As

4  alleged above, Defendants supplied representations that were false for the guidance of

5  Plaintiffs."[41] But nowhere "above" does the Complaint ever allege that Happy Hour supplied

6  any statement or other representation for the guidance of anyone. The Complaint alleges that

7  Reed Hein provided "false claims" to the Ramsey Defendants.[42] The Complaint alleges that the

8  Ramsey Defendants made statements to consumers. But there is no allegation that (1) Happy

9  Hour supplied information for the guidance of any plaintiff, (2) Happy Hour supplied any false

10  information, (3) Happy Hour knew or should have known that any information it was supplying

11  information for the guidance of Plaintiffs, (4) Happy Hour was negligent in obtaining or

12  communicating false information, (5) Plaintiffs relied on information from Happy Hour, (6) it

13  was reasonable for any Plaintiff to rely on Happy Hour, or (7) that information from Happy

14  Hour proximately caused Plaintiffs' damages.

15    Plaintiffs have failed to plead the basic elements of a claim for negligent

16  misrepresentation against Happy Hour. Therefore, Count Two of the Complaint should be

17  dismissed as it relates to Happy Hour.

18    **3.    The Plaintiffs' allegation of a "deal" cannot support a plausible**
        **Conspiracy claim.**

19

20    To establish a civil conspiracy, Plaintiffs "must prove by clear, cogent, and convincing

21  evidence that (1) two or more people combined to accomplish an unlawful purpose, or

22  combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered

23  _____

24    [41] Dkt. No. 1 at ¶ 205.

25    [42] Dkt. No. 1 at ¶ 5 ("From 2015 to 2021, Reed Hein paid Dave Ramsey and the Lampo Group
    to make false claims and instruct Ramsey's faithful listeners to hire Reed Hein."); ¶ 6 ("Reed Hein
    made many claims that any competent financial advisor with Dave Ramsey's knowledge and skill
    would know to be false").

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
MOTION TO DISMISS - Case No.: 2:23-cv-00630 JLR -
20

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1    into an agreement to accomplish the conspiracy." *All Star Gas, Inc., of Wash. v. Bechard*, 100

2    Wn. App. 732, 740, 998 P.2d 367 (2000). "Mere suspicion or commonality of interests is

3    insufficient to prove conspiracy." *Id.* (quoting *Wilson v. State*, 84 Wn. App. 332, 350–51, 929

4    P.2d 448 (1996)).

5          Plaintiffs' claim for conspiracy is supported by only two conclusory and duplicative

6    allegations. Plaintiffs allege that Reed Hein and Happy Hour "struck a deal with The Lampo

7    Group in which Dave Ramsey agreed to make false statements about Reed Hein."[43] They also

8    allege: "Ramsey struck a deal with Reed Hein and Happy Hour [] to generate tens of millions

9    of dollars sending his followers to Reed Hein…Ramsey promoted Reed Hein by making untrue

10   claims to his listeners."[44] Count 4 of the Complaint rephrases these allegations twice. First, it

11   says: "defendants agreed and collaborated together and with Reed Hein and its employees and

12   officers and owners to accomplish the above by making deceptive statements to Reed Hein

13   customers and Dave Ramsey listeners."[45] Next, Count 4 says Defendants "agreed among

14   themselves and with Reed Hein to make deceptive and fraudulent statements about the services

15   Reed Hein provided to induce customers to pay money for Reed Hein *[sic]* services."[46]

16         These four iterations of the claim that Happy Hour was party to "a deal" are the epitome

17   of the "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555.

18   The Complaint never alleges anything specific or concrete about what Happy Hour allegedly

19   agreed to do or that Happy Hour did anything to mislead consumers. The only specific

20   allegation against Happy Hour is that it was an intermediary for Reed Hein to pay Ramsey for

21   ad space.

22

23   _____

24         [43] Dkt. 1 at ¶ 114.

             [44] *Id.* at ¶ 123.

25           [45] *Id.* at ¶ 214.

             [46] *Id.* at ¶ 215.

**CORR CRONIN** LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**C.    The claims of several of the Plaintiffs should be dismissed because they are barred by applicable statutes of limitations.**

Happy Hour endorses the arguments advanced by the Ramsey Defendants in their Motion to Dismiss in favor of dismissing:

- All claims of Robert and Samantha Nixon and Marylin Dewey and
- The negligent misrepresentation and civil conspiracy claims of Leisa Garrett, David and Rosemarie Bottonfield, Tasha Ryan, and Peter and Rachel Rollins.[47]

The arguments in the Ramsey Defendants' Motion, and most of the arguments in their Reply, are equally applicable to Happy Hour. For efficiency's sake, Happy Hour will not repeat those arguments in detail. However, there are two issues raised in the Plaintiffs' response to the Ramsey Defendants' Motion and addressed in the Ramsey Defendants' Reply that require a brief analysis individualized to Happy Hour.

