

EXHIBIT 3



AMERICAN
ARBITRATION
ASSOCIATION

INTERNATION
FOR DISPUTE R

# AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration between

Case Number: 01-20-0014-0799

Ray Andes and Pamela Andes (Claimants)
-vs-
Reed Hein & Associates, d/b/a Timeshare Exit Team (Respondent)

### AWARD OF ARBITRATOR

I, John D Sours, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the written arbitration agreement entered into on or about November 10, 2018 by and between the above-named parties ("(the Agreement"), and having been duly sworn, and having, on December 6 and 7, 2021, duly heard the proofs and allegations of the Claimants, who were represented by counsel, and the Respondent having first declined in writing and then having failed to appear after due notice by mail in accordance with the Rules of the American Arbitration Association ("AAA"), hereby find and A WARD, as follows:.

The Claimants established by clear and convincing evidence, both documentary and through sworn oral testimony of Claimant Pamela Andes, that Respondent committed various material breaches of the Agreement by, among other things: failing to provide timely assistance to Claimants and to arrange timely for their representation by counsel in seeking abrogation of a time-share agreement with a third party; failing to disclose a material conflict of interest due to the bringing of suit by that third party against Respondent; failing to place funds provided by Claimants in an account separate from Respondent's own accounts, in violation of its express fiduciary duty, by contract and by statute, to do so; failing to maintain confidentiality of sensitive financial information provided by Claimants; and failing and refusing to return the funds which had been advanced to Respondent by Claimants upon demand therefor.

The conduct of Respondent directly damaged Claimants in a principal amount of at least $25,928.40, which was the total of the funds provided to Respondent by Claimants. Moreover, that conduct was intentional, as evidenced by repeated misrepresentations made by managerial and other employees and by a representative of Respondent to Claimants in a face-to-face meeting.

Claimants are therefore entitled to be further compensated by Respondent through payment in exemplary damages of at least a principal sum of a further $25,000.00 (which sum would have been the entire triple amount of direct compensatory damages due them absent the limitation provision of an applicable statute of the State of Washington). And, further, Claimants are additionally entitled to the recovery of arbitration fees in the amount of $200.00 as earlier advanced by them to the AAA for this Case, and to the recovery of reasonable attorneys' fees, which have been evidenced by sworn affidavit to be a principal sum of $4,218.50.

The foregoing sums, totaling FIFTY -FIVE THOUSAND, THREE HUNDRED FORTY -SIX DOLLARS AND NINETY CENTS ($55,346.90), are to be paid on or before Twenty (20) days from the date of this A WARD, and shall thereafter bear interest at the legal rate applicable under the laws of the State of Washington.

Except as noted hereinabove, the administrative fees of the AAA, totaling $2,700.00 shall be borne as incurred; and the compensation of the Arbitrator, totaling $5,000.00, shall also be borne as incurred.

This AWARD is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

SO ORDERED, this the Twenty-Ninth Day of December, 2021.

John D Sours, Arbitrator



# AMERICAN ARBITRATION ASSOCIATION

**In the matter involving:**

Case Number: 01-21-0004-1416

Yolanda Jerido, Claimant
vs.
Reid Hein & Associates d/b/a Timeshare Exit Team, Respondent

## FINAL AWARD

I, Melissa D. Hubbard, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the allegations and proofs of Claimant, and the responses, defenses and proofs of Respondent, each of which was represented by counsel, and having previously issued an Interim Award dated December 13, 2021, do hereby FIND and AWARD as follows:

Pursuant to the Consumer Arbitration Rules of the American Arbitration Association ("AAA"), a video-conferenced evidentiary hearing was held (and recorded) on November 8 and 15, 2021.

In addition to the Arbitrator, the following persons participated in the hearing:

 For Claimant:  David Hancock, Esq. and Yolanda Jerido

 For Respondent:  Daniel Kuem, Esq. and Maia Robbins, Esq. (Ms. Robbins appeared via video conference on Monday November 8th)

The following witnesses were sworn in by the Arbitrator and testified during the hearing:

 Yolanda Jerido on behalf of the Claimant.

