EXHIBIT 1

EXHIBIT 1

THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANNA PATRICK, DOUGLAS MORRILL, ROSEANNE MORRILL, LEISA GARRETT, ROBERT NIXON, SAMANTHA NIXON, DAVID BOTTONFIELD, ROSEMARIE BOTTONFIELD, TASHA RYAN, ROGELIO VARGAS, MARILYN DEWEY, PETER ROLLINS, RACHAEL ROLLINS, KATRINA BENNY, SARA ERICKSON, GREG LARSON, and JAMES KING, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

DAVID L. RAMSEY, III, individually; HAPPY HOUR MEDIA GROUP, LLC, a Washington limited liability company; THE LAMPO GROUP, LLC, a Tennessee limited liability company,

    Defendants.

Case No. 2:23-cv-00630-JLR

**PLAINTIFFS' AMENDED COMPLAINT FOR DAMAGES WITH CLASS ACTION ALLEGATIONS**

**JURY OF TWELVE REQUESTED**

COME NOW PLAINTIFFS Anna Patrick, Douglas Morrill, Roseanne Morrill, Leisa Garrett, Robert Nixon, Samantha Nixon, David Bottonfield, Rosemarie Bottonfield, Tasha Ryan, Rogelio Vargas, Marilyn Dewey, Peter Rollins, Rachael Rollins, Katrina Benny, Sara

AMENDED COMPLAINT FOR DAMAGES - 1

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

Erickson, Greg Larson, and James King, individually and on behalf of all others similarly situated, by and through their attorneys Gregory W. Albert of Albert Law PLLC, and Roger S. Davidheiser of Friedman | Rubin PLLP, and bring this class-action lawsuit against the above captioned Defendants for violations of the Washington Consumer Protection Act, negligent misrepresentation, unjust enrichment, conversion, and conspiracy, associated with unfair and deceptive conduct in the marketing, sale, and delivery of "timeshare-exit services" offered to consumers across the United States and Canada. In conjunction with or in the alternative to those, Plaintiffs bring a standalone claim for constructive trust. Plaintiffs allege the following on information and belief:

## I.     OVERVIEW

1. Founded in 2012, Reed Hein & Associates (d/b/a "Timeshare Exit Team"), located in Bellevue, Washington, devised a scheme to convince thousands of unsuspecting working-class and middle-class consumers to pay more than two-hundred million dollars in exchange for a hollow promise to terminate those consumers' timeshare contracts.

2. The Defendants, David L. Ramsey III ("Dave Ramsey") and his Lampo Group, were paid tens of millions of dollars over the course of more than five years by Reid Hein's media group, Defendant Happy Hour Media Group, to convince Ramsey's loyal followers to buy into this scheme through the use of deceptive, incomplete, and false information that Defendants knew or should have known was false and deceptive in violation of Washington State's Consumer Protection Act and the common law tort of negligent misrepresentation. Defendants have been unjustly enriched by their participation in this scheme and are subject to disgorgement of their profits.

3. Between December 2012 and September 2021, Reed Hein collected an ever-increasing

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

amount of fees from unsuspecting customers in exchange for a promise to "exit" them from their time share obligations. Reed Hein charged customers between $4,000 and up to $72,000 for its illusory services. Reed Hein promised the customers a 100% refund if they were not relieved of their timeshare obligations.

4.  Despite those promises, Reed Hein did not actually terminate customers' timeshare obligations. Instead, it used false statements and delay tactics to stave off the customers' realization that they were being defrauded. It defined "exit" so broadly that it included the timeshare company foreclosing on customers, the customers negotiating themselves out of timeshares, and a variety of pseudo-legal processes designed to deceive customers into thinking they were legally released from their obligations when they were not. When customers finally discovered the schemes and demanded their refunds, Reed Hein fabricated excuses not to honor the promises or stopped returning their calls.

5.  To generate customers, Reed Hein employed the Kirkland, Washington marketing firm "Happy Hour Media Group," nationally-syndicated radio host Dave Ramsey, and Ramsey's wholly-owned company, The Lampo Group.  From 2015 to 2021, Reed Hein paid Dave Ramsey and The Lampo Group to make false claims and instruct Ramsey's faithful listeners to hire Reed Hein. By 2021, Ramsey's promotions drove Reed Hein's revenue from less than one-million dollars per year to more than $40 million per year. For his efforts, Reed Hein is believed to have paid Ramsey $450,000 per month, totaling greater than $30 million.

6.  Ramsey knew or should have known that Reed Hein used fraud and unfair and deceptive trade practices when he began participating in the scheme. Ramsey hosts a nationally-syndicated radio show and podcast in which he gives financial advice that

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

he claims to be based upon the Bible. He also conducts a financial training program called "Financial Peace University." He has developed a faithful following of millions of listeners and other acolytes who look to him for his financial knowledge. However, Reed Hein made many claims that any competent financial advisor with Dave Ramsey's knowledge and skill would know to be false, and it engaged in many activities Dave Ramsey would have known to be illegal.

7.   Despite that, Ramsey accepted payment from Reed Hein to make false statements to his listeners. Throughout his promotions, Ramsey assured his listeners that he had vetted Reed Hein and promised them that the company was the only trustworthy method to get out of their timeshare contracts. He called Reed Hein "legal specialists" and claimed the company had a proprietary process to achieve its "exits." From 2015-2021, he made false statements about Reed Hein's knowledge, skill, and ability to get customers out of timeshare obligations. He did so on his radio show, on his podcast, and in his online programs, seminars, and lectures.

8.   Ramsey continued to promote the scheme in exchange for money despite ample notice that Reed Hein was defrauding his followers. Starting in 2016, Ramsey began receiving thousands of letters from listeners complaining about their experiences with Reed Hein. In 2017, the timeshare companies began launching successful suits against Reed Hein for its practices. In 2018, the Better Business Bureau issued an alert after receiving greater than 300 complaints about Reed Hein, which held a "C-" rating. Ramsey continued to promote the scheme after May 2019, when the United States Court for the Middle District of Florida explicitly found Reed Hein's practices unfair and deceptive as a matter of law. He continued even as the Attorney General for Washington State sued Reed Hein for violations of the Consumer Protection Act. He promoted it even as

AMENDED COMPLAINT FOR DAMAGES - 4

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

his listeners filed lawsuits against Reed Hein. He promoted it even as fourteen separate arbitrators issued awards to Reed Hein customers because of its violations.

9.  By March of 2021, Reed Hein and Happy Hour Media Group stopped paying Ramsey for his promotions.

10. Only when the money ran out, Ramsey stopped promoting Reed Hein.

11. Instead of acknowledging the deception, Ramsey recorded a nine-minute radio segment in which he lashed out at anyone he felt to be responsible for Reed Hein's woes. He blamed the timeshare companies. He blamed the Washington State Attorney General. And he dared Plaintiffs' attorneys to sue him, saying "bring it on" because he operates out of a "$300 million building" that is "bought and paid for." Ramsey admitted the only reason he stopped promoting the company was because it stopped paying for his promotions.

12. Reed Hein tracked the effects of Ramsey's promotion on their business, including which customers were referred through Ramsey's promotions. During the period Dave Ramsey was promoting Reed Hein's scheme, customers referred to Reed Hein by Defendants paid Reed Hein in excess of $70 million in fees for timeshare "exit" services.

13. Ramsey never returned any of the tens of millions of dollars Reed Hein and Happy Hour Media Group paid him from his own listeners' hard-earned money. Instead, Ramsey has chosen to profit from his listeners' money.

14. The Plaintiffs are individuals, married couples, and families who listened to Dave Ramsey, took his courses, and trusted his advice. They sent their money to Reed Hein and Reed Hein sent a portion back to Ramsey. The Plaintiffs individually and on behalf of all those similarly situated, now seek to recover their losses from the tens of millions

AMENDED COMPLAINT FOR DAMAGES - 5

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

of dollars Dave Ramsey unjustly took from his own listeners.

#

## II.    PARTIES

15.    The parties to this case include seventeen named plaintiffs, all of whom pursue relief on their own behalf and on behalf of all other similarly situated individuals. The defendants include David L. Ramsey, III, Happy Hour Media Group, LLC, and The Lampo Group, LLC.

**a.  Plaintiffs**

**Anna Patrick**

16.    Anna Patrick lives in Everett, Washington. Ms. Patrick has three adult children and four grandchildren. Ms. Patrick is retired. She had a thirty-two year career with the Post Office. She is also a veteran and served as a clerk typist during the Vietnam War. Ms. Patrick purchased a timeshare in Florida in 2004. Ms. Patrick paid $10,000 for her timeshare. Orange Lake managed Ms. Patrick's timeshare. Ms. Patrick also owned other timeshares.

17.    Ms. Patrick listened to the Dave Ramsey Show on a local Christian radio station. She owns Dave Ramsey's books. She remembers Dave Ramsey telling listeners that if they really wanted to get out of their timeshare, they should go to Timeshare Exit Team. Ms. Patrick, afraid her children would inherit her timeshare when she died, wanted to get out of her timeshare. Ms. Patrick did not know Dave Ramsey was paid for his endorsement of Timeshare Exit Team.

18.    Relying on Dave Ramsey's endorsement, Ms. Patrick called Timeshare Exit Team. Ms. Patrick paid the company $8569.95 for timeshare exit services. Timeshare Exit Team did not deliver the promised services.

AMABLE COMPLAINT FOR DAMAGES - 6

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

19. Ms. Patrick was so frustrated with Reed Hein's illusory services, she drove to the company's Kirkland office twice. The first time, she learned no one had been in the office for months. The second time, it appeared Reed Hein had shut down the office. Ms. Patrick still owns her timeshare. She is still seeking a timeshare exit.

**Douglas and Roseanne Morrill**

20. Douglas and Roseanne Morrill are a retired couple living in Ocean Shores, Washington. Douglas earned his pharmacology degree in 1977 and started a small pharmacy in 1981 in downtown Ocean Shores. He and Roseanne expanded the pharmacy to include a 12,000-foot retail store. Roseanne became the buyer for the store and their son eventually became the manager. The couple operated the pharmacy and retail store for forty years. As they approached retirement, they made plans to travel around the world. They purchased Diamond Resorts timeshare "points" in order to facilitate their travels, but they soon learned Diamond had not been forthright about what they had purchased.

