UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANNA PATRICK, et al.,

                Plaintiffs,

    v.

DAVID L. RAMSEY, III, et al.,

                Defendants.

CASE NO. C23-0630JLR

ORDER

## I.    INTRODUCTION

Before the court are two motions filed by Plaintiffs:[1]  (1) a motion for reconsideration of the court's order dismissing their unjust enrichment claims with prejudice (MFR (Dkt. # 38); MFR Reply (Dkt. # 50); *see* 10/12/23 Order (Dkt. # 35)) and (2) a motion for leave to amend their complaint (MTA (Dkt. # 40); MTA Reply (Dkt.

---

[1] Plaintiffs are Anna Patrick, Douglas Morrill, Roseanne Morrill, Leisa Garrett, Robert Nixon, Samantha Nixon, David Bottonfield, Rosemarie Bottonfield, Tasha Ryan, Rogelio Vargas, Marilyn Dewey, Peter Rollins, Rachael Rollins, Katrina Benny, Sara Erickson, Greg Larson, and James King (collectively, "Plaintiffs").  (Compl. (Dkt. # 1) ¶¶ 16-66.)

1 # 52)).  Defendants David L. Ramsey, III and The Lampo Group, LLC (together, the

2 "Lampo Defendants") oppose both motions.[2]  (MFR Resp. (Dkt. # 49); MTA Resp. (Dkt.

3 # 51).)  The court has considered the motions, the parties' submissions in support of and

4 in opposition to the motions, the relevant portions of the record, and the governing law.

5 Being fully advised,[3] the court DENIES Plaintiffs' motion for reconsideration and

6 GRANTS in part Plaintiffs' motion to amend.

7 ## II.    BACKGROUND

8 Plaintiffs are individuals who signed contracts with and paid money to non-party

9 Reed Hein & Associates ("Reed Hein"), doing business under the name "Timeshare Exit

10 Team," for assistance in "exiting" their obligations with respect to timeshares they owned

11 at various resort properties.  (Compl. (Dkt. # 1) ¶¶ 16-66 (alleging facts regarding each of

12 the named Plaintiffs).)  Plaintiffs allege that Reed Hein charged them money up front for

13 its services and promised them a "100% refund if they were not relieved of their

14 timeshare obligations."  (*Id.* ¶ 3; *see also id.* ¶ 81.)  Reed Hein, however, allegedly failed

15 to terminate Plaintiffs' timeshare obligations, made false statements about its services,

16 and refused to refund Plaintiffs' money when the "exits" were unsuccessful or resulted in

---

[2] Plaintiffs also named Happy Hour Media Group, LLC ("Happy Hour Media Group") as a Defendant.  (*See* Compl. ¶ 67.)  Happy Hour Media Group did not respond to Plaintiffs' motions.  (*See generally* Dkt.)

[3] Neither Plaintiffs nor the Lampo Defendants request oral argument (MFR at 1; MTA at 1; MFR Resp. at 1; MTA Resp. at 1) and the court finds that oral argument would not be helpful to its disposition of the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4).

ORDER - 2

1   the resort properties foreclosing on Plaintiffs' timeshares.  (*Id.* ¶¶ 3-4; *see also id.*

2   ¶¶ 81-97 (describing Reed Hein's practices).)

3          On April 28, 2023, Plaintiffs filed this proposed class action against one individual

4   and two business entities that played roles in promoting Reed Hein's services.  (*See*

5   *generally* Compl.)  Plaintiffs allege that Reed Hein hired Defendant Happy Hour Media

6   Group, a Kirkland, Washington-based marketing firm that acts as Reed Hein's "in-house

7   marketing department"; Defendant Dave Ramsey, a nationally-syndicated radio talk-

8   show host who offers "biblically based" financial advice; and Defendant The Lampo

9   Group, Mr. Ramsey's wholly-owned company, to promote its timeshare exit services

10  through Mr. Ramsey's popular radio shows, podcasts, seminars, websites, "Financial

11  Peace University," and newsletters.  (*Id.* ¶¶ 5-6, 109-54 (describing Mr. Ramsey's

12  business and his relationship with Reed Hein).)  Plaintiffs further allege that Reed Hein

13  paid Mr. Ramsey and The Lampo Group over $30 million "to make false claims and

14  instruct [Mr.] Ramsey's faithful listeners to hire Reed Hein."  (*Id.* ¶ 5.)  According to

15  Plaintiffs, Mr. Ramsey "assured his listeners that he had vetted Reed Hein," "promised

16  them that the company was the only trustworthy method to get out of their timeshare

17  contracts," and "made false statements about Reed Hein's knowledge, skill, and ability to

18  get customers out of timeshare obligations."  (*Id.* ¶ 7; *see also id.* ¶¶ 131-32 (describing

19  statements Mr. Ramsey made when endorsing Reed Hein).)  Plaintiffs assert that Mr.

