THE HONORABLE JAMES L. ROBART

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

ANNA PATRICK, ET AL., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

DAVID L. RAMSEY, III, individually; HAPPY HOUR MEDIA GROUP, LLC, a Washington limited liability company; THE LAMPO GROUP, LLC, a Tennessee limited liability company,

Defendants.

Case No.: 2:23-cv-00630 JLR

**DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S RENEWED MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

**NOTED ON MOTION CALENDAR:**

**JANUARY 26, 2024**

11

12

13

14

15

16

17

18    //

19    //

20    //

21

22

23

24

25

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 1

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................... 4

II. FACTUAL BACKGROUND .................................................................................. 5

   A.     The Plaintiffs are prohibited from executing or enforcing any judgment against Happy Hour by the judgement in the *Adolph* matter. ............................................. 5

      1.     The Plaintiffs and all others in the proposed class are members of the *Adolph* class.   5

      2.     As members of the *Adolph* class, the Plaintiffs and all members of the proposed class have settled their claims against Reed Hein and Mr. Reed. ...................... 6

      3.     The basis for the *Adolph* settlement was Reed Hein's and Mr. Reed's limited assets.   7

      4.     In the *Adolph* case, the plaintiffs acknowledged that one asset that would remain to Mr. Reed after settlement was Happy Hour. ...................................... 7

      5.     The *Adolph* Court entered judgment prohibiting members of the *Adolph* class from recovering any funds from Brandon Reed's assets. ................................... 8

      6.     In this lawsuit, members of the *Adolph* class are seeking to obtain and enforce a judgment against Brandon Reed's asset Happy Hour. ................................... 8

   B.     The Amended Complaint contains few allegations against Happy Hour. .................. 9

      1.     The Amended Complaint does not allege deceptive conduct by Happy Hour. 11

      2.     The Amended Complaint does not allege that Plaintiffs' money is in Happy Hour's hands. ................................................................................................... 11

III. ARGUMENT AND AUTHORITIES ................................................................... 12

   A.     Relief cannot be granted to the Plaintiffs because the *Adolph* judgment prohibits plaintiffs from executing or enforcing any judgment against Happy Hour. ....................... 12

      1.     The Court may consider the records of the *Adolph* case when deciding this Motion.   12

      2.     The Plaintiffs are bound by the *Adolph* Judgment. ......................................... 13

      3.     The *Adolph* Judgment prohibits the *Patrick* class from stating a claim upon which relief can be granted because it renders this matter moot. .................................... 15

      4.     Plaintiffs are judicially estopped from asserting that Happy Hour is not an asset of Brandon Reed. ................................................................................................ 16

   B.     The Amended Complaint fails to state a claim against Happy Hour because it does not allege sufficient factual content to support a claim that is plausible on its face. .......... 17

      1.     Plaintiffs do not state a plausible claim for violations of the Consumer Protection Act because they do not allege any interactions between Happy Hour and consumers or any unfair or deceptive act by Happy Hour. ............................................... 18

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 2

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1

2.      The Amended Complaint does not state a plausible claim for negligent misrepresentation because it does not allege any misrepresentation by Happy Hour. ...... 21

2

3.      The Plaintiffs' allegation of a "deal" cannot support a plausible Conspiracy claim.    22

3

4.      Plaintiffs have failed to plead sufficient facts to support a claim for conversion. 23

4

5

C.      Plaintiffs' claims should be dismissed because they are barred by applicable statutes of limitations. ................................................................................................. 26

6

IV. CONCLUSION ............................................................................................. 28

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 3

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## I. INTRODUCTION

The Amended Complaint identifies the Plaintiffs as customers of Reed Hein & Associates ("Reed Hein") and focuses on the alleged conduct of Reed Hein and its owner, Brandon Reed. The Amended Complaint mentions that a class of customers already brought their claims against Reed Hein and Brandon Reed in the *Adolph* lawsuit.[1] But it does not admit that the Plaintiffs were members of that class, that in *Adolph* they agreed that they "will never execute upon or attempt to enforce any judgment against the assets of" Brandon Reed, or that Happy Hour is an asset of Brandon Reed. Because the settlement and resulting judgment in *Adolph* prohibit Plaintiffs from recovering anything from Happy Hour, the Plaintiffs cannot state a claim upon which relief can be granted against Happy Hour.

In addition to being legally barred, the claims against Happy Hour do not rise to the level of plausibility required in a federal court complaint. In all its dozens of pages, the Amended Complaint contains only fourteen paragraphs that make substantive allegations against Happy Hour. Together, those paragraphs allege that Happy Hour acted as an intermediary for payments between Reed Hein and the Ramsey Defendants (Dave Ramsey and the Lampo Group), that Reed Hein and Happy Hour "struck a deal" to have the Ramsey Defendants mislead people, and the Happy Hour created advertising for Reed Hein. The Amended Complaint does not allege any substance, details, or factual matter identifying the terms of the supposed deal with Ramsey or allege that Happy Hour generated any false claims about Reed Hein. The scanty allegations against Happy Hour are devoid of specifics and cannot support any of Plaintiffs' three causes of action.

Plaintiffs' new cause of action for conversion is barred against Happy Hour because Plaintiffs' allegations are that Reed Hein took in over $200,000,000 and that the funds from Plaintiffs were less than 0.058% of that total. There is no allegation in the Amended Complaint

---

[1] Dkt. 55 at ¶ 107.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 4

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

about how much money was paid to Happy Hour or any allegation suggesting that any of the money paid to Happy Hour could possibly be identified as having come from the small fraction of Reed Hein funds supplied by Plaintiffs.

Finally, Plaintiffs' claims are time-barred. The Ramsey Defendants previously moved to dismiss based in part on the statute of limitations. The Court denied that motion under the discovery rule because of the possibility that Plaintiffs might not have known of Reed Hein's misconduct until the last few years. But in the Amended Complaint, the Plaintiffs allege that Reed Hein's alleged misconduct was public knowledge as early as 2015, eviscerating their own discovery rule argument.

Happy Hour respectfully requests that the Court dismiss the claims against it with prejudice.

## II. FACTUAL BACKGROUND

**A.     The Plaintiffs are prohibited from executing or enforcing any judgment against Happy Hour by the judgement in the *Adolph* matter.**

### 1.     The Plaintiffs and all others in the proposed class are members of the *Adolph* class.

The Amended Complaint focuses on the business practices of Reed Hein, a timeshare exit company, and its owner, Brandon Reed.[2] Reed Hein and Mr. Reed were defendants in the class action lawsuit *Adolph v. Reed Hein & Associates et al.*, filed by the Albert Law Firm, which represents the Plaintiffs in this action.[3] On October 25, 2022, the *Adolph* court certified the following class:

---

[2] *See, e.g.*, Dkt. No. 55 at ¶¶81–114.

