THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANNA PATRICK, DOUGLAS MORRILL, ROSEANNE MORRILL, LEISA GARRETT, ROBERT NIXON, SAMANTHA NIXON, DAVID BOTTONFIELD, ROSEMARIE BOTTONFIELD, TASHA RYAN, ROGELIO VARGAS, MARILYN DEWEY, PETER ROLLINS, RACHAEL ROLLINS, KATRINA BENNY, SARA ERICKSON, GREG LARSON, and JAMES KING, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

DAVID L. RAMSEY, III, individually; HAPPY HOUR MEDIA GROUP, LLC, a Washington limited liability company; THE LAMPO GROUP, LLC, a Tennessee limited liability company,

    Defendants.

Case No. 2:23-cv-00630

**PLAINTIFFS' OPPOSITION TO DEFENDANT HAPPY HOUR MEDIA GROUP'S MOTION TO DISMISS THE COMPLAINT**

**NOTED ON MOTION CALENDAR: JANUARY 26, 2024**

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT*
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

# TABLE OF CONTENTS

I.   INTRODUCTION ……………………………………………………...1

II.  STATEMENT OF FACTS RELEVANT TO DEFENDANTS' MOTION ………… 3

   a.  Defendant Happy Hour Media Group Was Not a Party to Any Adolph Settlement and the Adolph Class Did Not Release Any Potential Claims Against Happy Hour ………………………………………………………… 3

   b.  In the Adolph Case, Both Parties Stated Mr. Reed's Owned a Non-Controlling Stake in Happy Hour, not that Happy Hour as a Whole Was One of Mr. Reed's Assets………………………………………………………4

   c.  Mr. Reed Made No Effort to Inform the Adolph Court or Plaintiff's Counsel of His Newfound Reading of the Settlement Documents During the Adolph Settlement and Fairness Proceedings…………………….………..5

   d.  Happy Hour Participated in the Alleged Conspiracy by Acting as an Intermediary between the Ramsey Defendants and Reed Hein & Associates……..5

   e.  This Court Has Already Ruled on the Statute of Limitations Argument Advanced by Happy Hour………………………………………………………6

III. STANDARDS OF REVIEW ……………………………………………... 8

IV.  ARGUMENT ……………………………………………………………8

   a.  The Adolph Settlement Does Not Prevent Plaintiffs from Suing Happy Hour nor from Enforcing a Judgment Against It in This Case ………..………………. 8

     1.  Although Plaintiffs are also members of the Adolph class and are bound by the judgment in that case, Happy Hour was not a party to the settlement and claims against it were not released…………………………8

     2.  Judicial estoppel does not apply because the Adolph case resolved via settlement and, even if judicial estoppel applied, Happy Hour misrepresents what Plaintiffs would be estopped from asserting…………..12

     3.  Plaintiffs' claims against Happy Hour are not moot because, even if Plaintiffs could not enforce a judgment against Happy Hour, a judgment would still have value to the putative class as joint and several liability is available ……………………………...…………16

   b.  The Complaint alleges sufficient factual content to support Plaintiffs' claims against Happy Hour ……………………………………………… 17

     1.  Plaintiffs state a plausible claim for violations of the Consumer Protection Act because neither a transactional consumer relationship nor direct interactions are necessary for a Consumer Protection Act violation …………………………………………………… 17

     2.  Plaintiffs state a plausible claim for negligent misrepresentation because Happy Hour's alleged acts fulfill the elements as illustrated in the Restatement (Second) of Torts …...…………………………… 19

     3.  Plaintiffs state a plausible conspiracy claim because Happy Hour acted as an intermediary and channeled payments and information between the Ramsey Defendants and co-conspirator Reed Hein & Associates …………………………………….………………... 21

     4.  Plaintiffs state a plausible conversion claim because, as the court held when granting Plaintiffs' Motion to Amend, Brown supports a conversion claim here and the identifiability of

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page i
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

funds is a question of fact………………………………………………………..23
    c.  As the Court found when ruling on the Ramsey Defendants' Motion to
      Dismiss, the Plaintiffs' Claims Are Not Time-Barred ………………………….. 25
V.      CONCLUSION………………………………………………………………..27

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

## TABLE OF AUTHORITIES

**Cases**

*Alhadeff v. Meridian on Bainbridge Island, LLC*, 167 Wash. 2d 601 (Wash. Sup. Ct., 2009)..24

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009).....................................................................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..................................................................8, 22

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir., 1974) ...............................................14

*City of Kingsport, Tenn. v. Steel & Roof Structure, Inc.*, 500 F.2d 617 (6th Cir., 1974) ...........13

*Consulting Oversees Management, Ltd. v. Shtikel*, 150 Wash.App. 80 (Wash. Ct. App. Div. 1,
   2001)...................................................................................................................................24

*Corbit v. J.I. Case Co.*, 70 Wash.2d 522 (Wash. Sup. Ct. 1967) ..............................................21

*Davenport v. Washington Educ. Ass'n*, 147 Wash. App. 704 (Wash. Ct. App. Div. 2, 2008)...24

*Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595 (6th Cir., 1982) ...........................................12, 13

*ESCA Corp. v. KPMG Peat Marwick*, 135 Wash.2d 820 (Wash. Sup. Ct. 1998).....................20

*Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir., 1975) ..............................13

*Hangman Ridge Stables, Inc., v. Safeco Title Ins. Co.*, 105 Wash.2d 778 (Wash. Sup. Ct. 1986)
   .....................................................................................................................................17, 19

*Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wash.2d 59
   (Wash. Sup. Ct. 2007) .........................................................................................................19

*Kostantinidis v. Chen*, 626 F.2d 933 (D.C. Cir., 1980) ...........................................................13

*Lawyers Title Ins. Corp. v Baik*, 147 Wash.2d 536 (Wash. Sup. Ct. 2002) ..............................19

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940 (9th Cir. 2005) ....................8

*Maharaj v. Bankamerica Corp.*, 128 F.3d 94 (7th Cir., 1997)..................................................13

*Marriage of Langham*, 153 Wash.2d 553 (Wash. Sup. Ct., 2005)...........................................24

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE
COMPLAINT* - Page iii
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

1  *Matheny v. Unumprovident Corp.*, 594 F.Supp.2d 1212 (E.D. Wash., 2009) ..........................17

2  *Moore v. Thornwater Co. LP*, 155 Fed.Appx. 257 (9th Cir., 2005)...........................................16

3  *New Hampshire v. Maine*, 532 U.S. 742 (2001) .....................................................................12

4  *Panag v. Farmers Ins. Co. of Washington*, 166 Wash.2d 27 (Wash. Sup. Ct. 2009) ...............18

5  *Parker v. Anderson*, 667 F.2d 1204 (5th Cir. Unit A, 1982).....................................................13

6  *Patterson v. Stovall*, 528 F.2d 108 (7th Cir., 1976)..................................................................14

7  *Public Utility Dist. No. 1 of Lewis County v. Wash. Public Power Supply System*, 104 Wash.2d

8      353 (Wash. Sup. Ct., 1985) .................................................................................................24

9  *Skilstaf, Inc. v CVS Caremark Corp.*, 669 F.3d 1005 (9th Cir., 2012)......................................11

