UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANNA PATRICK, et al.,<br><br>                    Plaintiffs,<br><br>           v.<br><br>DAVID L. RAMSEY, III, et al.,<br><br>                    Defendants. | CASE NO. C23-0630JLR<br><br>ORDER |

## I.     INTRODUCTION

Before the court is Defendant Happy Hour Media Group LLC's ("Happy Hour") renewed[1] motion to dismiss. (Mot. (Dkt. # 61); Reply (Dkt. # 67).) Plaintiffs[2] oppose

---

[1] Happy Hour filed its original motion to dismiss on October 5, 2023 (Dkt. # 32), and withdrew it on November 1, 2023 (Dkt. # 47).

[2] Plaintiffs are Anna Patrick, Douglas Morrill, Roseanne Morrill, Leisa Garrett, Robert Nixon, Samantha Nixon, David Bottonfield, Rosemarie Bottonfield, Tasha Ryan, Rogelio Vargas, Marilyn Dewey, Peter Rollins, Rachael Rollins, Katrina Benny, Sara Erickson, Greg Larson, and James King (collectively, "Plaintiffs"). (Am. Compl. (Dkt. # 55) ¶¶ 16-66.)

ORDER - 1

Happy Hour's motion. (Resp. (Dkt. # 65).) Defendants David L. Ramsey, III and The Lampo Group, LLC ("Lampo," and together with Mr. Ramsey, the "Lampo Defendants") made no filings in relation to Happy Hour's motion. (*See generally* Dkt.) The court has considered the motion, the parties' submissions in support of and in opposition to the motion, the relevant portions of the record, and the governing law. Being fully advised,[3] the court GRANTS in part and DENIES in part Happy Hour's motion to dismiss.

## II.   BACKGROUND

Below, the court sets forth the factual and procedural background pertinent to Happy Hour's motion to dismiss.

**A.   Factual Background**

Plaintiffs are individuals who signed contracts with and paid money to non-party Reed Hein & Associates ("Reed Hein"), which did business under the name "Timeshare Exit Team," for assistance in "exiting" their obligations with respect to timeshares they owned at various resort properties. (Am. Compl. (Dkt. # 55) ¶¶ 16-66 (alleging facts regarding each of the named Plaintiffs).) Plaintiffs allege that Reed Hein charged them money up front for its services and promised them a "100% refund if they were not relieved of their timeshare obligations." (*Id.* ¶ 3; *see also id.* ¶ 81.) Despite these representations, however, Reed Hein failed to terminate Plaintiffs' timeshare obligations, made false statements about its services, and refused to refund Plaintiffs' money when

---

[3] Neither Happy Hour nor Plaintiffs request oral argument (Mot. at 1; Resp. at 1) and the court finds that oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

the "exits" were unsuccessful or resulted in the resort properties foreclosing on Plaintiffs' timeshares. (*Id.* ¶¶ 3-4; *see also id.* ¶¶ 81-98 (describing Reed Hein's practices).)

In October 2021, Brian and Kerri Adolph, who, like Plaintiffs in this case, were represented by the law firm Albert Law PLLC, filed a class action lawsuit against Reed Hein, its co-founders Brandon Reed and Trevor Hein, Mr. Reed's wholly-owned company Makaymax, Inc. ("Makaymax"), and Mr. Hein's wholly-owned company Hein & Sons Industries, Inc. ("Hein & Sons"). (*See Adolph* Compl. (*Adolph* Dkt. # 1).[4]) They brought claims arising from the alleged false statements, false advertising, and unfair business practices associated with Reed Hein's timeshare exit services. (*See generally id.*) On October 25, 2022, the *Adolph* court certified the following class:

> All persons who paid fees to Reed Hein for services to terminate their timeshare obligations, except those persons who received refunds of the fees that they paid.

(Class Cert. Order (*Adolph* Dkt. # 23) at 2.) Thus, Plaintiffs in this matter are also members of the *Adolph* class. (*See* Resp. at 8 (so acknowledging); *see also* Am. Compl. ¶ 210 (setting forth the proposed class definition for this matter).)

