1
2
3
4
5
6

7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10  ANNA PATRICK, et al.,

CASE NO. C23-0630JLR

11              Plaintiffs,

ORDER

12       v.

13  DAVID L. RAMSEY, III, et al.,

14              Defendants.

15                    **I.    INTRODUCTION**

16      Before the court is Defendants David L. Ramsey, III, and The Lampo Group,

17  LLC's ("The Lampo Group," and together with Mr. Ramsey, the "Lampo Defendants")

18  motion for judgment on the pleadings regarding Plaintiffs'[1] conversion claim. (Mot.

19  (Dkt. # 76); Reply (Dkt. # 78).) Plaintiffs oppose the motion. (Resp. (Dkt. # 77).) The

20

21      [1] Plaintiffs are Anna Patrick, Douglas Morrill, Roseanne Morrill, Leisa Garrett, Robert
    Nixon, Samantha Nixon, David Bottonfield, Rosemarie Bottonfield, Tasha Ryan, Rogelio
22  Vargas, Marilyn Dewey, Peter Rollins, Rachael Rollins, Katrina Benny, Sara Erickson, Greg
    Larson, and James King (collectively, "Plaintiffs"). (Am. Compl. (Dkt. # 55) ¶¶ 16-66.)

court has considered the motion, the parties' submissions, the relevant portions of the record, and the governing law.  Being fully advised,[2] the court GRANTS the Lampo Defendants' motion for judgment on the pleadings.

## II.     BACKGROUND

Below, the court sets forth the factual and procedural background pertinent to the Lampo Defendants' motion for judgment on the pleadings.

**A.     Factual Background**

Plaintiffs are individuals who signed contracts with and paid money to non-party Reed Hein & Associates ("Reed Hein"), which did business under the name "Timeshare Exit Team," for assistance in "exiting" their obligations with respect to timeshares they owned at various resort properties.  (Am. Compl. (Dkt. # 55) ¶¶ 16-66 (alleging facts regarding each of the named Plaintiffs).)  Plaintiffs allege that Reed Hein charged them money up front for its services and promised them a "100% refund if they were not relieved of their timeshare obligations." (*Id.* ¶ 3; *see also id.* ¶ 81.)  Despite these representations, however, Reed Hein failed to terminate Plaintiffs' timeshare obligations, made false statements about its services, and refused to refund Plaintiffs' money when the "exits" were unsuccessful or resulted in the resort properties foreclosing on Plaintiffs' timeshares.  (*Id.* ¶¶ 3-4; *see also id.* ¶¶ 81-98 (describing Reed Hein's practices).)

//

//

---

[2] Neither the Lampo Defendants nor Plaintiffs request oral argument (Mot. at 1; Resp. at 1) and the court finds that oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

Plaintiffs allege that Reed Hein hired Mr. Ramsey, a nationally-syndicated radio talk-show host; The Lampo Group, Mr. Ramsey's wholly-owned company; and Happy Hour Media Group, LLC ("Happy Hour," and together with the Lampo Defendants, "Defendants"), Reed Hein's marketing firm, to promote its timeshare exit services. (*Id.* ¶¶ 5-6, 115-44, 154-72 (describing Mr. Ramsey's business and his relationship with Reed Hein).) According to Plaintiffs, Happy Hour "struck a deal with" the Lampo Defendants in which Mr. Ramsey "agreed to make false statements about Reed Hein to induce his followers to spend money on Reed Hein's illusory services." (*Id.* ¶¶ 122, 131.) In exchange, Reed Hein paid millions of dollars to the Lampo Defendants through Happy Hour. (*Id.* ¶¶ 2, 116.) Plaintiffs also allege that Happy Hour and the Lampo Defendants "kept extensive and contemporaneous records of Ramsey listeners referred to Reed Hein by" the Lampo Defendants because Reed Hein paid the Lampo Defendants a "per-lead rate for customer referrals." (*Id.* ¶¶ 145-53 (explaining how Reed Hein and Defendants tracked referrals).)

Plaintiffs filed this proposed class action on April 28, 2023. (*See* Compl. (Dkt. # 1).) Plaintiffs originally raised claims against all three Defendants for violation of the Washington Consumer Protection Act, negligent misrepresentation, and conspiracy, and against only the Lampo Defendants for unjust enrichment. (*Id.* ¶¶ 201-15.) On October 12, 2023, the court granted the Lampo Defendants' motion to dismiss Plaintiffs' unjust enrichment claim with prejudice and denied the motion in all other respects. (10/12/23 Order (Dkt. # 35) at 7-9, 13-14.) On December 5, 2023, the court granted Plaintiffs' motion for leave to amend their complaint to add a conversion claim against all three

Defendants.  (*See* 12/5/23 Order (Dkt. # 53) at 10-13.)  Plaintiffs filed their amended complaint on December 15, 2023.  (*See generally* Am. Compl.)

