THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANNA PATRICK, DOUGLAS MORRILL, ROSEANNE MORRILL, LEISA GARRETT, ROBERT NIXON, SAMANTHA NIXON, DAVID BOTTONFIELD, ROSEMARIE BOTTONFIELD, TASHA RYAN, ROGELIO VARGAS, MARILYN DEWEY, PETER ROLLINS, RACHAEL ROLLINS, KATRINA BENNY, SARA ERICKSON, GREG LARSON, and JAMES KING, individually and on behalf of all others similarly situated,

   Plaintiffs,

v.

DAVID L. RAMSEY, III, individually; HAPPY HOUR MEDIA GROUP, LLC, a Washington limited liability company; THE LAMPO GROUP, LLC, a Tennessee limited liability company,

   Defendants.

Case No. 2:23-cv-00630-JLR

**PLAINTIFFS' RESPONSE TO DEFNDANTS DAVID RAMSEY, III AND THE LAMPO GROUP, LLC'S MOTION TO COMPEL ARBITRATION OF ALL CLAIMS AND STAY CASE PENDING ARBITRATION**

Noting Date: August 9, 2024

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

## I.   INTRODUCTION

Plaintiffs respectfully request that the court deny Defendants' Dave Ramsey, III and The Lampo Group's (collectively, the "Ramsey Defendants") motion to compel arbitration pursuant to Plaintiff's contracts with Reed Hein—a company that the American Arbitration Association found to have waived its arbitration agreements when it refused to pay arbitrators' fees and refused to honor the arbitration awards against it. The Ramsey Defendant's motion is joined by Defendant Happy Hour Media Group, which is run by the same officer responsible for the decision not to pay arbitration fees and awards. Most of the facts and arguments in this response apply to both the Ramsey Defendant's motion and Happy Hour's joinder and motion, but the Plaintiffs have concurrently submitted a response to Happy Hour's joinder and motion.

First, equitable estoppel does not apply to non-signatories in this case. In Washington, 1) intertwined claims equitable estoppel does not apply when the complaint includes statutory claims, when there are no signatory defendants with identical claims, and when the plaintiffs need not rely on the contract to make his or her claims. Similarly, 2) direct benefits equitable estoppel does not apply to claims arising outside of the contract, and only applies when a signatory to the arbitration agreement compels a *non-signatory* directly benefiting from the underlying contract to attend arbitration.

Second, the Ramsey Defendants have waived the opportunity to arbitrate the case. They have had copies of the arbitration awards since Plaintiff's July 10, 2023 initial disclosures and copies of the arbitration agreements since Plaintiff's January 19, 2024 supplemental disclosures.

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

1    Third, the arbitration agreements are substantively unconscionable. Washington law

2    holds that 'loser-pays' provisions and limits on damages, like those included in the relevant

3    arbitration clause, are inherently unconscionable.

4    The cases Defendants cite are factually and meaningfully distinguishable from this case.

5    Unlike the cases Defendants cite, the statutory violations and tortious actions Defendants

6    allegedly committed in this case occurred before Plaintiffs entered into any contract with third-

7    party Reed Hein. Unlike the cases Defendants cite, there is no breach of contract claim in this

8    case, no signatories who are co-defendants in this case, and no identical claims made against

9    signatory-defendants made in any other case. Unlike the cases Defendants cite, Plaintiffs did

10   not include Defendants to subvert the arbitration clause with Reed Hein, because Reed Hein is

11   not a co-defendant, already waived its right to arbitration, and already resolved its remaining

12   claims through federal court litigation. Instead of showing the Court otherwise, Defendants

13   attempt to associate the claims in this case with the Reed Hein arbitration clauses by citing ten

14   paragraphs in the Amended Complaint, none of which show the claims in this case rely upon

15   the terms of the contracts. Defendants offer no analysis to show the Court how those citations

16   relate this case to the few appellate decisions carving a narrow equitable-estoppel exception

17   out of the general rule that a non-party to a contract cannot enforce that contract.

18   Finally, if the Court finds Defendants can compel arbitration, it should reserve all the

19   "gateway" issues for the arbitrator. Those include 1) the arbitrability of individual claims, 2)

20   the availability of class arbitration, and 3) any choice-of-law questions in arbitration. However,

21   for the reasons stated in the foregoing, the Court should deny the motion.

22

23

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

## II.    FACTS

### a.  Plaintiffs' Allegations in this Case Relate Exclusively to the Deceptive and Untruthful Pre-Contractual Conduct of Non-signatory Defendants

Plaintiffs allege that the Ramsey Defendants and Happy Hour Media Group engaged in deceptive conduct in violation of the Washington Consumer Protection Act ("CPA"), negligently misrepresented the nature of Reed Hein's services and guarantees, and agreed with each other and Reed Hein to accomplish the same. *See* Dkt. No. 55, ¶¶ 220-235. Plaintiffs' allegations relate to the Ramsey Defendants and Happy Hour's pre-contractual conduct which proximately caused Plaintiffs to pay money to Reed Hein to get them out of their time share obligations. *See generally* Dkt. No. 55. Plaintiffs do not allege that the Ramsey Defendants or Happy Hour violated any duties owed to them *after* Plaintiffs contracted with Reed Hein. *Id.* Nor do they allege that the Ramsey Defendants and Happy Hour violated any duties created by Plaintiffs' contracts with Reed Hein. *Id.*

Plaintiffs' contracts with Reed Hein do not include waivers of pre-existing claims, and do not waive pre-existing (but unknown and unaccrued) claims. *See*, *e.g.*, Dkt No. 83-2, Dkt. No. 83-9. Plaintiffs' contracts also make no mention of the Ramsey Defendants or Happy Hour Media Group. *See id*. Plaintiffs' contracts also do not include any references to Reed Hein's advertising practices, nor those of its vendors and endorsers. *See id*.

### b.  Plaintiffs Provided Arbitration Awards and Reed Hein Contracts in their Initial Disclosures

Plaintiffs produced their initial disclosures to the Defendants on July 10, 2023. *See* Albert Decl., ¶¶ 6-7. Plaintiffs' initial disclosures included 13 arbitration awards related to customers' claims against Reed Hein. *Id.* Each of these arbitration awards states that the arbitration was

*PLTFFS' RESPONSE TO MTN TO COMPEL ARBITRATION* - Page 4
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

conducted "in accordance with the arbitration agreement." *See* Albert Decl., Exs. 2-14. Plaintiffs' original complaint and amended complaint each reference prior arbitrations, including those for which Plaintiffs produced arbitration awards as part of their initial disclosures. *See* Dkt. No. 1 at ¶¶ 103-104; Dkt. No. 55 at ¶¶ 104-106.

