**AMERICAN ARBITRATION ASSOCIATION** | **INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®**

# CONSUMER ARBITRATION AWARD

| | | |
|---|---|---|
| In the Matter of the Arbitration between | ) | AAA Case Number: 01-21-0001-0691 |
| | ) | |
| Kenneth Pestana | ) | |
| -vs- | ) | |
| Reed Hein & Associates, LLC | ) | |
| | ) | |

I, Summer Nastich, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the agreement entered into between the above referenced parties, and having been duly sworn, and having heard the proofs and allegations of the parties via written submissions, oral hearings having been waived in accordance with the Consumer Arbitration Rules, do hereby AWARD as follows:

**Nature and Amount of the Claims**

Claimant Kenneth Pestana (Claimant) asserts claims for breach of contract, negligent and fraudulent misrepresentation, and violation of the Washington State Consumer Protection Act (RCW 19.86.010 *et seq*., "CPA" hereinafter). He seeks damages of $11,609.67 comprised of a refund of $6,203.15 that he paid to Respondent Reed Hein & Associates, LLC (Respondent) pursuant to a written Time Share Owner Exit Agreement (Contract) between the Parties executed in March 2018, and $5,406.52 that he paid to Welk Resorts (Welk) at Respondent's instruction during the Contract term. Claimant also asks that the Arbitrator treble these damages pursuant to the CPA, and award him attorney's fees of $25,024.50 and costs. Respondent denies all liability under the Contract and the CPA and objects to the award of any amount of attorney's fees.

**Procedural History**

Claimant filed for arbitration in or about January 2021. Respondent Answered in or about April 2021. The parties appeared through counsel at a Preliminary Scheduling Conference with the Arbitrator in July 2021. A full day of hearings was held via video conference in October 2021. Each party submitted pre and post hearing briefs, and Claimant submitted additional evidence after the hearing in support of his case in chief and its request for attorney's fees. Respondent submitted objections to some of this supplementary evidence and the claim for attorney's fees, and also submitted an affidavit from its sole witness withdrawing a certain portion of her testimony at the hearing not relevant to this Award.

**Facts, Issues, and Applicable Law**

Under the Contract, in exchange for the $6,203.15 fee, Respondent was to get Claimant out of his time share agreement with Welk Resorts. A key issue in this case is the Contract's guarantee, which provides, "REED HEIN'S goal is complete Customer satisfaction. If OWNER is less than completely satisfied with the Services provided pursuant to this Agreement, OWNER should contact REED HEIN immediately, and REED HEIN will work to reach a satisfactory solution." The Contract goes on to promise unhappy customers the "Reed Hein 100% Money Back Guarantee," which provides as follows:

PLTFFS-000083

> REED HEIN guarantees that if OWNER does not obtain the Services within a reasonable amount of time, REED HEIN shall refund the Fee Amount. REED HEIN's guarantee obligations are met when REED HEIN obtains an exit even if OWNER does not accept the terms of the Resort's exit agreement. This Guarantee is contingent upon: (a) all information provided to REED HEIN by OWNER is true, accurate and complete, and (b) full cooperation with OWNER to timely respond to any request for information from REED HEIN or the Resort. This Guarantee is void and unenforceable if OWNER (x) fails to fulfill OWNER's duties required by this Agreement, including if OWNER stops or delays the exit process, refuses to sign a procured exit offer, (y) does not timely and completely respond to requests by REED HEIN, or (z) fails to disclose a mortgage or other lien encumbrance on OWNER'S Timeshare.

A year went by and Claimant was still beholden to his timeshare agreement with Welk and decidedly unsatisfied with Respondent's Services. He repeatedly called Respondent seeking either progress or his money back pursuant to the guarantee and eventually the Parties entered into a Stop Work Addendum on October 3, 2019. The Stop Work Addendum also provides a money back guarantee. It says,

> [Respondent] will complete your timeshare exit on or before October 2, 2020, the Timeframe. Should we be unable to provide an exit by the agreed upon date, you will be eligible for a refund of your exit fee in the amount of Six Thousand Two Hundred and Three Dollars and Fifteen Cents ($6,203.15). Upon a successful exit, [Respondent], or our partner, shall provide you with notification of the exit prior to the end of the above-reference Timeframe. You further agree that should your exit be incomplete by the agreed upon date of October 2, 2020 and should you desire to have ReedHein [*sic*] continue working, as oppose [*sic*] to providing a refund, you will then sign a written statement acknowledging the same. Otherwise, ReedHein [*sic*] shall stop all work and process your refund within 10 business days.

