

# AMERICAN ARBITRATION ASSOCIATION

**In the matter involving:**

Case Number: 01-21-0004-1416

**Yolanda Jerido, Claimant**
vs.
**Reid Hein & Associates d/b/a Timeshare Exit Team, Respondent**

## FINAL AWARD

I, Melissa D. Hubbard, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the allegations and proofs of Claimant, and the responses, defenses and proofs of Respondent, each of which was represented by counsel, and having previously issued an Interim Award dated December 13, 2021, do hereby FIND and AWARD as follows:

Pursuant to the Consumer Arbitration Rules of the American Arbitration Association ("AAA"), a video-conferenced evidentiary hearing was held (and recorded) on November 8 and 15, 2021.

In addition to the Arbitrator, the following persons participated in the hearing:

    For Claimant:    David Hancock, Esq. and Yolanda Jerido

    For Respondent:    Daniel Kuem, Esq. and Maia Robbins, Esq. (Ms. Robbins appeared via video conference on Monday November 8th)

The following witnesses were sworn in by the Arbitrator and testified during the hearing:

    Yolanda Jerido on behalf of the Claimant.

    Catherine Cerbone on behalf of the Respondent.

All exhibits presented at the hearing were admitted by the Arbitrator, who noted various objections to certain exhibits that she agreed to consider in terms of relevance.

## BACKGROUND FACTS

During a vacation to Kauai, Hawaii, Yolanda and Stanley Jerido (the "Jeridos") agreed to attend a timeshare presentation at a Westin Hotel. On June 27, 2013, the Jeridos purchased a biennial (every other year) vacation ownership interest at the Princeville Ocean Resort Villas (the "Villas").

On January 27, 2018, Mrs. Jerido met with a sales agent of Reid Hein Associates, which advertises and does business as Timeshare Exit Team ("TET"), because the Jeridos were interested in terminating their timeshare contract. Mrs. Jerido told the sales agent that the family was not able to use the timeshare (and had not returned to the Villas or used any other Westin timeshare properties) due to changes in their schedules and their financial condition. She emphasized that they had been timely in making their mortgage and maintenance payments on the timeshare and did not want to impair their credit ratings by going into foreclosure for nonpayment.

The sales agent discussed an upfront payment to TET with Mrs. Jerido, which was based on his representations of the amount of money the Jeridos would save over time by terminating the timeshare contract within a year or possibly two years. The sales agent discussed a 100% money back guarantee that is advertised by TET and specified in the contract with TET. The Jeridos signed the Timeshare Owner Exit Agreement (the "Exit Agreement"), as well as a Power of Attorney (the "POA"), and agreed to pay TET $9,058.70 (through one upfront payment and monthly payments thereafter) to assist the Jeridos in terminating their timeshare contract.

Mrs. Jerido was told that she should not contact the timeshare company because it could delay the exit process TET planned to follow. She was also told that the Jeridos should not use the timeshare prior to any exit despite the fact that they continued to pay all monetary obligations owed to the timeshare company (over $30,000 from 2018 to the present). TET provided an information sheet to Mrs. Jerido that warned her that failing to fulfill the duties to TET could cause her to forfeit the 100% money back guarantee in the Exit Agreement.

Mrs. Jerido was told repeatedly that there were delays in her case due to the lack of responsiveness of the timeshare company. After close to one year of no progress, she requested a refund from TET in January 2019 and again in July 2019, but she was told that she was not eligible because TET was continuing to work on her case. Her case was then referred to a law firm in July 2019, which sent two letters to the timeshare company requesting a termination of her contract. The timeshare company refused to do so. The attorney asked Mrs. Jerido to consider making a cash offer settlement to the timeshare company or to let the timeshare go into foreclosure, neither of which option was acceptable to Mrs. Jerido. TET stated that it did not owe her any refund because it had offered her these two exit options that she refused to take. TET has not refunded any portion of monies Mrs. Jerido paid to TET over the past three plus years.

