

## AMERICAN ARBITRATION ASSOCIATION

Case Number: 01-21-0003-6820

In the Matter of the Arbitration between:

Douglas Reif, Claimant

-vs-

Timeshare Exit Team d/b/a Reed Hein & Associates, Respondent

## FINAL AWARD OF ARBITRATOR

I, Hon. J. William Brammer, Jr., THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, each represented by counsel, at evidentiary hearings held on October 21, 2021 and November 9, 2021, and having reviewed the Arbitrator's notes of the witness testimony and relevant exhibits adduced at the arbitration Hearings, and the written submissions each Party provided in December, 2021, and having on January 11, 2022 entered the Interim Award of Arbitrator herein, and the Parties having failed to file any papers in response to the invitation to do so regarding an award of attorney fees or costs, the Arbitrator therefore enters this final AWARD, as follows:

1. Claimant's Arbitration Demand stated six claims as follows: 1) violation of the Washington State Consumer Protection Act, 2) Violation of Fiduciary Duties, 3) Breach of Contract, 4) Unjust Enrichment, 5) Disgorgement, and 6) Fraud. The Demand did not provide further specificity or factual support. The Claimant's Prehearing Memorandum expanded these Claims only slightly. Claimant's Post-Hearing Brief and argument expands his claims a bit more. Respondent has denied the claims and has not objected to their expansion beyond what Claimant stated in his Demand. Nor did Respondent object to any of the evidence Claimant presented at the Hearing on that basis. Accordingly, the Arbitrator has considered the claims as they have been presented in the papers and arguments. Claimant and Respondent at times are referred to herein as "Party" and together as "Parties."

2. On Claimant's breach of contract claim, the Arbitrator concludes that Respondent had three-years from the April 9 & 10, 2020 date of the "Timeshare Owner Exit Agreement" (herein "Agreement") Exhibit R-9, between Claimant and Respondent

1

within which to "secure a release from, transfer, cancellation or termination of [Claimant's] time share interest at Resort (the "Exit")." Although at the time Claimant filed his Claim herein, April 28, 2021, the three-year period had not expired and Respondent had not secured the Exit for Claimant, that was but one of several responsibilities Respondent owed Claimant pursuant to the Agreement.

3. The Agreement requires the application of the law of the State of Washington in this proceeding and authorizes the Arbitrator to award the prevailing party its costs, expenses and reasonable attorney's fees.

4. The evidence shows that Respondent required Claimant to execute as a part of the transaction between them evidenced by the Agreement a "Special Power of Attorney" (herein "SPA"). Exhibit R-119. The SPA imposed upon Respondent the "legal duty to keep the [Claimant's] property separate and distinct from any other property owned or controlled by [Respondent]. [Respondent] may not transfer [Claimant's] property to [Respondent] without full and adequate consideration or accept a gift of [Claimant's] property unless this power of attorney specifically authorizes [Respondent to do so]." The Arbitrator finds that the SPA was an integral part of the transaction between the Parties and it and the Agreement are inextricably bound together as such.

5. The evidence shows that Claimant paid Respondent $51,858.48 (herein the "Deposit") as consideration for Respondent's services pursuant to the Agreement. The Arbitrator concludes that the Deposit constituted Claimant's property as defined in the SPA, and as such was required to be kept separate and distinct from other property owned or controlled by Respondent.

6. The evidence shows that Respondent at the time of the Hearings had entered agreements similar to the Agreement, and had accepted funds similar, although perhaps not in the same amounts, as the Deposit, with more than ten thousand (10,000) other persons in similar situations as Claimant (here "Contracting Parties").

7. The evidence further shows that Respondent had intermingled Claimant's Deposit with all other deposits it had received from other Contracting Parties. Indeed, Respondent was subject to a court order requiring it to hold funds it had received from many of the Contracting Parties in separate accounts designated for each of them, which apparently it had.

8. The evidence further shows that Respondent had received some Seventy Million Dollars ($70,000,000.00) from the Contracting Parties, and that at the time of the Hearing it may have had less than Two Hundred Thousand Dollars ($200,000.00) in its bank accounts. And the evidence revealed that the funds Respondent had been paid by the Contracting Parties was Respondent's only source of revenue for its operating expenses.

9. From these facts the Arbitrator finds that the Respondent violated the terms of the SPA

PLTFFS-000106

and breached the Agreement and its fiduciary responsibility to Claimant by not keeping Claimant's Deposit separate from other funds Respondent owned or controlled. The Arbitrator further concludes that Respondent would be unjustly enriched if permitted to retain the Deposit and, therefore, in addition to having breached the Agreement, must return the Deposit to Claimant.

10. The evidence further shows that Respondent's treatment of Claimant and his Deposit, the Agreement and the SPA were not unique to Claimant, but rather represented the Respondent's common business practice when selling the timeshare exit strategy to members of the public, when presenting information to them as a part of the sales "pitch," and when convincing those potential customers to enter into timeshare exit contracts similar to the Agreement.

11. The Arbitrator concludes that Respondent's actions as shown by the evidence violated the Washington Consumer Protection Act, Chapter 19.86 et seq., RCW, and subject Respondent to treble damages not to exceed Twenty-Five Thousand Dollars ($25,000.00) RCW 19.86.090.

12. The arbitrator declines to find that Respondent's conduct in convincing Claimant to enter the Agreement constituted fraud, because the evidence is not clear and convincing, but does observe that Respondent's actions with and concerning Claimant bordered on fraudulent conduct.

13. The Arbitrator further concludes that the January 11, 2022 Interim Award requiring Respondent to return the Deposit to Claimant constitutes Disgorgement as requested in the Demand.

14. The Arbitrator is given the authority in the Arbitration of Disputes provision of the Agreement to award the prevailing Party its reasonable attorney fees and costs.

15. The Arbitrator concludes that Claimant is the prevailing Party in this matter and is entitled to an award of his reasonable attorney fees incurred in this matter, and any costs he has expended maintaining his Claim.

16. Neither Claimant nor Respondent has filed anything concerning an award of attorney fees or costs, and therefore the Arbitrator awards no attorney fees.

17. The administrative fees of the American Arbitration Association totaling $2,400 and the compensation of the arbitrator totaling $5,000 shall be borne as incurred.

Accordingly, Claimant is AWARDED from and against Respondent the following:

1. $51,858.48 as and for the return of Claimant's Deposit funds that Respondent did not maintain separate and distinct from other property it owned or controlled, both because

PLTFFS-000107

Respondent breached the Agreement and the SPA, and also because Respondent would be unjustly enriched by retaining the Deposit.

2. $25,000.00 as and for treble damages as is allowed for violation of the Washington Consumer Protection Act.

3.

This Award is in full settlement of all claims submitted to this arbitration. All claims not expressly granted are hereby, denied.

Date: February 2, 2022

_____
Hon. J. William Brammer, Jr., Arbitrator