THE HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANNA PATRICK, DOUGLAS MORRILL, ROSEANNE MORRILL, LEISA GARRETT, ROBERT NIXON, SAMANTHA NIXON, DAVID BOTTONFIELD, ROSEMARIE BOTTONFIELD, TASHA RYAN, ROGELIO VARGAS, MARILYN DEWEY, PETER ROLLINS, RACHAEL ROLLINS, KATRINA BENNY, SARA ERICKSON, GREG LARSON, and JAMES KING, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID L. RAMSEY, III, individually; HAPPY HOUR MEDIA GROUP, LLC, a Washington limited liability company; THE LAMPO GROUP, LLC, a Tennessee limited liability company,<br><br>Defendants. | Case No. 2:23-cv-00630-JLR<br><br>**DEFENDANTS DAVID RAMSEY, III AND THE LAMPO GROUP, LLC'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION OF ALL CLAIMS AND STAY CASE PENDING ARBITRATION**<br><br>Noting Date: August 9, 2024 |

DEFENDANTS DAVID RAMSEY, III AND THE LAMPO GROUP, LLC'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY CASE
(Case No. 2:23-cv-00630-JLR) – Page i

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

## I.   INTRODUCTION

Plaintiffs' Opposition makes three erroneous arguments to try to avoid the arbitration clauses to which each of them undisputedly agreed.

***First***, Plaintiffs argue that equitable estoppel does not apply, but ignore that their claims arise from their allegation that the Lampo Defendants *conspired* with Reed Hein to induce Plaintiffs into those *same* contracts.

***Second***, Plaintiffs argue the Lampo Defendants waived the right to arbitrate by not moving to compel *before* the Lampo Defendants even learned that Plaintiffs' contracts contained arbitration clauses. This waiver theory is meritless on its face.

***Finally***, Plaintiffs argue that the fee-shifting provisions in their agreements render the entire contracts unconscionable—ignoring the fact that these provisions are severable and can simply be eliminated from the contracts.

## II.   BACKGROUND

There is no dispute the Lampo Defendants had **no knowledge** that Plaintiffs entered into arbitration agreements until Plaintiff produced those agreements beginning May 8, 2024. Opp. 21. Nor can Plaintiffs claim the Lampo Defendants had access to those agreements prior to May 2024. *See* Supplemental Elder Declaration ("Suppl. Elder Decl."), ¶3.

Nevertheless, Plaintiffs claim the Lampo Defendants possessed *some* Reed Hein contracts for *other individuals* as of January 2024, which supposedly demonstrated "form contracts" used by Reed Hein. Opp. 20-21. Although that production did **not** include Plaintiffs' contracts, Plaintiffs now argue that piecing together various shreds of information would have provided "everything necessary" to surmise that Plaintiffs likely entered into similar arbitration agreements. *Id.* In essence, Plaintiffs argue the Lampo Defendants should have **guessed** that Plaintiffs' contracts required arbitration and moved to compel arbitration based on that guess. This argument obscures reality.

The real record is straightforward. On July 10, 2023, Plaintiffs served their initial disclosures. Suppl. Elder Decl., ¶4, Ex. 1. Those disclosures did not include Plaintiffs' agreements—or any other

DEFENDANTS DAVID RAMSEY, III AND THE LAMPO GROUP, LLC'S MOTION TO COMPEL ARBITRATION AND STAY CASE (Case No. 2:23-cv-00630-JLR) - Page 1

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

agreements—with Reed Hein. *Id.* While Plaintiffs say the disclosures included "Arbitration Awards" for some non-plaintiffs, those awards did *not* include agreements. *See* Albert Decl., Dkt. 91, Exs. 2-14. The initial disclosures did not show that Plaintiffs themselves executed arbitration agreements. Suppl. Elder Decl., ¶4.