The Plaintiffs argued that their limitations periods were tolled by fraudulent concealment. As the Ramsey Defendants explained in their reply, fraudulent concealment only tolls a claim against a defendant who acted affirmatively to prevent a plaintiff from timely filing their case. *Lukovsky v. City & Cnty. Of San Francisco*, 535 F.3d 1044, 1051-52 (9th Cir. 2008); *August v. U.S. Bancorp*, 146 Wn. App. 328, 347, 190 P.3d 86, 96 (2008). The Complaint alleges concealment by Reed Hein, but not by Happy Hour. In fact, the Complaint does not allege any interaction between Happy Hour and the Plaintiffs at all. As a result, there is no basis to find that any claim against Happy Hour was ever tolled by fraudulent concealment.

The Plaintiffs also argued that the limitations periods on their CPA claims were tolled during the State of Washington lawsuit against Reed Hein. As the Ramsey Defendants explained in their Reply, the tolling provision in the CPA only applies to rights of action "based in whole or part on any matter complained of in said action by the attorney general." RCW 19.86.120. The Plaintiffs did not point to any case or commentary suggesting that the CPA's

---

[47] Dkt. 25 (Motion) at 19:21-20:24 and Dkt. 31 (Reply) at 9:18-11:19.

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

tolling provision tolls or was intended to toll actions against parties other than the defendants in a lawsuit brought by the attorney general. And there is nothing in the Attorney General's Complaint that alleges any wrongdoing by Happy Hour.[48] For the reasons discussed in the Ramsey Defendants' Reply, the tolling provision of the CPA cannot be read to apply to Plaintiffs' claims against Happy Hour.

## IV. CONCLUSION

As alleged in the Complaint, Plaintiffs' counsel has been trying to make cases against Reed Hein for years. And the result is that Plaintiffs have filed another lawsuit about Reed Hein. After years of investigation, all that the Plaintiffs have managed to allege against Happy Hour is that it did what every marketing agency does; it acted as an intermediary that paid for ad spots. The Complaint says so little about Happy Hour, it appears that Happy Hour was only added to the lawsuit to create a basis for hearing the case in the district where Plaintiffs' counsel reside, rather than for the merits of any claim against Happy Hour. Happy Hour is not alleged to have deceived anyone or even to have interacted with any Plaintiff. The bald allegation that there was some unspecified "deal" is not sufficient to link Happy Hour to any alleged misstatement or support a cause of action against it.

Even if there was a basis for a claim against Happy Hour, the case against Happy Hour must be dismissed. Mr. Reed negotiated away all the valuable assets he could in order to ensure that this lawsuit would not happen, and he received not only a settlement, but a judgment from this Court prohibiting a lawsuit like this one. The terms of the *Adolph* settlement and judgment were bargained for and endorsed by the Plaintiffs' own attorney on their behalf. And they prohibit executing or enforcing any judgment against Happy Hour. With no prospect of an enforceable judgment, the plaintiffs are unable to state any claim upon which any effective

---

[48] See Complaint, *State of Washington v. Reed Hein & Associates, LLC, et al.*, King County Superior Court Case No. 20-2-03141-1 SEA, Lovejoy Ex. A. For the reasons stated above, the Court may take judicial notice of this court record.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
MOTION TO DISMISS - Case No.: 2:23-cv-00630 JLR -
23

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

relief can be granted against Happy Hour. Their effort to skirt the *Adolph* judgment should end now.

       For these reasons, Happy Hour respectfully requests that the Complaint against it be dismissed with prejudice.


DATED this 5th day of October, 2023.

                       This motion contains 6099 words per LCR 7(e).

                       CORR CRONIN LLP

                       By: *s/ Jack M. Lovejoy*
                       Jack M. Lovejoy, WSBA No. 36962
                       Maia R. Robbins, WSBA No. 54451
                       1015 Second Avenue, 10th Floor
                       Seattle, Washington 98104
                       Phone: (206) 625-8600
                       jlovejoy@corrcronin.com
                       mrobbins@corrcronin.com

                       *Attorneys for Defendant Happy Hour Media Group, LLC*

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
MOTION TO DISMISS - Case No.: 2:23-cv-00630 JLR -
24

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1

## <u>CERTIFICATE OF SERVICE</u>

2

3

I hereby certify that on October 5, 2023, I caused the foregoing document to be

electronically filed with the Clerk of the Court using the CM/ECF system, which will send

4

notification of such filing to all counsel of record.

5

6

*s/ Wen Cruz*
Wen Cruz

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900