 Catherine Cerbone on behalf of the Respondent.

All exhibits presented at the hearing were admitted by the Arbitrator, who noted various objections to certain exhibits that she agreed to consider in terms of relevance.

## BACKGROUND FACTS

During a vacation to Kauai, Hawaii, Yolanda and Stanley Jerido (the "Jeridos") agreed to attend a timeshare presentation at a Westin Hotel. On June 27, 2013, the Jeridos purchased a biennial (every other year) vacation ownership interest at the Princeville Ocean Resort Villas (the "Villas").

On January 27, 2018, Mrs. Jerido met with a sales agent of Reid Hein Associates, which advertises and does business as Timeshare Exit Team ("TET"), because the Jeridos were interested in terminating their timeshare contract. Mrs. Jerido told the sales agent that the family was not able to use the timeshare (and had not returned to the Villas or used any other Westin timeshare properties) due to changes in their schedules and their financial condition. She emphasized that they had been timely in making their mortgage and maintenance payments on the timeshare and did not want to impair their credit ratings by going into foreclosure for nonpayment.

The sales agent discussed an upfront payment to TET with Mrs. Jerido, which was based on his representations of the amount of money the Jeridos would save over time by terminating the timeshare contract within a year or possibly two years. The sales agent discussed a 100% money back guarantee that is advertised by TET and specified in the contract with TET. The Jeridos signed the Timeshare Owner Exit Agreement (the "Exit Agreement"), as well as a Power of Attorney (the "POA"), and agreed to pay TET $9,058.70 (through one upfront payment and monthly payments thereafter) to assist the Jeridos in terminating their timeshare contract.

Mrs. Jerido was told that she should not contact the timeshare company because it could delay the exit process TET planned to follow. She was also told that the Jeridos should not use the timeshare prior to any exit despite the fact that they continued to pay all monetary obligations owed to the timeshare company (over $30,000 from 2018 to the present). TET provided an information sheet to Mrs. Jerido that warned her that failing to fulfill the duties to TET could cause her to forfeit the 100% money back guarantee in the Exit Agreement.

Mrs. Jerido was told repeatedly that there were delays in her case due to the lack of responsiveness of the timeshare company. After close to one year of no progress, she requested a refund from TET in January 2019 and again in July 2019, but she was told that she was not eligible because TET was continuing to work on her case. Her case was then referred to a law firm in July 2019, which sent two letters to the timeshare company requesting a termination of her contract. The timeshare company refused to do so. The attorney asked Mrs. Jerido to consider making a cash offer settlement to the timeshare company or to let the timeshare go into foreclosure, neither of which option was acceptable to Mrs. Jerido. TET stated that it did not owe her any refund because it had offered her these two exit options that she refused to take. TET has not refunded any portion of monies Mrs. Jerido paid to TET over the past three plus years.

## THE CLAIM

M**s.** Jerido asserted a violation of the Washington State Consumer Protection Act (the "CPA") and is seeking monetary damages for her claim.

The elements to establish liability under the CPA require proof that the Respondent engaged in a deceptive or unfair trade practice, which occurred in the Respondent's business, and which significantly impacts the public as actual or potential consumers of the Respondent's goods or services. The Claimant must have incurred actual damages or losses.

## FINDINGS

Neutrals are required to consider all of the evidence presented at a hearing that is relevant to the claims brought and to determine if the elements of each claim have been proven by a fair preponderance of the credible and objective evidence presented. Based on all of the credible evidence presented, including circumstantial evidence, I find that Respondent violated the CPA.

Substantial evidence was provided regarding the national print, television and radio advertisements of TET guaranteeing its customers a full refund of the upfront fees TET charges if TET is not successful in terminating the customer's timeshare contract. The Jeridos relied on this representation when they signed the Exit Agreement in January 2018 and had a reasonable expectation that their timeshare contract would be terminated within a year so that they would not have to make another yearly maintenance fee payment in January of 2019 and beyond. Mrs. Jerido testified that she was willing to wait longer if progress was being made.