21. Roseanne frequently listened to the Dave Ramsey show and trusted his advice. She remembers Ramsey talking about what a "rip-off" timeshares were. She remembers him advising listeners to go to Timeshare Exit Team in Washington State for relief. She remembers him expressing that Timeshare Exit Team had the proper method for releasing people from their timeshares. She remembers many episodes in which he told listeners to go to Timeshare Exit Team in Kirkland, Washington. Her takeaway from those episodes was that it was Ramsey's personal recommendation, not a paid advertisement.

22. She and Douglas contacted Timeshare Exit Team based on that advice. On May 4, 2020 they executed a contract with Timeshare Exit Team. Under the terms of that contract, Timeshare Exit Team charged them $41,200 for its illusory services. Based on what

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

Ramsey said, the Morrills understood Timeshare Exit Team was going to negotiate with Diamond or use the proprietary process Dave Ramsey and Timeshare Exit Team advertised. However, once they executed a contract with Timeshare Exit Team, the company revealed that their $41,200 association with Timeshare Exit Team would make it *harder* to get out of their timeshare contract. The company advised them that they must keep their relationship with Timeshare Exit Team a secret from the Diamond if they want to get out of their timeshare contract. Instead of providing any services, Timeshare Exit Team suggested they should stop paying the timeshare company to give themselves bargaining leverage. Then it gave him a boilerplate letter to initiate his own negotiations with the timeshare company. That is all it did for the Morrills' money.

23.  Douglas followed Timeshare Exit Team's advice by withholding payment and sending the letter. Rather than begin negotiations, Diamond responded by putting the Morrills into collections. When the Morrills contacted Timeshare Exit Team, it stopped returning his calls. Eventually Diamond reported the Morrills to credit bureaus, which has had a devastating effect on their credit.

24.  Douglass and Roseanne Morrill's experience is typical of the class members.

**Leisa Garrett**

25.  Leisa Garrett lives in Yakima, Washington. She is a certified physicians' assistant. Ms. Garrett has three adult children. Ms. Garrett and her then husband purchased a Florida timeshare from Westgate when their children were young.

26.  Ms. Garrett trusted Dave Ramsey. She has made numerous financial decisions based on his advice. She purchased multiple books authored and sold by Dave Ramsey and has taken financial courses offered by Mr. Ramsey. Ms. Garrett attended a Dave Ramsey "Super Series" event at a church in Western Washington. Ms. Garrett has also

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

purchased products or programs sold by Dave Ramsey for her children. Ms. Garrett trusted Mr. Ramsey's advice because of his personal stories about financial struggles and financial success.

27.   While listening to a Dave Ramsey podcast or reading a Dave Ramsey newsletter, Ms. Garrett learned that Mr. Ramsey advised listeners and readers to get out of their timeshares. In the same message, Ramsey recommended listeners like Ms. Garrett use Timeshare Exit Team to do that. Ms. Garrett learned about the company and its alleged services through Dave Ramsey's endorsement of the company.

28.   Ms. Garrett did not know that Mr. Ramsey was being paid by Reed Hein or that his endorsement of Reed Hein's services was an advertisement. In fact, Ms. Garrett did not know that Mr. Ramsey was paid for *any* of the endorsements on his website and in his programs.

29.   In December, 2019, Ms. Garrett contacted Reed Hein on the advice of Dave Ramsey and because of Mr. Ramsey's endorsement. She paid Reed Hein $4797 for timeshare exit services.

30.   Reed Hein never delivered the promised timeshare exit. Ms. Garrett still owns the timeshare. Leisa Garrett's experience is typical of the class members.

**Robert and Samantha Nixon**

31.   Robert and Samantha Nixon were residents of Spokane, Washington when they signed a contract with Reed Hein. Mr. Nixon is a former combat medic and works as a firefighter. Mrs. Nixon works as a speech and language pathologist at a public school. In their free time, the Nixons work for charities that help disabled and marginalized children.

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

32. The Nixons were long time followers of Dave Ramsey. Mrs. Nixon bought Dave Ramsey's financial help book and believed that Dave Ramsey's advice could help their family financially. Mr. Nixon was a long-time Dave Ramsey listener.

33. Mr. Nixon heard Dave Ramsey's endorsement of Reed Hein regularly on the radio. Mr. Nixon heard Dave Ramsey tell his listeners that Reed Hein was the only timeshare exit company that provided a money-back guarantee, and that Reed Hein was a company that Dave Ramsey trusted. Mr. Nixon's impression from Dave Ramsey's endorsement was that Reed Hein would terminate his timeshare contract or would provide him with a full refund of his fee.

34. In December 2017, relying on Dave Ramsey's endorsement, the Nixons contacted Reed Hein. The Nixons executed a contract with Reed Hein for $7838.80. Reed Hein told the Nixons it would get them out of their timeshare contract within three years or provide the Nixons with a full refund. Over the next three years, the Nixons called Reed Hein regularly looking for updates. Reed Hein did not respond to the Nixons' requests for an update. The Nixons requested a refund three years after signing their contract. Reed Hein denied their request. Reed Hein informed the Nixons that Reed Hein could not provide the Nixons with a refund because it had already spent the Nixons' money on attorneys.

35. Reed Hein never terminated the Nixons' timeshare contract. Reed Hein never provided the Nixons with a refund. Robert and Samantha Nixon's experience is typical of the class members.

**David and Rosemarie Bottonfield**

36. David and Rosemarie Bottonfield were residents of Silverdale, Washington when they signed a contract with Reed Hein. Mr. Bottonfield is a retired Navy veteran. Mrs.

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

Bottonfield is retired and previously worked as a medical assistant. Until recently, the Bottonfields had a timeshare with Wyndham Resorts.

37. Rosemarie Bottonfield was an avid Dave Ramsey follower. Mrs. Bottonfield regularly listened to Dave Ramsey's radio talk show and had purchased financial help books from Dave Ramsey. The Bottonfields heard Dave Ramsey endorse Reed Hein many times on Dave Ramsey's talk radio show. The Bottonfields heard Dave Ramsey tell his listeners that Reed Hein was the only timeshare exit company that could help them get out of their timeshare contract. The Bottonfields' impressions were that Dave Ramsey had vetted Reed Hein and that Reed Hein was a reputable company.

38. Relying on Dave Ramsey's endorsement, the Bottonfields executed a contract with Timeshare Exit Team for $8,795 in August, 2019. As soon as the Bottonfields signed their contract, Reed Hein instructed the Bottonfields to stop making payments to their timeshare. The Bottonfields followed Reed Hein's advice and stopped making payments. As a result, Wyndham Resorts foreclosed upon the Bottonfields' timeshare. After the Bottonfields learned of the foreclosure, the Bottonfields contacted Reed Hein for advice. The Bottonfields called Reed Hein numerous times and did not receive a response, before eventually referring them to a law firm. The firm informed the Bottonfields that there was nothing it could do and terminated its relationship with the Bottonfields.

**Tasha Ryan**

39. Tasha Ryan resides in Deer Park, Washington. Ms. Ryan works as a surgical technologist and provides surgical care in Coeur d'Alene, Idaho. In her free time, she spends her time in and around her garden tending to her vegetables and raising chicken and geese. Until recently, Ms. Ryan had a timeshare contract with Wyndham resorts.

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

40.   Ms. Ryan was an avid Dave Ramsey follower. She attended a Dave Ramsey financial literacy course at her church, listened to his podcasts, and listened to his financial advice on the radio. Ms. Ryan first heard about Timeshare Exit Team when attending one of his financial programs. Afterward, she heard Dave Ramsey endorse Timeshare Exit Team many times. She heard him assure his listeners that he trusted Timeshare Exit Team and that he had thoroughly vetted the company. Relying on Dave Ramsey's endorsement, Ms. Ryan contacted Timeshare Exit Team.

41.   In August 2019, Ms. Ryan executed a contract with Reed Hein greater-than $5000 for its alleged services. After doing so, Reed Hein told Ms. Ryan to negotiate her own exit from her timeshare contract. Ms. Ryan contacted Wyndham, who agreed to let her out through an exit program that she could have used without Reed Hein. Ryan ultimately paid Wyndham greater-than $5,000 out of pocket in order to terminate her timeshare contract with no contribution from Timeshare Exit Team.

42.   Ms. Ryan's experience is typical of the class members.

**Rogelio Vargas**

43.   Rogelio Vargas was a resident of Menifee, California when he signed a contract with Reed Hein. Mr. Vargas is a police sergeant with the Murietta Police Department. Until recently, Mr. Vargas had a timeshare with Westin Resorts.

44.   Mr. Vargas is a long-time listener of Dave Ramsey's talk radio show. Mr. Vargas heard Dave Ramsey tell his listeners that Reed Hein was a reputable company that he trusted. Mr. Vargas' impression from Dave Ramsey's endorsement was that Reed Hein could terminate Mr. Vargas' timeshare contract.

45.   In July, 2021, relying on Dave Ramsey's endorsement, Mr. Vargas contacted Reed Hein. Mr. Vargas executed a contract with Reed Hein for $5495. Reed Hein told Mr.

AMENDED COMPLAINT FOR DAMAGES - 12

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

Vargas it would get him out of his timeshare within 18 months or it would refund his money. After signing with Reed Hein, Mr. Vargas attempted to contact Reed Hein multiple times for an update on his timeshare exit. Reed Hein did not respond to Mr. Vargas. Mr. Vargas then contacted Westin Resorts, who instructed Mr. Vargas how to terminate his contract.

46.   Mr. Vargas terminated his timeshare contract without the help of Reed Hein. Mr. Vargas never received a refund from Reed Hein. Mr. Vargas' experience is typical of class members.