20  Ramsey continued to promote Reed Hein even after listener complaints, lawsuits

21  (including one brought by the Washington State Attorney General), and arbitrations filed

22  against Reed Hein should have placed him on notice that Reed Hein was defrauding his

1  followers.  (*See, e.g.*, *id.* ¶¶ 8, 121-22, 159-64.)  By March 2021, Reed Hein started to

2  lose money and stopped paying Mr. Ramsey to promote its services.  (*Id.* ¶¶ 9, 107-08.)

3  Subsequently, Mr. Ramsey stopped recommending Reed Hein's services to his followers.

4  (*Id.* ¶¶ 10, 165.)  Plaintiffs alleged claims on behalf of themselves and a proposed

5  nationwide class against all Defendants for violation of the Washington Consumer

6  Protection Act, negligent misrepresentation, and conspiracy, and against the Lampo

7  Defendants only for unjust enrichment.  (*Id.* ¶¶ 191 (proposed class definition), 201-215.)

8        On October 12, 2023, the court denied the Lampo Defendants' motion to strike

9  Plaintiffs' class allegations and granted in part the Lampo Defendants' motion to dismiss.

10  (*See* 10/12/23 Order at 13-14.)  In relevant part, the court granted the Lampo Defendants'

11  motion to dismiss Plaintiffs' unjust enrichment claim and dismissed that claim with

12  prejudice and without leave to amend.  (*Id.*)  The court concluded that dismissal of the

13  unjust enrichment claim was warranted because Plaintiffs failed to plausibly allege the

14  first element of their claim:  "a benefit conferred upon the defendant by the plaintiff."

15  (*Id.* at 7-9 (quoting *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008)).)  The court

16  relied on *Lavington v. Hillier*, in which the Washington Court of Appeals reviewed

17  multiple cases and concluded that a "*plaintiff must confer a benefit on the defendant* to

18  satisfy the first element of unjust enrichment."  (*Id.* (quoting *Lavington v. Hillier*, 510

19  P.3d 373, 379 (Wash. Ct. App.), *rev. denied*, 518 P.3d 212 (Wash. 2022) (emphasis in

20  *Lavington*)); *see also Lavington*, 510 P.3d at 379 ("The defendant must receive a benefit

21  *from the plaintiff* for an implied contract to arise.").  The court noted that Plaintiffs

22  alleged that they paid money only to Reed Hein.  (10/12/23 Order at 8; *see* Compl. ¶ 211

(alleging that "Plaintiffs conferred upon Defendants an economic benefit by entering into contracts and making payments to Reed Hein" that then "flowed" to the Lampo Defendants); *id.* ¶¶ 178-90 (alleging that each Plaintiff paid money to Reed Hein).)  Thus, because Plaintiffs failed to allege any direct transfer of funds from Plaintiffs to the Lampo Defendants, the court dismissed Plaintiffs' unjust enrichment claim.  (10/12/23 Order at 7-9.)  The court dismissed the claim with prejudice and without leave to amend based its conclusion that Plaintiffs could "plead no facts consistent with the allegations in their complaint that would enable them to cure their unjust enrichment claim."  (*Id.* at 9 (quoting *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).)

On October 26, 2023, Plaintiffs timely moved for reconsideration of the portion of the October 12, 2023 order in which the court dismissed the unjust enrichment claim with prejudice and without leave to amend.  (*See* MFR at 2 (stating that plaintiffs "do not request reconsideration on the dismissal of their unjust enrichment claims, but respectfully request the [c]ourt reconsider its order dismissing those claims with prejudice").)  They argued that they could "plausibly allege a direct transfer of ownership" of Plaintiffs' funds to the Lampo Defendants under the constructive trust doctrine.  (*Id.*; *see also id.* at 3-5 (setting forth the constructive trust argument).)  On that same day, Plaintiffs also filed a motion to amend their complaint to (1) add claims for conversion and constructive trust; (2) add additional factual allegations related to their

claims; and (3) correct typographical and formatting errors.  (*See* MTA at 2; Prop. Am. Compl. (Dkt. # 41-1) (showing redlined changes from Plaintiffs' original complaint).[4])