[3] *Adolph* Dkt. No. 1, Lovejoy Decl. Ex. 1 ("*Adolph* Dkt." refers to *Adolph v. Reed Hein & Associates et al.*, United States District Court, Western District of Washington, Case No. 2:21-cv-01378-BJR). Copies of cited documents from *Adolph* are attached to the Declaration of Jack M. Lovejoy ("Lovejoy Decl."), filed herewith.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 5

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1

2

> All persons who paid fees to Reed Hein for services to terminate their timeshare obligations, except those persons who received refunds of the fees that they paid.[4]

3

4

5

6

As in the *Adolph* case, the Plaintiffs here all allege that they are persons who paid fees to Reed Hein for services to terminate their timeshare obligations.[5] They all allege that they have suffered damages from paying those fees, implying that they have not received refunds.[6] The purported class in this lawsuit is:

7

8

9

> All individuals who, during the applicable statute of limitations, paid money to Reed Hein and Time Share Exit Team for the purpose of obtaining an "exit" from their timeshare obligations after being exposed to, and/or in reliance on, the statements and other representations made by Dave Ramsey, and the Lampo Group.[7]

10

This proposed class is a subset of the *Adolph* class.

11

12

    **2.**    **As members of the *Adolph* class, the Plaintiffs and all members of the proposed class have settled their claims against Reed Hein and Mr. Reed.**

13

14

15

16

    On December 30, 2022, the *Adolph* Court preliminarily approved a class-wide settlement.[8] On May 19, 2023, the *Adolph* Court entered its final approval of the settlement.[9] On June 15, 2023, the *Adolph* Court entered a final Confession of Judgment and Judgment with Covenant Not to Execute based on the parties' settlement.[10] None of the Plaintiffs opted out of the class.[11]

17

18

19

20

21

22

23

24

25

---

[4] *Adolph* Dkt. No. 23, Lovejoy Decl. Ex. 23 at 2:5-7.

[5] Dkt. No. 55 at ¶ 16-66.

[6] Dkt. No. 55 at 52:1 (requesting monetary damages pursuant to the CPA).

[7] Dkt. No. 55 at ¶ 210.

[8] *Adolph* Dkt. No. 27, Lovejoy Decl. Ex. 27.

[9] *Adolph* Dkt. No. 43, Lovejoy Decl. Ex. 43.

[10] *Adolph* Dkt. No. 45, Lovejoy Decl. Ex. 45.

[11] *Adolph* Dkt. No. 38, Lovejoy Decl. Ex. 38, at ¶ 12 (listing all those who opted out).

### 3. The basis for the *Adolph* settlement was Reed Hein's and Mr. Reed's limited assets.

The settlement of the *Adolph* case did not involve a cash payment.[12] Instead, Reed Hein and Mr. Reed assigned to the *Adolph* class all of the claims that they had against various third parties, including insurers, law firms, and Reed Hein's other founder, Trevor Hein, and agreed to various forms of cooperation with the class.[13] The *Adolph* plaintiffs' asked the Court to approve the settlement in part due to the fact that Reed Hein and Mr. Reed had few assets remaining.[14]

### 4. In the *Adolph* case, the plaintiffs acknowledged that one asset that would remain to Mr. Reed after settlement was Happy Hour.

In support of the *Adolph* plaintiffs' argument that Reed Hein and Mr. Reed had limited assets, Plaintiffs filed a declaration of their attorney, Gregory Albert ("Albert Declaration").[15] The Albert Declaration described how he had examined documentation of the assets of Reed Hein and Mr. Reed on several occasions.[16] The Albert Declaration discussed the assets being assigned in the settlement and noted that "<u>Mr. Reed has a fifty percent interest in Happy Hour Media Group, LLC.</u>"[17] which was not assigned to the *Adolph* class in the settlement.[18]

In support of their preliminary motion for class settlement approval, the *Adolph* plaintiffs submitted a Declaration of Brandon Reed, which explicitly noted that aside from assets he was assigning in the settlement, he had no substantial assets other than "[a] 50%

---

[12] *Adolph* Dkt. No. 25-1, Lovejoy Decl. Ex. 25-1.

[13] *Id.* at II(4-16).

[14] *Adolph* Dkt. No. 24 at 2:15–23 and Dkt. 25 at ¶¶ 23-26, Lovejoy Exs. 24 and 25.

[15] *Adolph* Dkt. No. 25, Lovejoy Decl. Ex. 25.

[16] *Id.* at ¶ 23

[17] *Id.* (emphasis added).

[18] *Adolph* Dkt. 25-1, Lovejoy Decl. Ex. 25-1; *Adolph* Dkt. No. 25, Lovejoy Decl. Ex. 25 at II (4-16).

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 7

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1  ownership interest in Happy Hour Media Group LLC" and an overdue receivable on a loan.[19]

2  The *Adolph* plaintiffs' briefing explained:

3       Mr. Reed's remaining net worth is minimal. Mr. Reed has a fifty percent
        interest in Happy Hour [], which has $1,489,966.90 in equity but $1,624,028 in
4       debt. The only other substantial asset Mr. Reed has is an "overdue" account
        receivable for $623,730 for a loan to Trevor Hein that Mr. Hein has declined to
5       pay.[20]

6

7  Based on the submissions by plaintiffs, including the declarations of Mr. Albert and Mr. Reed,

8  the *Adolph* court approved the parties' settlement agreement.[21]

9       **5.**    **The *Adolph* Court entered judgment prohibiting members of the *Adolph***
              **class from recovering any funds from Brandon Reed's assets.**
10

11         As part of the *Adolph* settlement, Reed Hein and Brandon Reed entered into a

12  Confession of Judgment in the amount of $630,187,204.[22] In exchange for the consideration

13  provided to the *Adolph* class, including the assigned claims and the Confession, the *Adolph*

14  class requested and the Court entered a final judgment that provided that the class "**will never**

15  **execute upon or attempt to enforce <u>any judgment</u> against the assets of the Defendant**

16  **Parties**."[23]

17       **6.**    **In this lawsuit, members of the *Adolph* class are seeking to obtain and**
              **enforce a judgment against Brandon Reed's asset Happy Hour.**
18

19         Despite the *Adolph* Court's prohibition on attempting to execute or enforce a judgment

20  against Brandon Reed's assets, the Plaintiffs in this lawsuit, all of whom are *Adolph* class

21  members, are seeking to obtain and enforce a judgment against Happy Hour. Plaintiffs in this

22  

23       [19] *Adolph* Dkt. No. 26 at ¶ 2, Lovejoy Decl. Ex. 26.