10  *StarKist Co. v. Washington*, 25 Wash.App.2d 83 (Wash. Ct. App. Div. 1, 2023) ....................16

11  *Telesaurus VPC, LLC v. Power*, 623 F.3d 998 (9th Cir. 2010)....................................................8

12  *Testo v. Rus Dumire Oldsmobile, Inc.*, 16 Wash. App. 39 (Wash. Ct. App. Div. 2, 1976) .......19

13  *U.S. v. C.I.T. Const. Inc. of Texas*, 944 F.2d 253 (5th Cir., 1991) .............................................13

14  *U.S. v. Hook*, 195 F.3d 299 (7th Cir., 1999)..............................................................................13

15  *Westview Investments v. U.S. Bank*, 113 Wash. App. 835 (Wash. Ct. App. Div. 1, 2006)........24

16  *Wilkinson v. Smith*, 31 Wash.App. 1 (Wash. Ct. App. Div. 3, 1981)..........................................17

17  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658 (9th Cir. 1998)........................8

18  *Young v. Katz*, 447 F.2d 431 (5th Cir., 1971).............................................................................14

19  **Statutes**

20  N.C. Gen. Stat. § 84-2.1 ...............................................................................................................7

21  N.C. Gen. Stat. § 84-37 .................................................................................................................7

22  N.C. Gen. Stat. § 84-4 ...................................................................................................................7

23  N.C. Gen. Stat. § 84-5 ...................................................................................................................7

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page iv
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

RCW 19.86.010(2) ........................................................................................................18

RCW 19.86.090 ............................................................................................................18

**Other Authorities**

Restatement (Second) of Torts § 552(1) ........................................................................20

Restatement (Second) of Torts, § 552 cmt. g ................................................................20

Restatement (Second) of Torts, § 552 cmt. h ................................................................20

Restatement (Second) of Torts, § 552 ills. 4 .................................................................20

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE*
*COMPLAINT* - Page v
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

## I.   INTRODUCTION

Defendant Happy Hour Media Group's ("Happy Hour") motion to dismiss should be denied.

First, Happy Hour argues that Plaintiffs' agreement not to execute the *Adolph* judgment against Brandon Reed's "assets" permanently exculpates any company in which he owns a partial stake from a lawsuit based on that company's own torts and statutory violations. That does not make sense. Executing the *Adolph* judgment against Brandon Reed's interest in Happy Hour is a very specific thing. It means seizing that interest, liquidating it, and using the proceeds to satisfy the judgment. It has nothing to do with suing Happy Hour as a standalone entity in a separate suit for its own violations. It has nothing to do with executing the judgment in that suit against *Happy Hour's* assets.

The premise of that argument is that Mr. Reed subverted the *Adolph* Court by silently dismissing a non-party without judicial review. The *Adolph* case was a class action. To get settlement approval, the parties had to disclose the details of the settlement so the Court could determine whether it was fair to the unnamed class members. Happy Hour was never a party to the *Adolph* case and there were no claims against it. When Judge Rothstein was standing in the shoes of the class to evaluate the settlement, Mr. Reed did not disclose any understanding that a non-party was being released from hypothetical future claims for no money. Had he done so, the Court might have questions why a profitable company with more than one-million dollars in assets was being released for zero consideration. Instead, Mr. Reed's own argument is that he avoided judicial scrutiny through an unusual interpretation about what it means to 'execute against an asset.' Although Defendant's motion to dismiss surveys all the ways in which Plaintiff's counsel acknowledged that Brandon Reed had an interest in Happy Hour,

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 1
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

nowhere does it show that Mr. Reed disclosed to Plaintiff's counsel or Judge Rothstein that Happy Hour was being dismissed from claims that were never alleged based on its own standalone violations.

This is an action against Happy Hour seeking recovery from *Happy Hour's* assets for *Happy Hour's* torts, not Brandon Reed's assets for Brandon Reed's torts. Happy Hour argues that its assets are protected from any potential action by class members because its part-owner protected *his personal assets* as part of a settlement agreement in a different case with different facts, different claims, and different causes of action. That argument should fail.

Second, Happy Hour argues that Plaintiff failed to state four causes of action for a variety of reasons. Those arguments should fail. Happy Hour's argument against the CPA violations should fail because neither a transactional consumer relationship nor direct interactions are necessary for a Consumer Protection Act violation. Its argument against negligent misrepresentation should fail because case law holds neither knowledge nor interaction among the parties is necessary for negligent misrepresentation to occur. Its argument that the conspiracy claim does not meet the *Twombly* standard ignores the fact that Plaintiffs specifically alleged the nature of the contractual relationship, the nature of the fraud, Happy Hour's knowledge of the fraud, and the specific benefits it received. Its argument against conversion should fail because it ignores the holding of *Brown* and fails to distinguish between third-parties who innocently received Plaintiffs' money and those who wrongfully received it.

Third, Happy Hour's statute-of-limitations argument should fail. Except for issues the Court already ruled upon, Happy Hour's lone argument is that the North Carolina Bar Association publicly found Reed Hein was practicing law without a license in 2015. That might

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 2
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

be a relevant consideration for Mr. Ramsey to consider, but it does not give Plaintiffs or class members notice of the various breaches, misrepresentations, and damages alleged in this suit.

## II.    STATEMENT OF FACTS RELEVANT TO DEFENDANT'S MOTION

### a.    Defendant Happy Hour Media Group Was Not a Party to Any *Adolph* Settlement and the *Adolph* Class Did Not Release Any Potential Claims Against Happy Hour

Defendant Happy Hour Media Group was not a party in the *Adolph* case. *See Adolph* Dkt. 1.[1] At no point did it seek to intervene in or participate in that case. Albert Decl., ¶¶ 2-4. It was not a party to the settlement agreement which resolved that case. *See Adolph* Dkt. 41-1; *Adolph* Dkt. 41-2. No one signed or negotiated the agreement acting on Happy Hour's behalf. *Adolph* Dkt. 41-1; *Adolph* Dkt. 41-2; Albert Decl., ¶ 3.

The *Adolph* settlement agreement was between the *Adolph* class and Brandon Reed, Reed Hein & Associates LLC, and Makaymax LLC. *Adolph* Dkt. 41-1; *Adolph* Dkt. 41-2. Mr. Reed signed the agreement in his personal capacity and as an officer of Reed Hein & Associates and Makaymax. *Adolph* Dkt. 41-1 at p. 10-11. Similarly, the Confession of Judgment and Judgment with Covenant Not to Execute in the *Adolph* case was signed by the class representatives and Mr. Reed, acting in his personal capacity and on behalf of Reed Hein & Associates and Makaymax. *Adolph* Dkt. 41-2 at p. 9. Happy Hour is not named or mentioned in either document. Happy Hour is also not mentioned in the *Adolph* complaint and no legal claims or factual allegations were levelled against it in that case. *See Adolph* Dkt. 1. Finally,

---

[1] Following the naming convention established in Happy Hour's Motion to Dismiss, references to "*Adolph* Dkt. ____" refer to the record of *Adolph v. Reed Hein & Associates et al.*, United States District Court, Western District of Washington, Case No. 2:21-cv-1378-BJR. Copies of the documents referenced herein are, for convenience, attached to the Declaration of Gregory W. Albert, filed contemporaneously with this opposition.

*PLTFFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 3
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

Happy Hour is not mentioned in settlement notification documents approved by the *Adolph* court, including the email notice, long-form notice, or short-form notice. *See Adolph* Dkt. 25-3 (email notice), *Adolph* Dkt. 23-4 (long-form notice), *Adolph* Dkt. 23-5 (short-form notice), *Adolph* Dkt. 27 (order approving notice forms).

The *Adolph* settlement documents explicitly describe which claims the *Adolph* class released, as do the notices approved by the *Adolph* court. The settlement documents state that the defendants are not released from liability and instead that they shall have a judgment against them. *Adolph* Dkt. 41-2. Further, the documents restrict against which assets the *Adolph* Class can execute that judgment. *Adolph* Dkt. 41-2. The documents prevent the *Adolph* Class from executing or enforcing a judgment against the assets of the *Adolph* defendants. *Adolph* Dkt. 41-2. It does not define "assets." *Adolph* Dkt. 41-2. Ultimately, the agreement restricts the ability of the *Adolph* class to enforce a judgment against assets personally held by Mr. Reed and those held by Reed Hein & Associates and Makaymax, but does not restrict the ability of the *Adolph* Class and its members to seek and enforce judgments against third-parties like Happy Hour.

**b. In the *Adolph* Case, Both Parties Stated Mr. Reed's Owned a Non-Controlling Stake in Happy Hour, not that Happy Hour as a Whole Was One of Mr. Reed's Assets.**

The *Adolph* Plaintiffs and their counsel stated that Mr. Reed's fifty percent ownership interest in Happy Hour was one of Mr. Reed's assets. *Adolph* Dkt. 24, 2:16-17 ("Mr. Reed has a fifty percent interest in Happy Hour Media Group LLC"); *Adolph* Dkt. 25, ¶ 23 ("Counsel for Reed Hein and Brandon Reed have shown me Brandon Reed's . . . finances . . . The disclosures showed that Mr. Reed has a fifty percent interest in Happy Hour Media Group LLC"). Mr. Reed agreed, stating that his assets included a non-controlling ownership interest

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 4
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

in Happy Hour. *Adolph* Dkt. 26, 1:24-2:2 ("The following comprise substantially all of my assets: . . . [a] 50% ownership interest in Happy Hour Media Group LLC."). Neither the *Adolph* Plaintiffs nor Mr. Reed argued or claimed that Happy Hour itself was a personal asset of Mr. Reed. Rather, the parties both claimed that Mr. Reed's non-controlling ownership interest in Happy Hour was a personal asset of Mr. Reed.

### c. Mr. Reed Made No Effort to Inform the *Adolph* Court or Plaintiff's Counsel of His Newfound Reading of the Settlement Documents During the *Adolph* Settlement and Fairness Proceedings

The parties in *Adolph* participated in multiple proceedings regarding the fairness and reasonableness of the settlement. Albert Decl., ¶ 4. The parties agreed that the reason for entering into the settlement agreement was that the *Adolph* Defendants had few remaining valuable assets and thus the assignment of insurance bad-faith claims and other claims was preferable to continuing litigation. *See Adolph* Dkt. 24, 8:8-15; *Adolph* Dkt. 25; *Adolph* Dkt. 37. Mr. Reed did not oppose the motions. *Adolph* Dkt. 25; *Adolph* Dkt. 37. Neither he nor his counsel informed the *Adolph* court that Mr. Reed was plotting the release of a capitalized entity without any recovery based on its own distinct tortious acts against members of the *Adolph* Class. Albert Decl., ¶ 5. If Mr. Reed even contemplated that usual understanding of the settlement documents at the time, the only reason for not disclosing it would be that doing so would have made it less likely that the *Adolph* court would approve the settlement and Mr. Reed would have faced continuing personal liability.

### d. Happy Hour Participated in the Alleged Conspiracy by Acting as an Intermediary between the Ramsey Defendants and Reed Hein & Associates

The Amended Complaint alleges that, in concert with Reed Hein & Associates, Happy Hour paid the Ramsey Defendants for their promotion of Reed Hein's fraudulent services and

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 5
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

continued doing so until Reed Hein ran out of money. Dkt. 55, ¶¶ 9-14. It alleges that Happy

Hour "promoted and paid for all false advertisements described within this complaint." *Id*., ¶

115. The Amended Complaint states that Happy Hour acted as an intermediary through which

Reed Hein paid the Ramsey Defendants for their promotion of Reed Hein's fraudulent

services. *Id*., ¶¶ 118-119. It alleges that, while acting in concert with Reed Hein and as the

company's marketing department, Happy Hour "struck a deal with [the Ramsey Defendants]

in which Dave Ramsey agreed to make false statements about Reed Hein to induce his

followers to spend money on Reed Hein's illusory services." *Id*., ¶ 122. The Ramsey

Defendants received at least $30 million in payments made through Happy Hour in exchange

for their false statements about Reed Hein. *Id*., ¶ 131.

Happy Hour's participation in the scheme included not just payment, but also active

participation in drafting and creating advertising content. *Id.*, ¶¶ 120, 150. Happy Hour

extensively tracked Reed Hein customers, including Plaintiffs, in cooperation with the Ramsey

Defendants and Reed Hein. *Id.*, ¶¶145-153. Happy Hour's role in recordkeeping was important

to Defendants' overall scheme because those records were a necessary part of how payments

were made to the Ramsey Defendants. *Id.*, ¶ 146. Happy Hour in part facilitated the tracking,

and thus the payments, by creating unique tracking tools for the Ramsey Defendants and Reed

Hein. *Id.*, ¶ 147.

### e. This Court Has Already Ruled on the Statute of Limitations Argument Advanced by Happy Hour

This court ruled the Ramsey Defendants' Motion to Dismiss on October 12, 2023. Dkt.

35. The court agreed with Plaintiffs' argument regarding accrual of their claims and thus found

that Plaintiffs' claims were not barred by the statute of limitations. Dkt. 35, 9:20-13:11. Happy

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 6
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

Hour argues that a 2015 action by the North Carolina Bar, referenced in Plaintiff's Amended Complaint, should push the court to reverse that ruling. Dkt. 61, 26:10-28:2.

The 2015 action by the North Carolina Bar related to Reed Hein's "offers to provide North Carolina residents with a 'legal team' that will negotiate their legal rights so as to dissolve . . . time share contract." Albert Decl., Ex. 11. The North Carolina Bar Authorized Practice Committee investigated the provision of legal services by Reed Hein. The Committee is only authorized to investigate allegations of unauthorized practice of law and does not have the authority to investigate claims related to fraud, consumer protection violations, or any other wrongful act. N.C. Gen. Stat. § 84-37.[2] The Committee concluded there was probable cause to believe Reed Hein's provision of legal services were the unauthorized practice of law in violation of North Carolina General Statutes Sections 84-2.1, 84-4, and 84-5. *Id.*[3]

The Committee did not investigate, and did not reach any conclusion about, Reed Hein's services, the illusory nature of those services, misrepresentations about those services, Reed Hien's customer contracts, Reed Hein's contractual breaches, or any frauds or consumer protection violations by Reed Hein. *See id.* Similarly, the Committee did not investigate the Ramsey Defendants' or Happy Hour's role in promoting Reed Hein's services and did not reach any conclusion about it. *See id.* Rather, the Committee *only* investigated whether or not Reed Hein's activities in North Carolina constituted technical violations of North Carolina statutes regarding the unauthorized practice of law by non-lawyer businesses. *See id.*

---

[2] Plaintiffs do not rely on the North Carolina statutes for any purpose other than a description of the limited authority of the North Carolina State Bar, but have, for reference, attached the text of the statutes to a declaration accompanying this motion. *See* Albert Decl., Ex. 11.
[3] *Id.*

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 7
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

### III.    STANDARDS OF REVIEW

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pled facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir., 1998). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir., 2010).