On December 30, 2022, the *Adolph* court preliminarily approved a settlement in which the parties agreed to stipulate to entry of judgment in favor of the Adolphs and the

---

[4] The court grants Happy Hour's unopposed request to take judicial notice of the documents filed in *Adolph v. Reed Hein & Assocs.*, No. C21-1378BJR (W.D. Wash.). (Mot. at 12-13); Fed. R. Civ. P. 201(b); *see Rosales-Martinez v. Palmer*, 753 F.3d 890, 894 (9th Cir. 2014) ("It is well established that we may take judicial notice of judicial proceedings in other courts."). The court follows the parties' convention and refers to "*Adolph* Dkt. # ____" when citing documents in the *Adolph* docket. Many of these documents are also attached as exhibits to the declaration of Jack M. Lovejoy. (*See generally* Lovejoy Decl. (Dkt. # 62).)

class of "the amounts paid by each recorded customer of Reed Hein, each trebled to an additional $25,000, attorney fees, and costs" for a total judgment of $630,187,204. (12/5/22 Albert Decl. (*Adolph* Dkt. # 25) ¶ 1, Ex. 1 ("Settlement Agreement") ¶ II.1; Prelim. App. Order (*Adolph* Dkt. # 27); *see* 12/5/22 Albert Decl. ¶¶ 29-48 (explaining how plaintiffs' counsel calculated damages).) Mr. Reed, Reed Hein, and Makaymax[5] also agreed to assign to the *Adolph* class a host of claims against various potential defendants (including Mr. Hein and Hein & Sons), cooperate with future litigation, and execute various stipulations as to facts and theories of liability. (*See* 12/5/22 Albert Decl. ¶¶ 25 (summarizing the benefits to the *Adolph* class of settlement), 26(d) (describing Reed Hein's assigned claim against Mr. Hein and Hein & Sons). *See generally* Settlement Agreement.) In exchange, the Adolphs, the class, and their attorneys agreed to "a covenant . . . not to execute the judgment against . . . or seek recovery from" Reed Hein, Mr. Reed, or Makaymax. (Settlement Agreement ¶ II.1.)

In connection with the motion for preliminary approval, Plaintiffs' counsel represented that Reed Hein "appear[ed] to be insolvent and [would] never again be a going concern." (12/5/22 Albert Decl. ¶ 23.) Counsel also represented that one of Mr. Reed's assets was a fifty-percent interest in Happy Hour, a Kirkland, Washington-based marketing firm which, at the time, had $1,489,966.90 in equity and $1,624,028 in debt. (*Id.*; *see also* Reed Decl. (*Adolph* Dkt. # 26) ¶ 2 (listing "substantially all" of Mr. Reed's assets as of October 1, 2022).) Mr. Reed had also unsuccessfully attempted to collect

---

[5] Mr. Hein and Hein & Sons were dismissed from the *Adolph* case before the parties moved for preliminary approval. (*See* 12/5/22 Albert Decl. ¶ 20.)

ORDER - 4

over $623,730 owed to him by Mr. Hein. (12/5/22 Albert Decl. ¶ 23; *see also* Reed Decl. ¶ 2(g) (listing this account receivable as one of Mr. Reed's assets).)

None of the named Plaintiffs in this matter opted out of the *Adolph* class settlement. (*Compare Adolph* Admin Decl. (*Adolph* Dkt. # 38) ¶ 12 (declaration of the *Adolph* claims administrator, listing exclusions), *with* Am. Compl. ¶¶ 15-66 (alleging facts about the named Plaintiffs in this case).) In March 2023, the *Adolph* parties executed a final confession of judgment and judgment with covenant not to execute. (*See generally Adolph* COJ (*Adolph* Dkt. # 44-1).) The purpose of the confession of judgment was "to secure a judgment against Defendants Reed[ ]Hein, Makaymax, and Brandon Reed for the benefit of the Plaintiff Class and to protect the assets, earnings and individual liability of Defendant Parties from claims by the Plaintiff Class that might result in a substantial excess verdict." (*Id.* at 2.) Reed Hein, Makaymax, and Mr. Reed agreed that "judgment may be taken against them in the sum of $630,187,204 in favor of the Plaintiff Class," with interest of 12% per year. (*Id.* at 5.) Mr. Adolph, "in his individual and representative capacities," agreed:

> that he will never execute upon or attempt to enforce any judgment against the assets of the Defendant Parties [except as otherwise stated in the confession of judgment]. The assets of Defendant Brandon Reed may not be used to satisfy this judgment and this judgment may not be recorded against or used as a lien on any assets of Brandon Reed.