On February 23, 2024, the court granted Happy Hour's motion to dismiss Plaintiffs' conversion claim.  (2/23/24 Order (Dkt. # 74) at 15-17.)  Although the court granted Plaintiffs leave to amend (*see id.*), Plaintiffs elected not to file a second amended complaint (*see* Notice (Dkt. # 75)).  The Lampo Defendants filed this motion for judgment on the pleadings on April 18, 2024.  (Mot.[3])  Plaintiffs filed a timely response, and the Lampo Defendants filed a timely reply.  (Resp.; Reply.)  The motion is now ripe for decision.

## III.  ANALYSIS

Below, the court sets forth the standard of review for motions for judgment on the pleadings, then considers the Lampo Defendants' motion.

**A.  Legal Standard**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Judgment on the pleadings is proper when, "taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law."  *Gregg v. Haw., Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (quoting *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir.

---

[3] Plaintiffs argue that the Lampo Defendants violated Federal Rule of Procedure 59(e) "by asking for reconsideration greater than 28 days after the [c]ourt's order denying [the Lampo Defendants'] motion to dismiss the conversion claim."  (Resp. at 12.)  Rule 59(e) however, governs motions to alter or amend a judgment and thus does not apply here, where the court has not entered judgment.  *See* Fed. R. Civ. P. 59(e).  The court finds nothing procedurally improper about the timing of the Lampo Defendants' motion.

1998)). "Because a Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion, the same standard of review applies to motions brought under either rule." *Id.* (quoting *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)) (cleaned up).  Thus, the court must determine whether the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Under this standard, the court construes the allegations in the light most favorable to the nonmoving party, *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), and asks whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.[4]

**B.     Conversion**

"Conversion is the unjustified, willful interference with a chattel which deprives a person entitled to the property of possession." *In re Marriage of Langham & Kolde*, 106 P.3d 212, 218 (Wash. 2005) (quoting *Meyers Way Dev. Ltd. P'ship v. Univ. Sav. Bank*,

---

[4] Plaintiffs argue, citing out-of-circuit district court cases, that the movant's burden on a Rule 12(c) motion is to demonstrate that "the law entitles him to win given the undisputed facts that have been alleged in both parties' pleadings." (Resp. at 3-5 (quoting *Murphy v. Dept. of Air Force*, 326 F.R.D. 47, 49 (D.D.C. 2018)).)  As a result, according to Plaintiffs, the Lampo Defendants cannot seek judgment on the pleadings because they denied (and thus disputed) many of Plaintiffs' allegations in their answer. (*Id.* at 9-11 (citing *Murphy*, 326 F.R.D. at 48-49).)  This court, however, is located within the Ninth Circuit and therefore must apply the legal standards endorsed by the Ninth Circuit Court of Appeals.

910 P.2d 1308, 1320 (Wash. Ct. App. 1996)).  Money can be converted "only if the defendant 'wrongfully received' the money or 'was under obligation to return the specific money to the party claiming it.'"  *Davenport v. Wash. Educ. Ass'n*, 197 P.3d 686, 695 (Wash. Ct. App. 2008) (quoting *Pub. Util. Dist. No. 1 of Lewis Cnty. v. Wash. Pub. Power Supply Sys.*, 705 P.2d 1195, 1211 (Wash. 1985)).  A claim for conversion of money is possible only where the money is "is capable of being identified, as when delivered at one time, by one act and in one mass, or when the deposit is special and the identical money is to be kept for the party making the deposit, or when wrongful possession of such property is obtained."  *Brown ex rel. Richards v. Brown*, 239 P.3d 602, 610 (Wash. Ct. App. 2010) (quoting *Westview Invs., Ltd. v. U.S. Bank Nat'l Ass'n*, 138 P.3d 638, 646 (Wash. Ct. App. 2006)).

In its ruling granting Happy Hour's motion to dismiss Plaintiffs' conversion claim, the court concluded that Plaintiffs had not plausibly alleged that the "specific" or "identical" money they gave to Reed Hein remained identifiable when Reed Hein paid Happy Hour for advertising and marketing services.  (2/23/24 Order at 17.)  The Lampo Defendants now argue that the court must also dismiss Plaintiffs' conversion claim against them because they are "even further removed from Reed Hein than Happy Hour."  (Mot. at 3.[5])  Indeed, Plaintiffs allege that "[a]t all times, Reed Hein . . . made payments to [the Lampo Defendants] *via* Happy Hour Media."  (Am. Compl. ¶ 116.)  The court agrees with the Lampo Defendants that, "as a matter of logic, if it is not plausible that the

---

[5] The court cites the page numbers in the footers of the parties' briefs when referring to those briefs.