Within the same initial disclosures, Plaintiffs produced copies of spreadsheets extensively documenting Reed Hein's customers and contracts, including information about Plaintiffs' contracts. Albert Decl., ¶ 7. Among other information, the spreadsheets identify which form contract each customer signed and who, if anyone, referred the customer to Reed Hein. *Id*.

Plaintiffs supplemented their initial disclosures on January 19, 2024. Albert Decl., ¶ 8. The supplementary initial disclosures included hundreds of consumer complaints against Reed Hein filed with the attorneys general of Washington and other states. *Id*. The consumer complaints include copies of Reed Hein's form contracts. *Id*. The form contracts include substantially the same arbitration clause included in Plaintiffs' contracts. [1] *See, e.g.,* Albert Decl., Ex. 15 at 3; Albert Decl., Ex. 16 at 3; Albert Decl., Ex. 17 at 3; Albert Decl., Ex. 18 at 4.

//

//

---

[1] While not all Plaintiffs have been able to locate their contracts with Reed Hein, Plaintiffs admit that the unlocated contracts almost certainly contain the same or nearly identical arbitration clauses as those in the contracts which have been located. Plaintiffs believe and the Reed Hein's records suggest that, throughout its existence, Reed Hein presented customers with contracts of adhesion containing substantially similar arbitration and choice of law clauses.

*PLTFFS' RESPONSE TO MTN TO COMPEL ARBITRATION* - Page 5
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

**c.   The Arbitration Clauses Contain Loser Pays Provisions and Limits on Damages**

The arbitration provisions that non-signatory Defendants seek to enforce each contain the same 'loser-pays' provision and a restriction on damages or injunctive relief. Specifically, each contains the following language:

> The arbitrator shall have no authority to (a) award punitive, consequential, or indirect damages, or (b) issue injunctive or other equitable relief. The prevailing party shall be entitled to an award of costs, expenses and reasonable attorney's fees, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

Dkt. No. 83 at 4-5.

**d.   Reed Hein is the Signatory to the Reed Hein Contracts but It Waived Its Right to Compel Arbitration and the AAA Granted Plaintiffs the Right to Sue Reed Hein in Court**

In February 2020, Reed Hein compelled a superior court case into arbitration with the American Arbitration Association ("AAA"). Albert Decl., ¶¶1-4. Afterward, Plaintiffs' counsel began filing arbitration demands directly with the AAA. *Id*. Approximately forty petitioners filed cases with the American Arbitration Association and fourteen of them proceeded to evidentiary hearings. *Id*. Petitioners prevailed in all but one evidentiary hearing. Plaintiffs' counsel arbitrated claims brought against Reed Hein by its customers before the American Arbitration Association and under the arbitration clauses in its contracts. Albert Decl., Exs. 1-13 (arbitration awards); *see* Dkt. No. 55, ¶¶ 101, 104-108, 128. In each of those arbitrations, the arbitrator applied Washington law because the choice-of-law provisions in Reed Hein's contracts mandated the application of Washington law to each of the claimants' claims. *See id.*

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

Reed Hein stopped paying arbitration fees and awards in 2021. Albert Decl., ¶¶ 1-4. After Reed Hein stopped paying arbitration fees and awards, the American Arbitration Association refused to accept additional arbitrations involving Reed Hein, granted Plaintiffs the right to sue Reed Hein in court pursuant to R-1(d) of the AAA Consumer Arbitration Rules, and requested the Reed Hein stop including its name in arbitration clauses. *Id*; *See also* Ex. 1, Albert Decl. Because the American Arbitration Association would not accept arbitrations involving Reed Hein, Plaintiffs were able to bring a class action in federal court. *Id.* at ¶ 5; *see Adolph v. Reed Hein & Associates LLC et al.*, Case No. 2:21-cv-01378-BJR (W.D. Wash. 2021).

## III.   ARGUMENT

Each of the Plaintiffs' contracts with Reed Hein includes a choice of law provision requiring that it be construed under Washington law:

> This Agreement shall in all respects, including all matters of construction, validity and performance, be governed by, and construed and enforced in accordance with, the laws of the State of Washington (without regard to any rules governing conflict of laws) and the United States of America.

See, e.g., Dkt. No. 83-2 at 5; Dkt No. 83-9 at 7.

Under Washington law, a court must determine the validity of an arbitration clause where a party brings a discrete challenge to that clause. *McKee v. AT & T Corp.*, 164 Wash.2d 372, 394, 191 P.3d 845 (2008), *abrogated on other grounds by AT & T Mobility Corp. v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740 (2011); *see also Townsend v. Quadrant Corp.*, 153 Wash. App. 870, 879-880, 224 P.3d 818 (Wash. Ct. App. Div. 1, 2009), *rev'd in part on other*

*PLTFFS' RESPONSE TO MTN TO COMPEL ARBITRATION* - Page 7
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

*grounds*, 173 Wash.2d 451 (2012). The same is true under federal law. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445, 126 S.Ct. 1024 (2006).

**a.   Equitable Estoppel Does Not Permit the Ramsey Defendants to Compel Arbitration**

Whether parties are subject to arbitration is a matter of contract. *Burnett v. Pagliacci Pizza, Inc*., 196 Wash.2d 38, 46, 470 P.3d 486 (2020). As a general rule, a person or entity must be a party to an arbitration agreement to be subject to the agreement. *David Terry Invs., LLC-PRC v. Headwaters Development Group, LLC,* 13 Wash. App. 2d 159, 166, 463 P.3d 117 (2020). Based on that reasoning, it follows that that a person or entity must be party to an arbitration agreement to enforce the agreement as well. The only exception arises from a theory of equitable estoppel.