It is undisputed that Respondent did not provide an exit for Claimant by October 2, 2020, and that Claimant was still beholden to Welk when the sun rose on October 3, 2020. It is also undisputed that Claimant never received a refund from Respondent, thus the claim for breach of contract. The claim for negligent misrepresentation is based on representations of exit or your money back similar to the guarantees in the Contract and Stop Work Addendum, that Claimant testified Respondent's representative made to induce Claimant into entering into the Contract. The CPA claim stems from these same facts as the breach of contract and misrepresentation claims, but is a bit more involved.

To prevail on his CPA claim Claimant must showing that Respondent engaged in an unfair or deceptive act or practice in trade or commerce that caused him injury *and* affects the public interest. RCW 19.86.020 and 19.86.090. Claimant asserts that Respondent's representations that it provides a 100% money back guarantee such that it will either get its clients out of their timeshare or refund their money are a false and therefore unfair and deceptive practices occurring in trade or commerce that caused him harm both in the form of the fee he paid Respondent and in the payments he made to Welk while he was waiting for Respondent to deliver the exit. He also asserts that the fact that Respondent has made this representation to others and thereby induced them to pay Respondent its fees, and then failed and refused to refund those fees despite not getting them out of their timeshare agreements, means that the unfair and deceptive act or practice affects the public interest.

For its part, Respondent alleges that it had no obligation to refund Claimant's money because one or more of the exceptions to its obligation to do so in the Contract were triggered here. Therefore, Respondent asserts that it did not breach the Contract. Respondent also asserts that it fully intended to honor the money back guarantee, had the situation warranted it, and so it didn't misrepresent anything, whether negligently or otherwise, and did not engage in an unfair or deceptive practice that could give rise to CPA liability.

As discussed below, the Arbitrator finds that Claimant carried his burden of proof on all of the claims including the CPA claim, though the Arbitrator also finds that the payments to Welk are not part of his damages. The Arbitrator therefore finds Claimant is entitled to damages of $6,203.15, trebled under the CPA to $18,609.45, and attorney's fees of $25,024.50. He is also entitled to costs, but did not present any evidence of costs and therefore the Arbitrator has none to award.

**Evidence and findings**

On the Claims for Breach of Contract and Misrepresentation

There is really no question that Claimant was entitled a refund at 12:00 am on October 3, 2020. The Arbitrator will refrain from going into detailed reasoning and application of the law to the Contract and the facts and parsing the parties' arguments on this point because it is unnecessary—Respondent's sole witness testified clearly and repeatedly that Claimant was entitled to a refund under the Contract and/or the Stop Work Addendum (it doesn't really matter which) and the only reason Respondent didn't send the refund was that Claimant never specifically asked for it. When the Arbitrator pointed out that filing for arbitration seemed like a pretty clear request for a refund, the witness testified that the refund wasn't sent when Respondent received the demand for arbitration because the demand was for more than just the refund. This response doesn't really make a whole lot of sense as far as the Arbitrator can see, certainly doesn't explain the failure to honor the Contract's and Stop Work Addendum's guarantee, and is not a defense to a breach of contract claim. The Arbitrator therefore finds that Respondent breached the Contract and/or the Stop Work Addendum in failing to refund Claimant's fees after failing to get him out of his timeshare. The Arbitrator also finds based on Claimant's unchallenged and uncontroverted testimony about that Respondent's representative promised him he would either get out of his timeshare or he'd get his money back, and thus the Arbitrator further finds that Claimant carried his burden of proof on the claims for negligent and fraudulent misrepresentation.