## THE CLAIM

M**s.** Jerido asserted a violation of the Washington State Consumer Protection Act (the "CPA") and is seeking monetary damages for her claim.

The elements to establish liability under the CPA require proof that the Respondent engaged in a deceptive or unfair trade practice, which occurred in the Respondent's business, and which significantly impacts the public as actual or potential consumers of the Respondent's goods or services. The Claimant must have incurred actual damages or losses.

## **FINDINGS**

Neutrals are required to consider all of the evidence presented at a hearing that is relevant to the claims brought and to determine if the elements of each claim have been proven by a fair preponderance of the credible and objective evidence presented. Based on all of the credible evidence presented, including circumstantial evidence, I find that Respondent violated the CPA.

Substantial evidence was provided regarding the national print, television and radio advertisements of TET guaranteeing its customers a full refund of the upfront fees TET charges if TET is not successful in terminating the customer's timeshare contract. The Jeridos relied on this representation when they signed the Exit Agreement in January 2018 and had a reasonable expectation that their timeshare contract would be terminated within a year so that they would not have to make another yearly maintenance fee payment in January of 2019 and beyond. Mrs. Jerido testified that she was willing to wait longer if progress was being made.

However, she initiated every call to TET to obtain "updates" and the evidence showed little to no effort on the Jerido's behalf for over a year after the Exit Agreement was signed. In fact, TET did not have the resources, the authority or the legal ability to fulfill its duties under the Exit Agreement and had no proprietary or reasonable plan or strategy to terminate the Jerido's timeshare contract. In fact, TET did not even have the resources or legal ability to do so. TET finally established a relationship with an outside law firm and referred the Jerido's case to it. The two letters sent by the law firm were woefully inadequate to satisfy TET's obligations under the Exit Agreement. Most importantly, the POA stated that TET was a fiduciary of the Jeridos, yet TET failed to have any funds reserved or set aside to fulfill the money back guarantee in the Exit Agreement with Mrs. Jerido. This finding alone is an unfair trade practice and could have a significant impact on TET's customers who did not get timeshare contracts terminated.

Mrs. Jerido requested a refund on numerous occasions which TET refused to provide, stating that she did not accept the two offers made to her by the law firm: foreclosure or proposing a cash payment settlement to the timeshare company, both of which options were likely to negatively impact her credit rating. Because the timeshare company was receiving timely payments from Mrs. Jerido, it had no reason to allow her to terminate the timeshare contract without paying the full amount owed to it.

The CPA provides that a party injured in violation of the CPA may recover actual damages, as well as reasonable attorney fees and costs. The CPA also authorizes treble damages which are capped at $25,000.

## **FINAL AWARD**

The Arbitrator hereby awards the Claimant $9,058.70 in actual damages, which shall be trebled and capped at $25,000. In light of this limit, there is no reason to award her the amounts of monies paid to the timeshare company during the term of the Exit Agreement, which she legally owed under her contract with the timeshare company.

Respondent shall also reimburse the reasonable attorney fees and the costs of this arbitration incurred by Claimant. Claimant's counsel submitted evidence showing entries and brief descriptions of time spent on this case, and Respondent's counsel did not file any response thereto.

In addition to the $25,000 in damages, Respondent shall pay attorney fees and costs in the amount of $11,049.40 to Claimant, of which $10,818.50 represents attorneys' fees, plus $125.90 in postage and $105 for photocopies, as paid by Claimant. Any amounts that are not paid within 30 days of this Final Award shall begin bearing interest at the rate of 8% per annum.

The administrative fees of the AAA totaling $2,495.00 and the compensation of the Arbitrator totaling $2,500.00 shall be borne as incurred.

This Final Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.
.

Respectfully submitted,

*/s/ Melissa D. Hubbard*
 *Arbitrator*
**1-31-2022**

*[signature: Melissa D. Hubbard]*