Next, on August 10, 2023, the Lampo Defendants sought, and the Court granted, a motion to stay discovery pending motions to dismiss. Dkts. 24, 28. Discovery was stayed in the case from August 18, 2023, until the Court issued a new case schedule on February 21, 2024. Dkt. 71. Nevertheless, on January 19, 2024, Plaintiffs produced numerous documents from government investigations, on which Plaintiffs' Opposition relies. It is at this point, Plaintiffs argue, the Lampo Defendants somehow should have pieced together the terms of Plaintiffs' own agreements, even though Plaintiffs **had not produced them**. Nothing could be further from the truth. That production was voluminous—4,794 pages of documents from Washington Attorney General investigations alone—and included a handful of contracts for *other* individuals. Mr. Albert's declaration attached four of these "form contracts" which contained arbitration clauses. Dkt. 91. Exs. 15-18. What Plaintiffs fail to mention is that many contracts in that same production did ***not*** have arbitration clauses. Mr. Elder's Supplemental Declaration attaches five examples of agreements in that production without arbitration clauses as Exs. 3-7.[1]

In the intervening period, recognizing there was a question as to whether Plaintiffs had entered arbitration agreements, the Lampo Defendants preserved all rights by asserting an affirmative defense of arbitration. Dkt. 63 (Answer), at 30. The parties also stipulated to a deadline of January 10, 2025, for any motions to compel arbitration, which this Court adopted. Dkt. 71.

On February 21, 2024, the Lampo Defendants propounded requests for production asking Plaintiffs to produce, among other things, their contracts with Reed Hein. Elder Decl., Dkt. 83, ¶2.

---

[1] Moreover, it is not as though the Lampo Defendants did not diligently search the January production. The Lampo Defendants searched for but did not locate the agreements for the Plaintiffs—because they were not included—and were unable to glean information to determine the nature or contents of Plaintiffs' own agreements. Suppl. Elder Decl., ¶6.

DEFENDANTS DAVID RAMSEY, III AND THE LAMPO GROUP, LLC'S REPLY IN SUPPORT OF THE MOTION TO COMPEL ARBITRATION AND STAY CASE
(Case No. 2:23-cv-00630-JLR) – Page 2

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400  FAX +1.206.274.6401

1  On May 8, 2024, 77 days later and *for the first time*, Plaintiffs produced nine of the Plaintiffs'
2  contracts with Reed Hein. *Id.* ¶3. Only then, the Lampo Defendants first learned that they had
3  arbitration clauses. *Id.* Defense counsel promptly emailed Plaintiffs' counsel to inform them of
4  Defendants' intent to move to compel arbitration—without raising any other new motions,
5  discovery, or other matters in the case—and simply asked Plaintiffs to produce the remaining
6  contracts. *Id.* ¶4. On June 13, Plaintiffs produced two more contracts and represented that the
7  remaining Plaintiffs' contracts would contain arbitration clauses as well. *Id.* ¶6. The Lampo
8  Defendants moved to compel arbitration one week later. Dkt. 82.

9  Misleadingly, Plaintiffs suggest "form contracts" produced in January 2024, together with
10 certain spreadsheets from Reed Hein produced with Plaintiffs' initial disclosures, provided clues as
11 to the Plaintiffs' form contracts. Tellingly, Plaintiffs did not attach any part of those spreadsheets to
12 their Opposition. The spreadsheets are too voluminous to file in their entirety (410,035 pages in PDF
13 form). But the Lampo Defendants have attached samples from those spreadsheets. Suppl. Elder
14 Decl., ¶5, Ex. 2.  One column among hundreds contains information titled "contract type," but the
15 information in this column in no way identifies whether the contracts contained arbitration clauses
16 (e.g., "April 2020 - 6th contract MTG (Client Pays All)" or "March 2019- 5th Contract PIF (Client
17 Pays All)"). *Id.* (highlighting added). The Lampo Defendants could not have used this information
18 to guess at the form of the Plaintiffs' contracts. *Id.* ¶5.  And even now, with the benefit of Plaintiffs'
19 actual contracts and the declarations from Plaintiffs' counsel, Defendants still cannot decipher how
20 they previously could have used this spreadsheet to that end.  *Id.*

21  At most the only information available to the Lampo Defendants—prior to the production of
22 Plaintiffs' actual agreements in May and June 2024—was that *some* Reed Hein clients had contracts
23 with arbitration clauses and some did not. The Lampo Defendants had no knowledge that Plaintiffs'
24 contracts contained arbitration clauses, and no ability to ascertain that information until their
25 contracts were actually produced.