However, she initiated every call to TET to obtain "updates" and the evidence showed little to no effort on the Jerido's behalf for over a year after the Exit Agreement was signed. In fact, TET did not have the resources, the authority or the legal ability to fulfill its duties under the Exit Agreement and had no proprietary or reasonable plan or strategy to terminate the Jerido's timeshare contract. In fact, TET did not even have the resources or legal ability to do so. TET finally established a relationship with an outside law firm and referred the Jerido's case to it. The two letters sent by the law firm were woefully inadequate to satisfy TET's obligations under the Exit Agreement. Most importantly, the POA stated that TET was a fiduciary of the Jeridos, yet TET failed to have any funds reserved or set aside to fulfill the money back guarantee in the Exit Agreement with Mrs. Jerido. This finding alone is an unfair trade practice and could have a significant impact on TET's customers who did not get timeshare contracts terminated.

Mrs. Jerido requested a refund on numerous occasions which TET refused to provide, stating that she did not accept the two offers made to her by the law firm: foreclosure or proposing a cash payment settlement to the timeshare company, both of which options were likely to negatively impact her credit rating. Because the timeshare company was receiving timely payments from Mrs. Jerido, it had no reason to allow her to terminate the timeshare contract without paying the full amount owed to it.

The CPA provides that a party injured in violation of the CPA may recover actual damages, as well as reasonable attorney fees and costs. The CPA also authorizes treble damages which are capped at $25,000.

## FINAL AWARD

The Arbitrator hereby awards the Claimant $9,058.70 in actual damages, which shall be trebled and capped at $25,000. In light of this limit, there is no reason to award her the amounts of monies paid to the timeshare company during the term of the Exit Agreement, which she legally owed under her contract with the timeshare company.

Respondent shall also reimburse the reasonable attorney fees and the costs of this arbitration incurred by Claimant. Claimant's counsel submitted evidence showing entries and brief descriptions of time spent on this case, and Respondent's counsel did not file any response thereto.

In addition to the $25,000 in damages, Respondent shall pay attorney fees and costs in the amount of $11,049.40 to Claimant, of which $10,818.50 represents attorneys' fees, plus $125.90 in postage and $105 for photocopies, as paid by Claimant. Any amounts that are not paid within 30 days of this Final Award shall begin bearing interest at the rate of 8% per annum.

The administrative fees of the AAA totaling $2,495.00 and the compensation of the Arbitrator totaling $2,500.00 shall be borne as incurred.

This Final Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.
.

Respectfully submitted,

*/s/ Melissa D. Hubbard*
 *Arbitrator*
**1-31-2022**

{JK01346879.1}4



# AMERICAN ARBITRATION ASSOCIATION

Case Number: 01-21-0003-6820

In the Matter of the Arbitration between:

Douglas Reif, Claimant

-vs-

Timeshare Exit Team d/b/a Reed Hein & Associates, Respondent

## FINAL AWARD OF ARBITRATOR

I, Hon. J. William Brammer, Jr., THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, each represented by counsel, at evidentiary hearings held on October 21, 2021 and November 9, 2021, and having reviewed the Arbitrator's notes of the witness testimony and relevant exhibits adduced at the arbitration Hearings, and the written submissions each Party provided in December, 2021, and having on January 11, 2022 entered the Interim Award of Arbitrator herein, and the Parties having failed to file any papers in response to the invitation to do so regarding an award of attorney fees or costs, the Arbitrator therefore enters this final AWARD, as follows:

1.  Claimant's Arbitration Demand stated six claims as follows: 1) violation of the Washington State Consumer Protection Act, 2) Violation of Fiduciary Duties, 3) Breach of Contract, 4) Unjust Enrichment, 5) Disgorgement, and 6) Fraud. The Demand did not provide further specificity or factual support. The Claimant's Prehearing Memorandum expanded these Claims only slightly. Claimant's Post-Hearing Brief and argument expands his claims a bit more. Respondent has denied the claims and has not objected to their expansion beyond what Claimant stated in his Demand. Nor did Respondent object to any of the evidence Claimant presented at the Hearing on that basis. Accordingly, the Arbitrator has considered the claims as they have been presented in the papers and arguments. Claimant and Respondent at times are referred to herein as "Party" and together as "Parties."