**Marilyn Dewey**

47.   Marilyn Dewey lives in Mt. Vernon, Washington. She and her husband are long-haul truck drivers who have spent many hours listening to Dave Ramsey on the radio while driving. They trusted his advice. In 2016, representatives of timeshare company "Worldmark by Wyndham" approached Marilyn while she was visiting Las Vegas. She purchased timeshare "points" from them so that she could send her daughter to various U.S. cities to compete in ice-skating championships.

48.   Marilyn heard Dave Ramsey repeatedly tell listeners that timeshares were a bad investment. She remembers him urging listeners to go to Timeshare Exit Team in Washington State to get out of their timeshare contracts. She remembers Ramsey saying Timeshare Exit Team was the only company he trusted to help her with that. She remembers him saying that it would cost a lot of money, but not as much as the future costs of keeping her timeshare. Finally, she remembers him saying he would not send people to Timeshare Exit Team unless he had thoroughly reviewed the company and became confident that it was trustworthy. She did not know Ramsey was being paid to promote Timeshare Exit Team. She thought the advice sounded like a genuine

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

attempt to help listeners.

49. Based upon that advice, Ms. Dewey signed up with Timeshare Exit Team on April 23, 2019. Timeshare Exit Team charged her $7,354.70 for its illusory services. It was her understanding that Timeshare Exit Team would negotiate on her behalf or use the proprietary process Ramsey advertised. However, once Timeshare Exit Team collected her money, it revealed that she could not tell the timeshare company about her relationship with Timeshare Exit Team because the timeshare company would refuse to work with her. Instead, it gave her a boilerplate letter to initiate her own negotiations with the timeshare company.

50. Ms. Dewey's experience is typical of the class members.

**Peter and Rachael Rollins**

51. Peter and Rachael Rollins were residents of Graham, Washington when they signed a contract with Reed Hein. Mr. Rollins is a retired Air Force veteran. Mrs. Rollins works in logistics. Until recently, the Rollins had a timeshare with Wyndham Resorts.

52. The Rollins learned about Dave Ramsey in 2015 when Mrs. Rollins enrolled in Dave Ramsey's called "Financial Peace University," a faith-based investment course. The Rollins discovered Reed Hein on Dave Ramsey's website, where Dave Ramsey endorsed Reed Hein. Dave Ramsey's endorsement stated that Reed Hein was a trustworthy company that could get the Rollins out of their timeshare. Relying on Dave Ramsey's endorsement, the Rollins contacted Reed Hein.

53. In August 2019, the Rollins executed a contract with Reed Hein for $6,145 based on Dave Ramsey's endorsement. Reed Hein did not contact the Rollins after that. The Rollins called and messaged Reed Hein over a dozen times. The Rollins contacted Wyndham and Wyndham terminated their contract. Reed Hein did nothing to assist

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

the Rollins with their timeshare exit.

**Katrina Benny**

54. Katrina Benny was a resident of Lincoln, California when she signed a contract with Reed Hein. Ms. Benny is a retired civil servant for the state of California.

55. Ms. Benny was a long-time listener of Dave Ramsey and regularly listened to Dave Ramsey's talk radio show. Ms. Benny paid to attend Dave Ramsey's financial literacy course, "Financial Peace University." Ms. Benny heard Dave Ramsey endorse Reed Hein through his talk radio show and through Financial Peace University. Ms. Benny heard Dave Ramsey tell his listeners that Reed Hein was a reputable company that he trusted.

56. In May 2021, relying on Dave Ramsey's endorsement, Ms. Benny executed a contract with Reed Hein for $4497. Reed Hein told Ms. Benny that Reed Hein would terminate her timeshare contract within 18 months or she would be eligible for a refund. Months after signing, Ms. Benny attempted to contact Reed Hein multiple times. Ms. Benny never received a response from Reed Hein.

57. Reed Hein never terminated Ms. Benny's timeshare contract and never provided Ms. Benny with a refund. Katrina Benny's experience is typical of the class members.

**Sara Erickson**

58. Sara Erickson lives in Kirkland, Washington. She is a clinical researcher for a biotech company and single mother of three children. She listened to Dave Ramsey on the radio and trusted his financial advice. She remembers Ramsey saying that timeshare contracts are a scam and that listeners should exit those contracts by hiring Timeshare Exit Team in Washington. She remembers him praising Timeshare Exit Team. She remembers him depicting Timeshare Exit Team as the "good guys" in an otherwise

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

predatory market. She remembers Ramsey depicting his recommendation as though he had "no skin in the game," and that it was a genuine attempt to help listeners.

59. On May 8, 2020, Ms. Erickson executed an agreement with Timeshare Exit Team for $5,102.20, substantially based on Ramsey's advice. She understood this payment to be a one-time fee that would cover all the costs of the timeshare "exit." Once she executed the contract Timeshare Exit Team provided no services. Instead, it simply gave her tips for negotiating herself out of the contract. Eventually it stopped returning her calls. To exit her timeshare, Ms. Erickson needed to pay an additional fee to the timeshare developer, a few which Timeshare Exit Team refused to assume. Ms. Erickson's experience is typical of the class members.

**Greg Larson**

60. Greg Larson lives in Port Orchard, Washington. Mr. Larson and his wife Charlotte have three children, the youngest of whom is in college. Mr. Larson works at the Puget Sound Naval Shipyard in Bremerton. Mr. Larson purchased a Florida timeshare from VRI in 2000 during an anniversary vacation. The Larsons were offered a free Caribbean cruise in exchange for attending the timeshare sales presentation. Mr. Larson purchased the "bank repo" timeshare for less than $5000. Mr. Larson spent hours every day commuting to Seattle for work in demolitions and hazardous materials abatement.

61. During the long drive from Port Orchard to Seattle, Mr. Larson regularly listened to the Dave Ramsey Show. Mr. Larson trusted Dave Ramsey's financial advice. Mr. Larson regularly heard Dave Ramsey talk about timeshares and Timeshare Exit Team, including Dave Ramsey's endorsement thereof. Mr. Larson heard the endorsement hundreds of times because it was played so often during the Dave Ramsey Show. Mr.

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

Larson remembers Mr. Ramsey regularly telling people who called his show to contact Timeshare Exit Team. Mr. Larson did not know Mr. Ramsey was paid for his endorsement of Reed Hein.

62. Based on those endorsements, Mr. Larsons looked for more information about Timeshare Exit Team on Dave Ramsey's website, where Dave Ramsey also endorsed Reed Hein's services. Trusting Dave Ramsey's endorsement, Mr. Larson contacted Reed Hein. The Larsons paid the company $4797 for timeshare exit services. The Larsons waited months for Timeshare Exit Team to take action, but the company provided no services. After Timeshare Exit Team stopped returning their calls, they paid the timeshare developer more than $1800 to "take back" the inventory.

**James King**

63. James King was a resident of Centralia, Washington when he signed a contract with Reed Hein. Mr. King is a retired dentist. Mr. King is still obligated to his timeshare with Sunset World.

64. James King was a long-time listener of Dave Ramsey and regularly listened to Dave Ramsey's radio talk show. Mr. King heard Dave Ramsey endorse Reed Hein many times on Dave Ramsey's talk show. Mr. King heard Dave Ramsey tell his listeners that Reed Hein was a reputable company that he trusted.

65. In May 2020, relying on Dave Ramsey's endorsement, Mr. King executed a contract with Reed Hein for $4797. Reed Hein told James King that it could get him out of his timeshare within six months. Six months after signing his contract, Mr. King tried to contact Reed Hein multiple times, but did not receive a response. After making numerous phone calls to Reed Hein, Reed Hein responded to Mr. King and referred him to a law firm. The law firm instructed Mr. King to stop making payments on his

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

timeshare and then terminated its relationship with Mr. King.

66. Reed Hein never terminated Mr. King's timeshare contract and never provided Mr. King with a refund. James King's experience is typical of the class members.

**b.  Defendants**

67. Happy Hour Media Group, LLC is a limited liability company registered in the State of Washington. Happy Hour Media Group's principal office is in Kirkland, Washington.

68. The Lampo Group, LLC is a limited liability company registered in the State of Tennessee. The Lampo Group's principal office address is in Franklin, Tennessee.

69. Dave Ramsey is an individual who on information and belief resides in College Grove, Tennessee.

70. Dave Ramsey is the owner, founder, and chief executive officer of The Lampo Group, LLC.

71. Dave Ramsey is The Lampo Group's only manager. Dave Ramsey is The Lampo Group's only member.

72. On information and belief, at all times relevant to the allegations in this Complaint, Defendant Ramsey was acting as the agent and/or officer or manager of Defendant, Lampo Group.

### III.    JURISDICTION & VENUE

73. This Court has subject matter over this matter pursuant to 28 U.S.C. § 1332(d)(2). There exists a minimal diversity of citizenship and at least one member of the Plaintiff Class is a citizen of a different state from at least one Defendant. The aggregate amount in controversy exceeds $5,000,000, excluding interest and costs.

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

74. This Court has personal jurisdiction over Washington-based Happy Hour Media because Plaintiffs assert claims that arise from business that Happy Hour Media Group transacted within the State of Washington and from tortious acts that Happy Hour Media Group committed within the State of Washington.

75. This Court's exercise of personal jurisdiction over Happy Hour Media Group accords with traditional notions of fair play and substantial justice.

76. This Court has personal jurisdiction over The Lampo Group because Plaintiffs assert claims that arise from business that The Lampo Group transacted within the State of Washington and from tortious acts that The Lampo Group committed within the State of Washington, and because payments were made to The Lampo Group from within the State of Washington.

77. This Court's exercise of personal jurisdiction over The Lampo Group accords with traditional notions of fair play and substantial justice.

78. This Court has personal jurisdiction over Dave Ramsey because Plaintiffs assert claims that arise from business that Ramsey transacted within the State of Washington and from tortious acts that Ramsey committed within the State of Washington, and because payments were made to Ramsey from within the State of Washington.

79. This Court's exercise of personal jurisdiction over Dave Ramsey accords with traditional notions of fair play and substantial justice.

80. Venue is proper with this Court because a substantial part of the events giving rise to Plaintiffs' claims occurred within the Western District of Washington.