On October 27, 2023, the court ordered the Lampo Defendants to respond to Plaintiffs' motion for reconsideration and granted Plaintiffs leave to file a reply in support of their motion.  (*See generally* 10/27/23 Order (citing Local Rules W.D. Wash. LCR 7(h)(3)).)  The Lampo Defendants timely responded to Plaintiffs' motions and Plaintiffs filed timely replies.  (*See* MFR Resp.; MTA Resp.; MFR Reply; MTA Reply.) Plaintiffs' motions are now ripe for decision.

### III.    ANALYSIS

Below, the court first addresses Plaintiffs' motion for reconsideration and then considers Plaintiffs' motion to amend their complaint.

### A.    Motion for Reconsideration

"Motions for reconsideration are disfavored," and the court "will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence."  Local Rules W.D. Wash. LCR 7(h)(1). "Reconsideration is an extraordinary remedy," and the moving party bears a "heavy burden."  *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

Plaintiffs ask the court to reconsider its decision to dismiss their unjust enrichment claim with prejudice and without leave to amend.  (*See generally* MFR.)  They argue that

---

[4] Plaintiffs also filed their redlined proposed amended complaint as an exhibit in support of their motion for reconsideration.  (*See* Dkt. # 39-1.)

1   they can plausibly allege a direct transfer from Plaintiffs to the Lampo Defendants based

2   on a constructive trust theory.  (*Id.*)  Plaintiffs argue that "[if] a fiduciary" (here, Reed

3   Hein) "takes his or her clients' funds from trust and gives them to a third-party" (here, the

4   Lampo Defendants), "then that is a direct transfer [from the clients to the third party]

5   because there was no intermediary change of ownership."  (*Id.* at 2.)  Plaintiffs assert that

6   because Reed Hein failed to hold their funds in trust but instead treated their funds as

7   revenue, Reed Hein "held [Plaintiffs'] funds in constructive trust" and, as a result, Reed

8   Hein's transfer of funds from the "constructive trust" to the Lampo Defendants must be

9   considered a direct transfer of funds from Plaintiffs.  (*Id.*; *see also* Prop. Am. Compl.

10   ¶ 135 (alleging that "Reed Hein paid The Lampo Group and Dave Ramsey with customer

11   funds which should have been held in trust, but which Reed Hein treated as revenue and

12   spent").)

13          The court declines to accept Plaintiffs' novel theory of direct transfer.  Plaintiffs

14   ask the court to conclude that when a fiduciary breaches its duty to hold its client's funds

15   in trust by putting the funds into its own account and then transfers funds from that

16   account to a third party for its own purposes, the role of the breaching fiduciary falls out

17   of the transaction and results in a direct transfer of funds from the client to the third party.

18   They do not cite a single case, however, that supports such a holding.  (*See generally*

19   MFR; MFR Reply.)  Moreover, although Plaintiffs cite cases discussing constructive

20   trusts in their motion (*see* MFR at 5), they appear to have abandoned their constructive

21   trust theory of unjust enrichment in their reply (*see generally* MFR Reply (including no

22   mention of constructive trusts and arguing instead that because Reed Hein was a

fiduciary, it acted as Plaintiffs' agent when it transferred Plaintiffs' funds to the Lampo

Defendants)).  The court concludes that Plaintiffs have failed to show either manifest

error in the court's prior ruling dismissing their unjust enrichment claim without leave to

amend or new facts or legal authority which they could not have brought to the court's

attention earlier with reasonable diligence.  Local Rules W.D. Wash. LCR 7(h)(1).

Therefore, the court denies Plaintiffs' motion for reconsideration.

**B.    Motion to Amend**

Having concluded that Plaintiffs' unjust enrichment claim cannot be revived, the

court now addresses Plaintiffs' motion to amend their complaint to (1) add new claims

for conversion and constructive trust; (2) include additional factual allegations related to

their claims; and (3) correct typographical and formatting errors.  (*See* MTA at 2.)

1.    Legal Standards

"A party may amend its pleading once as a matter of course no later than: (A) 21

days after serving it, or (B) . . . 21 days after service of a responsive pleading or 21 days

after service of a motion [to dismiss] under Rule 12(b), (e), or (f), whichever is earlier."

Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the

opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  "The

court should freely give leave [to amend the complaint] when justice so requires."  *Id.*

Courts consider five factors when assessing a motion for leave to amend:  (1) bad

faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and

(5) whether the party has previously amended its pleading.  *Allen v. City of Beverly Hills*,

911 F.2d 367, 373 (9th Cir. 1990) (citing *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d

1    1149, 1160 (9th Cir. 1989)).  Futility alone can justify denying leave to amend.  *Novak v.*

2    *United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (citing *Bonin v. Calderon*, 59 F.3d

3    815, 845 (9th Cir. 1995)).  A proposed amendment is futile "if no set of facts can be

4    proved under the amendment to the pleadings that would constitute a valid and sufficient

5    claim or defense."  *Ralls v. Facebook*, 221 F. Supp. 3d 1237, 1245 (W.D. Wash. 2016)

6    (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)).

7        2.    Whether Plaintiffs May Amend as a Matter of Course

8        As a threshold matter, Plaintiffs contend that they are entitled to amend their

9    complaint as a matter of course because they filed their motion to amend within 21 days

10    of the day Happy Hour Media Group filed its motion to dismiss and no party has filed a

11    responsive pleading.  (MTA at 3 (citing Fed. R. Civ. P. 15(a)(1)); *see* Happy Hour MTD

12    (Dkt. # 32) (filed on October 5, 2023, and withdrawn on November 1, 2023).)  As the

13    Lampo Defendants point out, however, the weight of authority in the Ninth Circuit holds

14    that where the 21-day period has expired as to some defendants but not to others, the

15    plaintiff may amend as a matter of course only as to the defendants for whom the 21-day

16    period has not yet expired.  (MTA Resp. at 4-5 (quoting *Hylton v. Anytime Towing*, No.

17    11CV1039 JLS (WMc), 2012 WL 1019829, at *2 (S.D. Cal. Mar. 26, 2012), and citing

18    additional cases so holding).)  Thus, although Plaintiffs have a right to amend their

19    complaint as a matter of course with respect to their claims against Happy Hour Media

20    Group, they do not have that right with respect to their claims against the Lampo

21    Defendants, who served their motion to dismiss in August 2023.  (*See* Lampo MTD (Dkt.

22    # 25) (filed on August 10, 2023).)  Therefore, the court grants Plaintiffs' motion to amend

ORDER - 9

1    their complaint with respect to Happy Hour Media Group[5] and proceeds to consider

2    Plaintiffs' motion for leave to amend their allegations and claims against the Lampo

3    Defendants.

4        3.    <u>Whether to Grant Leave to Amend</u>

5        Plaintiffs seek leave to amend their complaint to (1) add a new claim for

6    conversion; (2) add a new stand-alone claim for constructive trust; and (3) include

7    additional factual allegations regarding Defendants' record keeping.  (MTA at 3-4.)  The

8    court considers each in turn.

9            *a.*    *Conversion*

10       Plaintiffs seek leave to amend their complaint to allege a new claim against all

11   Defendants for conversion.  (MTA at 3-4; *see* Prop. Am. Compl. ¶¶ 236-42; *see also id.*

12   ¶¶ 111-14.)  The court grants Plaintiffs' request.

13       "Conversion is the unjustified, willful interference with a chattel which deprives a

14   person entitled to the property of possession."  *In re Marriage of Langham & Kolde*, 106

15   P.3d 212, 218 (Wash. 2005) (quoting *Meyers Way Dev. Ltd. P'ship v. Univ. Sav. Bank*,

16   910 P.2d 1308, 1320 (Wash. Ct. App. 1996)).  The plaintiff must have a property interest

17   in the allegedly converted chattel.  *Id.* at 219.  Money can be converted "only if the

18   defendant 'wrongfully received' the money or 'was under obligation to return the specific

19   money to the party claiming it.'"  *Davenport v. Wash. Educ. Ass'n*, 197 P.3d 686, 695

20

21       [5] Plaintiffs' proposed amendments with respect to Happy Hour Media Group include

"additional information regarding [its] role in the alleged conspiracy and negligent

22   misrepresentation."  (MTA Reply at 8.)