23       [20] *Adolph* Dkt. No. 24 at 2:16-19 (internal citations omitted).

24       [21] *Adolph* Dkt. No. 43, Lovejoy Decl. Ex. 43.

24       [22] *Adolph* Dkt. No. 45 at 5:16, Lovejoy Decl. Ex. 45.

25       [23] *Adolph* Dkt. Nos. 44, 44-1, 45 at 5:20-23 (emphasis added), Lovejoy Exs. 44, 44-1, and 45

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 8

**CORR CRONIN llp**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1    lawsuit are therefore pursuing an Amended Complaint that fail to state a claim upon which

2    relief may be granted against Happy Hour.

3    **B.    The Amended Complaint contains few allegations against Happy Hour.**

4        The Amended Complaint contains two-hundred forty-two (242) paragraphs of

5    allegations.[24] The following paragraphs do not attempt to state claims against Happy Hour:

6    - Paragraphs 1-15 give an overview of the parties and claims;

7    - Paragraphs 16-66 introduce the named plaintiffs and their interactions with Reed Hein

8       and defendant Dave Ramsey, and none of these paragraphs mentions Happy Hour;

9    - Paragraphs 67-72 name and introduce the defendants again;

10   - Paragraphs 73-80 discuss jurisdiction and venue;

11   - Paragraphs 81-114 are allegations about Reed Hein;

12   - Paragraphs 123-130, 132, 133, 135-136, 138-144, 146, 148-149, 151-196 all attempt to

13      present the substance of Plaintiffs' claims, but none of them accuses Happy Hour of

14      anything;

15   - Paragraphs 197-209 repeat the substance of Paragraphs 16-66;

16   - Paragraphs 210-219 are procedural allegations about the propriety of a class action and

17      do not mention Happy Hour; and

18   - Paragraphs 220-242 recite the elements of Plaintiffs' causes of action in general terms.

19      While some of them refer to "Defendants" or actions "described above," none of them

20      mentions Happy Hour or identifies any specific alleged act of Happy Hour.

21   Only fourteen (14) paragraphs make any substantive allegations about Happy Hour (¶¶ 115–

22   122; 131; 134; 137; 145; 147; and 150).

23

24

25

---

[24] *See generally* Dkt. No. 55.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 9

1

The allegations against Happy Hour are:

2

- ¶ 115: "At all times since [May 2015], Happy Hour [] has acted as Reed Hein's marketing department, creating promotional materials and advertising for Reed Hein. Happy Hour created, promoted, or paid for all false advertisements described within this complaint."

3

4

5

- ¶¶ 116, 118, 121, 134: Happy Hour served as an intermediary who received money from Reed Hein to spend on marketing and paid some of that money, up to millions of dollars per year, to Dave Ramsey and/or the Lampo Group for advertising spots on Mr. Ramsey's programs.

6

7

8

- ¶¶ 119, 120, 137, 150:"Happy Hour [] drafted advertising and marketing content used by Reed Hein and its endorsers and advertisers, including the Lampo Group and Dave Ramsey. Happy Hour [] drafted or reviewed advertising scripts used by the Lampo Group and Dave Ramsey," "created, reviewed, and approved" internet marketing, advertisements, blog poses, or "other content on Reed Hein's website" and "advertising created by the Lampo Group and Dave Ramsey." The "least sophisticated consumer would not have understood that The Lampo Group had received compensation for broadcasting the advertisements." "Happy Hour [] reviewed and approved content on the Lampo Group's Ramsey Frontman webpages, including blog poses which included deceptive or misleading content and content regarding Reed Hein and its services."

9

10

11

12

13

14

15

16

- ¶ 117: Brandon Reed and Christopher Holcomb took all actions attributed to Happy Hour in the Complaint or instructed subordinates at Happy Hour to do so.

17

18

- ¶¶ 122, 131: "Reed Hein and Happy Hour [] struck a deal with the Lampo Group in which Dave Ramsey agreed to make false statements about Reed Hein to induce his followers to spend money on Reed Hein's illusory services;" "Ramsey promoted Reed Hein" and Ramsey and Reed Hein both made money as a result.

19

20

21

- ¶¶ 145, 147, 150: Happy Hour kept "records of Ramsey listeners referred to Reed Hein by The Lampo Group and Dave Ramsey."

22

23

24

25

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 10

### 1. The Amended Complaint does not allege deceptive conduct by Happy Hour.

The Amended Complaint does not allege that Happy Hour interacted with any plaintiff or class member. The Amended Complaint does not allege that Happy Hour itself generated any false claim about Reed Hein or knew or should have known that any claim Reed Hein made in advertising or through the Ramsey Defendants was false. The Amended Complaint does not explain what it means when it alleges that Reed Hein and Happy Hour "struck a deal" with the Lampo Group. The terms of this deal are not alleged. The manner in which the alleged deal was struck is not alleged. Happy Hour's supposed role in the striking of the deal is not alleged. From the allegations in the Amended Complaint, it appears that the deal was simply that Reed Hein would buy ad space on Ramsey's programs, Ramsey would be paid in part based on the number of customer referrals generated, and Happy Hour's role was simply to use money from Reed Hein to pay for that ad space.

### 2. The Amended Complaint does not allege that Plaintiffs' money is in Happy Hour's hands.

Plaintiffs' new allegations of conversion include: "Defendants knew or should have known that Reed Hein breached its fiduciary and statutory duties in respect to payments" and "converted customer funds by treating them as earned revenue." The Amended Complaint does not say how Happy Hour "knew" anything about Reed Hein's finances or why it "should have known." More importantly, the Amended Complaint does not say that Happy Hour is in possession of any money that came from Plaintiffs.

In *Adolph*, the Plaintiffs alleged that there were "over 34,000" paying customers of Reed Hein"[25] and Reed Hein took in over $200,000,000 in customer funds.[26] The Amended

---

[25] *Adolph* Dkt. No. 23 at 2:8–9, Lovejoy Decl. Ex. 23.