### IV.    ARGUMENT

**a.  The *Adolph* Settlement Does Not Prevent Plaintiffs from Suing Happy Hour nor from Enforcing a Judgment Against It in This Case**

    **1.  Although Plaintiffs are also members of the *Adolph* class and are bound by the judgment in that case, Happy Hour was not a party to the settlement and claims against it were not released.**

Plaintiffs do not contest that they are members of the certified *Adolph* class and that they are bound by the judgment in that case. The *Adolph* class includes "[a]ll persons who paid fees to Reed Hein for services to terminate their timeshare obligations, except those persons who received refunds of the fees they paid." *Adolph* Dkt. 23, 2:5-6.[4] All Plaintiffs paid fees to Reed Hein and none received refunds. *See* Dkt. 55, ¶¶ 16-66. No Plaintiff in this case opted out of the *Adolph* settlement. *See Adolph* Dkt. 43, 3:5-4:17 (excluding 36 individuals from settlement, none of whom are named Plaintiffs in this case). Plaintiffs' class allegations define the class

---

[4] While not at issue in this motion and response, Plaintiffs note that some members of the purported class in this case may not have been members of the certified *Adolph* class.

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 8
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

as inclusive of "[a]ll individuals who, during the applicable statute of limitations, paid money to Reed Hein . . . for the purpose of obtaining an 'exit' from their timeshare obligations after being exposed to, and/or in reliance on, the statements and other representations made by Dave Ramsey, and The Lampo Group." Dtk. 55, ¶ 210.

No language in the *Adolph* settlement documents prevents Plaintiffs from bringing a claim against Happy Hour. The *Adolph* settlement documents only restrict against whom the *Adolph* Class can enforce the judgment from that case and the ability of the Class to bring certain future claims against the other parties to the *Adolph* settlement. *See Adolph* Dkt. 42-1; *Adolph* Dkt., 41-2.

The *Adolph* covenant not to execute did not release *any* party from liability, including Brandon Reed and Reed Hein. *Adolph* Dkt. 41-2, 3:3-5 ("Reed Hein and Associates, Makaymax, and Brandon Reed agree that the terms and conditions of this agreement do not constitute a release of the Plaintiff Class's claims against them."). Rather, they received a judgment against them. Happy Hour was not a party to the agreement and, as with the actual parties to the agreement, no claims against it were released through the settlement.

The covenant in *Adolph* is a limited covenant not to execute or enforce a judgment and is not a covenant to not bring claims. *Adolph* Dkt. 41-2, 5:20-23 ("[P]laintiff Brian Adolph in his individual and representative capacities hereby agrees, covenants, and warrants that he *will never execute upon or attempt to enforce any judgment* against the assets of the Defendant Parties beyond [the assigned claims]" (emphasis added)). The portion specifically regarding Mr. Reed's assets includes an even more limited agreement. *Adolph* Dkt. 41-2, 5:24-6:2 ("The assets of Defendant Brandon Reed may not be used to satisfy *this judgment* and *this judgment* may not be recorded against or used as a lien on any assets of Brandon Reed." (emphasis

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 9
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

added)). The *Adolph* covenant limits execution and enforcement of the *Adolph* judgment. *Adolph* Dkt. 41-2, 5:3-4 ("[P]laintiff Brian Adolph and the Plaintiff Class shall execute and enforce *this judgment* only against: [the assigned claims and claimees]" (emphasis added)).

Each of the class notice documents approved by the *Adolph* court describes covenants and releases of Reed Hein and Brandon Reed, with only limited effects on class members' rights. *Adolph* Dkt. 25-3, 4 ("The settlement agreement resolves all consumer claims that have been filed, or that could have been filed, by class members *against Reed Hein*" (emphasis added)); *Adolph* Dkt. 25-3, 5 ("Class members have agreed to forego pursuing a recovery *against Reed Hein and Brandon Reed*, and to pursue a recovery by prosecuting the claims that Reed Hein assigned to the class" (emphasis added)); *Adolph* Dkt. 25-4, 4 ("The settlement agreement resolves the consumer claims *that were filed* by Brian and Kerri Adolph for all class members who do not opt-out" (emphasis added)); *Adolph* Dkt. 25-4, 5 ("Brian and Kerri Adolph are not dismissing claims against Reed Hein as part of the settlement agreement . . . Class members have agreed to forego pursuing a recovery *against Reed Hein and Brandon Reed*" (emphasis added)); *Adolph* Dkt. 25-4, 6 ("If the court finally approves the settlement and you do not opt-out of the class, then you will be permanently *giving up your right to sue Brandon Reed and Reed Hein* for consumer protection violations arising out of its business-customer relationship with you" (emphasis added)); *Adolph* Dkt. 25-4, 9 ("If you do not exclude yourself, all your claims *against Reed Hein* based on its business-customer relationship with you will be resolved and you cannot sue again" (emphasis added)).

None of the *Adolph* notice documents mention Happy Hour. *See Adolph* Dkt. 25-3; *Adolph* Dkt. 25-4; *Adolph* Dkt. 25-5. None of the documents describe a release of claims against third parties. *See id.* The Plaintiffs in this case are not bringing claims against Reed

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 10
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

Hein nor claims against Mr. Reed. Here, the Plaintiffs are not seeking to enforce the *Adolph* judgment against any party, let alone a party to the *Adolph* settlement. The *Adolph* settlement does not apply to this case and does not impact Plaintiffs' ability to bring claims against Happy Hour for its tortious conduct.

A.  **Happy Hour's reliance on *Skilstaf* confuses the relevant issues in this case because the *Adolph* settlement did not include a covenant not to sue or language releasing claims against third-parties.**

In arguing that Plaintiffs are bound by the *Adolph* settlement, Happy Hour relies on *Skilstaf, Inc. v CVS Caremark Corp.*, 669 F.3d 1005 (9th Cir., 2012). *Skilstaf* is a fact-specific decision and its application is limited. In *Skilstaf*, the Ninth Circuit held that an unnamed class member who objected to a class action settlement but did not opt out of it could not bring a later suit against a third-party because the settlement released claims against the named defendants and "any other person" based on the "Released Claims." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1007-1008 (9th Cir. 2012). The *Skilstaf* settlement agreement stated that "the Released Parties shall be released and forever discharged by all Releasers from all Released Claims. All Releasers covenant and agree that they *shall not hereafter seek to establish liability* against any Released Party *or any other person* based, in whole or in part, on any of the Released Claims." *Skilstaf*, 669 F.3d at 1009 (emphasis added).