(*Id.* at 5-6). Mr. Adolph and the class agreed instead to "execute upon and enforce this judgment only against" certain companies and individuals listed in the confession of judgment. (*Id.* at 6.) The judgment and covenant not to execute provided:

ORDER - 5

1                1.      Plaintiff is granted judgment against defendants Brandon
         Reed, Reed Hein & Associates and Makaymax Inc. in the sum of
2        $630,187,204 principal, with interest on all unpaid amounts at 12% per
         annum from date of entry until satisfied in full.

                 2.      Plaintiff shall hereafter take no action to collect on the above
         judgment against defendants Brandon Reed, Reed Hein & Associates and
         Makaymax Inc.

(*Id.* at 11.)

The *Adolph* court entered final approval of the settlement on May 19, 2023. (*Adolph* Final App. Order (*Adolph* Dkt. # 43).) It entered the judgment and covenant not to execute on June 15, 2023. (*Adolph* Judgment (*Adolph* Dkt. # 45).)

**B.      Procedural Background**

Plaintiffs now seek a remedy against presumably deeper pockets. They filed this proposed class action on April 28, 2023, against Happy Hour; Mr. Ramsey, a nationally-syndicated radio talk-show host who offers "biblically based" financial advice; and Lampo, Mr. Ramsey's wholly-owned company. (Compl. (Dkt. # 1) ¶¶ 67-72, 116.) Plaintiffs amended their complaint on December 15, 2023. (*See generally* Am. Compl.; *see also* 12/5/23 Order (Dkt. # 53) at 15 (granting Plaintiffs leave to amend their complaint).)

Plaintiffs allege that Reed Hein hired Happy Hour and the Lampo Defendants to promote its timeshare exit services through Mr. Ramsey's radio shows, podcasts, seminars, websites, "Financial Peace University," and newsletters. (Am. Compl. ¶¶ 5-6, 115-44, 154-72 (describing Mr. Ramsey's business and his relationship with Reed Hein).) Plaintiffs further allege that Reed Hein paid Mr. Ramsey and The Lampo Group over $30

million "to make false claims and instruct [Mr.] Ramsey's faithful listeners to hire Reed Hein." (*Id.* ¶ 5.) According to Plaintiffs, Mr. Ramsey "assured his listeners that he had vetted Reed Hein," "promised them that the company was the only trustworthy method to get out of their timeshare contracts," and "made false statements about Reed Hein's knowledge, skill, and ability to get customers out of timeshare obligations." (*Id.* ¶ 7; *see also id.* ¶¶ 138-41 (providing examples of statements Mr. Ramsey made when endorsing Reed Hein).) Plaintiffs assert that Mr. Ramsey continued to promote Reed Hein even after listener complaints, multiple lawsuits (including one brought by the Washington State Attorney General), and arbitrations filed against Reed Hein should have placed him on notice that Reed Hein was defrauding his followers. (*See, e.g., id.* ¶¶ 8, 173-86.)

Relevant to this motion to dismiss, Plaintiffs allege that Happy Hour "acted as Reed Hein's marketing department" and drafted, created, reviewed, and approved Reid Hein's advertising, scripts, and internet marketing efforts. (*Id.* ¶¶ 115-19.) According to Plaintiffs, Happy Hour "struck a deal with" the Lampo Defendants in which Mr. Ramsey "agreed to make false statements about Reed Hein to induce his followers to spend money on Reed Hein's illusory services." (*Id.* ¶ 122; *see also id.* ¶¶ 131 (alleging that in 2015, Mr. Ramsey "struck a deal with Reed Hein and Happy Hour . . . to generate tens of millions of dollars sending his followers to Reed Hein"), 150 (alleging that Happy Hour reviewed and approved content on certain of Mr. Ramsey's webpages that "included deceptive or misleading content and content regarding Reed Hein and its services").) Plaintiffs assert that Reed Hein paid the Lampo Defendants through Happy Hour. (*Id.* ¶ 2; *see also id.* ¶¶ 115-72 (describing Defendants' relationships with one another and

with Reed Hein).) They also allege that Happy Hour and the Lampo Defendants "kept extensive and contemporaneous records of Ramsey listeners referred to Reed Hein by" the Lampo Defendants. (*Id.* ¶ 145.) These records were important "because Reed Hein paid [the Lampo Defendants] both a flat fee for advertising and a per-lead rate for customer referrals." (*Id.* ¶ 146; *see also id.* ¶¶ 147-53 (explaining how Defendants tracked referrals).)