1  Plaintiffs' specific funds remained identifiable when paid from Reed Hein to Happy
2  Hour, then it cannot be plausible that those funds were somehow identifiable when any
3  payment was allegedly made from Happy Hour to the Lampo Defendants." (Mot. at 3.)

4  The court is unpersuaded by Plaintiffs' arguments to the contrary. First, as they
5  did in response to Happy Hour's motion to dismiss, Plaintiffs appear to read the court's
6  December 5, 2023 order as having settled once and for all that they have plausibly
7  pleaded a conversion claim. (*See* Resp. at 6 (citing 12/5/23 Order at 10).) Again,
8  Plaintiffs' reliance on that order is misplaced. The arguments presently before the court
9  are now more developed—and the standard of review more exacting—than those the
10 court considered when evaluating Plaintiffs' motion to amend. *See* Fed. R. Civ. P.
11 15(a)(2) ("The court should freely give leave [to amend the complaint] when justice so
12 requires.").

13 Second, Plaintiffs assert that they have alleged sufficient facts to state a plausible
14 conversion claim against the Lampo Defendants. (*See* Resp. at 6-9.) Plaintiffs' quoted
15 allegations, however, state only that Defendants and Reed Hein kept records of which
16 media sources referred customers to Reed Hein and that the Lampo Defendants were
17 paid, in part, on a "per-lead rate" for those referrals. (Resp. at 7-9 (quoting Am. Compl.
18 ¶¶ 145-47, 149).) Plaintiffs' allegations regarding Reed Hein's customer records fare no
19 better: they state only that the records include "referral sources for customers . . . contact
20 information for each referred customer, the amount each referred customer paid Reed
21 Hein, information about each referred customer's timeshare and timeshare obligations,
22 and information about what services, if any, Reed Hein provided to the customer." (Am.

Compl. ¶¶ 151-52.) None of these allegations allow the court to reasonably draw the inference that the specific money each Plaintiff paid to Reed Hein remained identifiable after Reed Hein paid Happy Hour and Happy Hour paid the Lampo Defendants. *Iqbal*, 556 U.S. at 678.

Plaintiffs also present a novel theory to explain how Plaintiffs' money could be identifiable when it reached the Lampo Defendants even if it was not identifiable in the hands of Happy Hour:

> Happy Hour was a marketing company with various sources of income other than Reed Hein. The [c]ourt found that putting the money in the operating account of Happy Hour made it indistinguishable from its own funds. But by withdrawing it to pay the [Lampo] Defendants on behalf of Reed Hein it disentangled those funds, identified them as Reed Hein money, and resumed the pass-through nature of its role. In this case, they were Reed Hein funds paid to the [Lampo] Defendants specifically for referring to the Ramsey customer class.

(Resp. at 11-12.) Plaintiffs have not, however, plausibly alleged any mechanism by which the specific money given by a Plaintiff to Reed Hein—money that was then paid to Happy Hour and intermixed with other funds in Happy Hour's operating account—could possibly become re-identifiable as the specific money belonging to that Plaintiff upon Happy Hour's payment to the Lampo Defendants. (*See generally* Am. Compl.) Accordingly, the court concludes that Plaintiffs have not plausibly alleged a conversion claim against the Lampo Defendants and GRANTS the Lampo Defendants' motion for judgment on the pleadings.

//

//

**D.   Leave to Amend**

Plaintiffs ask the court to dismiss their conversion claim without prejudice and with leave to amend.  (Resp. at 12-13.)  "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  Plaintiffs suggest that they can revive their claim by adding a "Conversion Class" that includes the "entire base of Reed Hein customers," but they do not explain how such a class would address the problem of how to identify the specific money belonging to each class member.  (*See* Resp. at 12-13.)  The court concludes that Plaintiffs can plead no facts consistent with the allegations in their amended complaint that would enable them to cure their conversion claim.  Therefore, the court denies Plaintiffs' request for leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS the Lampo Defendants' motion for judgment on the pleadings (Dkt. # 76) and DISMISSES Plaintiffs' conversion claim with prejudice.

Dated this 20th day of May, 2024.

JAMES L. ROBART
United States District Judge