Washington recognizes two forms of equitable estoppel relevant to arbitration agreements: 1) direct benefits estoppel and 2) intertwined claims estoppel. *Norwood v. MultiCare Health Sys.*, ___Wash. App. 2d ___, 548 P.3d 978, 986 (Wash. Ct. App. Div. 2, 2024) ("*Townsend* and *David Terry Investments* . . . identify two types of equitable estoppel. *Townsend* describes direct benefits estoppel, which focuses on whether the party opposing arbitration is claiming a contract's benefits while attempting to avoid the arbitration provision in the contract . . . *David Terry Investments* describes intertwined claims estoppel, where the claims asserted by the party opposing arbitration are intertwined with the underlying contract obligations"). Federal case law is the same and similarly describes direct benefits and intertwined claims as the only two forms of equitable estoppel relevant to arbitration. *See Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045-1046 (9th Cir., 2009); *see also East West Bank v. Bingham*, 992 F.Supp.2d 1130, 1133 (W.D.Wash., 2014) (describing Washington

*PLTFFS' RESPONSE TO MTN TO COMPEL ARBITRATION* - Page 8
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

and federal recognition of distinct types of equitable estoppel relevant to arbitration). Defendants argue that both apply.

As a threshold matter, the Ninth Circuit has never allowed a non-signatory defendant to use equitable estoppel to compel a signatory plaintiff into arbitration. *Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166, 1169 (9th Cir., 2021) ("We have never previously allowed a non-signatory defendant to invoke equitable estoppel against a signatory plaintiff[.]" (quoting *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847-848 (9th Cir., 2013)).

As a second threshold matter, the Ramsey Defendants ask to enforce an arbitration agreement that even the signatories to that agreement cannot enforce. The arbitration clause requires arbitration before the American Arbitration Association. The American Arbitration Association will not accept arbitrations in which Reed Hein is a party because Reed Hein failed to pay arbitration fees in prior consumer arbitrations. Although there is no case law directly addressing such an idiosyncratic situation, it stands to reason that a Court cannot permit a non-party to enforce an arbitration clause that the parties themselves cannot enforce.

Finally, each of the equitable estoppel cases relied on by the Ramsey Defendants is factually distinguishable from this case. In all but one Washington appellate case or appellate case applying Washington law cited by the Ramsey Defendants in which a court compelled arbitration on the basis of equitable estoppel, a signatory to the agreement was a defendant in the case. *See Townend*, 173 Wash.2d 451 (signatory Quadrant Corporation was a defendant); *see also David Terry Invs.*, 13 Wash. App. 2d 159 (signatories Headwaters Development Group LLC and SG Spady Consulting & Construction Management, LLC were each defendants); *see also Blanton v. Domino's Pizza Franchising LLC*, 2019 WL 5543027 at *3

*PLTFFS' RESPONSE TO MTN TO COMPEL ARBITRATION* - Page 9
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

(E.D. Mich. Oct. 25, 2019) (signatory Domino's was a defendant); *see also Dekrypt Capital, LLC v. Uphold Ltd.*, 20 Wash. App. 2d 1043 (signatory Uphold Ltd. was a defendant). In the sole Washington case in which there was not a signatory defendant, the plaintiff attempted to add a signatory defendant, filed an identical complaint against that signatory defendant, and sought to consolidate her claims against the signatory and non-signatory defendants. *See Norwood*, 548 P.3d at 983. Here, there is no signatory defendant and, unlike in *Norwood*, the Plaintiffs have not brought identical claims against a signatory and have not sought to consolidate their claims against the Ramsey Defendants or Happy Hour with any claims against Reed Hein.[2]

Out-of-circuit cases cited by the Ramsey Defendants that do not apply Washington law are inapplicable here. As the parties agree, Washington law governs the arbitration clauses in Plaintiffs' contracts with Reed Hein. *MS Dealer Services Corp. v. Franklin*, 177 F.3d 942 (11th Cir., 1999), does not apply Washington law. *See MS Dealer Services Corp. v. Franklin*, 177 F.3d 942, 946-948 (11th Cir., 1999), *abrogated in part by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009). Regardless, it is not clear that *MS Dealer Services* and the Ramsey Defendants' description of it is an accurate representation of current law in the 11th Circuit. *See Bahamas Sales Associate, LLC v. Byers*, 701 F.3d 1335, 1343 (11th Cir., 2012) (for intertwined claims equitable estoppel to apply, "[t]he signatory must attempt to hold the non-signatory to the terms of the contract") and *Usme v. CMI Leisure Management, Inc.*, __ F.4th

---

[2] Assuming, for the purposes of argument alone, that each member of the purported plaintiff class in this case is a member of the certified class in *Adolph*, as the Ramsey Defendants argue, Plaintiffs claims against Reed Hein in *Adolph* were separate and distinct from he claims in this case and were based in Reed Hein's conduct independent from the Ramsey Defendants and Happy Hour.

*PLTFFS' RESPONSE TO MTN TO COMPEL ARBITRATION* - Page 10
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

\_\_, 2024 WL 3217570 (11th Cir., 2024) (citing *Bahamas Sales Associate, LLC v. Byers* to describe intertwined claims equitable estoppel and recognizing partial abrogation of *MS Dealer Services*).

The sole out-of-circuit case cited by the Ramsey Defendants which applies Washington law is *Blanton v. Domino's Pizza Franchising LLC*, 2019 WL 5543027 (E.D. Mich. Oct. 25, 2019), but it is both unpublished and states that "[a]s a general principle, Washington law does not allow non-signatory defendants to apply equitable estoppel to a signatory plaintiff." *Blanton*, 2019 WL 5543027 at *3 (E.D. Mich. Oct. 25, 2019). Rather than applying the sort of equitable estoppel the Ramsey Defendants and Happy Hour seek here, *Blanton* concludes that, under Washington law, a parent corporation can enforce the terms of an arbitration agreement signed by its subsidiaries, relying on an entirely separate set of Washington case law from that applicable here. *See Blanton* at * 4 (citing *Wiese v. Cach, LLC*, 189 Wash. App. 466, 482, 358 P.3d 1213 (Wash. Ct. App. Div. 1, 2015) (holding parent company was entitled to invoke arbitration clause signed by its subsidiary)).