The parties didn't specifically address the question of whether Claimant's payments to Welk during the period in which he was waiting for the exit from his timeshare totaling $5,406.52 are properly characterized as damages on breach of contract, the misrepresentation claims, or, more importantly, "actual damages" under the CPA, but the Arbitrator finds that in each instance they are not. Although it is possible that, had Respondent not made the 100% money back guarantee that Claimant would have opted against engaging Respondent and instead contracted with an attorney or other entity that would have gotten him out of his timeshare quicker and thus avoided these payments, that's pretty speculative. And, importantly, Claimant would have had to make these payments to Welk *even if he had never contracted with Respondent*. Thus, the payments to Welk can't really be attributed to any breach of the Contract or misrepresentation on Respondent's part—especially since Respondent was up front about the request for Claimant to keep paying and that getting out of the timeshare could be an extended process. This means that Claimant's "actual damages" for purposes of the CPA are $6,203.15.

PLTFFS-000085

On the CPA Claim

For the reasons set forth above, the Arbitrator finds that Respondent engaged in an unfair or deceptive act or practice, specifically that it would provide a refund in the absence of an exit. This act or practice undeniably occurs in trade or commerce and, as also discussed above, the Arbitrator finds that the act or practice caused injury (actual damages) to Claimant. The tougher question is whether the unfair or deceptive act or practice affects the public interest.

The Supreme Court of Washington addressed the issue of whether a particular act or practice affects the public interest in *Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Co.*, 105 Wash.2d 778, 790-791. There, the Court posed the following questions[1] as guidance: (1) Were the alleged acts committed in the course of Respondent's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving Claimant? (4) Is there a real and substantial potential for repetition of Respondent's conduct after the act involving Claimant? The Arbitrator finds the evidence supports affirmative answers to each of these questions.

Claimant submitted voluminous complaints made to the State of Washington Attorney General—all made under penalty of perjury—each of which alleges that Respondent stated to the complaining party that it gave a 100% money back guarantee such that if Respondent didn't get them out of their timeshare they would get a refund, but then they didn't get either. Like Claimant, the complainants testified that they had repeatedly attempted to request and demand a refund, but could not get through to Respondent or get a call back, or they got through but were then ignored or denied. The acts discussed in the complaints span 2012 and 2020, which means they occurred both before and after Claimant's experience. The Arbitrator therefore concludes that Respondent committed repeated acts prior to the act involving Claimant, and there was a real and substantial potential for repetition of Respondent's conduct after the act involving Claimant.[2] From the sheer number of complaints, the Arbitrator also concludes that the act of making an empty promise of a money back guarantee was part of a pattern or generalized course of conduct.

For all of these reasons, the Arbitrator finds that Respondent violated the CPA and that Claimant is therefore entitled to recovery of treble his actual damages of $6,203.15 for a total of $18,609.45, as well as his reasonable attorney's fees and costs. RCW 19.86.090.

Attorney's Fees

The Arbitrator reviewed Mr. Ohm's time entries, his Declaration, Mr. Albert's Declaration and the time stated therein, as well as their hourly rates and finds the time billed and the rates reasonable and that they establish they in fact worked the time. The Arbitrator also finds Respondent's objections to the fee claim without merit. Thus, Claimant is entitled to an award of attorney's fees of $25,024.50.

---

[1] The Court also posed a fifth question, "(5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?" But because this case is not involving a single transaction, it isn't relevant to the inquiry and the other questions are the truly pertinent ones.

[2] This latter conclusion may no longer be the case, as, on September 28, 2021, Respondent entered into a Consent Decree with the State of Washington that precludes a number of acts that may prevent repetition of the acts at issue here. Again, neither party addressed whether this fact affects the analysis under the CPA. In the absence of any argument to the contrary, the Arbitrator concludes that the Consent Decree has no retroactive effect on Claimant's CPA claim.

**Award**

Within 30 days of the date of this Award Respondent Reed Hein & Associates LLC shall pay to Claimant Kenneth Pestana $43,633.95.

The administrative fees of the American Arbitration Association totaling $3,150.00 and the compensation of the arbitrator totaling $2,500.00 shall be borne as incurred.

This Award is in full and final settlement of all claims submitted to this arbitration. All claims not expressly granted are hereby, denied.

I, Summer L. Nastich, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Arbitration Award in this matter.

<u>November 22, 2021</u>  
        Date

_____  
        Summer L Nastich, Arbitrator