26

DEFENDANTS DAVID RAMSEY, III AND THE
LAMPO GROUP, LLC'S REPLY IN SUPPORT OF THE
MOTION TO COMPEL ARBITRATION AND STAY
CASE
(Case No. 2:23-cv-00630-JLR) – Page 3

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

## III. ARGUMENT

**A. Equitable Estoppel Applies to Plaintiffs' Claims.**

**1. Plaintiffs' Claims are Intertwined with the Reed Hein Contracts.**

Washington's Courts of Appeals have held that a non-signatory can compel arbitration of a signatory's claims that are "intimately founded in and intertwined with" the contract the signatory executed. *Norwood v. Multicare Health Sys.*, ___ Wn. App. 2d ___, 548 P.3d 978, 986 (Wn. Ct. App. 2024); *David Terry Invs., LLC-PRC v. Headwaters Dev. Grp. LLC.*, 13 Wn. App. 2d 159, 171, 463 P.3d 117 (2020); *Dekrypt Cap., LLC v. Uphold Ltd.*, 20 Wn. App. 2d 1043, 2022 WL 97233, *6 (2022) (unpublished).[2]

As previously argued, Plaintiffs' claims are intertwined with their Reed Hein contracts because they are founded on the notion that the Lampo Defendants induced Plaintiffs to sign those contracts, which Reed Hein then breached, resulting in Plaintiffs' damages. Mtn. at 8-10. Plaintiffs effectively admit this in their brief: "***The whole point of the Amended Complaint is that [Plaintiffs] received nothing for the thousands of dollars they gave to Reed Hein.***" Opp. 18 (emphasis added).

Not only do Plaintiffs admit their claims are based on alleged contractual breaches by Reed Hein, Plaintiffs' Opposition also never addresses their allegation that the Lampo Defendants ***conspired*** with Reed Hein ***for the purpose of convincing Plaintiffs to enter into the contracts that contain the arbitration clauses***. It is hard to imagine a claim that could be more intertwined with the arbitration contracts than a purported conspiracy to induce Plaintiffs to sign those contracts and pay money pursuant to them. *See, e.g.*, *Blanton v. Domino's Pizza Franchising LLC,* 2019 WL 5543027, at *3–4 (E.D. Mich. Oct. 25, 2019) (applying Washington law; plaintiffs' claims against non-signatory defendant were arbitrable because plaintiffs alleged conspiracy with signatory).[3]

---

[2] Plaintiffs suggest there is a split of authority. Opp. 12 n.3. That is not accurate, as a review of the cases makes plain.

[3] Plaintiffs contend *Blanton* should be ignored because it was decided prior to *David Terry*, *Dekrypt,* and *Norwood*. Opp. 11. But *Blanton* held that even though prior to those cases Washington may not have clearly adopted equitable estoppel for non-signatories, it was still sufficient for a non-signatory to compel arbitration where the plaintiff signatory alleged a conspiracy. 2019 WL 5543027, at *4.

DEFENDANTS DAVID RAMSEY, III AND THE LAMPO GROUP, LLC'S REPLY IN SUPPORT OF THE MOTION TO COMPEL ARBITRATION AND STAY CASE
(Case No. 2:23-cv-00630-JLR) – Page 4

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Plaintiffs also fail to meaningfully address the fact that their damages are based ***entirely*** on their theory that they (a) paid money under their contracts to Reed Hein, and (b) a portion of that money was funneled to the Lampo Defendants as part of the alleged conspiracy. *See* Mot. 7-8; *see also* Dkt. 55, ¶¶ 5, 14, 122. There is no part of Plaintiffs' claims that can be proven without proving the Lampo Defendants induced Plaintiffs to enter the contracts that contain arbitration clauses, that Reed Hein breached those contracts, and that Plaintiffs were harmed by the breaches.

Unable to unwind their claims from the Reed Hein contracts, Plaintiffs instead seek to add nonexistent elements to the equitable estoppel doctrine. First, Plaintiffs erroneously assert that statutory claims are not subject to arbitration. Opp. 12-13. But "[i]n Washington it is well settled that CPA and other statutory claims are subject to arbitration under the FAA." *Mendez v. Palm Harbor Homes, Inc.*, 111 Wn. App. 446, 454, 45 P.3d 594 (2002); *see also Stein v. Geonerco, Inc.*, 105 Wn. App. 41, 49 n.1, 17 P.3d 1266 (2001) ("claims under the Consumer Protection Act are not exempt from a mandatory arbitration clause"). That is also true in cases involving the assertion that arbitration is required by equitable estoppel. *See Dekrypt Cap.,* 2022 WL 97233 at *9 (compelling arbitration of WSSA claim under equitable estoppel theory); *Blanton,* 2019 WL 5543027 at *3–4 (statutory antitrust claims compelled to arbitration under Washington equitable estoppel).