2.  On Claimant's breach of contract claim, the Arbitrator concludes that Respondent had three-years from the April 9 & 10, 2020 date of the "Timeshare Owner Exit Agreement" (herein "Agreement") Exhibit R-9, between Claimant and Respondent

1

within which to "secure a release from, transfer, cancellation or termination of [Claimant's] time share interest at Resort (the "Exit")." Although at the time Claimant filed his Claim herein, April 28, 2021, the three-year period had not expired and Respondent had not secured the Exit for Claimant, that was but one of several responsibilities Respondent owed Claimant pursuant to the Agreement.

3. The Agreement requires the application of the law of the State of Washington in this proceeding and authorizes the Arbitrator to award the prevailing party its costs, expenses and reasonable attorney's fees.

4. The evidence shows that Respondent required Claimant to execute as a part of the transaction between them evidenced by the Agreement a "Special Power of Attorney" (herein "SPA"). Exhibit R-119. The SPA imposed upon Respondent the "legal duty to keep the [Claimant's] property separate and distinct from any other property owned or controlled by [Respondent]. [Respondent] may not transfer [Claimant's] property to [Respondent] without full and adequate consideration or accept a gift of [Claimant's] property unless this power of attorney specifically authorizes [Respondent to do so]." The Arbitrator finds that the SPA was an integral part of the transaction between the Parties and it and the Agreement are inextricably bound together as such.

5. The evidence shows that Claimant paid Respondent $51,858.48 (herein the "Deposit") as consideration for Respondent's services pursuant to the Agreement. The Arbitrator concludes that the Deposit constituted Claimant's property as defined in the SPA, and as such was required to be kept separate and distinct from other property owned or controlled by Respondent.

6. The evidence shows that Respondent at the time of the Hearings had entered agreements similar to the Agreement, and had accepted funds similar, although perhaps not in the same amounts, as the Deposit, with more than ten thousand (10,000) other persons in similar situations as Claimant (here "Contracting Parties").

7. The evidence further shows that Respondent had intermingled Claimant's Deposit with all other deposits it had received from other Contracting Parties. Indeed, Respondent was subject to a court order requiring it to hold funds it had received from many of the Contracting Parties in separate accounts designated for each of them, which apparently it had.

8. The evidence further shows that Respondent had received some Seventy Million Dollars ($70,000,000.00) from the Contracting Parties, and that at the time of the Hearing it may have had less than Two Hundred Thousand Dollars ($200,000.00) in its bank accounts. And the evidence revealed that the funds Respondent had been paid by the Contracting Parties was Respondent's only source of revenue for its operating expenses.

9. From these facts the Arbitrator finds that the Respondent violated the terms of the SPA

2

and breached the Agreement and its fiduciary responsibility to Claimant by not keeping Claimant's Deposit separate from other funds Respondent owned or controlled. The Arbitrator further concludes that Respondent would be unjustly enriched if permitted to retain the Deposit and, therefore, in addition to having breached the Agreement, must return the Deposit to Claimant.

10. The evidence further shows that Respondent's treatment of Claimant and his Deposit, the Agreement and the SPA were not unique to Claimant, but rather represented the Respondent's common business practice when selling the timeshare exit strategy to members of the public, when presenting information to them as a part of the sales "pitch," and when convincing those potential customers to enter into timeshare exit contracts similar to the Agreement.

11. The Arbitrator concludes that Respondent's actions as shown by the evidence violated the Washington Consumer Protection Act, Chapter 19.86 et seq., RCW, and subject Respondent to treble damages not to exceed Twenty-Five Thousand Dollars ($25,000.00) RCW 19.86.090.