## IV.    FACTS

### a.  Reed Hein's Scheme

81. Reed Hein's fraudulent scheme involved charging an upfront fee in exchange for a

AMENDED COMPLAINT FOR DAMAGES - 19

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

"money back" guarantee to extract the customer from obligations they may have under a time share contract. The amount Reed Hein charged its customers was not based on work it expected to perform, but rather based on a percentage of what Reid Hein would convince a customer they owed to the time share company.  Reid Hein then extracted the money from their customers by appealing to, and then exploiting, a customer's desperation to get out of his or her timeshare obligation—a desperation Reed Hein intentionally stoked with false information.

**b. Fraudulent Inducement**

82. Reed Hein's website falsely claimed that timeshare obligations were enforceable against a consumer in perpetuity, and that children inherit a parent's perpetual timeshare obligations upon the parent's death. Both of those are false statements.

83. The website also discouraged potential customers from hiring real lawyers who could actually help the customers in favor of Reed Hein's "proprietary process," which did not exist.

84. Reed Hein's sales scripts were replete with falsehoods and statements to discourage customers from getting effective help. Sales scripts ended with the objectively false claim that Reed Hein was a consumer's "only hope."

85. Once Reed Hein had the information of a potential client, it set up meetings with "client advisors." The client advisors were commissioned salespeople whose job was to "advise" the customers to hire Reed Hein. During advice meetings, client advisors falsely told customers their timeshare obligations were "perpetual" and that their children would inherit their obligations when they died. Reed Hein then provided customers with a graph showing them that the tens of thousands of dollars Reed Hein demands is a less expensive option than paying the timeshare in perpetuity.

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

### c.  Unfair and Deceptive Practices

86.  Although Reed Hein claimed to be its customers' fiduciary, Reed Hein did not put their money in trust or escrow, but rather immediately treated it as earned revenue and spent it.

87.  In exchange for their money, the only service Reed Hein provided in-house was to tell each customer to stop paying his or her timeshare obligation in the hope that doing so would induce a foreclosure.

88.  Reid Hein never informed customers they could accomplish so-called exits directly through the timeshare company without incurring charges, nor were customers informed that choosing that path would negatively affect their credit opportunities in the future.

89.  If the timeshare company foreclosed on the customer for non-payment, Reed Hein claimed that it fulfilled its contract and refused to refund the customer's money.

90.  If the timeshare company did not foreclose, then Reed Hein "assigned" customers to lawyers who did not represent the customers, but rather represented Reed Hein.

91.  The lawyers' job was to extinguish Reed Hein's obligation to pay refunds by pretending to represent the customers. To do that, lawyers created a variety of pseudo-legal "processes" designed to deceive the customers into thinking Reed Hein achieved results.

92.  For example, the attorneys hired by Reid Hein executed nonsensical and meaningless "quitclaim deeds" and "deed-to-third parties" on behalf of Reed Hein, which they recorded with county registrars without the timeshare companies' agreements or approvals. Despite these "deeds" having no legal significance, the attorneys sent the fake deeds to customers with letters congratulating the customers for exiting their

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

timeshare obligations. When the timeshare companies sent the Reed Hein customers' bills to the attorneys, the attorneys would discard the bills to protect Reed Hein from exposure without notifying the Reed Hein customer affected. When the timeshare companies sent bills directly to Reed Hein customers, the attorneys and Reed Hein claimed the timeshare developers were mistaken.

93. In November 2015, the Authorized Practice Committee of the North Carolina Bar, the government body empowered to investigate the unauthorized practice of law in the state, found probable cause to conclude that Reed Hein's scheme and operations constituted the unauthorized practice of law. The Committee warned Reed Hein to cease those activities which violated state law, including holding itself out as able to provide legal services. Meetings of the Authorized Practice Committee are public and North Carolina Bar documents are public records.

94. Once the timeshare companies discovered Reid Hein's methods, they took action against Reed Hein and its customers. In 2017, six major timeshare developers sued Reed Hein and began deposing its customers *en masse*. They demanded the personal information customers provided to Reed Hein and its attorneys, which the customers understood to be privileged attorney-client communications. They also began filing lawsuits against customers, but served only Reed Hein. Finally, they stopped foreclosing on Reed Hein customers and refused to negotiate with them in any way. Instead, the developers sent ever-escalating bills directly to the customers. Finally, the timeshare companies refused to allow Reed Hein customers to use their in-house exit programs. Reed Hein did not tell customers that becoming a Reed Hein customer made it *harder* to get out of a timeshare, exposed them to discovery of sensitive information, and exposed them to lawsuits. Reed Hein did not tell the customers who had been sued.

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

1
2

Nor did Reed Hein tell the customers it had produced all their personal information without a fight.

3
4

95. Reed Hein's collapsing scheme created a bottleneck that resulted in a backlog of *thousands of customers* Reed Hein could not service.

5
6
7

96. As time went on Reed Hein's problems mounted, instead of telling customers the truth, Reed Hein's instinct was to lie and coverup the problems while continuing to take more money from new customers it knew it could not assist.

8
9
10

97. When thousands of customers complained to Reed Hein that they had been waiting years for results, Reed Hein's leadership systematically lied to them about the progress it was making on their cases and denied them guaranteed- refunds for contrived reasons that ultimately rendered the guarantees meaningless.

11
12
13

98. As an example of that deceptive conduct, Reed Hein would tell customers that their money back guarantee would be voided simply by asking for their money back, because doing so "stopped the exit process," even though there was no process.

14
15
16

99. In May of 2019, The United States Court for the Middle District of Florida found the practices Reed Hein had historically used were unfair and deceptive as a matter of law. (Westgate Resorts, Ltd. Et al v. Sussman et al, Case No. 6:17-cv-1467-Orl-37DCI).

17
18
19
20
21

100. The Court found the meaningless "quitclaim deeds" and "deed-to-third parties" practices Reed Hein used were "objectively deceptive" and "mislead reasonable [timeshare] owners to believe they are no longer contractually obligated on their timeshares." The misleading and deceptive practices Reed Hein engaged in "prey[ed] upon owners helplessly ensnared by the Sisyphean obligations of their timeshare."

22
23

101. In January of 2020, a Reed Hein customer filed a purported class action against Reed Hein (*Edgin v. Reed Hein & Associates*, King County Superior Court Case No. 20-2-

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

0029401). The allegations in that case involved substantially the same deceptive conduct as alleged in cases brought against Reed Hein since then. The action was remanded to arbitration with the American Arbitration Association.

102. In February of 2020, ~~It~~the Washington State Attorney General sued Reed Hein for violations of the Washington State consumer Protection Act. (*State of Washington v. Reed Hein, et al*., King County Superior Court Case No. 20-2-031414-SEA).

103. The Attorney General alleged that "[v]irtually every aspect of [Reed Hein's] operation is deceptive and/or unfair." Reed Hein, through deceptive advertising and illusory promises, "mislead consumers at every step of the process." The Attorney General and Reed Hein entered into a consent decree on September 28, 2021. Reed Hein agreed to pay only $2.61 million, a fraction of the amount the deceptively and unfairly took from customers.

104. In November of 2020, the American Arbitration Association found that Reed Hein engaged in practices to deceive the public. (In the Matter of the Arbitration, Case Number 01-20-0005-5539, John and Sharon Bailey, Claimants v. Reed Hein d/b/a Timeshare Exit Team, Respondent).

105. In February of 2021, the American Arbitration Association found that Reed Hein fraudulently induced an unconscionable contract. (In the Matter of the Arbitration, Case Number 01-20-0014-1061, Abigail Messmer v. Reed Hein).

106. In February of 2021, Reed Hein customer Amanda Heard filed an arbitration action before the American Arbitration Association in which she alleged that Reed Hein's failure to put fees in trust was an unfair and deceptive practice that violated the Washinton Consumer Protection Act. On October 18, 2021, the arbitrator found that Reed Hein had violated the Washington Consumer Protection Act. (In the Matter of

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

the Arbitration, Case Number 01-21-0002-3001, Amanda Heard v. Reed Hein). In subsequent cases Ray Andes and Pamela Andes v. Reed Hein & Associates, LLC, American Arbitration Association Case No. 01-20-0014-0799; Yolanda Jerido v. Reed Hein & Associates, LLC, American Arbitration Association Case No. 01-21-0004-1416; Douglas Reif v. Reed Hein & Associates, LLC, American Arbitration Association Case No. 01-21-0003-6820; and Debbie Herman and Michael Nelson v. Reed Hein & Associates, LLC, American Arbitration Association Case No. 01-21-0003-6669, the American Arbitration Association found that Reed Hein violated a number of duties by not putting fees into trust.

107. In October of 2021, Reed Hein customers Brian and Kerri Adolph filed a class action lawsuit against Reed Hein in the Western District of Washington. (*Adolph v. Reed Hein et al*, Case No. 2:21-cv-01378-BJR (W.D. Wash. 2021)). The Adolphs alleged Reed Hein made false and misleading statements to induce customers to sign contracts, that Reed Hein's "money-back guarantee" was illusory and rarely if ever honored, and that Reed Hein never possessed the promised proprietary timeshare exit process it claimed to have developed. Final approval of settlement in the *Adolph* case was granted on May 19, 2023. No money changed hands as part of the *Adolph* settlement. As part of the settlement, Reed Hein stipulated to each theory of liability identified in the *Adolph* complaint.

108. Unable to service its customers in any meaningful way, Reed Hein designed yet another scheme to claim it had "exited" customers out of their timeshare obligations. Starting in January 2020, Reed Hein began entering into settlement agreements in the lawsuits. Although the customers were not parties to those lawsuits, Reed Hein claimed that it negotiated deals to "exit" the customers from their timeshare obligation in its *own*

AMENDED COMPLAINT FOR DAMAGES - 25

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

1   *settlement agreements* with the respective timeshare companies. In other words, it

2   claimed to have negotiated its customers' rights along with its own rights without

3   regard to the conflict of interest that created. In arbitration, that scheme was found to

4   be deceptive and a violation of Washington's Consumer Protection Act. Arbitrators

5   found Reed Hein's actions withheld critical information about the lawsuits from

6   customers, including even basic information about lawsuits filed *against those*

7   *customers*, and that those actions deceived and defrauded customers.