1  (Wash. Ct. App. 2008) (quoting *Pub. Util. Dist. of Lewis County v. Wash. Pub. Power*

2  *Supply Sys.*, 705 P.2d 1195, 1211 (Wash. 1985)).  A claim for conversion of money is

3  possible only where the money is "is capable of being identified, as when delivered at

4  one time, by one act and in one mass, or when the deposit is special and the identical

5  money is to be kept for the party making the deposit, or when wrongful possession of

6  such property is obtained." *Brown ex rel. Richards v. Brown*, 239 P.3d 602, 610 (Wash.

7  Ct. App. 2010) (quoting *Westview Invs., Ltd. v. U.S. Bank Nat'l Ass'n*, 138 P.3d 638, 646

8  (Wash. Ct. App. 2006)).)

9          Defendants argue that Plaintiffs' proposed amendments are futile because

10  Plaintiffs' own allegations show "that Reed Hein *mixed* customer funds with other

11  money, and treated these comingled funds as general revenue, *before* ever paying money

12  to the Lampo Defendants."  (MTA Resp. at 9 (citing Prop. Am. Compl. ¶¶ 135, 236).)

13  They cite *Brown ex rel. Richards v. Brown* for the proposition that "it is impossible to

14  identify '*specific*' and '*identical*' money belonging to Plaintiffs, and subsequently

15  received by the Lampo Defendants."  (*Id.* (citing *Brown*, 239 P.3d at 610).)  Plaintiffs

16  counter that (1) *Brown* did not use the word "specific" in listing the ways money is

17  "capable of being identified," (2) they make no allegation that Reed Hein commingled

18  the funds it was supposed to be holding in trust for Plaintiffs with other funds, and (3)

19  even if they did, their claim nevertheless survives because *Brown* involved comingled

20  funds and a transfer of those funds to a third party.  (MTA Reply at 5-6.)

21          The court agrees with Plaintiffs.  *Brown* involved reverse mortgage proceeds

22  belonging to the plaintiff that the plaintiff's son had wrongfully transferred from a joint

1   bank account to his own personal account, which already had funds in it.  *Brown*, 239

2   P.3d at 610.  The son then transferred $20,000 from his account to his girlfriend's

3   personal bank account, which also already had funds in it.  *Id.*  The Washington Court of

4   Appeals reversed the trial court's grant of summary judgment to the plaintiff on her

5   conversion claim against the girlfriend, concluding that "reasonable minds could differ"

6   on whether the girlfriend's "retention of the $20,000 constitutes an intentional and

7   wrongful exercise of dominion and control over it."  *Id.*

8       In so holding, the Washington Court of Appeals noted that "a substantial portion"

9   of the $20,000 transfer was identifiable because this sum was far greater than the original

10  balances in the plaintiff's joint account with her son and the son's personal account.

11  *Id.* n.23.  Thus, "even assuming that [the son] used non-equity funds first" when

12  transferring the $20,000 to his girlfriend, the difference between the $20,000 and the

13  original bank balances was identifiable loan proceeds.  *Id.*  As a result, Plaintiffs are

14  correct that even if Reed Hein commingled their money with other funds, a conversion

15  claim may nevertheless proceed if Plaintiffs can show that money that Reed Hein was

16  supposed to hold in trust but instead transferred to Defendants remains identifiable.[6]

17

18      ⁶ Defendants cite *SPUS8 Dakota LP v. KNR Contractors LLC*, 641 F. Supp. 3d 682, 700

19  (D. Ariz. 2022), for the proposition that "as a matter of blackletter Washington law, money is not identifiable chattel subject to conversion where an initial converter 'failed to segregate the

20  specific amounts.'"  (MTA Resp. at 9.)  Contrary to Defendants' assertion, that case applies Arizona law and cites only Arizona cases.  *See SPUS8 Dakota*, 641 F. Supp. 3d at 700-01.  Thus, it is not authority for "blackletter Washington law."  In any event, *SPUS8 Dakota* makes clear

21  that "money can be the subject of a conversion claim if the money 'can be described, identified, *or* segregated."  *Id.* (quoting *Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087,

22  1098 (D. Ariz. 2021) (emphasis added)).

ORDER - 12

1    Because this is a question of fact that cannot be resolved at this stage of the proceedings,

2    the court grants Plaintiffs' motion to amend their complaint to assert a claim for

3    conversion.

4              b.    *Constructive Trust*

5              Plaintiffs also seek leave to amend their complaint to allege a new claim against

6    all Defendants for constructive trust.  (MTA at 3-4; Prop. Am. Compl. ¶¶ 244-48; *see*

7    *also id.* ¶¶ 106, 111-14, 135.)  The court denies this request.