[26] *Adolph* Dkt. No. 24 at 5:4, Lovejoy Decl. Ex. 24.

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Complaint here alleges that Plaintiffs paid Reed Hein $115,818.70.[27] This is less than 0.058% of Reed Hein's alleged total customer revenue. There is no allegation about what Reed Hein paid to Happy Hour. There is no allegation that any funds paid to Happy Hour—which could have come from any portion of a pool of over $200,000,000—can be identified with or traced to the 0.058% of that pool that came from the Plaintiffs.

The Amended Complaint alleges that the limited substantive allegations about Happy Hour support causes of action for (1) Violation of the Washington Consumer Protection Act; (2) Negligent Misrepresentation; (3) Conspiracy; and (4) Conversion.[28]

### III. ARGUMENT AND AUTHORITIES

**A.    Relief cannot be granted to the Plaintiffs because the *Adolph* judgment prohibits plaintiffs from executing or enforcing any judgment against Happy Hour.**

Under Fed. R. Civ. P. 12(b)(6), this Court may dismiss a Complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) exists to weed out unmeritorious complaints. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 127 S. Ct. 1955 (2007). The Amended Complaint fails to state a claim against Happy Hour because the *Adolph* judgment precludes the Plaintiffs from obtaining or enforcing a judgment against any of Brandon Reed's assets, and Happy Hour is one of those assets. Because any judgment obtained by Plaintiffs in this matter would be unenforceable, no effective relief can be granted to the Plaintiffs.

**1.    The Court may consider the records of the *Adolph* case when deciding this Motion.**

A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). Judicially noticeable public records include the records of other

---

[27] Dkt. 55, ¶¶ 16, 22, 29, 34, 38, 41, 45, 49, 53, 56, 59, 62, 65. This amount may be inexact as Ms. Ryan alleges she paid "greater-than $5,000." *Id.* at ¶ 41.

[28] Dkt. 55 at ¶¶ 220–28; 234–42.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 12

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1   lawsuits. *Rosales-Martinez v. Palmer*, 753 F.3d 890, 894 (9th Cir. 2014); *Kipp v. Davis*, 971

2   F.3d 939 n. 2 (9th Cir. 2020); *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th

3   Cir. 2012) (the district court properly took judicial notice of "transcripts, letters, pleadings, and

4   other documents filed in an earlier case). Here, the Court may take judicial notice of the

5   Judgment and associated motions and declarations from the *Adolph* matter cited in this motion.

6       **2.    The Plaintiffs are bound by the *Adolph* Judgment.**

7       A judgment in a class action binds members of a class even if they were not named

8   parties to the class action. *Hansberry v. Lee*, 311 U.S. 32, 41, 61 S.Ct. 115 (1940). Moreover,

9   "[a] settlement agreement may preclude a party from bringing a related claim in the future even

10  though the claim was not presented and might not have been presentable in the class action."

11  *Marshall v. Northrop Grumman Corp.*, 469 F. Supp. 3d 942, 948–49 (C.D. Cal. 2020) (citations

12  and internal quotations omitted). A covenant not to sue in a class action settlement is

13  enforceable against members of the class, even if they were not named plaintiffs. *Skilstaf, Inc.*

14  *v. CVS Caremark Corp.*, 669 F.3d 1005 (9th Cir. 2012).

15      The Ninth Circuit decision in *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005

16  (9th Cir. 2012), demonstrates the preclusive effect of a covenant in a class action judgment.

17  Skilstaf, Inc. was an unnamed class member in a class action filed in Massachusetts federal

18  district court. *Id.* at 1007–08. The class consisted of third-party payors who reimbursed

19  consumers' purchases of certain prescription drugs. *Id.* at 1008. The defendants were a

20  wholesale drug distributor called McKesson, and First Data Bank. *Id.* The Massachusetts court

21  certified the class and provided notice to the class members and a right to opt-out of the class

22  settlement. *Id.* at 1009. The class settlement provided a release of defendants and affiliated

23  parties, as well as a covenant not to sue, which read: "All Releasers covenant and agree that

24  they shall not hereafter seek to establish liability against any Released Party or any other person

25  based, in whole or in part, on any of the Released Claims." *Id.* at 1009.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 13

At the fairness hearing, Skilstaf objected to the settlement, asking the Court to strike the words "or any other person" from the covenant not to sue. *Id.* at 1011. In response, McKesson argued that "the broad covenant not to sue was a critical part of the settlement because '[i]f all McKesson had was a release, it would remain exposed to claims for indemnification or contribution if plaintiffs filed new lawsuits against third parties based on the claims that McKesson had just settled.'" *Id.* at 1012. Skilstaf was given a second opportunity to opt out of the settlement agreement but declined to do so. *Id.* at 1012. The Massachusetts court entered a final judgment certifying a nationwide class action and approving the class settlement, including the covenant not to sue as originally worded, and Skilstaf received benefits from the settlement. *Id.* at 1013.

Separately from the Massachusetts class action, Skilstaf filed a lawsuit in the Northern District of California against CVS Caremark Corp. and other pharmacies who were not parties to the Massachusetts lawsuit. *Id.* at 1013–14. Skilstaf's claims were based on the same operative facts as the claims released in the Massachusetts class action. The California defendants successfully moved to dismiss Skilstaf's claims under Fed. R. Civ. P. 12(b)(6) "on the basis that they were precluded by the covenant not to sue that the Massachusetts court had approved as part of the [Massachusetts] settlement agreement[.]" *Id.* at 1013. The California court noted that the Massachusetts settlement prevented lawsuits against "any other person" based on released claims and that Skilstaf was a member of the Massachusetts class. *Id.* at 1014. "Describing Skilstaf's decision to remain in the class and accept its portion of the settlement proceeds as 'informed and strategic,' the court concluded that 'Skilstaf cannot now attempt to circumvent the limitations that attended those benefits.'" *Id.* The Ninth Circuit affirmed the California court's dismissal of Skilstaf's lawsuit. *Id.* at 1018–19.