The *Adolph* settlement documents are not nearly so broad. Instead of releasing all claims against any party, the *Adolph* documents do not release any claims against third parties. While the *Skilstaf* covenant prevented parties from bringing suits, the *Adolph* settlement at most only prevents the *Adolph* class from enforcing judgments against the assets of specific *Adolph* defendants. Determining the scope of a settlement, as exemplified by *Skilstaf*, is a fact-

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 11
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

intensive inquiry reliant on the actual and specific terms of the settlement documents. Here, those terms are limited to the *Adolph* defendants.

   If Mr. Reed and the other parties to the *Adolph* settlement documents had intended them to be a broad release of claims and the ability to bring a lawsuit, they could have negotiated an agreement like the one at issue in *Skilstaf* and presented it to Judge Rothstein for review. They did not do so. If the *Adolph* court believed the agreements released claims against third-parties, it presumably would not have approved class notice documents which do not mention any such release. Yet the court did approve notice documents which do not mention or describe any release of claims against third-parties. The *Adolph* defendants resolved the case through a limited settlement agreement involving the enforcement of judgments and assignment of claims. Happy Hour, which was not a party to that agreement and did not participate in the negotiations of it, cannot retroactively redefine the *Adolph* settlement into a *Skilstaf*-like agreement which released it.

### 2. Judicial estoppel does not apply because the *Adolph* case resolved via settlement and, even if judicial estoppel applied, Happy Hour misrepresents what Plaintiffs would be estopped from asserting.

   The court may consider three factors when determining if the doctrine of judicial estoppel applies: (1) "a party's later position must be clearly inconsistent with its earlier position," (2) "the party has succeeded in persuading a court to accept that party's earlier position," and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750-751 (2001). The purpose of judicial estoppel "is to protect the integrity of the judicial process." *Id.* at 749 (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir., 1982)) (internal quotation marks omitted). Judicial estoppel is "intended to

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 12
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

prevent improper use of judicial machinery." *Id.* at 750 (quoting *Kostantinidis v. Chen*, 626 F.2d 933 (D.C. Cir., 1980)) (internal quotation marks omitted). Without success in persuading a court to accept a position, "a party's later inconsistent position introduces no risk of inconsistent court decisions and thus poses little threat to judicial integrity." *Id.* (citing *U.S. v. Hook*, 195 F.3d 299 (7th Cir., 1999), *Maharaj v. Bankamerica Corp.*, 128 F.3d 94 (7th Cir., 1997), *U.S. v. C.I.T. Const. Inc. of Texas*, 944 F.2d 253 (5th Cir., 1991), *Kostantinidis v. Chen*, 626 F.2d 933 (D.C. Cir., 1980)) (internal quotation marks and citations omitted).

Because a settlement does not involve a court's acceptance of party's position, judicial estoppel does not apply where a case is resolved by settlement. *Kostantinidis*, 626 F.2d at 939. "In the light of the polices underpinning judicial estoppel, the rule can not [sic] be applied in a subsequent proceeding unless a party has successfully asserted an inconsistent position in a prior proceeding . . . If the initial proceeding results in settlement, the position cannot be viewed as having been successfully asserted." *Edwards*, 690 F.2d at 599; *see City of Kingsport, Tenn. v. Steel & Roof Structure, Inc.*, 500 F.2d 617, 620 (6th Cir., 1974) ("In the case at bar, because of the settlement of plaintiffs' case, the defense of the bar of the statute of limitations was never decided, and therefore no estoppel can possibly exist").

While the court approves a class action settlement, the court does not adjudicate the underlying dispute when doing so. *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. Unit A, 1982). In approving a class action settlement, the court does not reach a decision on the merits of the case and does not try the issues in the case. *Grunin v. International House of Pancakes*, 513 F.2d 114, 123-124 (8th Cir., 1975). "It cannot be overemphasized that neither the trial court in approving the settlement nor [the Court of Appeals] in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 13
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

underlie the merits of the dispute." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir., 1974); *see Patterson v. Stovall*, 528 F.2d 108, 144 (7th Cir., 1976), *overruled on other grounds in Felzen v. Andreas*, 134 F.3d 873 (7th Cir., 1998) (in a class action "[t]he trial judge should not attempt to decide the merits of the controversy where the parties have reached a settlement. Any virtue which may reside in a compromise is based upon doing away with the effect of such a decision."). That is, "[i]n examining a proposed compromise for approval or disapproval under Fed.R.Civ.P. 23(c) the court does not try the case. The very purpose of compromise is to avoid the delay and expense of such a trial. The court seeks only the answers to two inquiries: (a) whether there is any fraud or collusion in arriving at the compromise and (b) whether the compromise is fair, adequate and reasonable." *Young v. Katz*, 447 F.2d 431, 433 (5th Cir., 1971) (internal quotation marks omitted).

Happy Hour misapplies judicial estoppel and misunderstands the issue by arguing that Plaintiffs in the *Adolph* case claimed that Happy Hour itself was an asset of Mr. Reed and thus that "[t]he doctrine of judicial estoppel prevents the Plaintiffs from now arguing that Happy Hour is not an asset of Mr. Reed." Dkt. 61, 17:8-9. Assuming, for the sake of argument, that judicial estoppel could apply, Plaintiffs would not be barred from arguing that Happy Hour itself is not an asset of Mr. Reed because the parties in the *Adolph* case only claimed that Mr. Reed's *ownership interest* in Happy Hour was one of his assets. Even if this court were to apply judicial estoppel, Plaintiffs would at most be prevented from claiming that Mr. Reed does not have an ownership interest in Happy Hour. Plaintiffs have neither made such a claim, nor does their argument rely on one.

Judicial estoppel does not apply here and this court should not apply it. Out of the three judicial estoppel factors described in *New Hampshire v. Maine*, none are present. First, to the

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 14
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

extent that Plaintiffs are arguing Happy Hour itself is not an asset of Mr. Reed, that position is

not clearly inconsistent with describing Mr. Reed's ownership interest in Happy Hour as one

of his assets. It is consistent to both argue that a party has some interest in a corporate entity

and that the corporate entity is not itself an asset of the party. It would be perfectly consistent,

for example, to describe a single share of Microsoft as an asset of its owner without meaning

or implying that Microsoft is, as a corporate entity and in its entirety, an asset of that

shareholder. There is little functional difference here and the court should reject Happy Hour's

attempt to conflate an ownership interest in a company with the company itself.

Second, even if Plaintiffs had argued Happy Hour was an asset of Mr. Reed in the *Adolph*

case, the *Adolph* court did not accept that argument. The *Adolph* court did not accept any

factual arguments of either party because the *Adolph* case resolved through a settlement.

Although the *Adolph* court approved that settlement agreement and the parties' claims about

it during the approval process, it did not reach and could not have reached any conclusions

about issues of fact, like the nature of the relationship between Mr. Reed and Happy Hour. As

the parties to the *Adolph* case settled, judicial estoppel cannot apply here.