Based on these allegations, Plaintiffs bring claims against Defendants for violations of the Washington Consumer Protection Act ("WCPA"), ch. 19.86 RCW; negligent misrepresentation; conspiracy; and conversion. (*Id.* ¶¶ 220-42.)

### III. ANALYSIS

Below, the court sets forth the standard of review for motions to dismiss, then considers Happy Hour's motion.

**A. Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under this standard, the court construes the allegations in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and asks whether the claim contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court need not accept as true legal conclusions, "formulaic recitation[s] of the legal elements of a cause of action," *Chavez v. United States*, 683 F.3d 1102, 1008 (9th Cir.

2012) (quoting *Twombly*, 550 U.S. at 555), or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**B.    Effect of the *Adolph* Judgment**

Happy Hour asserts that all of Plaintiffs' claims against it must be dismissed "because the *Adolph* judgment precludes the Plaintiffs from obtaining or enforcing a judgment against any of Brandon Reed's assets, and Happy Hour is one of those assets." (Mot. at 12.) The court disagrees.

First, the language of the confession of judgment, judgment, and covenant not to execute constrain the use of Mr. Reed's assets only with respect to satisfying the judgment in the *Adolph* case; they express nothing about whether those assets could be used to satisfy a judgment in any other case. (*See Adolph* COJ at 5-6 ("The assets of Defendant Brandon Reed may not be used to satisfy *this* judgment and *this* judgment may not be recorded against or used as a lien on any assets of Brandon Reed." (emphasis added)); *id.* at 11 ("Plaintiff shall hereafter take no action to collect on the *above* judgment against defendants Brandon Reed, Reed Hein & Associates and Makaymax Inc." (emphasis added)). Second, even if the *Adolph* judgment could be read to bar recovery against Mr. Reed's assets in this action, the language of that judgment does not bar recovery against *Happy Hour's* assets. Happy Hour was not a party in *Adolph*, nor was it ever mentioned in the *Adolph* complaint, settlement agreement, or confession of

judgment and covenant not to execute.  (*See generally Adolph* Compl.; Settlement Agreement; *Adolph* COJ.)  Because Mr. Reed claims only a fifty-percent ownership interest in Happy Hour, it is possible that the remainder could be used to satisfy a judgment issued in this matter.  (*See* Reed Decl. ¶ 2(a).)  Finally, the *Adolph* settlement, judgment, and covenant not to execute did not release *any* party—not even Mr. Reed or Reed Hein—from liability arising from Reed Hein's timeshare exit services.  (*See, e.g.*, *Adolph* COJ at 3 ("Reed Hein and Associates, Makaymax, and Brandon Reed agree that the terms and conditions of this agreement do not constitute a release of the Plaintiff Class's claims against them.").)  Thus, any argument that the *Adolph* settlement somehow released Happy Hour from liability in this case falls flat.  For these reasons, the court denies Happy Hour's motion to dismiss Plaintiffs' claims based on the *Adolph* judgment.

**C.     WCPA**

The WCPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  RCW 19.86.020.  To state a claim for violation of the WCPA, Plaintiffs must plausibly allege that (1) an unfair or deceptive act or practice, (2) occurred in the course of trade or commerce, (3) impacted the public interest, (4) injured the plaintiff's business or property, and (5) was caused by the defendant.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).  A WCPA claim "may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but

in violation of public interest." *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013).