> **i. Intertwined claims estoppel does not apply because 1) Plaintiffs allege statutory claims, 2) there are no identical claims against signatory defendants in the case or other cases, and 3) the Plaintiffs claims do not rely on the terms of their Reed Hein contracts to make their claims.**

Under Washington law, intertwined claims estoppel only permits a non-signatory to compel a signatory to arbitrate where the signatory's "claims are 'intimately founded in and intertwined with' the underlying agreement." *Norwood*, 548 P.3d at 587; *see David Terry Invs., LLC-PRC v. Headwaters Dev. Grp., LLC*, 13 Wash. App. 2d 159, 171, 463 P.3d 117 (Wash.

*PLTFFS' RESPONSE TO MTN TO COMPEL ARBITRATION* - Page 11
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

Ct. App. Div. 3, 2020)).[3] In order to be intertwined and intimately founded in underlying contractual obligations, claims must be based on allegations that *depend* on the terms of the contract containing the arbitration agreement. *See Norwood*, 548 P.3d at 985. The fact that a Complaint references a contract with an arbitration clause is not enough. *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1129 (9th Cir., 2013). Instead, the claims must "rely" upon the terms of the contract:

> [Intertwined claims] "[e]quitable estoppel applies only if the plaintiffs' claims against the nonsignatory are dependent upon, or inextricably bound up with, the obligations imposed by the contract plaintiff has signed with the signatory defendant" . . . "[M]erely 'mak[ing] reference to' an agreement with an arbitration clause is not enough. Equitable estoppel applies 'when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory.

*Kramer*, 705 F.3d at 1129 (quoting *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 92 Cal. Rptr. 3d 534 (2009)) (alterations except first and third in original).

### 1. As a matter of law, statutory claims against a non-signatory defendant are not intertwined with the terms of a contract with a third-party.

Statutory claims against non-signatory third-parties do not arise out of or relate to the contract containing the arbitration clause. *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847-

---

[3] There appears to be a split between Division II and Division III of the Washington Court of Appeals regarding application of intertwined claims equitable estoppel. Division II applies intertwined claims equitable estoppel where claims are intertwined with underlying contract obligations. *See Norwood*, 548 P.3d at 986-987. Division III applies intertwined claims equitable estoppel where claims are intertwined with arbitrable claims against a party to the arbitration agreement. *See David Terry Invs.*, 13 Wash. App. at 171-172. Division II's application appears to more closely align with federal law. *See, e.g., Mundi*, 555 F.3d at 1046 ("a signatory may be required to arbitrate a claim brought by a nonsignatory 'because of . . . the fact that the claims were intertwined with the underly contractual obligation.'" (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 201 (3d Cir., 2001)). Plaintiffs thus rely on *Norwood* in discussing intertwined claims equitable estoppel.

*PLTFFS' RESPONSE TO MTN TO*
*COMPEL ARBITRATION* - Page 12
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

848 (9th Cir., 2013) (applying Washington law); *see also Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1047 (9th Cir., 2009) (citing and describing *Brantley v. Republic Mortgage Ins. Co.*, 424 F.3d 392 (4th Cir., 2005)). That includes Washington Consumer Protection Act claims. *Id*. Consequently, Consumer Protection Act claims are not "intertwined with the contract providing for arbitration." *Id*. That is the case even when the payments relevant to damages were made pursuant to the contract containing the arbitration agreement. *See id.* (non-signatory defendant could not compel arbitration based on equitable estoppel when faced with claims related to payments made by plaintiff to a non-party pursuant to a contract between plaintiff and non-party).

Here, the arbitration clauses apply only to "[a]ny claim or controversy arising out of or relating to this Agreement." Plaintiffs have not alleged that any other party to this case breached the contract. Instead, as in *Rajagopalan*, Plaintiffs have brought a separate and distinct statutory claim against the Ramsey Defendants and Happy Hour based on the Ramsey Defendants' and Happy Hour's extra-contractual conduct. As in *Rajagopalan*, Plaintiffs' claims do not arise under or relate to the contract containing the arbitration clause. Resultingly, the arbitration clause does not apply to Plaintiffs' claims against the Ramsey Defendants.

> **2.  Washington courts have not compelled a signatory plaintiff to arbitrate claims against non-signatory defendant under a theory of intertwined claims estoppel unless there is a signatory co-defendant or the claims are identical to claims against a signatory defendant.**

The purpose of intertwined claims estoppel is to prevent a plaintiff from "avoid[ing] arbitration by suing non-signatory defendants for claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants…" *Norwood v. MultiCare Health Sys*, 548 P.3d 978, 984 (Wash. Ct. App. 2024) (citing *David Terry Invs.*, 13

*PLTFFS' RESPONSE TO MTN TO
COMPEL ARBITRATION* - Page 13
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

Wash. App. 2d at 171-172). Consequently, neither party appears to have found case law in which Washington appellate courts applied intertwined claims estoppel to compel arbitration of a case with non-identical claims alleged solely against a non-signatory defendant.

Washington appellate courts appear to have addressed the issue of intertwined claims estoppel three times since the Washington State Supreme Court's decision in *Townsend*. In each of those cases, the non-signatory defendant was either co-defendant with a signatory defendant, or faced identical claims as the signatory defendant faced in a separate but related action. *See David Terry Invs.*, 13 Wash. App. 2d at 171-172 (applying intertwined claims equitable estoppel to compel arbitration against non-signatory defendants who were related legal entities and individuals to the signatory co-defendants); *see also Dekrypt*, 20 Wash. App. 2d 1043 at * 6 (Wash. Ct. App. Div. 1, 2022) (applying intertwined claims estoppel where "signatories to the TSA, brought suit against nonsignatories . . . based on the same facts and seeking the same relief as the claims they assert against Uphold,. . . a signatory defendant.") (unpublished); *see also Norwood*, 548 P.3d at 986-987 (applying intertwined claims equitable estoppel where plaintiff brought separate suits, through "almost identical" complaints asserting the same claims, against signatory defendant and non-signatory defendants after seeking to amend complaint to add signatory defendant to complaint against non-signatory defendants and then moved to consolidate the cases on a theory that the claims were identical). In each of those cases, the claims against the non-signatory defendant arose directly from the contractual terms of the signatories' agreement and were substantively identical to the claims against the signatory defendant.