The case upon which Plaintiffs rely to argue a bar against arbitration of statutory claims does not support that theory. In *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847-48 (9th Cir. 2013), the Ninth Circuit held that on the facts of that case, where the plaintiffs did not allege anyone had breached the contract in question, the CPA claims were independent of the contract and therefore not arbitrable. The Ninth Circuit did not state any broader bar against arbitration of CPA claims. And *Rajagopalan* is otherwise not controlling here because it was decided years before Washington courts clarified the use of equitable estoppel by non-signatories, in *David Terry* (2020), *Dekrypt* (2022), and *Norwood* (2024). Further, unlike the *Rajagopalan* plaintiffs, Plaintiffs have based their entire case on alleged breaches of contract by Reed Hein, and the Lampo Defendants' alleged fraudulent inducement into those contracts.

DEFENDANTS DAVID RAMSEY, III AND THE LAMPO GROUP, LLC'S REPLY IN SUPPORT OF THE MOTION TO COMPEL ARBITRATION AND STAY CASE
(Case No. 2:23-cv-00630-JLR) – Page 5

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Plaintiffs also read other nonexistent elements into the standard for equitable estoppel, such as a theory that the signatory to the contract must be included in the lawsuit or subject to a "substantively identical" complaint. Opp. 9-10, 14, 16. No case implies such requirements. The decisive factor in Washington precedent is *not* whether the signatories and non-signatories were co-defendants or faced identical allegations, but rather that the claims against the non-signatories could not be resolved without reference to the contracts containing the arbitration clauses. *See David Terry*, 13 Wn. App. at 171-72 (equitable estoppel applied because non-signatories received funds paid by plaintiffs under contracts); *Norwood*, 548 P.3d at 986-87 (equitable estoppel applied because the claims could not be understood without reference to the contract); *Dekrypt*, 2022 WL 97233 at *6 (equitable estoppel applied because claims were "founded in and intertwined with the underlying contract"). And that is the case here.

Moreover, even if there had been a requirement for the signatory to be subject to similar claims, that requirement would be met here. Approximately six months before filing this litigation, Plaintiffs' counsel filed a class action against Reed Hein on behalf of all its customers which alleged, among other things, that Reed Hein had breached its contracts by "induc[ing] customers into contracts unfairly and in bad faith by using false claims and promises." Suppl. Elder Decl., Ex. 8, ¶82. Those claims parallel the allegations here: advertisements falsely promised to get customers out of their timeshare obligations, or else refund them 100% of their money. *See id.* ¶¶ 1, 2, 28, 30, 35, 44, 46, 57, 61, 62, 63, 73b, 82. It is disingenuous for Plaintiffs (who were members of the class in that case) to contend the claims in this case are not arbitrable because there has been no similar claim against Reed Hein. And this prior case demonstrates that any rule barring equitable estoppel unless signatories and non-signatories were in the same case would simply invite plaintiffs to split litigation with the goal of avoiding arbitration of at least some of their claims. Washington has wisely never adopted such a rule.[4]

---

[4] Plaintiffs also distort the applicable law by citing to *Kramer v. Toyota Motor Corp.* (Opp. 12, 15), which applies *California* law. 705 F.3d 1122, 1128 (9th Cir. 2013). Similarly, *Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166 (9th Cir. 2021), does not apply Washington law, but rather federal common law in a maritime context. *Id.* at 1168.

DEFENDANTS DAVID RAMSEY, III AND THE LAMPO GROUP, LLC'S REPLY IN SUPPORT OF THE MOTION TO COMPEL ARBITRATION AND STAY CASE
(Case No. 2:23-cv-00630-JLR) – Page 6

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Plaintiffs also argue, without legal citation, that because Reed Hein allegedly failed to pay fees in other consumer arbitrations, the Lampo Defendants cannot compel arbitration. Opp. 9, 15. The Court should not entertain such unsupported assertions. *See Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority . . . forfeits the point."). In any event, any such rule would be antithetical to the reasoning behind equitable estoppel, which focuses on Plaintiffs' actions in agreeing to arbitration. *See, e.g., David Terry*, 13 Wn. App. 2d at 171 ("[T]he equitable estoppel doctrine applies when a party has signed an agreement to arbitrate but attempts to avoid arbitration by suing nonsignatory defendants …."). Reed Hein's failure to pay arbitral fees in cases involving different customers does not nullify the contractual promises to arbitrate made by the Plaintiffs who brought this case.