12. The arbitrator declines to find that Respondent's conduct in convincing Claimant to enter the Agreement constituted fraud, because the evidence is not clear and convincing, but does observe that Respondent's actions with and concerning Claimant bordered on fraudulent conduct.

13. The Arbitrator further concludes that the January 11, 2022 Interim Award requiring Respondent to return the Deposit to Claimant constitutes Disgorgement as requested in the Demand.

14. The Arbitrator is given the authority in the Arbitration of Disputes provision of the Agreement to award the prevailing Party its reasonable attorney fees and costs.

15. The Arbitrator concludes that Claimant is the prevailing Party in this matter and is entitled to an award of his reasonable attorney fees incurred in this matter, and any costs he has expended maintaining his Claim.

16. Neither Claimant nor Respondent has filed anything concerning an award of attorney fees or costs, and therefore the Arbitrator awards no attorney fees.

17. The administrative fees of the American Arbitration Association totaling $2,400 and the compensation of the arbitrator totaling $5,000 shall be borne as incurred.

Accordingly, Claimant is AWARDED from and against Respondent the following:

1. $51,858.48 as and for the return of Claimant's Deposit funds that Respondent did not maintain separate and distinct from other property it owned or controlled, both because

    Respondent breached the Agreement and the SPA, and also because Respondent would be unjustly enriched by retaining the Deposit.

2. $25,000.00 as and for treble damages as is allowed for violation of the Washington Consumer Protection Act.

3.

This Award is in full settlement of all claims submitted to this arbitration. All claims not expressly granted are hereby, denied.

Date: February 2, 2022

_____
Hon. J. William Brammer, Jr., Arbitrator

# AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration between

Case Number: 01-21-0003-6669

Debbie Herman & Michael Nelson          (Claimants)
-vs-
Timeshare Exit Team d/b/a Reed Hein & Associates          (Respondent)

## AWARD OF ARBITRATOR

I, Marcia Adelson, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the Claimants, who were represented by counsel, at a hearing on January 13, 2022, and the Respondent having failed to appear after due notice by mail in accordance with the Rules of the American Arbitration Association, hereby, AWARD, as follows:

Claimants (Debbie Herman and Michael Nelson) assert claims of breach of contract, breach of fiduciary duty, negligent and fraudulent misrepresentation and violation of the Washington State Consumer Protection Act.  Claimants seek damages of $9,974.63, a refund of the amount paid Reed Hein & Associates pursuant to the Time Share Exit Agreement ("Agreement") entered into on January 9, 2018, $13,612.83 the amount paid to their timeshare, Westgate, during the period Claimants were clients of Respondent, treble damages to the statutory maximum of $25,000.00 as authorized by the Washington State Consumer Protection Act and $6,688.00 in attorneys' fees.

### Breach of Contract

Claimants presented the Timeshare Owner Exit Agreement ("Agreement") executed on January 9, 2018. Claimants paid Respondent $9,974.63 upon execution of the Agreement for Respondent's services.  The Agreement states, "Reed Hein [Respondent] guarantees that if Owner [Claimants] does not obtain the Services within a reasonable amount of time, Reed Hein shall refund the fee amount."  Claimants questioned the definition of a "reasonable time' resulting in Claimants and Respondent acknowledging by writing in and initialing that a reasonable time is defined as 8 to 24 months. Claimants testified to making repeated requests for updates on exit strategies and received no records of Respondent's activity or contact with the timeshare property of negotiations to exit Claimants' timeshare.  Claimants testified to requesting a refund when no exit offers were provided by the end of the reasonable time.  Claimants further testified the refund was refused and that they were told they were not eligible for the refund because Respondent was still working on exit strategies.

I find Respondent breached the contract by refusing the money back guarantee promised to Claimants.