8   109.   By 2021, Reed Hein had a backlog of tens of thousands of customers, many of whom

9   were repeatedly denied refunds from Reed Hein during the time that transpired while

10   they were waiting for results. Meanwhile, Reed Hein spent all the customers' money,

11   often on lavish dinners for its officers and employees so there was no way to pay the

12   refunds.

13   110.   When Reed Hein ran out of money to pay Dave Ramsey, the scheme fell apart. Reed

14   Hein was no longer able to generate the new revenue needed to pay staff to field phone

15   calls and stall customers. Reed Hein had already become insolvent and has no way to

16   provide the promised refunds.

### d.   Reed Hein Was Required to Hold Customer Funds in Trust, but Treated Them as Revenue

111.   Reed Hein acted as a debt relief service subject to the Telemarketing Sales Rule, 16 C.F.R. § 310. As a debt relief service, it was unlawful for Reed Hein to collect an upfront fee for services unless it held that fee in a trust account.

112.   Reed Hein acted as a debt adjusting service under RCW 18.28 et seq. As a debt adjusting service, Reed Hein was required to hold customer funds in trust.

113.   Reed Hein acted as a credit services organization under the Washington Credit Services Organizations Act, RCW 19.134 et seq. Reed Hein was required to hold customer funds

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

in trust under Washington law as a credit services organization.

114. Reed Hein held itself out as a fiduciary and had fiduciary duties to its customers. Reed Hein required each customer to sign power of attorney agreements, explicitly notifying the customer that Reed Hein was a fiduciary who would keep their property separate from its own.

   e.  **Reed Hein Promoted Its Fraud Through Happy Hour Media Group and Dave Ramsey**

115. Brandon Reed and Christopher Holcomb founded Happy Hour Media Group, LLC in May 2015. At all times since, Happy Hour Media Group has acted as Reed Hein's in-house marketing department, creating promotional materials and advertising for Reed Hein. Happy Hour Media Group created, promoted, or and paid for all false advertisements described within this complaint.

116. At all times, Reed Hein has made payments to Ramsey and The Lampo Group *via* Happy Hour Media Group.

117. Brandon Reed and Christopher Holcomb either individually took all actions attributed to Happy Hour Media Group within this complaint, or they directly or indirectly instructed subordinate Happy Hour Media Group employees to take all actions attributed to Happy Hour Media Group within this complaint.

118. Reed Hein — acting through Happy Hour Media Group — spent millions of dollars per year on marketing.

119. Happy Hour Media Group drafted advertising and marketing content used by Reed Hein and its endorsers and advertisers, including The Lampo Group and Dave Ramsey. Happy Hour Media Group drafted or reviewed advertising scripts used by The Lampo Group and Dave Ramsey.

120. Happy Hour Media Group created, reviewed, and approved Reed Hein's internet

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

marketing efforts, including advertisements, blog posts, or other content on Reed Hein's website. Happy Hour Media Group reviewed or approved advertising created by The Lampo Group and Dave Ramsey.

121. From the time of Reed Hein's founding, its marketing efforts relied heavily on radio personalities. However, in 2015, Reed Hein, through Happy Hour Media Group, began to rely exclusively on Dave Ramsey.

122. In 2015, Reed Hein and Happy Hour Media Group, each located in Washington, struck a deal with The Lampo Group in which Dave Ramsey agreed to make false statements about Reed Hein to induce his followers to spend money on Reed Hein's illusory services. In return, Reed Hein gave Ramsey a portion of the money Ramsey advised his listeners to spend.

**f. Dave Ramsey Made False Claims about Reed Hein in Exchange for His Followers' Money**

123. Dave Ramsey is more than a radio host. Ramsey markets himself as a financial advisor. Ramsey hosts a radio program on which he provides financial advice to followers. Ramsey also hosts seminars at which he provides followers with financial advice. Finally, Ramsey sells courses at his own "Financial Peace University," which he described as teaching his followers how to "win with money." In all forums, Ramsey described his promotions as financial advice.

124. Ramsey's promotions carry enormous weight with his followers, in part because he overstates the extent to which he vets his endorsees, but also because he claims his financial advice was biblically based. Ramsey's courses are specifically marketed to Christians and protestant churches.

125. In an audio-video recording that The Lampo Group broadcast during the Dave Ramsey Show, Dave Ramsey claims to find it "disturbing" that "some radio hosts will say just

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

about anything about any product or service, for the right price." Ramsey claims to be different. Ramsey tells his followers that he "personally takes the companies that [he] endorses so very seriously." The Lampo Group broadcast the audio-video recording during the time that Ramsey was endorsing Reed Hein.

126. The Lampo Group introduced certain paid advertisements with an audio-video recording of Dave Ramsey, claiming that the Dave Ramsey Show is "unique" because Ramsey "genuinely cares about our listeners," and because Ramsey is "intentional about choosing the best advertisers to recommend." The Lampo Group broadcast the audio-video recording during the time that Ramsey was endorsing Reed Hein.

127. If Dave Ramsey performed the review of Reed Hein that he claims he did, then he knew or should have known as early as 2015 that Reed Hein did not and could not provide the services he claimed it provided. As an initial matter, the services Ramsey claimed Reed Hein provides constitute the unlicensed practice of law in most states. Ramsey repeatedly called Reed Hein "legal experts" who could terminate legal obligations under legal contracts with timeshare companies, but representing clients in the negotiation of legal obligation constitutes the practice of law. While claiming Reed Hein were "legal specialists," Ramsey knew or should have known that none of the founders or principals of Reed Hein had any legal training at all.

128. Ramsey also had access to Reed Hein's website. As stated before, the website explicitly stated that timeshare obligations are enforceable against a customer in perpetuity and that children inherit their parents' timeshare obligations. Ramsey should have known both of those claims to be untrue. The website even discouraged Ramsey's followers from hiring real lawyers who could actually help his followers in favor of hiring Reed Hein, who could not. Also, the website claimed to have a "proprietary process," but

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

Reed Hein clearly had no such process. Any review by Ramsey should have revealed there was no coherent process. On October 18, 2021, an arbitrator found Reed Hein's website was so full of false information that even if Reed Hein had helped the plaintiff 'exit' her timeshare, it still violated the Washington Consumer Protection Act by fraudulently inducing her into a relationship. (In the Matter of the Arbitration between *Amanda Heard v. Timeshare Exit Team d/b/a Heed Hein & Associates*, American Arbitration Case No. 01-21-0002-3001). Ramsey's claims that he thoroughly reviewed the company should have included a review of the website's false claims.

129. Ramsey, a financial adviser, knew or should have known that Reed Hein violated FTC regulations and its fiduciary duties. Ramsey knew Reed Hein charged an upfront fee, that it did not put the fee in escrow, and that it did not charge customers based upon Reed Hein's time and effort, each of which directly contributed to his listeners losing the refunds Dave Ramey promised. Also, Ramsey should have known that Reed Hein claimed to be the customers' "fiduciary." Any competent financial advisor would know that a fiduciary has legal obligations to secure and separate customer money from operational funds until the fiduciary finished performing services. On numerous occasions, arbitrators found Reed Hein's billing practices and failure to secure customer funds in escrow constitutes fiduciary breaches and unfair and deceptive trade practices. Ramsey's claim that he thoroughly reviewed the company should have included a review of those practices.

130. Ramsey should have had access to Reed Hein's customer-service scripts, which contain deliberately false information. Scripts included obviously false claims, nonsensical talking points designed to disregard customer concerns, and verbiage to stall the customers without regard to the nature of their individual cases. Ramsey's claim that

AMENDED COMPLAINT FOR DAMAGES - 30

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

he thoroughly reviewed Reed Hein should have included a review of the statements its employees made to customers.

131. In 2015, Ramsey struck a deal with Reed Hein and Happy Hour Media to generate tens of millions of dollars sending his followers to Reed Hein. From July 2015 through May 2021, Ramsey promoted Reed Hein by making untrue claims to his listeners about Reed Hein's expertise, the services Reed Hein provided, and its capacity to provide them. For his role in deceiving customers for Reed Hein, Reed Hein is believed to have paid Ramsey more than $30 million. Those customers in turn paid Reed Hein in excess of $70 million.

132. A primary avenue for Ramsey's promotion is his radio show, "The Dave Ramsey Show." The Dave Ramsey Show is produced by The Lampo Group, which Dave Ramsey owns and controls. Dave Ramsey also used his online university to promote Reed Hein and gave seminars in churches where he advised parishioners to enroll in Reed Hein's scheme.

133. Reed Hein's revenues grew as a result of Ramsey's promotions. Upon information and belief, by 2017 Reed Hein's annual revenues approached $40 million. In fact, Ramsey claims to be single-handedly responsible for converting Reed Hein from a small local company into a company doing hundreds of millions of dollars in business.

134. Reed Hein's marketing budget also grew. By 2017, Reed Hein was spending approximately $10 million per year on marketing through Happy Hour Media Group.

135. Reed Hein's marketing budget was derived from customer funds, including funds from customers which were held in constructive trust. Reed Hein paid The Lampo Group and Dave Ramsey with customer funds which should have held in trust, but which Reed Hein treated as revenue and spent.

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

136. Ramsey's advice resulted in ongoing and permanent harms to thousands of his working-class listeners—people who he solicits to listen to his show because they need sound financial advice.

**g.   The Lampo Group Promoted Reid Hein's Scheme on the Dave Ramsey Show**

137. The Lampo Group broadcasted Reed Hein's thirty-second and sixty-second advertisements during episodes of the Dave Ramsey Show, including advertisements created with assistance from Happy Hour Media Group. The least sophisticated consumer would not have understood that The Lampo Group had received compensation for broadcasting the advertisements.

138. The Lampo Group broadcasted a Reed Hein advertisement in which Dave Ramsey personally endorsed Reed Hein & Associates. In one such advertisement, Ramsey distinguished between (a) Reed Hein, and (b) "scammers" that "employ illegitimate tactics" that fail to terminate a consumer's contractual obligations to a timeshare developer. "Trust me," Ramsey stated at the conclusion of the video, "it's Timeshare Exit Team." The least sophisticated consumer would *not* have understood that The Lampo Group received compensation for broadcasting the advertisement.