8              The court agrees with Defendants that Plaintiffs cannot plausibly allege a claim for

9    constructive trust because a constructive trust is a remedy, rather than a substantive

10   claim, and thus amendment would be futile.  (*See* MTA Resp. at 7-8.)  The Washington

11   Court of Appeals recently held, in an unpublished case,[7] that "a constructive trust is a

12   remedy, not a substantive claim" and affirmed dismissal of a constructive trust claim

13   where the petitioner did not "allege sufficient facts to establish a substantive claim that

14   could support the remedy."  *In re Rule*, 23 Wash. App. 2d 1005, No. 83097-0-1, 2022

15   WL 3152591 at *2-*3 (Wash. Ct. App. Aug. 8, 2022) (unpublished) (citing *In re Gilbert*

16   *Miller Testamentary Credit Shelter Tr. v. Estate of Miller*, 462 P.3d 878, 883 (Wash. Ct.

17   App. 2020)); *see also id.* at *3 (holding that petitioner did not state a claim for unjust

18   enrichment because she failed to allege a benefit conferred on the defendant by the

19

20   ⎯⎯⎯⎯⎯⎯⎯⎯⎯

21       [7] Although unpublished opinions of the Washington Court of Appeals "have no
     precedential value and are not binding upon any court," they "may be accorded such persuasive
     value as the court deems appropriate."  Wash. Gen. Rule GR 14.1; *see also Emps. Ins. of Wausau*
22   *v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) ("[W]e may consider
     unpublished state decisions, even though such opinions have no precedential value.").

1  plaintiff).  The court disagrees with Plaintiffs' assertion that it should follow two of its

2  prior decisions in which it denied motions to dismiss stand-alone constructive trust

3  claims:  *Woodell v. Expedia Inc.*, No. C19-0051JLR, 2019 WL 3287896, at *12-13 (W.D.

4  Wash. July 22, 2019); and *Aventa Learning, Inc. v. K12 Inc.*, No. C10-1022JLR, 2011

5  WL 13100748, at *10 (W.D. Wash. Mar. 28, 2011).  (*See* MTA Reply at 6-7.)  These

6  cases pre-date *In re Rule*, and the court is persuaded by the Washington Court of

7  Appeals's unequivocal statement in that decision that "[n]o authority . . . supports the

8  position [that] a constructive trust is a substantive cause of action, rather than an

9  equitable remedy."  *In re Rule*, 2022 WL 3152591, at *2.  Therefore, the court denies

10  Plaintiffs' motion to amend their complaint to add a stand-alone constructive trust claim.

11         c.     *Additional Allegations*

12         Finally, Plaintiffs also seek leave to add new allegations regarding Defendants'

13  record-keeping related to customer referrals to Reed Hein "to support the plausibility of

14  class certification" and to correct typographical and formatting errors.  (MTA at 3-4;

15  MTA Reply at 7-8; *see* Prop. Am. Compl. ¶¶ 145-53 (record-keeping allegations).)

16  Defendants respond only that Plaintiffs' proposed factual amendments are unnecessary if

17  the court denies Plaintiffs leave to add or amend their claims.  (MTA Resp. at 1 n.1.)

18  Because nothing in the record demonstrates that Plaintiffs' proposed amendments are in

19  bad faith, unduly delayed, prejudicial to Defendants, or futile, *see Allen*, 911 F.2d at 373.

20  the court grants Plaintiffs leave to amend to add allegations regarding record-keeping and

21  to correct errors.

22

1

### IV.    CONCLUSION

2          For the foregoing reasons, the court DENIES Plaintiffs' motion for

3    reconsideration (Dkt. # 38) and GRANTS in part Plaintiffs' motion to amend (Dkt. # 40).

4    The court DENIES Plaintiffs' request for leave to amend their unjust enrichment claim

5    and to add a stand-alone claim for constructive trust.  The court GRANTS Plaintiffs'

6    request for leave to amend (1) with respect to their claims against Happy Hour Media

7    Group, (2) to add a claim for conversion against all Defendants, (3) to add new factual

8    allegations regarding Defendants' record-keeping, and (4) to address typographical and

9    formatting errors.  Plaintiffs shall file an amended complaint that complies with this order

10   by no later than **December 15, 2023**.

11         Dated this 5th day of December, 2023.

12

13   _____

14   JAMES L. ROBART
     United States District Judge

15

16

17

18

19

20

21

22

ORDER - 15