Here, just as in *Skilstaf*, the Plaintiffs, who were members of the *Adolph* class, are bound by the covenants in the settlement and judgment approved by the *Adolph* Court. The *Adolph*

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 14

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

judgment says that the *Adolph* class members "will never execute upon or attempt to enforce <u>any judgment</u> against the assets of the Defendant Parties."[29] The Plaintiffs were on notice of the terms of the Judgment and had the opportunity to opt out of the settlement. The *Adolph* Court record, including the testimony of Plaintiffs' counsel, made it clear that Happy Hour was one of Mr. Reed's assets that would become off-limits as a result of the proposed Judgment. Just as in *Skilstaf*, the broad covenant not to enforce or execute <u>any</u> judgment against <u>any</u> asset of Mr. Reed was an important element of the settlement. As alleged in the Amended Complaint here, the attorney who represented the *Adolph* class and the Plaintiffs in this suit was engaged in serial lawsuits and arbitrations against Reed Hein and Mr. Reed. Without a broad covenant prohibiting all further attempts to collect Mr. Reed's dwindling assets, members of the class and their attorney could have simply continued to effectively sue Mr. Reed on the settled claims, which is exactly what the Plaintiffs are trying to do now. If the people who are now Plaintiffs in this lawsuit had intended to preserve their opportunity to seek to recover from Happy Hour or any other asset of Mr. Reed's, they could have objected to the proposed judgment's reference to "the assets of the Defendant Parties" or they could have opted out of the class. None of them did so.[30] The Plaintiffs and the proposed class in this lawsuit are therefore bound by the *Adolph* judgment's covenant not to execute or enforce any judgment against any asset of Mr. Reed, including Happy Hour.

### 3. The *Adolph* Judgment prohibits the *Patrick* class from stating a claim upon which relief can be granted because it renders this matter moot.

The covenant not to execute or enforce any judgment against Happy Hour necessarily renders the *Patrick* Complaint non-justiciable. *Wallingford v. Bonta*, ---F.4th---, No. 21-56292, 2023 WL 6153588 at *2, *7 (9th Cir. Sept. 21, 2023) (when effective relief can no longer be

---

[29] Dkt. 45, Lovejoy Decl. Ex. 45 at 5:20-23 (emphasis added).

[30] Dkt. 38, Lovejoy Decl. Ex. 38 at ¶ 12.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 15

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

granted, a dispute becomes moot and ceases to be a "case or controversy" for purposes of Article III). Any judgment that might be obtained against Happy Hour in this lawsuit would be worthless and moot because it could not be executed or enforced. Because there is no meaningful relief that can be granted to the Plaintiffs in this lawsuit, the Complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) with prejudice.

### 4. Plaintiffs are judicially estopped from asserting that Happy Hour is not an asset of Brandon Reed.

Plaintiffs are judicially estopped from denying the truth of the factual statements made on their behalf in the *Adolph* matter. Judicial estoppel is "an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (citation omitted). When considering whether to apply judicial estoppel, the court may consider (1) whether the party's later position is clearly inconsistent with its earlier position; (2) "whether the party has succeeded in persuading the court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled"; and (3) whether the party seeking to assert an inconsistent position would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–51, 121 S.Ct. 1808 (2001)). Judicial estoppel is "invoked not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts." *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993 (9th Cir. 2012) (internal quotations and citations omitted).

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 16

The *Adolph* plaintiffs submitted testimony and briefing urging the Court to approve the proposed settlement and confession of judgment in part because Mr. Reed is insolvent and Happy Hour is his only remaining meaningful asset.[31] That testimony and argument was submitted to the Court on behalf of all of the members of the *Adolph* class, including the Plaintiffs herein. It was presented by one of the same law firms representing the Plaintiffs in this matter. The *Adolph* class, including the Plaintiffs herein, benefitted from those representations by persuading the Court to approve the settlement and enter their requested judgment. The doctrine of judicial estoppel prevents the Plaintiffs from now denying that Happy Hour is an asset of Mr. Reed. Allowing the Plaintiffs to assert in this lawsuit that Happy Hour is <u>not</u> an asset of Mr. Reed's and to sidestep the covenant in the *Adolph* judgment would "impose an unfair detriment" on both Mr. Reed and Happy Hour, who are entitled to the few benefits Mr. Reed was able to negotiate in the *Adolph* settlement.

**B.    The Amended Complaint fails to state a claim against Happy Hour because it does not allege sufficient factual content to support a claim that is plausible on its face.**

Federal Rule of Civil Procedure 8(a) "demand[s] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). A claim has "facial plausibility" when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A complaint must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief. *Iqbal*, 556 U.S. at 678–79. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

---

[31] *Adolph* Dkt. No. 24 at 2:16-19, Lovejoy Decl. Ex. 24; *Adolph* Dkt. No. 25 at ¶¶ 23–24;, Lovejoy Decl. Ex. 25; *Adolph* Dkt. No. 26 at ¶ 2, Lovejoy Decl. Ex. 26.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 17

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint will not suffice "if it tenders 'naked assertion[s] devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 667 (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Nor is it enough that the complaint is "factually neutral," rather it must be "factually suggestive." *Twombly*, 550 U.S. at 557 n. 5.

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 557 (quotations omitted); *see also Somers v. Apple, Inc.*, 729 F.3d 953, 966 (9th Cir. 2013) (Supreme Court's insistence in *Twombly* "on specificity of facts is warranted before permitting a case to proceed into costly and protracted discovery").

### 1. Plaintiffs do not state a plausible claim for violations of the Consumer Protection Act because they do not allege any interactions between Happy Hour and consumers or any unfair or deceptive act by Happy Hour.

To plead a plausible claim for a violation of the Washington Consumer Protection Act ("WCPA"), Plaintiffs must allege, among other things, that Happy Hour engaged in an "unfair or deceptive act or practice" in trade or commerce. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986) (*citing* RCW 19.86).

Before examining Plaintiffs' allegations against Happy Hour, it is important to note that one premise of this lawsuit must be that Happy Hour is distinct from Reed Hein. If the Plaintiffs were to argue that Reed Hein and Happy Hour are one and the same, they would be even more blatantly violating the *Adolph* settlement and Judgment. Hence, the Amended Complaint's many allegations against Reed Hein cannot be read as allegations against Happy Hour. Instead,

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 18

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1   only the allegations specifically against Happy Hour can be considered when analyzing whether

2   the Amended Complaint states a plausible claim against Happy Hour. The allegations in the

3   fourteen substantive paragraphs discussing Happy Hour are insufficient, if believed, to establish

4   an unfair or deceptive act or practice by Happy Hour.

5          The first allegation against Happy Hour is that it was "act[ing] as Reed Hein's marketing

6   department."[32] The original Complaint alleged that Happy Hour was Reed Hein's "in house

7   marketing department," but Plaintiffs seem to have backed off of this characterization in light

8   of their settlement with Reed Hein. The Plaintiffs have not backed off far enough. If Happy

9   Hour is a department of Reed Hein, then Plaintiffs have already settled with Happy Hour in the

10  *Adolph* matter and this case must be dismissed. In any event, there is nothing unfair or deceptive

11  about being a marketing department, so this allegation contributes nothing to the WCPA claim.