Third, there is no unfair advantage or detriment here. Plaintiffs have asserted causes of

action against Happy Hour based on its own actions and independent tortious conduct. Happy

Hour was not a party to the *Adolph* suit, made no effort to intervene in that suit, did not

participate in negotiations of the settlement, and was not a party to the settlement. There were

no allegations about Happy Hour's conduct, tortious or otherwise, in the *Adolph* case and

Happy Hour is not mentioned in the *Adolph* complaint, the *Adolph* judgment, the *Adolph*

CR2A stipulation and settlement agreement, nor any of the *Adolph* class notice documents

approved by the court and unopposed by Mr. Reed. The facts of Happy Hour's tortious conduct

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE
COMPLAINT* - Page 15
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

in this case are separate and distinct from Mr. Reed's personal tortious conduct in *Adolph*. Happy Hour faced potential liability for its actions prior to *Adolph* suit and there is no determent in this court hearing claims involving its unadjudicated liability in this case, regardless of any settlement agreements Mr. Reed signed in his personal capacity in the *Adolph* case.

       **3.**   **Plaintiffs' claims against Happy Hour are not moot because, even if Plaintiffs could not enforce a judgment against Happy Hour, a judgment would still have value to the putative class as joint and several liability is available.**

      Happy Hour contends that Plaintiffs' claims against it are moot and their complaint non-justiciable because, Happy Hour asserts, the *Adolph* settlement prevents Plaintiffs from executing a judgment against it and thus that any judgment against it would be worthless. Dkt. 61, 15:21-16:5. Although Happy Hour is incorrect that the *Adolph* settlement prevents Plaintiffs from enforcing a judgment against Happy Hour's own assets, a judgment against Happy Hour would still have value even if the *Adolph* settlement did prevent Plaintiffs from enforcing it against Happy Hour because Plaintiffs could still enforce it against the Ramsey Defendants.

      Joint and several liability is available for Washington common law conspiracy claims. *StarKist Co. v. Washington*, 25 Wash.App.2d 83, 94 (Wash. Ct. App. Div. 1, 2023) (*quoting Sears v. Int'l Bhd. Of Teamsters, Chauffeurs, Stablemen and Helpers of Am.*, 8 Wash.2d 447, 452 (1941)); *see* RCW 4.22.070 (1)(a) (joint and several liability remains available where tortfeasors were "acting in concert"). Joint and several liability is also available for Washington Consumer Protection Act claims. *See StarKist Co.*, 25 Wash.App.2d at 94-95; *Moore v. Thornwater Co. LP*, 155 Fed.Appx. 257 at *1 (9th Cir., 2005) (affirming award of joint and several liability) (unpublished); *Matheny v. Unumprovident Corp.*, 594 F.Supp.2d

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 16
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

1212, 1226 (E.D. Wash., 2009) (holding defendants jointly and severally liable for violations of Consumer Protection Act); *Wilkinson v. Smith*, 31 Wash.App. 1, 15 n.15 (Wash. Ct. App. Div. 3, 1981) (affirming judgment including joint and several liability).

Plaintiffs bring both a common-law conspiracy claim and a Washington Consumer Protection Act claim for damages against Happy Hour and the other defendants. Joint and several liability is available for both. Plaintiffs requested an award of joint and several damages in the Complaint. Even if the *Adolph* settlement prevented Plaintiffs here from collecting on a judgment against Happy Hour (which, again, it does not), Plaintiffs could still collect on that judgment from the jointly and severally liable Ramsey Defendants. As such, a judgment against Happy Hour would not be "worthless." The court could grant meaningful relief and Plaintiffs' Complaint is justiciable.

**b. The Complaint alleges sufficient factual content to support Plaintiffs' claims against Happy Hour.**

**1. Plaintiffs state a plausible claim for violations of the Consumer Protection Act because neither a transactional consumer relationship nor direct interactions are necessary for a Consumer Protection Act violation.**

Happy Hour argues that Plaintiffs have not pled a plausible claim for a violation of the Consumer Protection Act because Plaintiffs have not provided enough information about two of the five elements of a Consumer Protection Act claim. *See* Dkt. 61, 20:18-21:2. Happy Hour is incorrect.

There are five elements to a Consumer Protection Act claim: "(1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Stables, Inc., v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 784 (Wash. Sup. Ct. 1986). Happy Hour argues Plaintiffs have not stated sufficient information to show the unfair or deceptive act or practice

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 17
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

element and the trade or commerce element. *See* Dkt. 61, 18:17-21:2. Happy Hour does not dispute the other three elements. *See id*.

Plaintiffs have stated sufficient facts to support a plausible claim on the trade or commerce element. Trade and commerce, under the Consumer Protection Act, "include the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." RCW 19.86.010(2). The Consumer Protection Act states that "[a]ny person who is injured in his or her business or property by a violation of [the Consumer Protection Act] . . . may bring a civil action in superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both." RCW 19.86.090. There is no requirement that the injured party be in a business relationship with the violator or that they are a consumer of the violator's products or services. *Panag v. Farmers Ins. Co. of Washington*, 166 Wash.2d 27, 40-41 (Wash. Sup. Ct. 2009). "An actionable violation [of the Consumer Protection Act] can occur without any consumer or business relationship between the particular plaintiff bringing a private cause of action under the CPA and the actor because 'trade or commerce' is not limited to such transactions." *Panag*, 166 Wash.2d at 39 (2009).

Here, the relevant trade and commerce question is if Happy Hour sold services or engaged in commerce which directly or indirectly affected the people of Washington. Plaintiffs allege that Happy Hour sold services to Reed Hein & Associates and received payments from the Ramsey Defendants and Reed Hein. Happy Hour is a Washington company, and its relevant acts intertwined it with the business of another Washington company and, eventually, a lawsuit brought by the Washington Attorney General to protect the people of Washington from consumer protection violations interrelated to those in this case. Based on the facts in the Amended Complaint, it is plausible to conclude that Happy Hour engaged in commercial acts

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 18
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

which affected the people of Washington, and it is irrelevant whether or not there was any direct interaction between Happy Hour and Plaintiffs.

Regarding the unfair or deceptive act or practice element, Plaintiffs need only to show that the act or practice has "the *capacity* to deceive a substantial portion of the public." *Hangman Ridge Stables, Inc., v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 785 (Wash. Sup. Ct. 1986) (emphasis in original); *see Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wash.2d 59, 74-75 (Wash. Sup. Ct. 2007). It is irrelevant if the defendant was acting in good faith and irrelevant whether the consumer was actually deceived. *Testo v. Rus Dumire Oldsmobile, Inc.*, 16 Wash. App. 39, 50-51 (Wash. Ct. App. Div. 2, 1976).

Here, Plaintiffs have alleged sufficient facts to state a plausible claim regarding the unfair or deceptive act or practice element. Plaintiffs allege that Happy Hour promoted false or misleading advertising through its dealings with Reed Hein and the Ramsey Defendants. The nature and contents of that advertising and those promotions is described in Plaintiffs' Amended Complaint. *See, e.g.,* Dkt. 55, ¶¶ 119-120, 137-144. It is plausible that the promotion and sale of false or misleading advertising is an act with the capacity to deceive a substantial portion of the public. That plausibility is all that is required at this stage of the case.

### 2. Plaintiffs state a plausible claim for negligent misrepresentation because Happy Hour's alleged acts fulfill the elements as illustrated in the Restatement (Second) of Torts.