Happy Hour argues that Plaintiffs' WCPA claim against it must be dismissed because Plaintiffs have failed to identify any conduct by Happy Hour that constitutes an unfair or deceptive practice within the meaning of the statute. (*See* Mot. at 18-21; *see also* Reply at 8-9 (confirming that its motion is based on Plaintiffs' failure to plead an unfair or deceptive act or practice).) It points out that although Plaintiffs enumerate nine "unfair and deceptive trade practices" that the Lampo Defendants "specifically committed" (Am. Compl. ¶ 221(a)-(h)), they do not specify in pleading their WCPA claim what conduct by Happy Hour allegedly constituted an unfair and/or deceptive trade practice (*see id.* ¶¶ 220-22 (making no mention of conduct by Happy Hour)). (Mot. at 8.) Plaintiffs respond that they have satisfied the pleading standard by alleging that Happy Hour "promoted false or misleading advertising through its dealings with Reed Hein and the [Lampo] Defendants." (Resp. at 19 (citing Am. Compl. ¶¶ 119-20, 137-44).) They assert that "[i]t is plausible that the promotion and sale of false or misleading advertising is an act with the capacity to deceive a substantial portion of the public." (*Id.*)

The court agrees with Plaintiffs. False advertising can be an unfair or deceptive practice under the WCPA. *See Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1060-61 (W.D. Wash. 2020) (denying motion to dismiss WCPA claim based on false advertising). Here, Plaintiffs allege that Happy Hour "drafted advertising and marketing content used by" Reed Hein and the Lampo Defendants; "drafted or reviewed advertising scripts used by" the Lampo Defendants; created, reviewed, and approved Reed Hein's

marketing efforts; reviewed or approved advertising created by the Lampo Defendants; and reviewed and approved content posted on Mr. Ramsey's web pages. (Am. Compl. ¶¶ 119-20.) Plaintiffs allege throughout their amended complaint that the Lampo Defendants made false or misleading representations about Reed Hein's services and that those representations led them to contract with Reed Hein for its services. (*See generally* Am. Compl.) Although Happy Hour repeatedly asserts that Plaintiffs make no allegation that Happy Hour was aware that the advertising and content it was drafting was false and misleading, the parties do not dispute that Brandon Reed was a principal of both Reed Hein and Happy Hour. (*See, e.g.*, Am. Compl. ¶¶ 115, 117; *see generally* Mot.) Based on this shared leadership, the court concludes, viewing the allegations in the light most favorable to Plaintiffs, that it is plausible that Happy Hour was aware that the information it promoted about Reed Hein was false. (*See, e.g., id.* ¶¶ 121-22 (alleging that "Reed Hein, through Happy Hour," relied on Mr. Ramsey for advertising and that Defendants agreed that Mr. Ramsey would make false statements about Reed Hein to induce his followers to use Reed Hein's services).) The court concludes, based on these allegations, that Plaintiffs have plausibly alleged that Happy Hour engaged in an unfair and/or deceptive act or practice within the meaning of the WCPA and therefore denies Happy Hour's motion to dismiss Plaintiffs' WCPA claim.

**D.    Negligent Misrepresentation**

To state a claim for negligent misrepresentation, Plaintiffs must plausibly allege that:

      (1) the defendant supplied information for the guidance of another in his or her business transactions, (2) the information was false, (3) the defendant knew or should have known that the information was supplied to guide the plaintiff in his or her business transactions, (4) the defendant was negligent in obtaining or communicating the false information, (5) the plaintiff relied on the false information, (6) the plaintiff's reliance was reasonable, and (7) the false information proximately caused the plaintiff damages.

*Repin v. State*, 392 P.3d 1174, 1191 (Wash. Ct. App. 2017) (citing *Ross v. Kirner*, 172 P.3d 701, 704 (Wash. 2007)); *see also ESCA Corp. v. KPMG Peat Marwick*, 959 P.2d 651, 654 (Wash. 1998) (quoting Restatement (Second) of Torts § 552(1) (Am. Law Inst. 1977)).