*PLTFFS' RESPONSE TO MTN TO COMPEL ARBITRATION* - Page 14
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

None of those conditions exist here. First, there are no signatories to the arbitration agreement in this case and no signatories with identical claims in a separate case. Second, the Plaintiffs do not have an enforceable arbitration agreement with Reed Hein at all because Reed Hein was expelled from the very arbitration association it identified in its arbitration clauses. Third, the Plaintiffs' claims against Reed Hein were *already* resolved through the consequent litigation Reed Hein had to undergo because of the AAA's decision. Even if they were not, Reed Hein could not enforce the agreements because it was administratively dissolved in 2023. Compelling Plaintiffs to arbitrate when there are no signatories, no identical claims, and no way for the *signatories* to enforce arbitration defies the basis for intertwined claims estoppel and expands that doctrine beyond its purpose.

### 3. A non-signatory defendant cannot compel arbitration when the signatory plaintiff does not rely on the contract to enforce its claims.

For intertwined claims estoppel to apply, Plaintiffs "must rely on the terms of the written agreement in asserting [its] claims." *Kramer*, 705 F.3d at 1129 (9th Cir., 2013). In *Norwood*, the Plaintiff sued a hospital who paid the Plaintiff for anesthesiology services arranged by a third party pursuant to a services contract containing an arbitration clause. As the court repeatedly clarified, no aspect of the Plaintiffs' claims could be understood without the services contract that arranged the very relationship between the plaintiff and defendants. *Norwood* 548 P.3d at 987. In *Dekrypt,* the core issue was whether the Defendant could compel arbitration of claims arising out of a breach of contract when it only signed the contract as a proxy for the yet-unformed company that would ultimately provide the services. The claims against the signing proxy were identical to any claims the plaintiff could have made against the unformed company. *Dekrypt*, 20 Wash. App. 2d 1043 at *5. In *David Terry Invs.,* the

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

signatory defendants and non-signatory defendants were each controlled by the same person accused of using all the defendant-entities to commit the same acts of fraud. *David Terry Invs.*, 13 Wash. App. 2d at 170. In contrast, the Supreme Court in *Townsend* found that a housing developer's duties to children who had become sick from mold resulting from poor craftsmanship did not arise out of a purchase-and-sale agreement containing an arbitration clause. *See Townsend*, 173 Wash.2d at 465-466.

The issues in this case are not the same as they were in *Norwood, Decrypt,* and *David Terry Investments.* The Ramsey Defendants and Happy Hour were not proxies for Reed Hein who signed the agreements on behalf of Reed Hein. Nor were they interrelated entities managed by the same person accused of using all the same entities to commit the same torts and statutory violations. Furthermore, their duties to the plaintiffs did not flow through a services contract with Reed Hein. The Ramsey Defendants' and Happy Hour's duties not to violate the Consumer Protection Act or commit negligent misrepresentation did not depend upon the Reed Hein agreements at all. While those agreements might impose additional duties on Reed Hein, they impose no duties whatsoever regarding the Ramsey Defendants' or Happy Hour's endorsements, referrals, deceptive advertising, or consumer protection violations, which are the issues in this case. The Ramsey Defendant's and Happy Hour's occurred prior to the time the Plaintiffs signed any agreement with Reed Hein and there is no language in the arbitration clause waiving the Plaintiffs' rights to bring claims in federal court against for those preceding violations. It would be unreasonable to conclude that by agreeing to the terms of a contract of adhesion prepared by Reed Hein, Plaintiffs intended to submit any pre-existing against third parties to arbitration under the terms in Reed Hein's contracts.

*PLTFFS' RESPONSE TO MTN TO COMPEL ARBITRATION* - Page 16
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

1    Plaintiffs anticipate that the Ramsey Defendants may rely on *Pinkis v. Network Cinema*

2    *Corp.*, 9 Wash. App. 337, 521 P.2d 751 (Div. 1, 1973), to argue that contract formation issues

3    are themselves arbitrable. In *Pinkis*, the Court of Appeals, Division I held that "when a broad

4    arbitration clause is adopted evidencing an intent to arbitrate all disputes between the parties,

5    issues relating to the negotiation and making of the contract . . . are referable to arbitration,

6    unless the arbitration clause itself was improperly transacted." *Pinkis v. Network Cinema*

7    *Corp.*, 9 Wash. App. 337, 345, 521 P.2d 751 (Wash. Ct. App. Div. 1, 1973); *see also Townsend*,

8    153 Wash. App. at 881 (*Pinkis* "echoed" the holding of *Prima Paint Corp. v. Flood & Conklin*

9    *Mfg. Co.*, 388 U.S. 395, 87 S. Ct. 1801 (1967)). But the Ramsey Defendants' and Happy

10   Hour's precontractual conduct is not a contract formation issue like those addressed in *Pinkis*

11   and *Prima Paint*. Neither party has argued that the Plaintiffs' contracts with Reed Hein are

12   void or voidable based on the Ramsey Defendants' or Happy Hour's pre-contractual conduct

13   and Plaintiffs have not brought contractual claims. Rather, the pre-contractual conduct

14   consisted of consumer protection violations and related acts which caused Plaintiffs to contact

15   and trust Reed Hein. That kind of distinct, precontractual conduct cannot arise from *later*

16   contracts between the victims of that conduct and a third party.

17       The Defendants' efforts to show these claims depend upon the Reed Hein contracts seem

18   hollow. Without any analysis or explanation, they cite ten paragraphs of the Amended

19   Complaint, none of which show the claims in this case rely on the terms of the Reed Hein

20   contracts. Dkt. No. 82 at 6:11-12 (citing paragraphs 2, 5, 7, 122, 131, 132, 146, 186, 231, and

21   235). Seven of those paragraphs neither mention nor reference Plaintiffs' contracts with Reed

22   Hein at all.  *See* Dkt. No. 55, ¶¶ 2, 5, 7, 122, 131, 132, 235. Instead, they describe the Ramsey

23

*PLTFFS' RESPONSE TO MTN TO*
*COMPEL ARBITRATION* - Page 17
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

Defendants' and Happy Hour's own acts and interactions between the Ramsey Defendants, Happy Hour and Reed Hein, and payments from Reed Hein to the Ramsey Defendants and Happy Hour under a *different contract*. *Id*. One paragraph merely describes Reed Hein's own internal recordkeeping practices. *See id.* at ¶ 146. One describes why purported class members decided to purchase services from Reed Hein. *See id.* at ¶ 186. The only referenced paragraph stating that Plaintiffs entered into contracts with Reed Hein is specific to the unjust enrichment claim—a claim that was dismissed. *See id.* at ¶ 231. Even if it was not dismissed, it merely claims the Plaintiffs conferred a benefit on Defendants, not the other way around. *Id*. Regardless, "merely 'mak[ing] reference to' an agreement with an arbitration clause is not enough." *Kramer*, 705 F.3d at 1129.