Finally, Plaintiffs also appear to argue inaccurately that the claims against the Lampo Defendants could never be intertwined with these contracts because they focus on "pre-contractual" actions. Opp. 4. Factually, this makes no sense, because Plaintiffs' complaint is replete with allegations that the Lampo Defendants engaged in misconduct *after* consumers signed their contracts and *after* problems purportedly began to arise. *See, e.g.*, Dkt. 55 ¶¶ 8 (continued to act after "receiving thousands of letters from listeners" about Reed Hein), 11 (defended Reed Hein after stopping promotions), 13 (refused to pay any funds), 176-85 (continued accepting Reed Hein money after they should have known of problems). Thus, this case is not limited to "pre-contractual conduct." And legally, the theory that the case involves "pre-contractual conduct" is irrelevant in any event because Plaintiffs' claim that the Lampo Defendants fraudulently induced them *into* their contracts would still be intertwined with the contracts. Indeed, it is well-established that allegations of fraudulent inducement to enter a contract, similar to those here, are arbitrable. *See, e.g., Allison v. Medicab Int'l, Inc.*, 92 Wn.2d 199, 203, 597 P.2d 380 (1979) ("a claim of fraud inducing entry into the entire contract" is to be decided in "the forum of arbitration rather than … the … courts.").

DEFENDANTS DAVID RAMSEY, III AND THE LAMPO GROUP, LLC'S REPLY IN SUPPORT OF THE MOTION TO COMPEL ARBITRATION AND STAY CASE
(Case No. 2:23-cv-00630-JLR) – Page 7

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

### 2. Plaintiffs Rely on Their Contracts While Seeking to Avoid Arbitration.

Plaintiffs' claims are independently subject to arbitration because Plaintiffs rely on their contracts with Reed Hein for their theory of damages and to toll the statute of limitations yet seek to avoid arbitration under those contracts. Mtn. 6-7. Plaintiffs again do not address the crux of this argument, nor the portions of the contracts upon which they rely to establish their claims.

Instead, Plaintiffs misconstrue the law. Plaintiffs argue the concurrence in *Townsend v. Quadrant Corp.*, 173 Wn.2d 451, 464-65, 268 P.3d 917 (2012), states that this alternative prong applies only where a claim is "based on a breach of contractual duties." Opp. 19. But the concurrence provides only that where children of signatories file individual claims for personal injury, those claims do not seek the benefits of contracts their parents signed. *Townsend*, 173 Wn.2d at 464-65. That is a different case than the one presented here, where Plaintiffs seek to impute harm from Reed Hein's alleged contractual breaches onto the Lampo Defendants. All the directly applicable Washington cases hold that in such a case, equitable estoppel applies. *See Norwood*, 548 P.3d at 986 (question is "whether the party opposing arbitration is claiming a contract's benefits while attempting to avoid the arbitration provision in the contract"); *David Terry*, 13 Wn. App. 2d at 169 (same); *Dekrypt*, 2022 WL 97233, at *6 (same). The Court should compel arbitration.

### B. The Defendants Have Not Waived the Right to Compel Arbitration.

Plaintiffs' suggestion that Defendants have waived the right to compel arbitration is meritless. Indeed, Plaintiffs' argument is disingenuous at the outset. On February 21 and June 11, 2024, Plaintiffs specifically agreed to a deadline to file motions to compel arbitration, which the Court memorialized in Orders. Dkts. 71, 81. The Lampo Defendants met this deadline. Making matters worse, Plaintiffs withheld the production of their agreements with Reed Hein until May 2024—even though Plaintiffs clearly knew those agreements contained arbitration clauses, while the Lampo Defendants did not—and now argue that the Lampo Defendants waived their right to arbitration by failing to file this motion ***before*** May 2024. Opp. 21. Had Plaintiffs simply produced their agreements with Reed Hein at the outset of this case, the Lampo Defendants could have brought

DEFENDANTS DAVID RAMSEY, III AND THE LAMPO GROUP, LLC'S REPLY IN SUPPORT OF THE MOTION TO COMPEL ARBITRATION AND STAY CASE
(Case No. 2:23-cv-00630-JLR) – Page 8

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400  FAX +1.206.274.6401

this motion a year earlier and all of the parties would have saved substantial time and resources. Under these circumstances, Plaintiffs' waiver argument should not be seriously entertained.