### Fraudulent and Negligent Misrepresentation

With respect to the mortgage obligation and property maintenance fees owed by Claimants to Westgate, the timeshare company, Claimants were instructed to continue to make those payments but to have no contact with Westgate or to use the property.  Respondent in its Important Information Sheet states, "DO

Case Number: 01-21-0003-66691

NOT CALL the Timeshare Company at all, even if you are just asking if they have heard from us or what the current status is.  Any contact from you to any of the parties involved besides Reed Hein & Associates will in all likelihood cause the entire process to slow down and may prolong your exit.  You have hired us to manage the exit for you."  "Resort Fees.  You own the Timeshare until the closing of the exit is finalized, thereby relieving you of ownership; you remain responsible for all financial obligations associated with the Timeshare until the exit is complete and for any pre-existing obligations other than those extinguished as part of a resolution with the Timeshare Company."  Claimants provided proof Claimants paid all mortgage payments and maintenance obligations from January 2018 to February 2020.  Claimants made those payments on the belief that keeping up on those payments would facilitate an exit strategy.

Claimants testified to wanting to exit their timeshare for monetary and financial considerations.  One can be satisfied with a timeshare and still want or need to exit the timeshare agreement and desire to use during the exit or termination negotiations.  Communication with the timeshare property or use of the timeshare property should in no way hinder negotiations.  It is analogous to selling a home while continuing to live in it. Living in a home in no way hinders the ability to sell.

I find Respondent misrepresented it was working on an exit strategy since by the end of twenty-four (24) months there was no progress and Claimants remained owners.  It is undisputed that they continued to pay the mortgage and maintenance fees.  Claimants relied on Respondent's representations and did not use or communicate with the timeshare and thereby were denied their ownership interest.

I find Respondent misrepresented it had an exit strategy and would facilitate the Claimants exit of their timeshare within twenty-four (24) months or their money back.  At the end of twenty-four (24) months, there was no exit strategy and Respondent refused to honor its 100 percent money back guarantee.

**Breach of Fiduciary Duty**

Claimants presented a Special Power of Attorney signed by them on January 15, 2018 giving Respondent the powers necessary to negotiate and execute an exit strategy for Claimants' interest in its timeshare property, Westgate.  The Special Power of Attorney expired in twenty-four (24) months.  The Special Power of Attorney also specifically stated the Claimants' funds would be held in a separate account.  Claimants received no evidence or notice of funds being placed in a separate account and received no accounting of how the funds were used over the twenty-four months.

I find Respondent breached its fiduciary duty in not maintaining a separate account for Claimants, for not providing an accounting and for not providing the promised exit strategy.

**Washington State Consumer Protection Act**

The Claimants asserted a claim under the Washington State Consumer Protection Act.  To prevail under such a claim, the Claimants must establish that a business (1) committed an unfair or deceptive act, (2) that occurred in trade or commerce, (3) that caused (4) injury to the plaintiff, and (5) that affects the public interest.  The Agreement states that in all respects the laws of the State of Washington shall govern.

I find Respondent violated the Washington State Consumer Protection Act by refusing to refund a money back guarantee when requested and did so not only to Claimants but to other consumers as well. Claimants are awarded treble damages to the statutory maximum of $25,000.00

Case Number: 01-21-0003-66692

**Attorneys' Fees**

The Agreement states, "The prevailing party shall be entitled to an award of costs, expenses and reasonable attorney's fees, and judgement upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof." Claimants' attorneys presented documentary evidence of the work done in this matter and I award the Claimants reasonable attorneys' fees in the amount of $6,688.00.

Award

1. Claimants are awarded $9,974.63 (money paid Respondent)
2. Claimants are awarded $13,612.83 (money paid for mortgage and maintenance fees to Westgate)
3. Claimants are awarded $25,000.00 treble damages under the Washington State Consumer Protection Act
4. Claimants are awarded $6,688.00 in attorneys' fees.

The administrative fees of the American Arbitration Association (AAA) totaling $2,495.00 shall be borne as incurred, and the compensation of the arbitrator totaling $2,500.00 shall be borne as incurred.

The above sums are to be paid on or before thirty (30) days from the date of this Award.

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

| 7 February, 2022 | s/Marcia Adelson |
|---|---|
| Date | Marcia Adelson, Arbitrator |

Case Number: 01-21-0003-66693