139. The Lampo Group broadcast paid Reed Hein advertisements that are indistinguishable from the Dave Ramsey Show itself. The advertisements are interviews of Brandon Reed, conducted by Dave Ramsey, often in the same studio where the Dave Ramsey Show is video recorded. Other advertisements appear to be spontaneous answers to questions posed by Ramsey followers.

140. During one such interview-advertisement, Brandon Reed distinguished his company from "scams" in the timeshare-exit industry because the scams charge an upfront fee. Reed's upfront fee is different, Ramsey claimed in response, because Reed Hein's

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

fee comes with a guarantee. Reed agreed: "If we can't get them out, we give them their money back. Period." The interview-advertisement ended with the ringing endorsement of Dave Ramsey: "There is only one company we have ever endorsed for timeshare exits — Timeshare Exit Team. The only people we endorse for getting you out of your timeshare, because it works. It works." The least sophisticated consumer would *not* have understood that The Lampo Group received compensation for broadcasting the advertisement.

141. During another such interview-advertisement, Dave Ramsey claimed that Reed Hein had "good success" in "getting people out of their timeshares." Brandon Reed agreed, claiming that Reed Hein had terminated the contractual obligations of almost twenty thousand consumers, none of which is true. At the end of the video, Ramsey told followers that Reed Hein is worthy of their trust. "If you need out, Timeshare Exit Team is the team — the only team — that I trust to help you." The least sophisticated consumer would *not* have understood that The Lampo Group received compensation for broadcasting the advertisement. The least sophisticated consumer would not know that Dave Ramsey knew or should have known that Reed Hein's timeshare exit scheme was a fraud before making such statements.

142. The Lampo Group broadcasted Reed Hein advertisements that were embedded within the broadcast of the Dave Ramsey Show itself, and that appeared to be spontaneous answers to questions posed by Ramsey followers. The purportedly spontaneous answers were offered by Dave Ramsey and radio hosts employed by The Lampo Group. The advertisements were deceptive. The average consumer would *not* have understood that The Lampo Group received compensation for broadcasting the advertisements, nor that the statements were deceptive.

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

143. The Lampo Group broadcasted Reed Hein advertisements that were embedded within the broadcast of programs other than the Dave Ramsey Show, such as the Chris Hogan Show. The advertisements appeared to be spontaneous answers to questions posed by Ramsey followers. The advertisements were deceptive: The average consumer would *not* have understood that The Lampo Group received compensation for broadcasting the advertisements, nor that the statements were deceptive.

144. The above conduct and misrepresentations of Dave Ramsey and The Lampo Group were deceptive in violation of the Washington Consumer Protection Act and common law negligent misrepresentation.

**h.  The Defendants, Along with Reed Hein & Associates, Maintained Extensive Records of Customer Referrals**

145. The Lampo Group, Dave Ramsey, Happy Hour Media Group, and Reed Hein & Associates kept extensive and contemporaneous records of Ramsey listeners referred to Reed Hein by The Lampo Group and Dave Ramsey.

146. The customer referral records were important to the business of all parties because Reed Hein paid The Lampo Group and Dave Ramsey both a flat fee for advertising and a per-lead rate for customer referrals.

147. Happy Hour Media Group, The Lampo Group, and Dave Ramsey tracked which customers were referred to Reed Hein by Dave Ramsey through uniquely assigned discount codes and special phone numbers available only through advertisements placed on programs produced and broadcast by The Lampo Group.

148. At in-person events, The Lampo Group collected postcards on behalf of Reed Hein and sent images of the postcards and information from them to Reed Hein.

149. The Lampo Group created an online system, dubbed Ramsey Frontman, through which it embedded forms on its website to refer website visitors to Reed Hein. The system

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

collected and maintained records of who was referred to Reed Hein. The Lampo Group was, in part, paid on a per-lead basis for Ramsey Frontman referrals.

150. Happy Hour Media Group reviewed and approved content on The Lampo Group's Ramsey Frontman webpages, including blog posts which included deceptive or misleading content and content regarding Reed Hein and its services.

151. Reed Hein customer records include referral sources for customers. Plaintiffs are each listed in Reed Hein records as having been referred by Dave Ramsey or The Lampo Group. The referral sources in the records were either automatically recorded, recorded because the customer used a phone number or discount code available only from Dave Ramsey and The Lampo Group, or contemporaneously reported the referral.

152. The customer records also include contact information for each referred customer, the amount each referred customer paid Reed Hein, information about each referred customer's timeshare and timeshare obligations, and information about what services, if any, Reed Hein provided to the customer.

153. Reed Hein's own customer records indicate that greater than 10,000 Reed Hein customers were referred by Dave Ramsey and The Lampo Group.

**i. Dave Ramsey Promoted Reid Hein's Fraudulent Scheme as Part of Ramsey's "Financial Peace University"**

154. The Lampo Group charged consumers a fee to enroll in "Ramsey-Plus." For a three-month subscription to Ramsey-Plus, The Lampo Group charges a fee of $59.99. For a twelve-month subscription to Ramsey-Plus, The Lampo Group charged a fee of $129.99.

155. A subscription to Ramsey-Plus includes enrollment in "Financial Peace University." The Lampo Group's website *ramseysolutions.com* describes Financial Peace University as a "nine-lesson course that teaches [consumers] how to save for

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

emergencies, pay off debt fast, spend wisely, and invest for the future." Financial Peace University courses are offered online and in-person, including in Washington.

156. Subscribers to Ramsey-Plus received a weekly newsletter that The Lampo Group's website claimed to provide "expert money advice" from "financial experts."

157. The Lampo Group's weekly newsletter included articles about timeshares, such as *The Truth About Timeshares*, and *How to Get Rid of a Timeshare*. While Dave Ramsey was endorsing Reed Hein, each of these articles included an endorsement of Reed Hein and a link to a form that The Lampo Group used to collect consumer contact information, which it then provided to Reed Hein.

158. For example, while Dave Ramsey was endorsing Reed Hein, the article *Timeshares vs. Vacation Clubs vs. Travel Clubs* included the advice that "the only way to truly get out of a timeshare is to work with a trustworthy company like Timeshare Exit Team," and a link that a reader could use to schedule a free consultation with a Reed Hein "timeshare exit expert."

159. While Dave Ramsey was endorsing Reed Hein, customer-facing materials associated with Ramsey-Plus and Financial Peace University generated referrals of consumers seeking to terminate their contractual obligations to timeshare developers. The Lampo Group referred all such consumers to Reed Hein, without conducting an individualized assessment of the consumer's objectives or needs.

160. In part because The Lampo Group claimed to provide expert financial advice to Ramsey-Plus subscribers, and in part because subscribers pay for the advice itself, the least sophisticated consumer would *not* understand that The Lampo Group received compensation for referrals to Reed Hein. The least sophisticated consumer would understand that The Lampo Group and Dave Ramsey were receiving subscriber

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

1    payments in exchange for *bona fide* advice.

2   161.  The above conduct and misrepresentations of Dave Ramsey and The Lampo Group

3         were deceptive in violation of the Washington Consumer Protection Act and common

4         law negligent misrepresentation.

5         **j.  Dave Ramsey Promoted Reed Hein's Fraudulent Scheme in Churches**

6   162.  The Lampo Group also sells Ramsey-Plus directly to Christian churches, for a fee of

7         $990 for ten yearly memberships, $1,500 for twenty-five yearly memberships, or

8         $2,500 for unlimited yearly licenses for any particular church site.

9   163.  The Lampo Group conducts live seminars, at which Dave Ramsey and other speakers

10        claim to provide participants with expert financial advice. The seminars are generally

11        held at different Christian churches across the United States, including in Washington,

12        or at the Tennessee headquarters of The Lampo Group.

13  164.  Wherever a Lampo Group's live seminar is held, the seminar begins and ends with a

14        prayer. Speakers claim that their advice to participants is grounded in the Bible.

15  165.  The Lampo Group receives a fee for the live seminars that it conducts — whether from

16        individual participants or from the church that is hosting the seminar.

17  166.  While Dave Ramsey was endorsing Reed Hein, seminar participants were exposed to

18        Lampo Group materials that included Ramsey's endorsement of Reed Hein.

19  167.  While Dave Ramsey was endorsing Reed Hein, seminar participants were asked to

20        complete a contact card that solicited information about their financial circumstances

21        — including questions about whether a participant wanted to terminate his or her

22        contractual obligations to a timeshare developer.

23  168.  Whenever a seminar participant's completed contact card stated that the participant

          wanted to terminate his or her ongoing contractual obligations to a timeshare developer,

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

The Lampo Group provided the participant's name and contact information to Reed Hein.

169. In part because The Lampo Group received a fee for conducting live seminars, the least sophisticated consumer would *not* have understood that The Lampo Group received compensation for referring seminar participants to Reed Hein.

170. The least sophisticated consumer would *not* have understood that The Lampo Group was received compensation for referring seminar participants to Reed Hein, for the following additional reasons: (a) seminars were often held in churches, with the blessing of the church's pastor; (b) whether held in a church or at the headquarters of The Lampo Group, seminars generally started and ended with a prayer; and (c) Dave Ramsey and other speakers at the seminars described their financial advice as being biblically based.

171. Dave Ramsey either individually took all actions attributed to The Lampo Group within this complaint, or he directly or indirectly instructed subordinate The Lampo Group employees to take all actions attributed to The Lampo Group within this complaint.

172. The above conduct and misrepresentations of Dave Ramsey and The Lampo Group were deceptive in violation of the Washington Consumer Protection Act and common law negligent misrepresentation.

   **k. Dave Ramsey Continued to Advise Listeners to Use Reed Hein's Services Despite All the Negative Consequences and Knowledge of Its Impending Insolvency**

173. By late 2015, with the endorsement of Dave Ramsey, Reed Hein's advertising became national in scope.

174. Reed Hein's advertising was ubiquitous on conversative talk radio and other media between 2015 and 2018. After 2016, Reed Hein primary advertising vehicle was Dave

<AMENDED> COMPLAINT FOR DAMAGES - 38

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

Ramsey's endorsement. Reed Hein's advertising with other outlets declined after the company saw how many customers Ramsey was able to refer.