12         The next allegation is that Happy Hour "created, promoted, or paid for all false

13  advertisements."[33] The Amended Complaint does not provide any factual content to explain

14  what it means by alleging that Happy Hour "created" or "promoted" advertisements. The

15  Plaintiffs do not allege that Happy Hour itself generated any allegedly false claims about Reed

16  Hein's services. All of the allegations in the Amended Complaint that attempt to actually

17  identify deceptive acts and the content of the deception accuse Reed Hein or the Ramsey

18  Defendants.[34] And when the Amended Complaint gets around to stating its WCPA claim, it

19  lists out a series of specific alleged actions by the Ramsey Defendants in connection with the

20  advertising of Reed Hein's services and says nothing about Happy Hour.[35] The only part of the

21  _____

22      [32] Dkt. No. 55 ¶ 115.

        [33] *Id*. ¶¶ 116, 118-121, 134, 137.

23      [34] *See generally* Dkt. No. 55.

24      [35] Dkt. No. 55 at ¶ 221 ("The Lampo Group, Dave Ramsey specifically committed the
    following unfair and deceptive trade practices, which harmed Reed Hein customers, and which
    affected the public interest…"). *See also id.* at ¶¶5-6, which preview the CPA claim and say nothing
25  about Happy Hour ("From 2015 to 2021, Reed Hein paid Dave Ramsey and the Lampo Group to make
    false claims and instruct Ramsey's faithful listeners to hire Reed Hein."); ¶ 6 ("Reed Hein made many

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S          **CORR CRONIN LLP**
RENEWED MOTION TO DISMISS AMENDED               1015 Second Avenue, Floor 10
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 19    Seattle, Washington 98104-1001
                                                Tel (206) 625-8600
                                                Fax (206) 625-0900

1    allegation against Happy Hour that identifies an identifiable act is the allegation that Happy

2    Hour "paid" for advertisements. Several parts of the Amended Complaint explain that Happy

3    Hour was simply an intermediary for Reed Hein to pay for ad space on Ramsey's programs.[36]

4    There is nothing unfair or deceptive about paying for ad space.

5         The next allegation against Happy Hour is that it acted through Brandon Reed and Chris

6    Holcomb.[37] This is not an allegation of unfair or deceptive acts. All limited liability companies

7    act through individuals.

8         The next allegation against Happy Hour is that it, along with Reed Hein, "struck a deal"

9    with Ramsey in which Ramsey agreed to make false statements.[38] The Plaintiffs do not allege

10   what the terms of this deal were. They do not allege that this deal involved Happy Hour doing

11   anything unfair or deceptive. They do not allege that the deal involved Happy Hour doing

12   anything other than acting as an intermediary for payments. The allegation of a "deal" is

13   precisely the sort of unadorned allegation—presumably added as a formulaic recitation of an

14   element of a claim for conspiracy—that is insufficient to make a claim plausible.

15        The final allegation is that Happy Hour kept records of customer referrals.[39] There is

16   nothing unfair or deceptive about keeping track of referrals, nor does the Amended Complaint

17   suggest that there is.

18        Because there are no allegations of unfair or deceptive acts or practices in trade or

19   commerce by Happy Hour the Amended Complaint does not state a plausible claim for violation

20

21

22   claims that any competent financial advisor with Dave Ramsey's knowledge and skill would know to
     be false").

23        [36] *Id.* at ¶¶ 116, 118, 121, 134.

24        [37] *Id.* at ¶ 117.

         [38] *Id.* at ¶¶ 121 and 131.

25        [39] *Id.* at ¶¶ 145, 147, 150.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 20

1   of the WCPA by Happy Hour. Count One of the Amended Complaint must therefore be

2   dismissed as it relates to Happy Hour.

3       **2.**     **The Amended Complaint does not state a plausible claim for negligent**

4                        **misrepresentation because it does not allege any misrepresentation by**
                     **Happy Hour.**

5         To make a claim for negligent misrepresentation, a plaintiff must show proof of seven

6   elements by clear, cogent, and convincing evidence. *Repin v. State*, 198 Wn. App. 243, 278,

7   392 P.3d 1174, 1191 (2017). Those elements are:

8         (1) the defendant supplied information for the guidance of another in his or her business

9   transactions;

10        (2) the information was false;

11        (3) the defendant knew or should have known that the information was supplied to guide

12  the plaintiff in his or her business transactions;

13        (4) the defendant was negligent in obtaining or communicating the false information;

14        (5) the plaintiff relied on the false information;

15        (6) the plaintiff's reliance was reasonable; and

16        (7) the false information proximately caused the plaintiff damages.

17        With respect to the first element, the section of the Complaint that states Count Two,

18  for Negligent Misrepresentation, says: "As alleged above, Defendants supplied representations

19  that were false for the guidance of Plaintiffs."[40] But nowhere "above" does the Amended

20  Complaint allege that Happy Hour supplied any statement or other representation for the

21  guidance of anyone. While the Amended Complaint refers generally to Happy Hour "creating"

22  advertising, it does not suggest that Happy Hour created or came up with any false claim about

23  Reed Hein.

24

      [40] Dkt. No. 55 at ¶ 225.

25

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 21

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1    With respect to the fourth element, the Amended Complaint provides the epitome of a

2    formulaic recitation: "The Defendants were negligent in obtaining and/or communicating the

3    false information."[41] Nowhere does the Amended Complaint allege any fact to suggest how or

4    why Happy Hour knew or should have known that information it received from Reed Hein

5    about Reed Hein's services was false. Nor do Plaintiffs allege that Happy Hour had any sort of

6    legal duty to vet the content of Reed Hein's claims.

7    With respect to the fifth through seventh elements, the Amended Complaint never

8    alleges that any plaintiff relied specifically on information supplied by Happy Hour, that it was

9    reasonable to rely on information from Happy Hour, nor that information from Happy Hour

10   caused a plaintiff to suffer damages. Instead, the Amended Complaint accuses Reed Hein and

11   the Ramsey Defendants of misleading and damaging the Plaintiffs.

12   Plaintiffs have failed to plead the basic elements of a claim for negligent

13   misrepresentation against Happy Hour. Therefore, Count Two of the Complaint should be

14   dismissed as it relates to Happy Hour.