Washington follows the definition of negligent misrepresentation in the Restatement (Second) of Torts. *Lawyers Title Ins. Corp. v Baik*, 147 Wash.2d 536, 545 (Wash. Sup. Ct. 2002). The Restatement describes negligent misrepresentation as occurring where:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 19
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*ESCA Corp. v. KPMG Peat Marwick*, 135 Wash.2d 820, 826 (Wash. Sup. Ct. 1998) (quoting Restatement (Second) of Torts § 552(1) (1977)). Happy Hour claims that Plaintiffs have not alleged sufficient facts to support the elements of negligent misrepresentation. Dkt. 61, 21:17-22:17. Happy Hour reads the Restatement too narrowly.

Negligent misrepresentation does not require direct communication between the negligent party and the party who acts on the negligent misrepresentation. Restatement (Second) of Torts, § 552 cmt. g (1977). Similarly, it is not necessary "that the person who is to become the plaintiff be identified or known to the defendant as an individual when the information is supplied. It is enough that the marker of the representation intends it to reach and influence . . . a group or class of persons." Restatement (Second) of Torts, § 552 cmt. h (1977). In explaining this dynamic, the Restatement illustrates the liability of a land seller who, through a communication with a real estate board made with the purpose of having the information distributed amongst the board's listings, negligently supplies misinformation to 1,000 people who receive updates on land for sale from the real estate board. *See* Restatement (Second) of Torts, § 552 ills. 4 (1977). One of those 1,000 people then purchases a lot, relying on the misinformation supplied by the land seller to the real estate board. *Id*. In those circumstances, the seller is subject to liability to the purchaser for negligent misrepresentation, even though the seller never directly communicated with the purchaser and was not aware of the purchaser's identity at the time the negligent misrepresentation occurred. *Id*.

The circumstances as alleged in the Amended Complaint match those of Illustration 4. Happy Hour, acting in the course of its business, provided false information to the Ramsey

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 20
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

Defendants. *See* Dkt. 55, ¶¶ 2, 5, 115-122. Happy Hour supplied the information so that the Ramsey Defendants could communicate it to Ramsey listeners and the purpose of doing so was "to induce [Dave Ramsey's] followers to spend money on Reed Hein's illusory services." *Id.*, ¶ 122. All Plaintiffs and putative class members are Ramsey followers. *See id.*, ¶¶ 197-209. All Plaintiffs and putative class members thus are part of the group of intended targets of Happy Hour's negligent misrepresentation. Plaintiffs relied on the misrepresented information and resultingly suffered harm. *See id*. Plaintiffs relied on the information because of the Ramsey Defendants' efforts to market Dave Ramsey as a financial advisor offering *bona fide*, biblically-based financial advice to his followers. *See, e.g., id.*, ¶¶ 123-125.

Because Plaintiffs' allegations align with Illustration 4, Plaintiffs have alleged sufficient facts to support a plausible negligent misrepresentation claim. Happy Hour seems to stake its argument otherwise on the claim that Happy Hour did not *directly* supply false information to Plaintiffs. But direct communication is not an element of negligent misrepresentation. Happy Hour was a key intermediary in the conspiracy between itself, the Ramsey Defendants, and Reed Hein & Associates. The very purpose of the conspiracy was to provide false information, through endorsements and advertisements with the Ramsey Defendants, and to induce Plaintiffs and members of the putative class to pay Reed Hein for its admittedly fraudulent and illusory services.

### 3. Plaintiffs state a plausible conspiracy claim because Happy Hour acted as an intermediary and channeled payments and information between the Ramsey Defendants and co-conspirator Reed Hein & Associates.

A "civil conspiracy exists if two or more persons combine to accomplish an unlawful purpose or combine to accomplish some purpose not itself unlawful by unlawful means." *Corbit v. J.I. Case Co.*, 70 Wash.2d 522, 528 (Wash. Sup. Ct. 1967). Here, Plaintiffs allege

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 21
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

that the relevant conspiracy involved Happy Hour, the Ramsey Defendants, and Reed Hein. Dkt. 55, ¶¶ 115-122, 131. The conspiracy aimed to drive customers to Reed Hein's fraudulent services through false, deceptive, or otherwise dishonest advertising. *Id*.

Plaintiffs support the existence of the conspiracy by describing Reed Hein's deceptive and misleading advertising. *Id*., ¶¶ 137-144, 154-172. Plaintiffs note that Happy Hour promoted that false advertising. *Id.,* ¶ 115. Plaintiffs' Complaint states that Happy Hour was the intermediary for payments within the conspiracy. *Id.,* ¶ 2. Plaintiffs allege that Happy Hour was paid for its part in the promotion and creation of the advertising. *Id.*, ¶ 131. Additionally, the Complaint states that Happy Hour, the Ramsey Defendants, and Reed Hein reached an actual agreement in furtherance of the scheme. *Id.*.

Raising the specter of *Twombly*, Happy Hour argues that Plaintiffs' Complaint is merely a "formulaic recitation of the elements of a cause of action." Dkt. 61, 23:12-18 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). *Twombly* involved a complaint without allegations of actual agreement and instead relied on circumstantial evidence which implied the possibility of agreement. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 551-552 (2007). In contrast to the circumstantial allegations of parallel conduct in *Twombly*, Plaintiffs here allege there was an actual agreement. Dkt. 55, ¶¶ 2, 131. Plaintiffs allege a contractual relationship between the conspiring parties and allege that payments flowed between the parties within the conspiracy. Dkt. 55, ¶¶ 109-114. The Complaint supports the allegation of actual agreement through specific allegations about the nature of the fraud perpetrated through the conspiracy, Happy Hour's role in the conspiracy, and the benefits Happy Hour reaped from the conspiracy. *See, e.g.,* Dkt. 55, ¶¶ 2, 5, 13, 118, 122, 131, 134. The alleged agreement and

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 22
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

Happy Hour's alleged actions, alongside the payments it received within the conspiracy, provide a sufficient factual foundation to find that Plaintiffs' conspiracy claim is plausible.

**4. Plaintiffs state a plausible conversion claim because, as the court held when granting Plaintiffs' Motion to Amend, *Brown* supports a conversion claim here and the identifiability of funds is a question of fact.**

The court substantially addressed Happy Hour's argument regarding Plaintiffs' conversion claim when ruling on Plaintiffs' Motion to Amend. *See* Dkt. 53, 10:9-13:3. There, the court ruled that Plaintiffs amendment to add a conversion claim to the complaint was not futile. *Id.* at 11:21. The court specifically found that issues regarding the identifiability of funds "[are] a question of fact that cannot be resolved at this state of the proceeding." *Id*.

Happy Hour raises two primary arguments against Plaintiffs' conversion claim. First, Happy Hour argues that the funds in question are not identifiable. Second, Happy Hour argues that if liability for conversion attaches to it, liability would also attach to a laundry list of other entities which potentially received money from Reed Hein.

The court has already addressed Happy Hour's first argument, finding identifiability an issue of fact. When addressing that question of fact, the relevant issues will be whether money transferred from the purported class is identifiable within Reed Hein's accounts, whether money transferred from Reed Hein is identifiable in Happy Hour's accounts, the extent to which money collected by Reed Hein was obtained as result of bad acts or fraud, and questions relevant to Happy Hour's role in causing harm to plaintiffs and purported class members. Happy Hour's litany of calculations misdescribe the Plaintiffs' allegations. *See* Dkt. 61 at 24:13-25:15. Plaintiffs allege that *all* $200 million collected by Reed Hein was collected unlawfully or through fraudulent acts, of which at least $70 million belongs to Plaintiffs and purported class members. That $70 million represents approximately 35% of Reed Hein's total

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 23
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

1  revenues, not the 0.058% claimed by Happy Hour. *See id*. No matter the specific percentage

2  of funds and revenues, resolving any issues of identifiability remains a question of fact for a

3  later stage of this case.