      Happy Hour argues that the court must dismiss Plaintiffs' negligent misrepresentation claim against it because Plaintiffs have failed to plausibly allege the first element and the fourth through seventh elements of that claim. (Mot. at 21-22.) With respect to the first element, Happy Hour asserts that Plaintiffs have not alleged that Happy Hour "supplied any statement or other representation for the guidance of anyone." (Mot. at 21; (asserting that although the amended complaint refers to Happy Hour creating advertising, it doesn't say that Happy Hour "created or came up with any false claim about Reed Hein").) With respect to the fourth element, Happy Hour argues that Plaintiffs allege only a "formulaic recitation" of the element and allege no facts "to suggest how or why Happy Hour should have known that the information it received from Reed Hein about Reed Hein's services was false." (*Id.* at 22.) And with respect to the fifth through seventh elements, Happy Hour argues that Plaintiffs do not allege that any of them relied on information supplied by Happy Hour, that it was reasonable to rely

on that information, or that the information caused them to suffer damages. (*Id.*) The court disagrees.

As with Plaintiffs' WCPA claim, the court concludes, based on Mr. Reed's status as a principal of both Happy Hour and Reed Hein, that Plaintiffs have plausibly alleged that Happy Hour was aware that it was supplying false information in the advertising and marketing content it drafted for Mr. Ramsey's media properties for the purpose of inducing Plaintiffs and others like them to enter into contracts with Reed Hein.  In addition, Plaintiffs have alleged that they relied on information provided by Mr. Ramsey when deciding whether to contract with Reed Hein for its services, that they did enter into such contracts, and that they were damaged as a result.  (*See* Am. Compl. ¶¶ 16-66 (alleging facts about each Plaintiff), 228 (alleging reasonable reliance).)  The court concludes that Plaintiffs have plausibly alleged a claim for negligent representation and denies Happy Hour's motion to dismiss that claim.

**E.    Civil Conspiracy**

"Under Washington law, a plaintiff proves a civil conspiracy by showing "by clear, cogent and convincing evidence that (1) two or more people contributed to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the object of the conspiracy." *Williams v. Geico Gen. Ins. Co.*, 497 F. Supp. 3d 977, 985 (W.D. Wash. 2020) (quoting *Wilson v. State*, 929 P.2d 448, 459 (Wash. Ct. App. 1996)).

Happy Hour argues that Plaintiffs' conspiracy claim must be dismissed because Plaintiffs allege only that Happy Hour and the Lampo Defendants "struck a deal" to make

1 | false statements about Reed Hein to Mr. Ramsey's listeners to induce customers to pay
2 | money for Reed Hein's services and say nothing about "what sort of 'deal' Happy Hour
3 | allegedly struck or what Happy Hour's duties or benefits were in the deal." (Mot. at 23
4 | (citing Am. Compl. ¶¶ 122, 131, 234-35).) Taking the allegations in the amended
5 | complaint, however, the court concludes that Plaintiffs have plausibly alleged the
6 | existence of a civil conspiracy among Defendants and Happy Hour's duties in furtherance
7 | of that conspiracy. (*See* Am. Compl. ¶¶ 2 (alleging that Reed Hein paid the Lampo
8 | Defendants through Happy Hour), 115-19 (describing Happy Hour's role with respect to
9 | Reed Hein's advertising), 145-46 (alleging that Defendants worked together to keep
10 | records of Mr. Ramsey's referrals); 150 (alleging that Happy Hour approved content for
11 | Mr. Ramsey's webpages).) The court denies Happy Hour's motion to dismiss Plaintiffs'
12 | conspiracy claim.

**F.  Conversion**

"Conversion is the unjustified, willful interference with a chattel which deprives a person entitled to the property of possession." *In re Marriage of Langham & Kolde*, 106 P.3d 212, 218 (Wash. 2005) (quoting *Meyers Way Dev. Ltd. P'ship v. Univ. Sav. Bank*, 910 P.2d 1308, 1320 (Wash. Ct. App. 1996)). Money can be converted "only if the defendant 'wrongfully received' the money or 'was under obligation to return the specific money to the party claiming it.'" *Davenport v. Wash. Educ. Ass'n*, 197 P.3d 686, 695 (Wash. Ct. App. 2008) (quoting *Pub. Util. Dist. of Lewis Cnty. v. Wash. Pub. Power Supply Sys.*, 705 P.2d 1195, 1211 (Wash. 1985)). A claim for conversion of money is possible only where the money is "is capable of being identified, as when delivered at

1    one time, by one act and in one mass, or when the deposit is special and the identical

2    money is to be kept for the party making the deposit, or when wrongful possession of

3    such property is obtained." *Brown ex rel. Richards v. Brown*, 239 P.3d 602, 610 (Wash.