### ii. Direct Benefits Estoppel Does Not Apply to 1) Non-Contractual Claims, or 2) Cases in Which a Non-signatory Seeks to Compel Arbitration

Other than intertwined claims estoppel, equitable estoppel can be applied to an arbitration to "preclude[] a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Townsend*, 173 Wash.2d at 461. Washington courts refer to this type of equitable estoppel as direct benefits equitable estoppel. *See id*. Direct benefits estoppel does not apply here.

First, nowhere does the Amended Complaint allege that Plaintiffs claimed the benefits of their contracts with Reed Hein. The whole point of the Amended Complaint is that they received nothing for the thousands of dollars they gave to Reed Hein. It does not make sense to compel arbitration on a direct benefits theory in a case centered around the absence of any benefit to the plaintiffs.

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

Second, direct benefits equitable estoppel does not apply to claims based on independent non-contractual duties and violations. *See id.* at 464-465 (Stephens, J., concurring/dissenting).[4] Direct benefits equitable estoppel applies only to claims based on a breach of contractual duties. *Id*. The Plaintiffs' claims here are based on Washington statute and common law, not contractual duties and obligations established in their contracts with Reed Hein.

Third, Washington courts have only applied direct benefits equitable estoppel where a signatory to an arbitration clause seeks to bring a non-signatory beneficiary of a contract into arbitration, not the other way around. *See id.* at 465-466 (analyzing and declining to apply direct benefits equitable estoppel where signatory company sought to compel arbitration of claims brought by non-signatory children); *see David Terry Invs.*, 13 Wash. App. 2d at 169-170 (analyzing and applying direct benefits equitable estoppel where signatory companies sought to compel arbitration of claims brought by non-signatory member-manager of co-plaintiff LLC, which was itself a signatory); *see also Norwood*, 548 P.3d at 986 (declining to address direct benefits equitable estoppel in case where non-signatory sought to compel arbitration by signatory); *see also Dekrypt*, 20 Wash. App. 2d 1043 at *6 (describing, but not applying, direct benefit equitable estoppel where non-signatory defendants sought to compel arbitration of claims brought by signatory plaintiffs). Even in *David Terry Investments*, where the Washington Court of Appeals applied *both* intertwined claims estoppel and direct benefits estoppel, it still declined to apply them the way the Ramsey Defendants now advocate. There,

---

[4] Justice Stephens' concurrence is the controlling opinion on the equitable estoppel issue in *Townsend. See Norwood v. MultiCare Health Sys.,* 548 P.3d 978, 985 (fn. 3) (Wash. Ct. App. 2024) ("Justice Stephens's concurrence/dissent was joined by four other justices . . . making her opinion the majority opinion on this issue.")

*PLTFFS' RESPONSE TO MTN TO COMPEL ARBITRATION* - Page 19
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

it found intertwined claims estoppel compelled arbitration of *signatory* plaintiffs' claims and applied direct-benefits equitable estoppel to compel arbitration of the *non-signatory* plaintiff's claims.

### b. Even if the Ramsey Defendants Could Enforce the Arbitration Clause, They Have Waived the Right to Do So

A party asserting waiver of a contractual right to arbitrate based on litigation conduct must show that the other party had knowledge of an existing right to compel arbitration and engaged in intentional acts inconsistent with that right. *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir., 2023). While prior case law placed a "heavy" burden on the party asserting waiver, this is no longer the case; the party asserting waiver still bears the burden, it is no longer a "heavy" burden. *Id.* at 1014-1015. Prejudice is *not* an element of waiver, and waiver of a contractual right to arbitrate is not conditioned on prejudice. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417-419, 142 S. Ct. 1708 (2022).[5]

A party "acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time." *Newirth ex rel. Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 941 (9th Cir., 2019). The test asks "whether those actions holistically 'indicate a conscious decision . . . to seek judicial judgment on the merits of the arbitrable claims, which

---

[5] Washington law mirrors federal law on waiver of a contractual right to arbitrate; prejudice is not an element of Washington law. *See Kinsey v. Bradley*, 53 Wash. App. 167, 169, 765 P.2d 1329 (Wash. Ct. App. Div. 3, 1989) (169 ("To establish waiver under federal law, the party opposing arbitration must demonstrate (1) knowledge of an existing right to compel arbitration, (2) acts inconsistent with that right, and (3) prejudice . . . On the other hand, prejudice is not required under state law." (internal citations omitted)). Prejudice is also not an element of the federal test following *Armstrong* and *Morgan*.

*PLTFFS' RESPONSE TO MTN TO COMPEL ARBITRATION* - Page 20
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

would be inconsistent with a right to arbitrate." *Armstrong*, 59 F.4th at 1015 (quoting *Hill v. Xerox Bus. Servs.*, 59 F.4th 457, 471 (9th Cir., 2023)) (alteration in original). A party acts inconsistently with exercising the right to arbitrate where it "litigated in federal court for over a year, filed a motion to dismiss 'on a key merits issue,' and received an adverse ruling before moving to compel arbitration." *Armstrong*, 59 F.4th at 1016 (citing *Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir., 2019)).

The Ramsey Defendants suggest that they did not know and could not have known about any arbitration clauses before May 8, 2024. *See* Dkt. No. 82 at 2:13-4:13. That is, however, inaccurate. The Ramsey Defendants had copies of arbitration awards and information about which form contract each Reed Hein customer, including Plaintiffs, signed as early as July 10, 2023. They had copies of Reed Hein form contracts, including contracts containing substantially the same arbitration clauses as Plaintiffs' contracts, as early as January 19, 2024. The Ramsey Defendants had all the information necessary to recognize any claimed right to arbitrate by July 10, 2023, and certainly had everything necessary by January 19, 2024. The court can and should reasonably conclude that the Ramsey Defendants had knowledge of their claimed right to arbitrate as early as July 10, 2023 and no later than January 19, 2024.