In any event, Plaintiffs' waiver argument fails as a matter of both fact and law. "[T]he test for waiver of the right to compel arbitration consists of two elements: (1) **knowledge** of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023) (citing *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022)) (emphasis added). Plaintiffs indisputably bear the burden to show the Lampo Defendants had "knowledge" of an existing right to compel arbitration. Opp. 20. Plaintiffs do not and cannot meet this burden. It is indisputable the Lampo Defendants did not have **knowledge** that the Plaintiffs executed arbitration agreements with Reed Hein until Plaintiffs produced those agreements. Thus, Plaintiffs simply cannot meet the first element of waiver.

In an attempt to side-step the knowledge requirement, Plaintiffs argue that the Lampo Defendants were somehow obligated to piece together a variety of clues about other individuals and use that piecemeal information to surmise that Plaintiffs had arbitration clauses as well. This argument is legally wrong. A "finding of waiver" requires "actual knowledge"; mere "speculation" or "conjecture" (all that Plaintiffs point to here) can never satisfy this requirement. *Keane v. 40 Years, Inc.*, 2019 WL 4014769, at *4 (W.D. Wash. Apr. 11, 2019) (finding no waiver because actions taken before "gaining actual knowledge" of the right to arbitrate cannot be action inconsistent with that right); *see also Priv. Nat'l Mortg. Acceptance Co., LLC v. Proprietary Cap.*, LLC, 2022 WL 3110316, at *2 (C.D. Cal. Mar. 4, 2022) (rejecting argument that Defendants "should have known about the arbitration agreement" because "actual knowledge of a right to arbitrate" was required for waiver). Indeed, even assuming Plaintiffs' factual assertions were true, their legal argument would be untenable. Under their theory, the Lampo Defendants should have **guessed** by January 2024 that the Plaintiffs **might** have had arbitration clauses—because **some** Reed Hein customers had such clauses, while others did not—and moved to compel arbitration on that basis. But such a motion would have been devoid of legal merit because the Lampo Defendants could not have met their

DEFENDANTS DAVID RAMSEY, III AND THE LAMPO GROUP, LLC'S REPLY IN SUPPORT OF THE MOTION TO COMPEL ARBITRATION AND STAY CASE
(Case No. 2:23-cv-00630-JLR) – Page 9

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

burden, at that time, to prove that each Plaintiff had an arbitration agreement. The notion that the Lampo Defendants waived their right to compel arbitration, by failing to bring a motion to compel that would have been meritless, makes no sense.

Moreover, Plaintiffs' argument is also factually wrong. Plaintiffs first argue that the Lampo Defendants received spreadsheets in July 2023, with information about numerous contracts with Reed Hein. Opp. 21. But as discussed above, those spreadsheets—which Plaintiffs did not submit to the Court—provided no information from which the Lampo Defendants could discern that Plaintiffs' contracts contained arbitration clauses. Second, Plaintiffs argue that the production of form contracts for *other* individuals in January 2024 put the Lampo Defendants on notice of Plaintiffs' arbitration clauses. But that production also did no such thing: while some contracts for other non-plaintiffs did have arbitration clauses, others did not (a fact Plaintiffs glaringly omit). *Supra*, 2. There was no way the Lampo Defendants could have discerned whether the Plaintiffs in *this* case had arbitration agreements.

In short, Plaintiffs are simply wrong that the Lampo Defendants should have or even could have figured out the terms of Plaintiffs' contracts by at least January 2024. The first time the Lampo Defendants had *knowledge* of the Plaintiffs' contracts was in May and June 2024, and Plaintiffs do not argue that any steps taken by the Lampo Defendants after May or June 2024 could constitute waiver. Opp. 22-23. In sum, it is undisputed that the Lampo Defendants had no genuine knowledge of the arbitration agreements until May and June 2024. As a result, they could not have waived their right to arbitration as a matter of law.