175. The endorsement of Dave Ramsey directly contributed to Reed Hein's myriad problems that arose after Ramsey first endorsed the company in September 2015.

176. Despite all the facts described within this complaint that occurred between September 2015 and March 2021, Dave Ramsey and The Lampo Group persisted in Ramsey's endorsement of Reed Hein & Associates in exchange for money.

177. After the Authorized Practice Committee of the North Carolina Bar concluded that there was probable cause to believe Reed Hein's activities constituted the unauthorized practice of law, Dave Ramsey continued to promote Reed Hein for money.

178. After the United States District Court for the Middle District of Florida found that Reid Hein's use of lawyer to facilitate its scheme deceived Reid Hein clients, Dave Ramsey continued to promote Reed Hein for money.

179. After the United States District Court found that Reed Hein's involvement in attorney-client communications destroyed the attorney-client privilege, Dave Ramsey continued to promote Reed Hein for money.

180. After Reed Hein began to produce private customer communications and other confidential customer documents to timeshare companies, Dave Ramsey continued to promote Reed Hein for money.

181. After timeshare developers filed lawsuits against some Reed Hein customers and served notices of deposition on other Reed Hein customers, Dave Ramsey continued to promote Reed Hein for money.

182. After Reed Hein settled the lawsuit filed against the company by Orange Lake Country Club on terms that required a payment of $750,000 to Orange Lake and that sacrificed

AMENDED COMPLAINT FOR DAMAGES - 39

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

the interests of Reed Hein customers, Dave Ramsey persisted.

183. After the State of Washington filed a lawsuit against Reed Hein that credibly alleged more than forty regular and ongoing violations of the State Consumer Protection Act and other statutes passed for the protection of consumers, Dave Ramsey persisted in promoting Reed Hein for money.

184. Dave Ramsey finally stopped endorsing Reed Hein in March 2021, explicitly stating he had stopped endorsing Reed Hein because it was unable to pay his fee.

185. Dave Ramsey's ongoing endorsement of Reed Hein & Associates caused thousands of Ramsey followers to suffer harm in excess of $70 million— in payments that they made to Reed Hein, and in payments that they made to timeshare developers because of Reed Hein's self-serving advice and because of Reed Hein's ineffectual and illusory services.

186. While Dave Ramsey was enriching himself by persisting in his Reed Hein endorsement, the consequences of Reed Hein's problems were being suffered by Reed Hein customers who had enrolled with Reed Hein *because of Ramsey's endorsement.*

**l.   Reed Hein's Structure Purposefully Delayed Customer Harms**

187. Reed Hein inserted into each contract a provision stating that it required a duration of time to complete the "exit process." Depending on when the contract was executed, the contract stated that it would take 1) eighteen months or 2) three years to complete the process. When customers complained within that timeframe that the process was taking too long, Reed Hein cited the fact that the customers agreed to the delay. Reed Hein told customers they were not eligible for a refund until that time expired.

188. As a result, customers did not have actual or constructive knowledge that 1) Reed Hein had committed the torts and statutory violations established herein, 2) they had been

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

damaged as a result, and 3) the damages were caused and proximately caused by the torts and statutory violations until eighteen months or three years after signing their contracts with Reed Hein.

189. Dave Ramsey knew or should have known that Reed Hein included such clauses in its contracts. Dave Ramsey knew or should have known that his listeners were being told they must wait eighteen months and three years for the exit process to complete. Dave Ramsey knew or should have known that the customers would not have knowledge of the torts and statutory violations alleged herein, their damages, or the proximate cause between the two until that timeframe expired.

190. Reed Hein had a fiduciary duty toward customers because it established a fiduciary duty in the power-of-attorney form it required customers to sign and because it led customers to believe they were being represented by counsel.

191. Under that duty, Reed Hein had a responsibility to notify customers that it had committed the torts and statutory violations herein. If Reed Hein did not know about those torts and statutory violations, then its fiduciary duty required it to perform appropriate due diligence for the customers.

192. Instead of fulfilling that duty, Reed Hein used its relationship as a fiduciary to delay and obfuscate so the customers would not learn about the torts and statutory violations herein. Reed Hein delayed and obfuscated to stall some customers' realization as long as six years.

193. As a result, Dave Ramsey listeners who signed contracts with Reed Hein on Dave Ramsey's advice did not discover the elements of the torts and statutory violations alleged herein for many years after they executed the agreements.

194. Dave Ramsey knew or should have known about Reed Hein's fiduciary duty and delay

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

tactics. Dave Ramsey knew or should have known that the customers did not realize their harms or the other elements of the torts and statutory violations alleged herein for years after the customers executed contracts with Reed Hein.

195. None of the customers sent by Dave Ramsey have yet fully realized the elements of the torts and statutory violations described herein. Reed Hein lied to customers and used delay tactics all the way until it ceased operations in 2021. At no time did Reed Hein correct those false understandings, leaving customers to believe that Reed Hein was still working on their timeshare exit.

196. Dave Ramsey knew or should have known that Reed Hein continued to use delay tactics to frustrate his listeners' knowledge of the torts and statutory violations described within and actively cultivated their misunderstandings. Dave Ramsey's last message to listeners about Reed Hein reiterated that it was "doing the right thing," which he never corrected.

**m. Dave Ramsey, The Lampo Group, and Happy Hour Media Group Harmed the Plaintiffs and All Those Similarly Situated**

197. Anna Patrick is typical of individuals who paid Reed Hein for timeshare exit services in reliance on the statements and other representations made by Dave Ramsey and The Lampo Group. Ms. Patrick heard Dave Ramsey endorse Timeshare Exit Team and Reed Hein during his radio show. Relying on Dave Ramsey's endorsement, Ms. Patrick paid Reed Hein $8569.95 for services they never performed.

198. Douglas and Roseanne Morrill are typical of individuals who paid Reed Hein for timeshare exit services in reliance on the statements and other representations made by Dave Ramsey and The Lampo Group. The Morrills heard or saw Dave Ramsey's endorsement of Reed Hein and became Reed Hein customers on the advice of Dave Ramsey. The Morrills paid Reed Hein $41,200 because of Dave Ramsey's advice.

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

199. Leisa Garrett is typical of individuals who paid Reed Hein for timeshare exit services in reliance on the statements and other representations made by Dave Ramsey and The Lampo Group. Ms. Garrett relied on Dave Ramsey's advice and, based on his advice and his endorsement of Reed Hein, Ms. Garrett paid Reed Hein $4797 for timeshare exit services the company did not deliver.

200. Robert and Samantha Nixon are typical of individuals who paid Reed Hein for timeshare exit services in reliance on the statements and other representations made by Dave Ramsey and The Lampo Group. The Nixons, relying on Dave Ramsey's advice, paid Reed Hein $7,838.80 for timeshare exit services the company did not deliver.

201. David and Rosemarie Bottonfield are typical of individuals who paid Reed Hein for timeshare exit services in reliance on the statements and other representations made by Dave Ramsey and The Lampo Group. The Bottonfields, relying on Dave Ramsey's advice, paid Reed Hein $8,795 for timeshare exit services the company did not deliver.

202. Tasha Ryan is typical of individuals who paid Reed Hein for timeshare exit services in reliance on the statements and other representations made by Dave Ramsey and The Lampo Group. Ms. Ryan, relying on Dave Ramsey's advice, paid Reed Hein more than $5,000 for timeshare exit services the company did not deliver.

203. Rogelio Vargas is typical of individuals who paid Reed Hein for timeshare exit services in reliance on the statements and other representations made by Dave Ramsey and The Lampo Group. Following Dave Ramsey's advice, Mr. Vargas paid Reed Hein $5495.Merilyn Dewey is typical of individuals who paid Reed Hein for timeshare exit services in reliance on the statements and other representations made by Dave Ramsey and The Lampo Group. Following Dave Ramsey's advice, Ms. Dewey paid Reed Hein $7,354.70.

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

204. Marilyn Dewey is typical of individuals who paid Reed Hein for timeshare exit services in reliance on the statements and other representations made by Dave Ramsey and The Lampo Group. Ms. Dewey, relying on Dave Ramsey's advice, paid Reed Hein $7354.70 for timeshare exit services the company did not deliver.

205. Peter and Rachael Rollins are typical of individuals who paid Reed Hein for timeshare exit services in reliance on the statements and other representations made by Dave Ramsey and The Lampo Group. Mr. and Mrs. Rollins, relying on Dave Ramsey's advice, paid Reed Hein $6,145 for timeshare exit services the company never delivered.

206. Katrina Benny is typical of individuals who paid Reed Hein for timeshare exit services in reliance on the statements and other representations made by Dave Ramsey and The Lampo Group. Ms. Benny paid Reed Hein $4497 for timeshare exit services based on the advice of Dave Ramsey.

207. Sara Erickson is typical of individuals who paid Reed Hein for timeshare exit services in reliance on the statements and other representations made by Dave Ramsey and The Lampo Group. Ms. Erickson paid Reed Hein $5,102.20 for timeshare exit services based on the advice of Dave Ramsey.

208. Greg Larson is typical of individuals who paid Reed Hein for timeshare exit services in reliance on the statements and other representations made by Dave Ramsey and The Lampo Group. After hearing Dave Ramsey repeatedly endorse Reed Hein during his radio program and relying on that endorsement, Mr. Larson paid Reed Hein $4797. Mr. Larson did not know Dave Ramsey was paid to endorse Reed Hein and Timeshare Exit Team.

209. James King is typical of individuals who paid Reed Hein for timeshare exit services in reliance on statements and other representations made by Dave Ramsey and The

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

Lampo Group. Mr. King paid Reed Hein $4797 for timeshare exit services based on the advice of Dave Ramsey.