15   **3.      The Plaintiffs' allegation of a "deal" cannot support a plausible
         Conspiracy claim.**

16

17   To establish a civil conspiracy, Plaintiffs "must prove by clear, cogent, and convincing

18   evidence that (1) two or more people combined to accomplish an unlawful purpose, or

19   combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered

20   into an agreement to accomplish the conspiracy." *All Star Gas, Inc., of Wash. v. Bechard*, 100

21   Wn. App. 732, 740, 998 P.2d 367 (2000). "Mere suspicion or commonality of interests is

22   insufficient to prove conspiracy." *Id.* (quoting *Wilson v. State*, 84 Wn. App. 332, 350–51, 929

23   P.2d 448 (1996)).

24

25

---

[41] *Id.* at ¶ 227.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 22

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Plaintiffs' claim for conspiracy is supported by only two conclusory and duplicative allegations. Plaintiffs allege that Reed Hein and Happy Hour "struck a deal with The Lampo Group in which Dave Ramsey agreed to make false statements about Reed Hein."[42] They also allege: "Ramsey struck a deal with Reed Hein and Happy Hour [] to generate tens of millions of dollars sending his followers to Reed Hein…Ramsey promoted Reed Hein by making untrue claims to his listeners."[43] Count Four of the Amended Complaint rephrases these allegations twice. First, it says: "[D]efendants agreed and collaborated together and with Reed Hein and its employees and officers and owners to accomplish the above by making deceptive statements to Reed Hein customers and Dave Ramsey listeners."[44] Next, Count Four says Defendants "agreed among themselves and with Reed Hein to make deceptive and fraudulent statements about the services Reed Hein provided to induce customers to pay money for Reed Hein *[sic]* services."[45]

These four iterations of the claim that Happy Hour was party to "a deal" are again "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555. The Complaint never alleges anything specific or concrete about what sort of "deal" Happy Hour allegedly struck or what Happy Hour's duties or benefits were in the deal. This allegation of a shapeless "deal" is exactly the sort "'naked assertion[s] devoid of 'further factual enhancement'" that cannot support a viable cause of action. *Iqbal*, 556 U.S. at 667 (citing *Twombly*, 550 U.S. at 557).

**4.      Plaintiffs have failed to plead sufficient facts to support a claim for conversion.**

The Court held in its Order granting Plaintiffs leave to amend their complaint that "Plaintiffs are correct that even if Reed Hein commingled their money with other funds, a

---

[42] Dkt. 55 at ¶ 122.

[43] *Id*. at ¶ 131.

[44] *Id.* at ¶ 234.

[45] *Id.* at ¶ 235.

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

conversion claim may nevertheless proceed if Plaintiffs can show that money that Reed Hein was supposed to hold in trust but instead transferred to Defendants remains identifiable."[46] The Amended Complaint does not include allegations that make it at all plausible that the named Plaintiffs will be able to identify any dollar in Happy Hour's possession as a dollar that came from them.

"Conversion is the unjustified, willful interference with a chattel which deprives a person entitled to the property of possession." *In re Marriage of Langham & Kolde*, 153 Wn.2d, 553, 564, 106 P.3d 212 (2005). Because money is fungible, a claim for conversion of money is possible only where the money is "capable of being identified, as when delivered at one time, by one act and in one mass, or when the deposit is special and the identical money is to be kept for the party making the deposit, or when wrongful possession of such property is obtained." *Brown ex rel. Richards v. Brown*, 157 Wn. App. 803, 818, 239 P.3d 602 (2010).

*Brown* provides a good example of a case where the facts allowed the money in the defendants' possession to be identified as the money that came from the Plaintiff. In *Brown*, the plaintiff, Dottie, claimed that her son Barry, who retained power of attorney over Dottie, misappropriated her money and wrongfully transferred some of it to his girlfriend Beverly Hogg. *Id.* at 807–12. Dottie received $150,080 from Wells Fargo, which transferred that amount of money to Dottie and Barry's joint bank account. *Id.* at 818–19. "Barry then immediately transferred $150,000 to his personal bank account, which had a balance of $9 before the transfer. That same day, he transferred $20,000 from his account to Hogg's personal bank account. Hogg's account balance was $491 before the transfer." *Id.* at 819. Dottie sued Barry, and also sued Hogg for conversion. Barry did not dispute that he misappropriated Dottie's money, and there was no dispute that Barry transferred money to Hogg. *Id.* The trial court dismissed Dottie's conversion claim against Hogg. Ultimately, the issue on appeal was whether

---

[46] Dkt. No. 53 at 12.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 24

the money transferred to Hogg was capable of being identified as Dottie's money for the purposes of the conversion claim. *See id.* at 818–19. The Court determined that an issue of fact existed as to whether the $20,000 transferred to Hogg could be identified as Dottie's money, noting that the very small beginning balances in Dottie and Barry's joint account, Barry's personal account, and Hogg's account made it possible to identify the large amount that moved through those accounts as the funds from Wells Fargo that belonged to Dottie. *Id.* at 820 n. 23.

While *Brown* involved a relatively large amount of the plaintiffs' money ($150,000) being comingled with an amount defendant's money only 0.006% its size ($9), this case involves the mathematical opposite of *Brown*. The allegation is that Plaintiffs' money was commingled with $200,000,000, of which Plaintiffs' money accounted for only 0.058%. Plaintiffs' allegations imply that some portion of that $200,000,000 was transferred by Reed Hein to Happy Hour, but they do not—and cannot—allege that there is any plausible way to identify the money that went from Reed Hein to Happy Hour as their money. The Amended Complaint suggests that to the extent any money was paid to Happy Hour, there is better than a 99.942% chance that the money did *not* come from the Plaintiffs.

Plaintiffs' theory is that because Reed Hein was allegedly obligated to hold their funds until services were complete and because services were never completed, any transfer of funds to Happy Hour or the Ramsey Defendants gives rise to a cause of action for conversion. The Plaintiffs do not allege that there is something about Happy Hour or the Ramsey Defendants— as opposed to other Reed Hein payees—that makes them particularly liable for conversion.[47] And the Amended Complaint does not allege that it is more likely that their money was used for advertising than for wages, office rent, janitorial services, health insurance or other

---

[47] The Plaintiffs do allege that Happy Hour and the Ramsey Defendants knew or should have known that Reed Hein had converted funds, but this is irrelevant as knowledge is not an element of a conversion claim. *Brown*, 157 Wn. App. at 820 ("proof of the [recipient's] knowledge or intent are not essential in establishing a conversion").