4      Happy Hour's second argument fails because it ignores the elements of a claim for

5  conversion of money. Under Washington law, "conversion is the act of willfully interfering

6  with any chattel, without lawful justification, whereby any person entitled thereto is deprived

7  of the possession of it." *Consulting Oversees Management, Ltd. v. Shtikel*, 150 Wash.App. 80,

8  83 (Wash. Ct. App. Div. 1, 2001) (internal quotation marks omitted). Money may only be the

9  subject of conversion where it was wrongfully received or the party possessing it has an

10  obligation to return it. *Id.*

11      Washington courts have interpreted the wrongful receipt requirement as analogous to

12  unlawful or unapproved receipt. *See, e.g., Public Utility Dist. No. 1 of Lewis County v. Wash.*

13  *Public Power Supply System*, 104 Wash.2d 353, 378-381 (Wash. Sup. Ct., 1985) (no

14  conversion where party had the legal right to receive the funds and was authorized to receive

15  them); *Alhadeff v. Meridian on Bainbridge Island, LLC*, 167 Wash. 2d 601, 619 (Wash. Sup.

16  Ct., 2009) (no conversion where plaintiff expressly authorized transfer of funds from bank to

17  defendant); *Davenport v. Washington Educ. Ass'n*, 147 Wash. App. 704, 721-723 (Wash. Ct.

18  App. Div. 2, 2008) (no conversion where statute authorized union to collect relevant money

19  from non-members); *Westview Investments v. U.S. Bank*, 113 Wash. App. 835 (Wash. Ct. App.

20  Div. 1, 2006) (conversion claim survived summary judgment and raised questions of fact for

21  a jury where bank removed funds held in trust from account of trustee).

22      "Wrongful receipt," in the context of conversion, is not an issue of intent. *See Marriage*

23  *of Langham*, 153 Wash.2d 553, 560 (Wash. Sup. Ct., 2005) ("neither good nor bad faith,

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 24
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

neither care nor negligence, neither knowledge nor ignorance, are of the gist of the action [in conversion]" (alternation in original)); *see also Brown ex rel. Richards v. Brown*, 157 Wash. App. 803, 818 (Wash. Ct. App. Div. 1, 2010) ("wrongful intent is not an element of conversion").

Happy Hour argues that, if Plaintiffs have a conversion claim against it, Plaintiffs would then have conversion claims against "[Reed Hein's] former employees, landlords, janitors, health insurance providers, and others." Dkt. 61, 26:3-4. In doing so, Happy Hour ignores the wrongful receipt requirement. A janitor who provides services has not wrongfully received payment for those services even when the money used to make that payment was ultimately the result of fraud or other bad acts. A marketing agency who receives payment after participating in that fraud, however, is in different shoes.

Here, Plaintiffs' complaint alleges facts and circumstances similar to those in *Westview*. In both cases, a company held funds in trust. In both, a third-party came into possession of those funds. In *Westview*, a conversion claim was available because the defendant wrongfully received the funds when it removed them from the trustee's account. Here, a conversion is available because Happy Hour was allegedly an active participant in the fraud at the core of this case and wrongfully received the funds in payment for its participation in that fraud.

**c. As the Court found when ruling on the Ramsey Defendants' Motion to Dismiss, the Plaintiffs' Claims Are Not Time-Barred**

Happy Hour argues claims against it are barred by the statute of limitations. The court ruled on the Ramsey Defendants Motion to Dismiss on October 12, 2023. The court found that "Plaintiffs could not establish each element of their claims, and thus their claims did not accrue, until Reed Hein breached their contracts" and that this breach occurred either three years or eighteen months after Plaintiffs contracted with Reed Hein. Dkt. 35, 12:13-20. Resultingly,

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 25
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

1   the court found that Plaintiffs' claims were not barred by the statute of limitations. Dkt. 35,

2   13:9-11.

3         Happy Hour does not argue that the court's ruling was incorrect. *See* Dkt. 61, 27:16-28:2.

4   Rather, Happy Hour argues that because the North Carolina Bar Association publicly found

5   Reed Hein likely engaged in the unauthorized practice of law as early as 2015, the discovery

6   rule should no longer apply. *See id*. Happy Hour, however, misunderstands what the North

7   Carolina Bar Association found and what conduct it investigated. The North Carolina Bar

8   Association made no findings as to the fraudulent nature of Reed Hein's services and

9   advertising. Rather, the North Carolina Bar Association merely found that there was probable

10  cause to conclude that Reed Hein's decision to offer the services of a lawyer to its customers

11  violated a portion of North Carolina's unauthorized practice of law statutes.

12        Information about the North Carolina Bar Association's finding is relevant to the Ramsey

13  Defendant's knowledge of Reed Hein's business operations and bad acts during the time the

14  Ramsey Defendants endorsed and promoted Reed Hein, but it is irrelevant to the accrual of

15  Plaintiff's against Happy Hour and the Ramsey Defendants and the application of the

16  discovery rule to Plaintiff's claims because it is not the same thing as a finding of fraud or

17  CPA violations. Previously, the court found that "Plaintiffs could not have known that Reed

18  Hein would not honor its commitments and that the Lampo Defendants had misrepresented

19  Reed Hein's services until after that contractual time period expired. Furthermore, Plaintiffs

20  did not suffer damage until Reed Hein breached their contracts by failing to perform its

21  promises." Dkt. 35, 12:14-18. The North Carolina Bar's action does not change that because

22  it does not relate, in any way, to Reed Hein's breach, the Ramsey Defendants'

23  misrepresentations, or Plaintiff's damages.

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 26
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

### V.    CONCLUSION

Plaintiffs respectfully request that the court deny Happy Hour's Motion to Dismiss in its entirety. The court previously decided Happy Hour's statute of limitation argument when ruling on the Ramsey Defendants' Motion to Dismiss. Happy Hour's judicial estoppel argument is inapplicable to this case, and its arguments regarding mootness and failure to state a claim are unconvincing. Happy Hour's Motion to Dismiss should be denied.

DATED this 22nd day of January, 2024

*I certify that this memorandum contains 8,384 words, in compliance with the Local Civil Rules.*

**ALBERT LAW, PLLC**

By:   _s/ Gregory W. Albert_____
      Gregory W. Albert, WSBA #42673
      Tallman Trask IV, WSBA #60280
      3131 Western Ave., Suite 410
      Seattle, WA 98121
      (206) 576-8044
      greg@albertlawpllc.com
      tallman@albertlawpllc.com

And—

**FRIEDMAN | RUBIN®**

By:   _s/ Roger S. Davidheiser_____
      Roger S. Davidheiser, WSBA #18638
      1109 First Ave., Ste. 501
      Seattle, WA 98101
      (206)501-4446
      rdavidheiser@friedmanrubin.com
      ***Attorneys for Plaintiffs***

*PLTFFS' OPPOSITION TO MTN TO DISMISS THE COMPLAINT* - Page 27
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446