4    Ct. App. 2010) (quoting *Westview Invs., Ltd. v. U.S. Bank Nat'l Ass'n*, 138 P.3d 638, 646

5    (Wash. Ct. App. 2006)).

6        Happy Hour argues that Plaintiffs cannot sustain their conversion claim because

7    they have not plausibly alleged that they "will be able to identify any dollar in Happy

8    Hour's possession as a dollar that came from them." (Mot. at 24.) They point out that

9    the money the named Plaintiffs paid to Reed Hein is only a small portion of Reed Hein's

10    total revenue and argue that Plaintiffs have not alleged "any plausible way to identify the

11    money that went from Reed Hein to Happy Hour as their money." (*Id.* at 11 (noting that

12    Reed Hein "took in over $200,000,000 in customer funds" (citing *Adolph* Prelim. App.

13    Mot. (*Adolph* Dkt. # 24) at 5)); *see also id.* at 12 & n.7 (calculating named Plaintiffs'

14    payments to Reed Hein as totaling $115,818.70 (citing Am. Compl.)).)

15        Plaintiffs do not meaningfully address Happy Hour's argument. First, they appear

16    to read the court's December 5, 2023 order as having settled that they have plausibly

17    pleaded a conversion claim. (*See* Resp. at 23-24 (citing 12/5/23 Order at 10-13).) In that

18    order, the court granted Plaintiffs' motion for leave to add their conversion claim over the

19    Lampo Defendants' objection, and noted that whether the "money that Reed Hein was

20    supposed to hold in trust [for Plaintiffs] but instead transferred to Defendants remains

21    identifiable" was a "question of fact that [could] not be resolved" at that stage of the

22    proceedings. (12/5/23 Order at 11-13.) Plaintiffs' reliance on the December 5, 2023

order, however, is misplaced because Happy Hour now raises arguments specific to its own role in the events underlying Plaintiffs' claims that were not before the court when it granted Plaintiffs' motion for leave to amend. (*See id* at 1 n.2 (noting that Happy Hour did not respond to the motion to amend).) Second, Plaintiffs assert that they have plausibly alleged that Happy Hour "wrongfully received" their money because it was "allegedly an active participant in the fraud at the core of this case and wrongfully received the funds in payment for its participation in that fraud." (Resp. at 24-25.) Whether Happy Hour wrongfully received money, however, does not address whether that money remained identifiable as originating from Plaintiffs. The court agrees with Happy Hour that Plaintiffs have not explained how the "specific" or "identical" money that they paid to Reed Hein remained identifiable when Reed Hein paid Happy Hour for advertising and marketing services. *Davenport*, 197 P.3d at 695; *Brown*, 239 P.3d at 610; (*see generally* Am. Compl.). Therefore, the court grants Happy Hour's motion to dismiss Plaintiffs' conversion claim. Because the court is not convinced that amendment of the claim against Happy Hour would be futile, this dismissal is with leave to amend. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

**F.   Statutes of Limitations**

Finally, Happy Hour argues that the court should dismiss certain Plaintiffs' claims as barred by the applicable statutes of limitations. (Mot. at 26-28.) Dismissal is proper on the ground that a claim is barred by the applicable statute of limitations if the running of the limitations period is apparent on the face of the complaint. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the applicable

statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]"); *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000). WCPA claims are subject to a four-year statute of limitations. RCW 19.86.120. Claims for negligent misrepresentation, civil conspiracy, and conversion under Washington law are subject to a three-year statute of limitations. RCW 4.16.080(2) (setting a three-year statute of limitations for actions for "any other injury to the person or rights of another not hereinafter enumerated"). Plaintiffs filed this action on April 28, 2023. (*See* Compl.) Thus, absent an applicable exception, the relevant statutes of limitations bar negligent misrepresentation and conspiracy claims that accrued before April 28, 2020, and WCPA claims that accrued before April 28, 2019.