Since Plaintiffs produced their initial disclosures, the Ramsey Defendants have filed a motion to dismiss (Dkt. No. 25), a response in opposition to Plaintiffs' efforts to amend their complaint (Dkt. No. 52), and a motion for judgment on the pleadings (Dkt. No. 76). In addition, they have stipulated to various changes to the case schedule and discovery protocols. *See, e.g.*, Dkt. Nos. 70, 72, and 80. The Ramsey Defendants also propounded a substantial number of

*PLTFFS' RESPONSE TO MTN TO COMPEL ARBITRATION* - Page 21
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

discovery requests in February, 2024. *See* Albert Decl., ¶ 9 (stating the Ramsey Defendants discovery requests included 1,412 separate interrogatories and requests for production).

Like the defendants in *Martin v. Yasuda*, the Ramsey Defendants engaged in litigation for approximately one year before seeking to compel arbitration. Also as in *Martin*, they filed a motion to dismiss on a "key merits issue" before seeking to compel arbitration. And, like in *Martin*, the Ramsey Defendants responded to discovery, stipulated to filings structuring the litigation, and entered into a protective order before moving to compel arbitration. *See Martin*, 829 F.3d at 1126. Beyond what occurred in *Martin*, the Ramsey Defendants *also* filed a motion for judgment on the pleadings and propounded more than 1,000 discovery requests before seeking to compel arbitration. On the whole, the Ramsey Defendants' conduct is inconsistent with exercising their claimed right to arbitrate Plaintiffs' claims.

**c.   The Arbitration Clause is Unconscionable Under Washington Law and Should Not be Enforced**

"In Washington, either substantive or procedural unconscionability is sufficient to void a contract." *Gandee v. LDL Freedom Enterprises, Inc*., 176 Wash.2d 598, 603, 293 P.3d 1197 (2013) (citing *Alder v. Fred Lind Mannor*, 153 Wash.2d 331, 103 P.3d 773 (2004)). Substantive unconscionability exists where a term is one-sided or overly harsh, shocking to the conscience, monstrously harsh, or exceedingly calloused. *Alder v. Fred Lind Mannor*, 153 Wash.2d 331,344-345, 103 P.3d 773 (2004). In Washington, substantive unconscionability on its own is sufficient to void a contract. *Alder*, 153 Wash.2d at 347. Where substantively unconscionable terms pervade an arbitration agreement, the entire arbitration agreement is void. *Id.* at 358.

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

In the context of a consumer class action brought under the CPA, a "loser pays" provision in an arbitration agreement is substantively unconscionable. *Gandee*, 176 Wash.2d at 605-606; *see Adler*, 153 Wash.2d at 354-355 (costs and fees provision was unconscionable in context of statutory fee shifting); *see also Walters v. A.A.A. Waterproofing, Inc.*, 151 Wash App. 316, 321-325, 211 P.3d 454 (Wash. Ct. App. Div. 1, 2009) ("loser pays" provision in arbitration agreement was substantively unconscionable because it "undermines [plaintiff's] ability to vindicate his statutory rights"). A "loser pays" provision related to a claim under the CPA is substantively unconscionable because it "serves to benefit only [the defendant] and, contrary to the legislature's intent, effectively chills [the plaintiffs'] ability to bring suit under the CPA." *Gandee*, 176 Wash.2d at 606. Where removing a "loser pays" provision from a brief, four-sentence arbitration clause would significantly alter the tone of the clause and the nature of the arbitration described in the clause, the provision is not severable and the entire clause is void. *See id*. at 607.

Damages limitation provisions in arbitration clauses can also be substantively unconscionable under Washington law. *Zuver v. Airtouch Communications, Inc.*, 153 Wash.2d 293, 315-318, 103 P.3d 753 (2004); *see also McKee* 164 Wash.2d at 401 (damages limitation provision in arbitration agreement was not substantively unconscionable because it permitted punitive and exemplary damages specifically authorized by statute, including CPA treble damages). Damages limitation clauses are substantively unconscionable where they prevent "[plaintiffs] from collecting any punitive or exemplary damages for [their] common law claims but permits [defendants] to claim these damages for the only type of suit it would likely ever bring against [plaintiffs]." *Zuver,* 153 Wash.2d at 318. Importantly, Washington law does not

*PLTFFS' RESPONSE TO MTN TO*
*COMPEL ARBITRATION* - Page 23
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

generally permit or provide for punitive or exemplary damages awards. *See Dailey v. N. Coast Life Ins. Co.*, 129 Wash.2d 572, 575, 919 P.2d 589 (1996). Treble damages are, however, available to plaintiffs where they bring a claim under the CPA. *See* RCW 19.86.090.

The arbitration clauses here each include unconscionable "loser pays" provisions. As in *Gandee*, the "loser pays" provisions here are part of a brief four or five sentence arbitration clauses. The same brief clauses include the damages limitation provisions. Both the nature and tone of the arbitration clause would substantially change without the "loser pays" and damages limitation provisions. Without the provisions, the clause no longer offers any unilateral costs and fees benefits to Reed Hein and instead only expresses mutual obligations, inconsistent with the parties' intended bargain. The clause would also no longer place limits on the statutory remedies available to Plaintiffs. An arbitration clause permitting exemplary and punitive statutory damages without a "loser pays" provision is very different from one which significantly restricts available damages and imposes mutual "loser pays" obligations. The provisions thus cannot be severed from the arbitration clause and the entire clause is substantively unconscionable under Washington law.