C.  **The Arbitration Agreements Are Not Unconscionable and Can Be Severed.**

Plaintiffs cannot avoid arbitration based on their argument that fee-shifting and damages limitation clauses are unconscionable. Plaintiffs argue that, in light of their CPA claim, a "loser pays" provision and limitation on the possibility of treble damages in the Reed Hein contracts render the agreements unenforceable. Opp. 22-24. Not so. The cases on which Plaintiffs rely typically relate to contracts of adhesion where a "loser pays" provision is only one of many objectionable and one-

DEFENDANTS DAVID RAMSEY, III AND THE LAMPO GROUP, LLC'S REPLY IN SUPPORT OF THE MOTION TO COMPEL ARBITRATION AND STAY CASE
(Case No. 2:23-cv-00630-JLR) – Page 10

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

sided terms. *See, e.g.*, *Gandee v. LDL Freedom Enterprises, Inc.*, 176 Wn.2d 598, 603, 293 P.3d 1197 (2013) (finding unconscionability where venue provision was prohibitively expensive, among other issues). And even if the loser-pays and damages limitations were deemed unconscionable, the cases Plaintiffs cite show that the remedy is *not* avoidance of arbitration, but severance of the unconscionable provision. *See id*. at 603 ("Severance is the usual remedy for substantively unconscionable terms."); *Walters v. A.A.A. Waterproofing, Inc.*, 151 Wn.App. 316, 321-325, 211 P.3d 454 (2009) (severing "loser pays" provision in CPA case and compelling arbitration).

Plaintiffs do not argue that any unconscionability is pervasive to the entire agreement (it clearly is not), and the very cases they cite severed the same type of fee-shifting and damages limitation clauses while compelling arbitration. *See Adler v. Fred Lind Manor*, 153 Wn.2d 331, 359–60, 103 P.3d 773 (2004) (compelling arbitration after "sever[ing] the unconscionable attorney fees and [damages] limitations provisions"). Plaintiffs' contracts all contain the same severability clause: "If any term, provision, covenant or condition of this Agreement is held by a tribunal of competent jurisdiction to be invalid, void, or unenforceable, the remainder of the provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated." *E.g.*, Elder Decl., Dkt. 83, Ex. 2 at 4. The very caselaw relied on by Plaintiffs shows that the only remedy here would be severance of the allegedly unconscionable provisions, if they are deemed unconscionable.

**D.  The Unavailability of Class Arbitration Should Be Decided by This Court.**

Plaintiffs claim that the question of whether the arbitrations in this case should be individual or classwide is an issue for the arbitrator to decide. Opp. at 25-28. That is not the case.

In *Shikov v. Artesx Risk Solutions, Inc.*, 974 F.3d 1051, 1068 (9th Cir. 2020), the Ninth Circuit made clear that "class arbitration is a gateway issue for a court to presumptively decide." While that presumption may be overcome if the agreement expressly refers the question of class arbitrability to the arbitrator, mere incorporation of the AAA rules is insufficient to refer the issue of class arbitration to the arbitrator in a case involving unsophisticated signatories. *See* Dkt. 55, ¶1 (plaintiffs are "unsuspecting working-class and middle-class consumers") and *Money Mailer, LLC*

DEFENDANTS DAVID RAMSEY, III AND THE LAMPO GROUP, LLC'S REPLY IN SUPPORT OF THE MOTION TO COMPEL ARBITRATION AND STAY CASE
(Case No. 2:23-cv-00630-JLR) – Page 11

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400  FAX +1.206.274.6401

*v. Brewer*, 2016 WL 1393492, at *2) (Lasnik, J.).

Class arbitration is not appropriate here. The arbitration clauses in Plaintiffs' contracts are silent on class arbitration. Dkt. 83-2 to 83-10. This means there can be no class arbitration. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) ("A party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so"); *Hill,* 59 F.4th at 483 ("class arbitration [cannot] be compelled when the underlying contract was silent as to class arbitration versus individual arbitration").

### III.  CONCLUSION

The Court should compel arbitration and find class arbitration inappropriate.

DATED this 9th day of August, 2024.

*I certify that this memorandum contains 4,173 words, in compliance with the Local Civil Rules.*

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Damon C. Elder*
Damon C. Elder, WSBA No. 46754
Patty A. Eakes, WSBA No. 18888
Andrew DeCarlow, WSBA No. 54471
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 274-6400
Email: patty.eakes@morganlewis.com
damon.elder@morganlewis.com
andrew.decarlow@morganlewis.com

*Attorneys for Defendants David L. Ramsey, III and The Lampo Group, LLC*

DEFENDANTS DAVID RAMSEY, III AND THE LAMPO GROUP, LLC'S REPLY IN SUPPORT OF THE MOTION TO COMPEL ARBITRATION AND STAY CASE
(Case No. 2:23-cv-00630-JLR) – Page 12

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401