## V.    CLASS ALLEGATIONS

210. Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2) and/or (b)(3) on behalf of the following Class for the maximum time period allowable by law:

> All individuals who, during the applicable statute of limitations, paid money to Reed Hein and Time Share Exit Team for the purpose of obtaining an "exit" from their timeshare obligations after being exposed to, and/or in reliance on, the statements and other representations made by Dave Ramsey, and The Lampo Group.

211. The Class is comprised of more than ten thousand (10,000) individuals and is so numerous that joinder of all members is impractical.

212. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

213. Plaintiffs' claims are typical of the claims of each member of the Class.

214. There are questions of law and fact common to the Class, the answers to which will advance the resolution of the claims of all the Class's members and that include, without limitation:

   a.   Whether Defendants made deceptive and/or materially false representations to Plaintiffs and the Class;

   b.   Whether Defendants' business practices alleged herein are deceptive acts or practices;

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

c.   Whether Defendants are liable to Plaintiffs and the Class for damages and, if so, the measure of such damages; and

d.   Whether Plaintiffs and the Class are entitled to declaratory, injunctive, and other equitable relief.

215.   Class action status is warranted under FRCP 23(b)(1)(A) because the prosecution of separate actions by or against individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

*#*

*#*

*#*

*#*

216.   Class action status is warranted under FRCP 23(b)(1)(B) because the prosecution of separate actions by or against individual members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

217.   Class action status is also warranted under FRCP 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

218.   Class action status is also warranted under FRCP 23(b)(3) because questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

the fair and efficient adjudication of this controversy.

219. **Class Counsel –** Plaintiffs have retained counsel who have been establishing relationships with witnesses and developing the underlying theories for three years before filing suit. Counsel have already recovered greater than $300,000 from Reed Hein on behalf of Reed Hein customers in dozens of lawsuits and arbitrations. Gregory Albert of Albert Law PLLC is class counsel for the plaintiff class in *Adolph v. Reed Hein & Associates et al., United States District Court*, Western District of Washington, Case No. 2:21-cv-1378-BJR, in which the Court entered a $630,187,204.00 covenant judgment. ~~the pending federal class action suit by Reed Hein customers against Reed Hein.~~ Roger Davidheiser, and Friedman|Rubin PLLP, are experienced in class action litigation, and together with Albert Law PLLC possess the experience and resources to prosecute this class case. Counsel will represent the Classes fairly, competently, and zealously.

## VI.  LEGAL ALLEGATIONS

### COUNT ONE
### Violation of the Washington Consumer Protection Act

220. All Defendants committed the multiple unfair and deceptive trade practices described above, which harmed the Plaintiffs and all those similarly situated and which affect the public interest.

221. The Lampo Group, Dave Ramsey specifically committed the following unfair and deceptive trade practices, which harmed Reed Hein customers, and which affected the public interest:

   a.   Defendants committed the tort of fraud.

AMENDED COMPLAINT FOR DAMAGES - 47

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

b.  Defendants committed the tort of negligent misrepresentation.

c.  Defendants produced advertising that was deceptive, because the advertising failed to disclose that The Lampo Group and Dave Ramsey received compensation for the advertising, as required by the Federal Trade Commission's endorsement regulations.

d.  Defendants produced advertising that was deceptive, stating that Dave Ramsey endorses Reed Hein because he has independently confirmed that Reed Hein delivers value to consumers. In fact, Dave Ramsey knew that Reed Hein cheated the Ramsey followers he referred to Reed Hein.

e.  Defendants secured the contact information of prospective customer information on platforms that The Lampo Group, and Dave Ramsey made available to customers in exchange for a fee. Because those Ramsey followers have paid a fee for the information they received from The Lampo Group, and Dave Ramsey, they justifiably believed that Dave Ramsey was providing them with *bona fide* advice. In fact, Dave Ramsey was referring them to Reed Hein only because Reed Hein paid his endorsement fee.

f.  Defendants produced advertising claiming that Reed Hein had achieved a particular number of "timeshare exits" that includes fake exits accomplished via the deceptive methods.

g.  Defendants produced advertising that perpetuates the consumer fraud, including advertising representing that the children of timeshare owners will

AMENDED COMPLAINT FOR DAMAGES - 48

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

inherit their parents' timeshare obligations when the parents died.

h.  Defendants produced advertising that described Reed Hein as a team of "legal experts," and that claimed Reed Hein had the capacity to "safely, legally, and permanently" terminate a consumer's contractual obligations to a timeshare developer.

i.  Defendants committed multiple additional violations of the State Consumer Protection Act, to be proven at trial.

222.  This cause of action is based in part on matters complained of during the Washington State Attorney General's lawsuit against Reed Hein & Associates, which was filed on February 6, 2020 and resolved on or after September 28, 2021.

//

### COUNT TWO
### Negligent Misrepresentation

224.  The Defendants committed the tort of negligent misrepresentation.

225.  As alleged above, Defendants supplied representations that were false for the guidance of Plaintiffs, and all those similarly situated, in their business transactions.

226.  The Defendants knew or should have known that the information was supplied to guide the Plaintiffs, and those similarly situated, in business transactions.

227.  The Defendants were negligent in obtaining and/or communicating the false information.

228.  The Plaintiffs and those similarly situated reasonably relied on the false information.

AMENDED COMPLAINT FOR DAMAGES - 49

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

**COUNT THREE**

**Unjust Enrichment as to Defendants Ramsey and The Lampo Group**

229. The Defendants were unjustly enriched by their conduct.

230. The Plaintiff class conferred benefits upon the Defendants and Defendants appreciated or had knowledge of those benefits. The Defendants received these benefits at the expense of the Plaintiff class.

231. Plaintiffs conferred upon Defendants an economic benefit by entering into contracts and making payments to Reed Hein. These payments flowed to Defendants and allowed Defendants to continue engaging in their unlawful conduct. Plaintiffs relied on the representations of Defendants when they entered into these contracts and made these payments.

232. The economic benefits realized by Defendants are a direct and proximate result of their unlawful practices.

233. Under the circumstances of this case, it would be inequitable and unjust to permit Defendants to retain the benefits of their unlawful practices.

**COUNT FOUR**
**Conspiracy**

234. The aforementioned defendants agreed and collaborated together and with Reed Hein and its employees and officers and owners to accomplish the above by making deceptive statements to Reed Hein customers and Dave Ramsey listeners.

AMENDED COMPLAINT FOR DAMAGES - 50

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

235.  Defendants agreed among themselves and with Reed Hein to make deceptive and fraudulent statements about the services Reed Hein provided to induce customers to pay money for Reed Hein services.

**COUNT FIVE**
**Conversion**

236.  Reed Hein & Associates treated upfront customer payments as earned revenue rather than holding customer funds in trust as required by the Telemarketing Sales Rule, the Credit Services Organization Act, and other federal and state law, and in breach of its fiduciary duties. Reed Hein admitted it did not keep customer funds in trust and breached duties.

237.  Defendants knew or should have known that Reed Hein & Associates breached its fiduciary and statutory duties in respect to payments from Plaintiffs to Reed Hein & Associates.

238.  Defendants knew or should have known that Reed Hein & Associates converted customer funds by treating them as earned revenue.

239.  Reed Hein & Associates transferred customer funds, including funds belonging to Plaintiffs, to Defendants instead of holding them in trust.

240.  Defendants took possession of and acquired a property interest in those customer funds.

241.  Defendants wrongly received money which had been converted by Reed Hein & Associates but which rightfully belonged to Plaintiffs.

242.  Defendants deprived Plaintiffs of property to which Plaintiffs were entitled.

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446

**COUNT SIX**
**Constructive Trust**

243. Plaintiffs bring this count in conjunction with or in the alternative to the foregoing counts.

244. Through wrongdoing, including the fraudulent, unjust, or otherwise questionable means described in the preceding paragraphs, Defendants took possession of and title to at least $30 million of money that was being held in constructive trust pursuant to Reed Hein's duties under its contracts with Plaintiffs and state and federal law, including 16 C.F.R. § 310, RCW 18.28 *et seq*., and RCW 19.134 *et seq*.

245. Defendants have retained all of the money belonging to Plaintiffs and all those similarly situated.

246. It would be inequitable to permit Defendants to retain money belonging to Plaintiffs and constructively held in trust for Plaintiffs, which Defendants and their coconspirators collected through the fraudulent, unjust, or otherwise questionable means described in the preceding paragraphs.

247. There is no adequate remedy at law.

248. Equity demands that money belonging to Plaintiffs and all those similarly situated be placed in a constructive trust for the benefit of Plaintiffs and all those similarly situated.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request the following forms of relief as a judgment against Defendants:

    1. Disgorgement of fees;

AMENDED COMPLAINT FOR DAMAGES - 52

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

2.  Damages for fees the Plaintiffs paid timeshare companies while waiting for Reed Hein to provide services;

3.  Damages, including treble damages under the CPA, in excess of $150 million;

4.  Attorneys' fees and costs;

5.  Declaratory relief not otherwise stated;

6.  Joint and several damages; and

7.  Any and all applicable interest on the judgment.

Plaintiffs respectfully request that the Court enter such other orders and relief as the Court finds to be just and appropriate after jury trial.

#

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and Washington Constitution Article 1, § 21, Plaintiffs demand a jury for issues so triable.

DATED this 28th 26th day of April October, 2023.

**ALBERT LAW, PLLC**

By: *s/Gregory W. Albert*
Gregory W. Albert, WSBA #42673
Jonah Ohm Campbell, WSBA# 55701
Tallman Trask IV, WSBA# 60280
3131 Western Ave., Suite 410
Seattle, WA 98121

AMENDED COMPLAINT FOR DAMAGES - 53

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

1

(206)576-8044
greg@albertlawpllc.com

2

tallman@albertlawpllc.com
jonah@albertlawpllc.com

3

4

And—

5

**FRIEDMAN | RUBIN®**

6

By: _s/Roger S. Davidheiser_____

7

Roger S. Davidheiser, WSBA #18638
1109 First Ave., Ste. 501

8

Seattle, WA  98101
(206)501-4446

9

rdavidheiser@friedmanrubin.com
***Attorneys for Plaintiffs***

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA  98101
(206) 501-4446