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 25

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

purposes. Hence, under Plaintiffs' theory of conversion, they (and all Reed Hein customers) have equally good claims for conversion against anyone who received any money from Reed Hein, including former employees, landlords, janitors, health insurance providers, and others. The "identification" requirement is meant to avoid having exactly this sort of absurd potential liability attach to every dollar in circulation. Because there is no plausible means to trace any particular money from Plaintiffs to Happy Hour, Plaintiffs have failed to state a claim for conversion.

**C.      Plaintiffs' claims should be dismissed because they are barred by applicable statutes of limitations.**

On August 10, 2023, the Ramsey Defendants moved to dismiss all claims of Robert and Samantha Nixon and Marylin Dewey and the negligent misrepresentation and civil conspiracy claims of Leisa Garrett, David and Rosemarie Bottonfield, Tasha Ryan, and Peter and Rachel Rollins on the ground that they were barred by the applicable statute of limitations.[48]

On October 12, 2023, the Court denied that portion of the Ramsey Defendants' motion.[49] The Court held that the plaintiffs did not and could not have known of their injury until Reed Hein had failed to perform at the end of their respective contracts, therefore the discovery rule applied.[50] *See Shepard v. Holmes*, 185 Wn. App. 730, 739, 345 P.3d 786 (2014) (discovery rule is applied where "injured parties do not, or cannot, know they have been injured"). The Court added that "[t]he [Ramsey] Defendants' argument that Plaintiffs either knew or should have known about Reed Hein's problems before April 28, 2019, or April 28, 2020, is not persuasive because whether Plaintiffs knew or should have known about complaints or litigation in 2017, 2018, or 2019 is not apparent on the face of the complaint."[51]

---

[48] *Id.* at 19–20.

[49] Dkt. No. 35 at 9–13

[50] *Id.*

[51] *Id.* at 13.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 26

1       Since the Court's ruling on the Ramsey Defendants' motion, Plaintiffs have amended

2   their original complaint. Two of the new allegations are:

3       • ¶ 93: "In November 2015, the Authorized Practice Committee of the
         North Carolina Bar . . . found probable cause to conclude that Reed
4         Hein's scheme and operations constituted the unauthorized practice of
          law. The Committee warned Reed Hein to cease those activities which
5         violated state law, including holding itself out as able to provide legal
          services. Meetings of the Authorized Practice Committee are public and
6         North Carolina Bar documents are public records."

7       • ¶ 177: "After the Authorized Practice Committee of the North Carolina
         Bar concluded that there was probable cause to believe Reed Hein's
8         activities constituted the unauthorized practice of law, Dave Ramsey
          continued to promote Reed Hein for money."

9

10  The purpose of these allegations is to establish that the Ramsey Defendants knew in 2015 that

11  Reed Hein was misrepresenting itself to the public. The Amended Complaint does not suggest

12  that the Ramsey Defendants had any particular knowledge of or reason to know of the

13  proceedings of the Authorized Practice Committee of the North Carolina Bar. Rather, Plaintiffs

14  allege that the Ramsey Defendants were on notice about Reed Hein because the public generally

15  knew of the Committee's findings.

16      If the allegations of the Amended Complaint as true, then Plaintiffs, as members of the

17  public, knew that Reed Hein was misrepresenting itself at or before the time they decided to

18  pay Reed Hein and did not need to wait to discover that they had been injured by giving Reed

19  Hein their money. Hence, the discovery rule did not extend their statutes of limitations. The

20  Plaintiffs' WCPA claims are governed by a four-year statute of limitations. RCW 19.86.120.

21  The claims for negligent misrepresentation, civil conspiracy, and conversion are governed by a

22  three-year statute of limitations. RCW 4.16.080(2). Plaintiffs filed this action on April 28, 2023.

23  All claims of Robert and Samantha Nixon and Marylin Dewey accrued before April 28, 2019,

24  and are therefore barred.[52] The negligent misrepresentation, civil conspiracy, and conversion

25
    ─────────────
    [52] Dkt. No. 55 ¶¶ 34, 49.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 27

1    claims of Leisa Garrett, David and Rosemarie Bottonfield, Tasha Ryan, and Peter and Rachel

2    Rollins accrued before April 28, 2020, and are therefore barred.[53]

3                                    **IV. CONCLUSION**

4         As alleged in the Amended Complaint, Plaintiffs' counsel has been suing Reed Hein for

5    years. The *Adolph* case was supposed to be the last Reed Hein lawsuit, with all customers (but

6    a few who opted out and are not Plaintiffs here) settling all claims for all times against Reed

7    Hein, Brandon Reed, and the assets of Reed Hein and Mr. Reed, including Happy Hour. But

8    this is just another case about Reed Hein, seeking to recover from Mr. Reed's assets. This

9    lawsuit defies not only the Plaintiffs' previous settlement with Mr. Reed, but this Court's

10   judgment in the *Adolph* case. That judgment prohibits any recovery from Happy Hour. With no

11   prospect of any recovery from Happy Hour, the Plaintiffs are unable to state any claim upon

12   which any effective relief can be granted against Happy Hour. Their effort to skirt the *Adolph*

13   judgment should end now.

14        For these reasons, and the Plaintiffs' failure to plead a plausible claim against Happy

15   Hour, Happy Hour respectfully requests that the Amended Complaint against it be dismissed

16   with prejudice.

17        DATED this 4th day of January, 2024.

18                                   This motion contains 7,383 words per LCR 7(e).

19                                   CORR CRONIN LLP

20                                   By: *s/ Jack M. Lovejoy*
21                                   Jack M. Lovejoy, WSBA No. 36962
                                     Maia R. Robbins, WSBA No. 54451
22                                   1015 Second Avenue, Floor 10
                                     Seattle, Washington 98104
23                                   Phone: (206) 625-8600
                                     jlovejoy@corrcronin.com
24                                   mrobbins@corrcronin.com

25
     ───────────────────
     [53] Dkt. No. 55 ¶¶ 29, 38, 41, 53.

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 28

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Attorneys for Defendant Happy Hour Media Group, LLC*

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 29

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2024, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*s/ Wen Cruz*
Wen Cruz

DEFENDANT HAPPY HOUR MEDIA GROUP, LLC'S
RENEWED MOTION TO DISMISS AMENDED
COMPLAINT - Case No.: 2:23-cv-00630 JLR - 30

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900