In Washington, a "cause of action accrues and the statute of limitations begins to run when a party has the right to apply to a court for relief." *Shepard v. Holmes*, 345 P.3d 786, 790 (Wash. Ct. App. 2014) (quoting *O'Neil v. Estate of Murtha*, 947 P.2d 1252, 1254 (Wash. Ct. App. 1997)). A plaintiff has this right "when the plaintiff can establish each element of the action." *Id.* (quoting *Hudson v. Condon*, 6 P.3d 615, 620 (Wash. Ct. App. 2000)). The discovery rule is an exception to this rule of accrual. *Id.* Washington courts apply the discovery rule to claims when the "injured parties do not, or cannot, know they have been injured." *Id.* (quoting *In re Estates of Hibbard*, 826 P.2d 690, 694 (Wash. 1992)). "Where the discovery rule applies, 'a cause of action accrues when the plaintiff, through the exercise of due diligence, knew or should have known the basis for the cause of action.'" *Id.* (quoting *Green v. Am. Pharm. Co.*, 935 P.2d 652, 655 (Wash. Ct. App. 1997), *aff'd*, 960 P.2d 912 (Wash. 1998)).

On October 12, 2023, the court denied the Lampo Defendants' motion to dismiss certain Plaintiffs' claims on statute of limitations grounds, holding that the discovery rule applied to toll the statute of limitations because (1) Plaintiffs could not have known that Reed Hein would not honor its commitments and that the Lampo Defendants had misrepresented Reed Hein's services until after the 18- or 36-month contractual time period for Reed Hein to complete the timeshare exit process expired and (2) Plaintiffs did not suffer damage until Reed Hein breached their contracts by failing to perform its promises.  (10/12/23 Order (Dkt. # 35) at 11-12 (citing Compl. ¶¶ 168-69).)  Happy Hour now argues that the discovery rule does not toll the statutes of limitations on Plaintiffs' claims because Plaintiffs now allege that Reed Hein's misconduct was public knowledge in 2015 based on a ruling by the Authorized Practice Committee of the North Carolina Bar.  (Mot. at 27 (citing Am. Compl. ¶¶ 93, 177).)  It asserts that, as a result, "Plaintiffs, as members of the public, knew that Reed Hein was misrepresenting itself at or before the time they decided to pay Reed Hein." (*Id.*)  The court is unconvinced.  Plaintiffs do not allege that they were aware of the North Carolina Bar ruling, and the court finds it plausible that Plaintiffs, who are consumers based in Washington and California, neither knew nor had reason to know of that ruling.  (*See* Am. Compl. ¶¶ 16-66 (alleging facts regarding Plaintiffs).)  Furthermore, as Plaintiffs point out, the Authorized Practice Committee of the North Carolina Bar is empowered only to investigate the unauthorized practice of law, and its ruling related only to Reed Hein's alleged violation of North Carolina's unauthorized practice of law statutes.  (*See* Resp. at 7 (citing N.C. Gen. Stat. § 84-37 (defining the scope of the North Carolina Bar's investigatory powers).  *See*

*generally* 1/22/24 Albert Decl. (Dkt. # 66) ¶ 8, Ex. 11 (North Carolina Bar ruling).) Thus, it is a reasonable inference that the ruling would not have put Plaintiffs on notice of the conduct giving rise to their claims, even if they were aware of that ruling. As a result, the court denies Happy Hour's motion to dismiss certain Plaintiffs' claims as barred by the relevant statutes of limitations.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Happy Hour's motion to dismiss (Dkt. # 61). The court ORDERS as follows:

1. Plaintiffs' conversion claim against Happy Hour is DISMISSED with leave to amend. Plaintiffs may file an amended complaint that amends only their allegations with respect to their conversion claim against Happy Hour by no later than **March 6, 2024**. Failure to file an amended complaint by this deadline will result in dismissal with prejudice of Plaintiffs' conversion claim against Happy Hour;

2. Happy Hour's motion to dismiss Plaintiffs' WCPA, negligent misrepresentation, and conspiracy claims is DENIED; and

3. Happy Hour's motion to dismiss certain Plaintiffs' claims as barred by the relevant statutes of limitations is DENIED.

Dated this 23rd day of February, 2024.

JAMES L. ROBART
United States District Judge