The arbitration clauses here also include unconscionable damages limitation provisions. Dkt No. 83-2 at 5 ("The arbitrator shall have no authority to . . . award punitive, consequential or indirect damages"); *see also* Dkt. No. 83-9 at 7 (same). Unlike *McKee*, the damages limitations here do not permit punitive damages where authorized by statute. In the same way as the "loser pays" provision at issue in *Gandee*, the damages limitation provisions here are substantively unconscionable because they *only* benefit defendants. As Washington restricts the availability of punitive damages, such damages would not be available to Reed Hein in any

*PLTFFS' RESPONSE TO MTN TO COMPEL ARBITRATION* - Page 24
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

conceivable claims that it could have brought against its customers. Punitive or exemplary damages are, however, explicitly available in the form of treble damages where plaintiffs bring claims under the CPA. The damages limitations clause thus only benefits defendants and, contrary to explicit legislative intent, restricts the damages available to plaintiffs in CPA cases. The damages limitation clause is resultingly substantively unconscionable, void, and unenforceable under Washington law.[6]

### d. Should the Court Nonetheless Determine the Ramsey Defendants Can Enforce the Arbitration Agreement, the Court Cannot Rule on the Arbitrability of the Claims or Determine the Scope of Arbitration, Including the Availability of Class Arbitration and Application of the Choice of Law Provision in Arbitration

While Washington law governs interpretation of the Reed Hein contract, the Federal Arbitration Act and case law interpreting it govern arbitrability and scope of arbitration issues if the court concludes the arbitration clauses are enforceable here. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir., 2015) ("federal law governs the arbitrability question by default because the Agreement is covered by the FAA . . .  and the parties have not clearly and unmistakably designated that nonfederal *arbitrability* law applies" (emphasis in original and internal citations omitted)); *see also* Dkt. No. 83-2 at 5 ("Any claim or controversy . . . shall be fully and finally settled by arbitration under the authority of the Federal Arbitration Act"); *see also* Dkt. No. 83-9 at 6-7 (no clear or unmistakable designation that nonfederal arbitration

---

[6] Plaintiffs note that the damages limitation clause was not enforced in prior arbitrations and thus did not limit the availability of treble damages under the CPA in those arbitrations. *See* Albert Decl., Exs. 2-14.

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

law applies).[7] "Gateway" or "threshold" issues are those particular matters which a court decides prior to compelling arbitration, including those issues that the parties would expect a court to decide. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S.Ct. 2402 (2003). "Gateway" or "threshold" issues of arbitrability include "whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Id*. The availability of class arbitration is a "gateway" issue. *See Eshagh v. Terminix Intern. Co., L.P.*, 588 Fed. Appx. 703, 704 (9th Cir., 2014) (unpublished). "Gateway" issues, including the scope of arbitration, the arbitrability of the claims, and determinations of if certain types of controversies are subject to the arbitration clause, can be delegated to the arbitrator through agreement of the parties. *Brennan*, 796 F.3d at 1130. These "gateway" issues can be and are delegated by incorporation of an arbitrator's arbitration rules into an arbitration agreement. *Id*. "Gateway" issues can be delegated through incorporation of an arbitrator's arbitration rules in a consumer contract and in the consumer class action context. *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 480-481 (9th Cir., 2024).

The arbitration clauses in this case each delegate a determination on the scope of arbitration to the arbitrator through incorporation of the American Arbitration Association's rules. *See* Dkt. No. 83-2 through 83-10. Because the agreements unambiguously delegate that

---

[7] Even if Washington's Uniform Arbitration Act, rather than the Federal Arbitration Act, governs the Benny and Vargas contracts (Dkt. No. 83-9 and Dkt. No. 83-10), the two Acts are in accord here and the result is the same. *See Burnett v. Pagliacci Pizza, Inc.*, 196 Wash.2d 38, 47, 470 P.3d 486 (2020) ("The Washington arbitration act requires courts to determine whether there is an agreement to arbitrate and, if so, whether it is enforceable."); *see also Raven Offshore Yacht, Shipping, LLP v. F.T. Holdings, LLC*, 199 Wash. App. 534 (Wash. Ct. App. Div. 1, 2017) (holding that, under Washington law, parties to arbitration clause may delegate "threshold" questions to arbitrator by incorporating arbitration body's rules into arbitration clause).

*PLTFFS' RESPONSE TO MTN TO COMPEL ARBITRATION* - Page 26
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446

1    determination, if this Court determines the arbitration clauses are enforceable here, this Court

2    cannot issue a ruling regarding the scope of arbitration, and instead must reserve any scope,

3    choice of law, and class arbitration availability issues for future rulings under the rules and

4    policies of the American Arbitration Association.

5

6                                    **IV.   CONCLUSION**

7            For the reasons stated above, the court should deny the Ramsey Defendants' motion to

8    compel arbitration. Should the court nonetheless compel arbitration, it should require

9    arbitration before the American Arbitration Association and specifically reserve a

10   determination on the scope of arbitration, including the availability of class arbitration and the

11   applicability of the choice of law clause to claims brought under the arbitration clause, for the

12   arbitrator.

13

14

15          DATED this 26th day of July, 2024.

16

17          *I certify that this memorandum contains 7,575 words, in compliance with the Local*

18   *Civil Rules.*

19

20

21

22

23

*PLTFFS' RESPONSE TO MTN TO*          ALBERT LAW PLLC          FRIEDMAN | RUBIN®
*COMPEL ARBITRATION* - Page 27        3131 Western Avenue,     1109 FIRST AVENUE,
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630   SUITE 410               SUITE 501
                                      SEATTLE, WA 98121        SEATTLE, WA 98101
                                      (206) 576-8044           (206) 501-4446

1

2

**ALBERT LAW, PLLC**

3          By:     _s/ Gregory W. Albert_____
              Gregory W. Albert, WSBA #42673
4             Tallman Trask IV, WSBA #60280
              3131 Western Ave., Suite 410
5             Seattle, WA 98121
              (206) 576-8044
6             greg@albertlawpllc.com
              tallman@albertlawpllc.com
7

8             And—

9

**FRIEDMAN | RUBIN®**
10

11         By:   ____s/ Roger S. Davidheiser_____
              Roger S. Davidheiser, WSBA #18638
12            1109 First Ave., Ste. 501
              Seattle, WA 98101
13            (206)501-4446
              rdavidheiser@friedmanrubin.com
14            ***Attorneys for Plaintiffs***

15

16

17

18

19

20

21

22

23

*PLTFFS' RESPONSE TO MTN TO*
*COMPEL ARBITRATION* - Page 28
*Patrick et al, v. Ramsey, et al.*, Case No. 2:23-cv-00630

ALBERT LAW PLLC
3131 Western Avenue,
SUITE 410
SEATTLE, WA 98121
(206) 576-8044

FRIEDMAN | RUBIN®
1109 FIRST AVENUE,
SUITE 501
SEATTLE, WA 98101
(206) 501-4446